**Nos. 19-50366, 19-50368**
_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
————

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**EDUVIGES AYALA-BELLO and
WALTER VELEZ-GONZALEZ,**

Defendants-Appellants.
————

Appeal from the
United States District Court
for the Southern District of California
Honorable Anthony J. Battaglia Presiding
————

**APPELLANTS' CONSOLIDATED EXCERPTS OF RECORD**
————

Kara Hartzler CSB 293751
Federal Defenders of San
Diego, Inc.
225 Broadway, Suite 900
San Diego, CA   92101
(619) 234-8467
Kara_Hartzler@fd.org

Keith Rutman CSB 144175
Attorney at Law
501 W. Broadway, Suite 650
San Diego, CA   92101
(619) 237-9072
Krutman@krutmanlaw.com

Attorneys for Appellants

CONSOLIDATED INDEX

*U.S. v. Ayala-Bello, No. 19-50366 and U.S. v. Velez-Gonzalez, No. 19-50368*

| _Document_ | _Docket_<br>*Ayala-Bello* | _Docket_<br>*Velez-Gonzalez* | _Page_ |
|---|---|---|---|
| 1. Notice of Appeal | 92 | -- | 1 |
| 2. Notice of Appeal | -- | 95 | 2 |
| 3. Judgment and Commitment | 90 | -- | 3 |
| 4. Judgment and Commitment | -- | 91 | 5 |
| 5. Order Denying Motion to Dismiss | 82 | -- | 7 |
| 6. Transcript, Motion Hearing, 9/16/19 | -- | -- | 15 |
| 7. Information (Second Superseding) | 80 | 80 | 33 |
| 8. Joinder in Co-Defendant's Pretrial Motions | -- | 78 | 35 |
| 9. Ms. Ayala-Bello's Motion to Dismiss | 77 | -- | 36 |
| 10. Transcript, Status Hearing, 8/12/19 | -- | -- | 160 |
| 11. Transcript, Status Hearing, 6/18/19 | -- | -- | 166 |
| 12. Transcript, Motion Hearing, 4/8/19 | -- | -- | 172 |
| 13. Government's Response in Opposition to Defendant's Motions | 38 | -- | 176 |
| 14. Defendant's Motions to Dismiss, Sever Defendants, Compel Discovery, Suppress Evidence, Apply Appropriate Elements, Preclude Unnoticed Prior Acts, and Leave to File Further Motions | 36 | -- | 184 |

## CONSOLIDATED INDEX
*U.S. v. Ayala-Bello, No. 19-50366 and U.S. v. Velez-Gonzalez, No. 19-50368*

| *Document* | *Docket*<br>Ayala-Bello | *Docket*<br>Velez-Gonzalez | *Page* |
|---|---|---|---|
| 15. Defendant's Motions to Dismiss the Complaint, Sever Defendants, Suppress Evidence, Set a Jury Trial, Properly Instruct Factfinder as to Elements of 8 U.S.C. § 1325(a)(2), and Leave to File Further Motions | 34 | -- | 194 |
| 16. Transcript, Indictment, 3/7/19 | -- | -- | 204 |
| 17. Transcript, Status, 2/20/19 | -- | -- | 206 |
| 18. Complaint, 18MJ20858 | 1 | -- | 209 |
| 19. Complaint, 18MJ20859 | -- | 1 | 213 |
| 20. Docket Sheets, Consolidated | -- | -- | 215 |

**KARA L. HARTZLER, ESQ.**
California Bar No. 293751
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
_____Retained     __X__Appointed

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

PRESIDING JUDGE HON. Anthony J. Battaglia     COURT REPORTER Jeannette Hill

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No.  19-CR-0735-AJB |
| (Appellee/Respondent) Plaintiff, | ) | |
| | ) | |
| v. | ) | **NOTICE OF APPEAL** |
| | ) | **(CRIMINAL)** |
| **EDUVIGES AYALA-BELLO,** | ) | |
| (Appellant/Petitioner) Defendant. | ) | |
| _____ | ) | |

Notice is hereby given that Eduviges Ayala-Bello, appellant/petitioner above-named, hereby appeals to the United States Court of Appeals for the Ninth Circuit from the:

(X) Final Judgment

(  ) Sentence Only (18 U.S.C. § 3742) Sentence Imposed _____.

(  ) Order (Describe):_____.

Entered in this proceeding on the 27th day of November, 2019.

DATED:     December 2, 2019          _/s/ Kara L. Hartzler_
                                                        **KARA L. HARTZLER***

Transcripts Required** __X__Yes  _____No    Date Ordered: December 3, 2019
Date (  ) Indictment   (X) Information    Filed: September 16, 2019 _____.
Bail Status: Released

Will there be a request to expedite the appeal and set a schedule faster than that normally set?
Yes___ No_X_(NOTE:   This does not alleviate requirement of filing a motion to expedite which must be done in accordance with FRAP 27.)

*Pursuant to Fed. R. Crim. P. 32(a)(2), the defendant may request the clerk to prepare and file the Notice of Appeal.
**If transcript required, transcript order form (CA9-036) must be completed and court reporter contacted to make arrangements for transcription.

1

Attorney Name and Address:

Keith H. Rutman, Esq.
501 West Broadway, Suite 1650
San Diego, CA. 92101-3541

PHONE: 619-237-9072 ⊞
_____ RETAINED    ✗   APPOINTED

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

TRIAL JUDGE Anthony J. Battaglia          COURT REPORTER Jeanette Hill

UNITED STATES OF AMERICA                  CASE NO. 19-cr-735-AJB

                                          NOTICE OF APPEAL       (Criminal)
                    vs.

WALTER VELEZ-GONZALEZ

Notice is hereby given that _____ WALTER VELEZ-GONZALEZ _____ ,
defendant/plaintiff above named, hereby appeals to the United States Court of Appeals for the
Ninth Circuit from the:      (check one)
(✓) Final Judgment
( ) Sentence Only (sentence imposed)_____
( ) Order (describe) _____
entered in this proceeding on the ____ 27 ____ day of ____ November ____ . ____ 2019 ____
If a government appeal: Was the filing of this appeal approved in accordance with 18 U.S.C.
§3742(b)(4) _____ Yes _____ No

Date: 12/3/19 ⊞                           s/KEITH H. RUTMAN
                                          _____
                                          Signature

Transcripts required*  __ ✗ __ Yes _____ No

Date  ( ) Indictment    (✓) Information Filed: _____ 9/16/19 _____
Bail status released
Will there be a request to expedite the appeal? _____ Yes  ✗  No
(Note: This does not alleviate the requirement of filing a motion to expedite which must be done in
accordance with FRAP 27).

* If transcript(s) required, a transcript designation and ordering form must be completed and the
court reporter(s) contacted to make arrangements for transcription.

K:\COMMON\CSA\forms\2005\appeal_crim.wpd Nov 16, 2009

2

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

**FILED**

NOV 2 7 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ____ DEPUTY

UNITED STATES OF AMERICA

**V.**

EDUVIGES AYALA-BELLO (1)

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number: 3:19-CR-00735-AJB

REBECCA FISH, FEDERAL DEFENDERS
Defendant's Attorney

**USM Number**

☐ –

THE DEFENDANT:

☐ pleaded guilty to count(s) _____

☒ was found guilty on count(s)     ONE (1) OF THE SECOND SUPERSEDING INFORMATION
     after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| Title and Section / Nature of Offense | Count |
|---|---|
| 8:1325(A)(1) - Improper Entry By An Alien (Misdemeanor) | 1ss |

     The defendant is sentenced as provided in pages 2 through   **2**   of this judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) remaining _____ is    dismissed on the motion of the United States.

☒ Assessment : $10.00 - REMITTED

☐ JVTA Assessment*: $

*Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.

☒ No fine    ☐ Forfeiture pursuant to order filed _____ , included herein.

     IT IS ORDERED that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in the defendant's economic circumstances.

November 22, 2019
Date of Imposition of Sentence

HON. ANTHONY J. BATTAGLIA
UNITED STATES DISTRICT JUDGE

3

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

| | | |
|---|---|---|
| DEFENDANT: | EDUVIGES AYALA-BELLO (1) | Judgment - Page **2** of **2** |
| CASE NUMBER: | 3:19-CR-00735-AJB | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Time served as to count 1ss

☐   Sentence imposed pursuant to Title 8 USC Section 1326(b).

☐   The court makes the following recommendations to the Bureau of Prisons:

☐   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant must surrender to the United States Marshal for this district:

     ☐   at _____ A.M.     on _____

     ☐   as notified by the United States Marshal.

☐   The defendant must surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐   on or before

     ☐   as notified by the United States Marshal.

     ☐   as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____

              UNITED STATES MARSHAL

By _____

            DEPUTY UNITED STATES MARSHAL

3:19-CR-00735-AJB

**4**

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

**FILED**

NOV **2 7** 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA
**v.**
WALTER GERMAN VELEZ-GONZALEZ (2)

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed On or After November 1, 1987)

Case Number:  3:19-CR-00735-AJB

KEITH RUTMAN, CJA
Defendant's Attorney

**USM Number**

☐  –

THE DEFENDANT:

☐  pleaded guilty to count(s)

☒  was found guilty on count(s)  ONE (1) OF THE SECOND SUPERSEDING INFORMATION
after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offense(s):

| Title and Section / Nature of Offense | Count |
|---|---|
| 8:1325(A)(1) - Improper Entry By An Alien (Misdemeanor) | 1ss |

The defendant is sentenced as provided in pages 2 through ___2___ of this judgment.
The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐  The defendant has been found not guilty on count(s)

☐  Count(s)  remaining  is  dismissed on the motion of the United States.

☒  Assessment :  $10.00 - REMITTED

☐  JVTA Assessment*: $

*Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.

☒  No fine    ☐  Forfeiture pursuant to order filed                          , included herein.

    IT IS ORDERED that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in the defendant's economic circumstances.

November 22, 2019
Date of Imposition of Sentence

HON. ANTHONY J. BATTAGLIA
UNITED STATES DISTRICT JUDGE

5

AO 245B (CASD Rev. 1/19) Judgment in a Criminal Case

| | |
|---|---|
| DEFENDANT: EDUVIGES AYALA-BELLO (1) | Judgment - Page **2** of **2** |
| CASE NUMBER: 3:19-CR-00735-AJB | |

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Time served as to count 1ss

☐  Sentence imposed pursuant to Title 8 USC Section 1326(b).

☐  The court makes the following recommendations to the Bureau of Prisons:

☐  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant must surrender to the United States Marshal for this district:

    ☐  at _____ A.M.    on _____

    ☐  as notified by the United States Marshal.

☐  The defendant must surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  on or before

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

**6**

3:19-CR-00735-AJB

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 19CR735 AJB |
| Plaintiff, | |
| | **ORDER DENYING MOTION TO DISMISS** |
| v. | |
| EDUVIGES AYALA-BELLO, | |
| Defendant. | |

Defendant moved to dismiss this action, and the matter was heard on September 16, 2019. Co-Defendant Walter German Velez-Gonzalez joined in the Motion. The matter was taken under submission for the Court to further consider statistical evidence submitted in support of the motion.

Defendant's claim is that the criminal proceedings implemented by the Court in this case violates equal protection and due process. Defendant's issues emanate from her appearance in the district court on a calendar on February 11, 2019, to handle initial appearances in all the prosecutions under 8 U.S.C. § 1325(a), the crime of Illegal Entry, brought by the Government. This misdemeanor crime is a Class B misdemeanor with a 6-month maximum prison sentence and falls within the category known as petty offenses. Defendant contends that her rights have been violated in that she was processed by a "separate court" or in "magistrate's court" and treated differently based on alienage. This

7

19CR735 AJB

is since felony initial appearances are conducted on a separate calendar by a magistrate judge (including felony immigration matters), and that the Court has a petty offense docket, presided over by a magistrate judge, to handle petty offenses (including Class B and C felonies, as well as infractions, and some Class A misdemeanor's based on filed Informations).This latter docket is called the Central Violations Bureau ("CVB") and takes place once a week. The CVB handles cases where citations are issued by government law enforcement in lieu of arrest.

For the reasons set forth below, Defendant's Motion is denied.

This issue is not one of first impression for this Court or the Southern District of California. Many cases have raised the due process and equal protection issues on these same grounds to no avail. This Court has denied the Motion previously and incorporates by reference that analysis in *United States v. Oscar Chavez-Diaz*, 18mj20098. That case is now on appeal. *Chavez-Diaz* addresses the background and institutional framework behind the issue.

Defendant, an alleged illegal alien, who is alleged to have illegally entered the United States claims her rights have been violated based on her alienage and ethnicity (Hispanic) because she had her initial appearance on a calendar assigned to all illegal entry cases scheduled on that date, as opposed to the felony initial appearance docket (which includes felony immigration crimes). In particular, she argues that she wasn't given a notice to appear on the petty offense docket and was released as opposed to being arrested and held. Of course, the decision to arrest and charge, or to issue a citation and notice to appear, is in the discretion of the Executive Branch of Government. The Court has no role in the decision making in that regard. However, the Court sets calendars and organizes proceedings to address those cases brought by the Executive Branch. When the Government decides to arrest someone, the Court is obligated to determine probable cause for the arrest within 48 hours. *See Gerstein v. Pugh*, 420 U.S. 103, 114 (1975*); County of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991).  *County of Riverside*

8

19CR735 AJB

presumptively sets a 48-hour period for this probable cause determination. *County of Riverside,* 500 U.S. at 56.

The court must also hold an Initial Appearance without unnecessary delay. Fed.R.Cr.P. 5. This Rule 5 hearing involves, among other things, advising a defendant of the charges, appointing counsel where the defendant cannot afford to retain one, consider pretrial release (bail) and set a preliminary hearing or other proceedings as necessary. *Id.*

When the Government decides to issue a citation and notice to appear in a petty offense matter or Class A Misdemeanor, the Court proceeds under Fed.R.Crim.P. 58, with procedures like those in a Rule 5 hearing.

While it should go without saying, offenses under 8 U.S.C. § 1325(a) and 8 U.S.C. § 1326 have as an element that the defendant was an alien. There is no challenge here to the constitutionality of the statutes, but how the Court chooses to schedule and assign initial appearances, among others, is the target of the claim.

Defendant urges the Court that newly acquired statistics warrant a different result. They do not. The Chart presented as Exhibit H (Doc. 77) lists ALL misdemeanor class offenses. The fact that some may also be charged elsewhere (on another docket or by another Court) as a felony is not the point. The CVB cases are processed as Class A or B misdemeanors. None of them address cases where alienage is an issue. See, Exhibit G (Doc. 77)

Defendant would like to elevate the issue to a political dispute and injects the record with hyperbole and self-serving declarations by the defense community, news articles and releases of various opinions and commentary, substantially unsupported and objectionable hearsay, about issues beyond the disparate treatment by the court in case processing, which is the basis of the motion. The Court does not find this information helpful or determinative of the issue.

According to the United States Sentencing Commission's Fiscal Year 2018 "Overview of Federal Criminal Cases" June 2019, 42.7 % of all felony and Class A Misdemeanor offenses (Class B, C, Petty Offenses and infractions are not included as they

9

are not reported under the sentencing guidelines) are committed by non-citizens. Of all offender's 54.3% are Hispanic, and immigration crimes make up 34.4% of all crime. The Court takes Judicial Notice of these facts under Rule 201, Federal Rules of Evidence. See attachments A, B, C.

In handling its share of the National Federal Criminal Docket, the Southern District of California does not treat aliens in a disparate way. Cases are processed, and persons addressed based on the charges, charging and arrest decisions by the Executive Branch. There is nothing suspect about handling felonies, misdemeanors, and petty offenses on separate calendars. All are afforded due process and equal protection in their criminal proceedings in this Court. While alienage is an issue in misdemeanor §1325 cases, it's also an issue in felony §1325 cases and §1326 cases on the felony docket. Scores of aliens are also prosecuted in the district with felony drug charges and alien smuggling charges, among others, on that same felony docket with all other arrestees facing felony charges.

While not the issue raised here, it is hard to accept that there is something suspect about the Government arresting alleged illegal entrants without a right to be in the United States, and not issuing them a citation and notice to appear, so they can go on their way with the expectation that they will come to court some months down the line to face their charge and if convicted go to jail and then be processed for deportation. Without status the Government must arrest criminally or administratively detain undocumented aliens for repatriation. Once arrested, issues of bail from federal custody or immigration custody can be addressed. The law in this regard is clear. There really is no other course.

For the forgoing reasons, the conviction is affirmed and Defendant's challenge to her prosecution on Equal Protection and Due Process grounds is **DENIED**. Co-defendant's Motion is similarly **DENIED**.

Dated: September 25, 2019

Hon. Anthony J. Battaglia
United States District Judge

10

19CR735 AJB

 # Individual Offender Characteristics

## Gender



Male 87.0%

Female 13.0%

Most offenders are men, and their proportion of the total offender population has remained constant for more than a decade. In fiscal year 2018, 87.0 percent of all offenders were men, compared with 86.0 percent in fiscal year 2014, and 87.1 percent in fiscal year 2009. Among female offenders, the most common crime was drug trafficking (committed by 34.7% of all women offenders).

## Race



Black 20.6%

White 21.2%

Hispanic 54.3%

Other 3.8%

In fiscal year 2018, 54.3 percent of all federal offenders were Hispanic, while 21.2 percent were White, and 20.6 percent were Black.[6] The racial composition of offenders varied widely across offense types. For example, most Hispanic offenders (85.3%) were sentenced for one of two types of offenses—immigration or drug trafficking crimes. Among drug offenders, racial and ethnic background varied depending on the type of drug involved in the crime.

Page 6

 *A*

11

## Citizenship



U.S. Citizen 57.3%

Non-U.S. Citizen 42.7%

The majority of federal offenders were United States citizens (57.3%). Most non-citizen offenders committed an immigration offense (74.2%). The next most common offense type among non-citizen offenders was drug trafficking (15.6%). Non-citizens received prison only sentences 95.8 percent of the time, more often than United States citizens (82.8%).

The average age of offenders in fiscal year 2018 was 36 years old, the same as the average age in fiscal year 2014 and only a slight increase from the average age of 35 in 2009. Almost half of all federal offenders sentenced in fiscal year 2018 (46.8%) had not completed high school, and only 5.8 percent of offenders had completed college.

## Criminal History Category



Category II 14.1%

Category III 16.0%

Category I 46.2%

Category IV 9.4%

Category V 5.5%

Category VI 8.9%

Almost half of offenders were assigned to Criminal History Category (CHC) I (46.2%), the lowest category. About one-third of fiscal year 2018 offenders were assigned to CHC II (14.1%) and CHC III (16.0%). The remaining 23.8 percent fell into CHC IV (9.4%), CHC V (5.5%) and CHC VI (8.9%). In fiscal year 2018, 1,597 offenders were deemed to be "career offenders" and 306 were sentenced as "armed career criminals."

B

12



# Federal Offenders by Type of Crime

For more than a decade, cases involving drugs, immigration, firearms, and fraud, theft, or embezzlement comprised the vast majority of federal felonies and Class A misdemeanors. This trend continued in fiscal year 2018, as these crimes accounted for 82.8 percent of all cases reported to the Commission. Of all cases reported that year, 95.7 percent were felony offenses.



**Federal Offenders by Type of Crime**



13

1

```
 1                 UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF CALIFORNIA
 2

 3   UNITED STATES OF AMERICA,      )
                                    )  CASE NO. 19CR0735-AJB
 4              PLAINTIFF,          )
                                    )
 5           -V-                    )  SEPTEMBER 16, 2019
                                    )  3:11 P.M.
 6   EDUVIGES AYALA-BELLO,          )
     WALTER GERMAN VELEZ-GONZALEZ,  )
 7                                  )
                DEFENDANTS.         )  SAN DIEGO, CALIFORNIA
 8   _____)

 9

10               TRANSCRIPT OF MOTION HEARING

11         BEFORE THE HONORABLE ANTHONY J. BATTAGLIA
                 UNITED STATES DISTRICT JUDGE
12

13   APPEARANCES:
     FOR THE GOVERNMENT:  ROBERT S. BREWER, JR., U.S ATTORNEY
14                        BY:  CAROLINE PINEDA HAN
                          ASSISTANT U.S. ATTORNEY
15                        880 FRONT STREET
                          SAN DIEGO, CALIFORNIA 92101
16
     FOR DEFENDANT AYALA: FEDERAL DEFENDERS OF SAN DIEGO, INC.
17                        BY:  KARA L. HARTZLER, ESQ.
                          225 BROADWAY, STE. 900
18                        SAN DIEGO, CALIFORNIA 92101

19   FOR DEFENDANT VELEZ: KEITH H. RUTMAN ATTORNEY AT LAW
                          BY:  KEITH H. RUTMAN, ESQ.
20                        501 WEST BROADWAY, SUITE 1650
                          SAN DIEGO, CALIFORNIA 92101
21
     COURT INTERPRETER:   INDRA ZUNO-PANTOJA
22
     OFFICIAL REPORTER:   JEANNETTE N. HILL, CSR
23                        U.S. COURTHOUSE
                          333 WEST BROADWAY, RM 420
24                        SAN DIEGO, CALIFORNIA 92101
                          (619) 702-3905
25
     REPORTED BY STENOTYPE, TRANSCRIPT PRODUCED BY COMPUTER
```

SEPTEMBER 16, 2019

14

2

1    __SAN DIEGO, CALIFORNIA; MONDAY, SEPTEMBER 16, 2019; 3:11 P.M.__

2            **DEPUTY CLERK:**  MATTER 28 ON CALENDAR, CASE NUMBER

3    19CR735, UNITED STATES OF AMERICA VERSUS EDUVIGES AYALA-BELLO

4    AND WALTER GERMAN VELEZ-GONZALEZ, BOTH ON FOR MOTION HEARING.

5            **MR. RUTMAN:**  GOOD AFTERNOON, YOUR HONOR.  KEITH

6    RUTMAN FOR MR. VELEZ.  HE'S PRESENT ON BOND AND BEING ASSISTED

7    BY THE INTERPRETER.

8            **MS. HARTZLER:**  GOOD AFTERNOON, YOUR HONOR.  KARA

9    HARTZLER APPEARING ON BEHALF OF BECKY FISH.

10   (INTERPRETER INTERRUPTION/PAUSE)

11           KARA HARTZLER APPEARING ON BEHALF OF MS. AYALA-BELLO.

12   I'M APPEARING IN PLACE OF MS. BECKY FISH FROM OUR OFFICE.

13           **THE COURT:**  OKAY.

14           **MS. HAN:**  AND GOOD AFTERNOON, YOUR HONOR.  CAROLINE

15   HAN ON BEHALF OF THE UNITED STATES.

16           **THE COURT:**  AND THANKS, MS. HAN.

17           SO WE HAD THIS CASE SET FOR TRIAL, AND THEN WE HAD TO

18   DERAIL IT, SO TELL ME WHERE WE STAND NOW.

19           **MS. HARTZLER:**  YOUR HONOR, AS FAR AS MS. AYALA-BELLO

20   IS CONCERNED, MS. FISH FILED SOME SUBSTANTIVE MOTIONS, I

21   BELIEVE ON AUGUST 26TH.  I BELIEVE WE WERE ON CALENDAR TO ARGUE

22   THOSE.  I AM PREPARED TO MAKE A FEW BRIEF ARGUMENTS, IF THE

23   COURT WOULD LIKE.  BEYOND THAT, WE CAN GO AHEAD AND SET A NEW

24   DATE FOR TRIAL.

25           **THE COURT:**  OKAY.

15

3

1           AND, MR. RUTMAN, DOES THAT SOUND LIKE A PLAN TO YOU?

2           **MR. RUTMAN:**  YES, YOUR HONOR.  WE JOIN, AND I AM JUST

3   GOING TO SUBMIT ON THE ARGUMENTS OF COUNSEL.

4           **THE COURT:**  OKAY.

5           **MS. HAN:**  AND, YOUR HONOR, ONE OF THE MOTIONS WAS,

6   ESSENTIALLY, THAT THE INFORMATION WAS INSUFFICIENT.  AND WE'VE

7   STATED, IN OUR RESPONSE, THAT WE PLAN TO FILE A SUPERSEDING

8   INFORMATION.  WE BELIEVE IT IS SUFFICIENT BUT, ESSENTIALLY, TO

9   MOOT THE ARGUMENT ANY FURTHER.  SO JUST TO PUT THE COURT ON

10  NOTICE.  WE CAN DEAL WITH THAT LATER OR NOW.

11          **THE COURT:**  WHY DON'T WE DEAL WITH IT NOW.  IF YOU

12  HAVE AN INFORMATION TO BRING FORWARD THAT CORRECTS OR MOOTS THE

13  ISSUE, THAT IS ONE LESS THING WE HAVE TO DO.

14          **MS. HAN:**  THANK YOU, YOUR HONOR.  SO IF I CAN

15  APPROACH THE CLERK AND GIVE HER A COPY OF THAT?

16          **THE COURT:**  YES.  OF COURSE.

17  (TENDERING TO THE COURT)

18          AND, OF COURSE, MS. FERNANDEZ IS STILL AT LARGE, THE

19  BEST WE KNOW.  BUT LET'S GO AHEAD AND ARRAIGN MS. AYALA AND

20  MR. VELEZ ON THE CHARGES.

21          **DEPUTY CLERK:**  EDUVIGES AYALA-BELLO, IS THAT YOUR

22  TRUE NAME?

23          **DEFENDANT AYALA:**  YES.

24          **DEPUTY CLERK:**  AND WALTER GERMAN VELEZ-GONZALEZ, IS

25  THAT YOUR TRUE NAME?

SEPTEMBER 16, 2019

16

4

1    **DEFENDANT VELEZ:**  YES.

2    **DEPUTY CLERK:**  EACH OF YOU ARE INFORMED THAT A SECOND

3    SUPERSEDING INFORMATION HAS BEEN FILED, CHARGING YOU EACH WITH

4    IMPROPER ENTRY BY AN ALIEN.

5    COUNSEL, HAVE YOU RECEIVED COPIES OF THE SECOND

6    SUPERSEDING INFORMATION AND WAIVE FURTHER READING?

7    **MR. RUTMAN:**  YES.

8    **MS. HARTZLER:**  YES, YOUR HONOR.

9    **DEPUTY CLERK:**  YOU ARE EACH FURTHER INFORMED THAT YOU

10   HAVE THE RIGHT TO BE REPRESENTED BY COUNSEL AT ALL STAGES OF

11   THE PROCEEDINGS BEFORE THE COURT.  YOU HAVE THE RIGHT TO REMAIN

12   SILENT.  YOU HAVE THE RIGHT TO A TRIAL BY A JURY.  YOU HAVE THE

13   RIGHT TO CONFRONT AND CROSS-EXAMINE ANY WITNESSES WHO TESTIFY

14   AGAINST YOU.  AND YOU HAVE THE RIGHT TO HAVE WITNESSES

15   SUBPOENAED TO TESTIFY ON YOUR BEHALF.

16   HOW DO YOU EACH NOW PLEAD TO THE SECOND SUPERSEDING

17   INFORMATION?

18   **MR. RUTMAN:**  NOT GUILTY, YOUR HONOR.

19   **MS. HARTZLER:**  NOT GUILTY, YOUR HONOR.

20   **THE COURT:**  NOT GUILTY PLEAS ARE ENTERED AS TO

21   DEFENDANTS AYALA AND VELEZ TO THE SECOND SUPERSEDING

22   INFORMATION.

23   AND THEN IN TERMS OF THE MOTIONS, MS. HARTZLER, WHERE

24   WOULD YOU LIKE TO START?

25   **MS. HARTZLER:**  YOUR HONOR --

SEPTEMBER 16, 2019

17

5

1      **THE COURT:**  I DO HAVE THE ONES FROM THE 26TH, AS WELL

2  AS THE PRIOR ONES THAT WE HAVE HAD PENDING.

3      **MS. HARTZLER:**  YOUR HONOR, I WON'T TAKE A LOT OF YOUR

4  HONOR'S TIME, I PROMISE, THIS AFTERNOON.  THE ONLY THING I WANT

5  TO DO IS ADDRESS SEVERAL THINGS THAT WE CHANGED IN OUR EQUAL

6  PROTECTION ARGUMENT.

7      **THE COURT:**  OKAY.

8      **MS. HARTZLER:**  I KNOW THAT THIS COURT, IN THE PAST,

9  HAS HEARD ME ARGUE THIS, AND I WON'T GO THROUGH THE WHOLE

10  ARGUMENT AGAIN.  I JUST WANTED TO BRING IT UP BECAUSE THE

11  GOVERNMENT HAS ARGUED THAT WE ARE BASICALLY ARGUING THE SAME

12  THING.  AND I WANT TO JUST POINT OUT THREE SPECIFIC THINGS THAT

13  ARE DIFFERENT, FOR THE COURT'S BENEFIT.

14      FIRST OF ALL, YOUR HONOR, WHAT I HAVE DONE WITH THIS

15  NEW MOTION, AND THE ONE THAT MS. FISH FILED, IS I BASICALLY

16  COMPILED SOME STATISTICS COMPARING THE DEFENDANTS IN THE

17  DISTRICT'S CVB COURT OVER THE LAST YEAR, FROM JULY 2018 TO

18  JULY 2019, AND COMPARING THOSE TO PEOPLE WHO HAVE BEEN IN

19  STREAMLINED COURT OVER THE LAST YEAR, FROM JULY 2018 TO

20  JULY 2019.

21      AND I WOULD JUST POINT OUT THAT THE STATISTICS SHOW

22  THAT IN THE LAST YEAR, 383 PEOPLE WERE CONVICTED IN CVB COURT

23  OF OFFENSES THAT WERE CLASS B MISDEMEANORS OR HIGHER.  NOT ONE

24  OF THEM RECEIVED A FORMAL CONVICTION, AND THERE WAS ACTUALLY A

25  35 PERCENT FAILURE TO APPEAR RATE IN THE CVB COURT.

SEPTEMBER 16, 2019

18

6

1          BY CONTRAST, PEOPLE IN THE STREAMLINED COURTS WERE

2    ARRESTED.  THEY WERE SHACKLED.  THEY WERE CONVICTED.  THEY WERE

3    ALL SENTENCED TO AT LEAST SOME JAIL TIME -- THOSE WHO WERE

4    CONVICTED.  SO WE BELIEVE THAT THIS IS A VIOLATION OF EQUAL

5    PROTECTION ON THE BASIS OF ALIENAGE, NATIONAL ORIGIN, AND RACE.

6          THE SECOND THING THAT I WOULD LIKE TO JUST POINT OUT

7    THAT IS A LITTLE BIT DIFFERENT IN THIS MOTION THAN OUR PAST

8    MOTION, IS THAT WE ARE ALSO FRAMING THIS AS A SELECTIVE

9    PROSECUTION AND SELECTIVE ENFORCEMENT ACTION.  THAT FALLS UNDER

10   THE REALM OF EQUAL PROTECTION.

11         SO I JUST WANTED TO POINT OUT THAT THAT IS ALSO A WAY

12   THAT WE FRAMED THIS ARGUMENT IN A WAY THAT WE HADN'T BEFORE.

13         AND THEN THE LAST THING I WILL POINT OUT, YOUR HONOR,

14   THAT IS A LITTLE BIT DIFFERENT IS THAT WE HAVE POINTED OUT THAT

15   THE COMMENTS OF THE EXECUTIVES CAN BE IMPUTED TO LOCAL

16   OFFICIALS HERE, EVEN IF THERE IS NO DISCRIMINATORY ANIMUS OR

17   DISCRIMINATORY INTENT ON THE BASIS OF ANYONE LOCAL.

18         AND WE HAVE POINTED OUT SOME OF THE COMMENTS MADE BY

19   THE EXECUTIVE OVER THE PAST SEVERAL YEARS, THAT WE BELIEVE CAN

20   BE USED TO SHOW RACIAL ANIMUS AGAINST PEOPLE FROM MEXICO AND

21   CENTRAL AMERICA.

22         SO UNDER THAT THEORY, YOUR HONOR, THOSE TYPES OF

23   COMMENTS AND THAT TYPE OF RACIAL ANIMUS CAN BE USED TO SATISFY

24   EVEN A RATIONAL BASIS STANDARD.

25         SO THOSE ARE BASICALLY THE DIFFERENCES BETWEEN THE

19

7

1  PAST MOTION WE FILED AND THIS ONE THAT WE FILED NOW.  IF THE

2  COURT IS NOT PERSUADED BY THESE ARGUMENTS, WHAT I WOULD JUST

3  ASK YOUR HONOR IS THAT THE COURT EITHER PERHAPS REISSUE THE

4  DECISION THAT IT ISSUED IN THE CASE OF *CHAVEZ-DIAZ*, WHICH IS

5  18-MJ-20098.

6          OR IF THE COURT DOESN'T WISH TO ACTUALLY REISSUE A

7  WHOLE WRITTEN DECISION, WE WOULD ASK IF THE COURT DENIES IT,

8  PERHAPS IT COULD JUST INCORPORATE THE REASONING AND THE

9  RATIONALE OF ITS WRITTEN DECISION IN THAT *CHAVEZ-DIAZ* CASE, SO

10 THAT IF AND WHEN WE GO TO THE NINTH CIRCUIT, WE WOULD HAVE THAT

11 RATIONALE THAT WE COULD POINT TO ON APPEAL.

12         AND WITH THAT, YOUR HONOR, I WILL CONCLUDE AND JUST

13 ALSO SAY THAT MS. FISH ASKED THAT WE RESERVE ON THE SUPPRESSION

14 ISSUE AND CARRY THAT OVER TO THE TRIAL DATE.

15         **THE COURT:**  WE CAN DO THAT DURING THE TRIAL.

16         OF YOUR STATISTICAL ANALYSIS -- I DON'T SEE IT HERE,

17 BUT MAYBE I'M MISSING IT -- BUT OF THE 383 DEFENDANTS

18 PROSECUTED IN THE CVB COURT, HOW MANY WERE OF HISPANIC

19 ETHNICITY OR EVEN ORIGIN, BUT OTHERWISE LAWFULLY IN THE COUNTRY

20 OR AT THE TIME OF THEIR PROCEEDING?

21         **MS. HARTZLER:**  THAT'S A GREAT QUESTION, YOUR HONOR,

22 AND I ACTUALLY DON'T HAVE THAT.  OFF THE TOP OF MY HEAD, I

23 THINK WE HAVE TO LOOK AT THE NAMES AND SORT OF SURMISE.  BUT I

24 AM HAPPY TO LOOK THAT UP AND DO FURTHER BRIEFING ON THAT, IF

25 THE COURT WOULD LIKE.

SEPTEMBER 16, 2019

8

1          **THE COURT:**  I MEAN, I THINK THAT IS AN IMPORTANT

2    DISTINCTION WHEN THE ARGUMENT IS SPECIFICALLY SELECTIVE

3    PROSECUTION AGAINST PEOPLE OF HISPANIC ORIGIN OR OF OTHER

4    ETHNICITIES, IN COMPARING A SYSTEM WHERE I SPENT 17 YEARS -- AT

5    TIMES SUPERVISING THAT -- AND SAW A FAIR NUMBER OF HISPANICS.

6    BUT MY ANECDOTAL RECOLLECTION IS NOT NECESSARILY PERSUASIVE.

7          SO I THINK THAT IS AN OPEN ISSUE IN TERMS OF BEING

8    ABLE TO PROVE, AT LEAST ON AN EMPIRICAL BASIS, THAT THEY ARE

9    ALL NON-HISPANIC IN ONE COURT AND HISPANIC IN ANOTHER.  I DON'T

10   THINK THE STATISTICS WILL BEAR THAT OUT.

11         WHAT, MS. HAN, WOULD YOU LIKE TO SAY?

12         **MS. HAN:**  YOUR HONOR, WE UNDERSTAND THAT DEFENSE

13   COUNSEL BELIEVES THAT THEY'VE REFRAMED THE ISSUE AND THAT IT

14   HAS CHANGED THEIR ARGUMENTS, BUT WE RESPONDED IN KIND BECAUSE

15   WE DON'T BELIEVE THAT ANY OF THIS DOCUMENTATION CHANGES ANY OF

16   THE ANALYSIS.

17         AS TO THE ISSUE OF ALIENAGE, I DON'T THINK ANY CASE

18   HAS BEEN MADE THAT IT'S LATINAS EXCLUSIVELY THAT ARE PROSECUTED

19   IN OPERATION STREAMLINE.  I THINK THERE ARE A NUMBER OF

20   DEFENDANTS OF A VARIETY OF ETHNICITIES AND COUNTRIES OF

21   ORIGINS.  SO THAT DOESN'T SEEM TO HAVE ANY BASIS, AND THAT

22   DOESN'T SEEM TO BE BORNE OUT BY ANY OF THE DOCUMENTATION THAT

23   IS PROVIDED.

24         IN TERMS OF THE ARGUMENT ABOUT SELECTIVE PROSECUTION,

25   THEY CITE TO *ARMSTRONG*, WHICH IS A CASE ABOUT ESSENTIALLY

SEPTEMBER 16, 2019

21

9

1  SHOWING -- A SUFFICIENT SHOWING TO DETERMINE WHETHER OR NOT

2  DISCOVERY SHOULD BE PROVIDED ON THAT SPECIFIC ISSUE ABOUT

3  SELECTIVE PROSECUTION.  AND I DON'T THINK THAT THE

4  DOCUMENTATION THAT WAS PROVIDED BY COUNSEL IN THE MULTITUDE OF

5  ATTACHMENTS IS ENOUGH FOR THAT SHOWING.

6       AND SO FOR THOSE REASONS, THAT IS WHY WE RESPONDED IN

7  KIND WITH SUCH A BRIEF RESPONSE, BECAUSE WE DON'T THINK THAT

8  THIS HAS CHANGED THE ANALYSIS THAT YOU SET FORTH IN

9  *CHAVEZ-DIAZ*.

10      **THE COURT:**  OKAY.  AND, MR. RUTMAN, I DIDN'T MEAN TO

11 IGNORE YOU, BUT YOU'RE JOINING IN THE MOTION, I TAKE IT?

12      **MR. RUTMAN:**  YES, SIR.

13      **THE COURT:**  WOULD YOU HAVE OTHER COMMENTS YOU WOULD

14 INTEND TO MAKE?

15      **MR. RUTMAN:**  I ONLY ECHO COUNSEL'S COMMENTS.  AND I

16 THINK THE REMARKS OF THE PRESIDENT OF THE UNITED STATES ARE

17 ADMISSIBLE AND RELEVANT AS TO THE INTENT BEHIND THESE POLICIES.

18      **THE COURT:**  PRESIDENT TRUMP'S CRITICISM OF JUDGE

19 CURIEL AND THOSE KIND OF STATEMENTS?

20      **MR. RUTMAN:**  WELL, THAT WOULD CERTAINLY EXPRESS SOME.

21      **THE COURT:**  THAT IS ONE OF THE EXAMPLES THAT IS MADE.

22      WHAT ABOUT PROSECUTORIAL DISCRETION?  THE ESSENCE OF

23 MY FINDINGS IN *CHAVEZ-DIAZ* WAS THE GOVERNMENT HAS CERTAIN

24 PROSECUTORIAL DISCRETION IN TERMS OF CHARGE OR NOT CHARGE OR

25 HOW TO CHARGE.  AND IN SITUATIONS THAT ARE TRAFFIC-RELATED OR

SEPTEMBER 16, 2019

22

10

1      PUBLIC-LANDS-RELATED OR PUBLIC-FACILITIES-RELATED, AND CHOSEN

2      THE EXPEDITED CITATION PROCESS.  BUT WHERE AREAS GET TO BE

3      OTHER TYPES OF MISDEMEANORS, I DON'T THINK THERE IS ANY

4      STATISTICS TO SHOW ANY 1325s HAVE BEEN PROSECUTED IN THE CVB

5      COURT.  I THINK THAT IS THE POINT.

6             WHY CAN'T THE GOVERNMENT EXERCISE ITS DISCRETION TO

7      PROCEED BY CITATION VERSUS AN INFORMATION OR INDICTMENT, AS THE

8      PARTICULAR CIRCUMSTANCES OF THE CASE MIGHT DICTATE?

9           **MS. HARTZLER:**  WELL, YOUR HONOR, APART FROM THE

10     OBJECTIONS ON THE BASIS OF NATIONAL ORIGIN AND RACE, WE ALSO

11     HAVE ALIENAGE.  AND I THINK, AS YOUR HONOR MENTIONED, THE WHOLE

12     POINT IS THAT 1325 IS AN ELEMENT OF ALIENAGE, AND YET IT IS THE

13     ONLY CLASS B MISDEMEANOR THAT IS CHARGED IN REGULAR COURT,

14     WHERE PEOPLE ARE ARRESTED, HELD IN CUSTODY, GET A CONVICTION,

15     AS OPPOSED TO EVERY OTHER CLASS B MISDEMEANOR OR HIGHER THAT

16     DOES NOT HAVE AN ELEMENT OF ALIENAGE AND IS PUT IN THIS MUCH

17     KINDLIER, GENTLER SYSTEM.

18           **THE COURT:**  I'M SORRY FOR INTERRUPTING YOU, BUT ARE

19     THERE CLASS A MISDEMEANORS IN CVB?  I DON'T BELIEVE THERE ARE.

20           **MS. HARTZLER:**  THERE ABSOLUTELY ARE.  AND, ACTUALLY,

21     THERE ARE FELONIES IN CVB.  THERE ARE VERY SERIOUS FELONIES FOR

22     SEXUAL ABUSE.

23           **THE COURT:**  NO.  IT CAN'T BE.  YOU CANNOT CONVICT ON

24     A FELONY ON A CITATION.  THOSE PEOPLE HAVE A GOOD APPEAL, IF

25     THAT'S THE CASE.

SEPTEMBER 16, 2019

23

1        **MS. HARTZLER:** THEY WERE –– I'M NOT SAYING THAT ––

2    THE STATUTE UNDER WHICH THEY WERE CONVICTED OF COULD ONLY BE

3    CHARGED AS A FELONY.

4        **THE COURT:** THERE IS SOMETHING WRONG WITH THAT.  THE

5    GOVERNMENT NEEDS TO LOOK AT THEIR CASELOAD, IF THAT'S TRUE.

6        **MS. HARTZLER:** THERE ARE CERTAINLY CASES THAT WE HAVE

7    CITED THAT WERE FELONIES.

8        **THE COURT:** I DON'T DOUBT WHAT YOU'RE SAYING.  ALL

9    I'M SAYING IS THAT IS NOT APPROPRIATE.  THE CVB COURT IS A

10    PETTY OFFENSE DOCKET UNDER THE ASSIMILATED CRIMES ACT THAT DEAL

11    WITH SIX-MONTH-OR-LESS MISDEMEANORS.

12        THE ONLY WRINKLE SOMETIMES ARE THE DUIS, THE D-U-I-S.

13    BUT THE WAY THAT THEY ARE CHARGED AND HANDLED, SIX MONTHS OR

14    THE MANDATORY 72 HOURS.  AND SIX MONTHS IS THE STANDARD.  BUT,

15    I WILL HAVE TO LOOK AT THIS, THEN.

16        **MR. RUTMAN:** YOUR HONOR, MAY I ADD SOMETHING IN

17    RESPONSE TO THE COURT'S QUESTION, WHEN YOU HAVE A MOMENT?

18        **THE COURT:** YES, SURE.

19        **MR. RUTMAN:** YOU HAD ASKED WHAT ABOUT PROSECUTORIAL

20    DISCRETION.  I WOULD POINT OUT IT'S RELEVANT IN THIS CONTEXT.

21    IN THE SOUTHERN DISTRICT OF NEW YORK, THEY HAD THEIR

22    STOP-AND-FRISK LITIGATION THAT WENT ON FOR YEARS.  AND THE

23    JUDGE FOUND THAT THEIR POLICY WAS UNCONSTITUTIONAL BECAUSE MEN

24    OF COLOR WERE FOUR OR FIVE TIMES MORE LIKELY THAN CAUCASIANS TO

25    BE STOPPED AND FRISKED.  SO YOU HAVE A FACIALLY NEUTRAL POLICY

1   OF ENFORCING THE DRUGS LAWS IN STOP AND FRISK, BUT MOTIVATED BY

2   A RACIAL ANIMUS OR A BELIEF THAT MEN OF COLOR WERE MORE LIKELY

3   PREDISPOSED TO COMMIT THESE TYPES OF OFFENSES, AND IT WAS FOUND

4   TO BE UNCONSTITUTIONAL.

5          SO YOU HAVE A TRADITIONAL LAW ENFORCEMENT DISCRETION

6   SITUATION THAT IS BEING SKEWED BY IMPROPER MOTIVES, AND I THINK

7   THAT'S WHAT WE'RE TALKING ABOUT HERE.

8          **THE COURT:**  I UNDERSTAND THAT DISTINCTION, BUT HERE

9   WE'RE TALKING ABOUT THE CHARACTER OF THE OFFENSE, NOT THE

10  OFFENDER, IN TERMS OF MANAGING.  FRANKLY, THE WHOLE MISDEMEANOR

11  PROJECT IS SILLY, BECAUSE MOST OF YOUR CLIENTS THAT GO THROUGH

12  AND GET THESE TIME-SERVED MISDEMEANORS END UP BACK HERE TWO

13  MONTHS LATER WITH A FELONY.  SO WE MIGHT AS WELL GIVE THEM THE

14  FELONY THE FIRST TIME, FRANKLY.  BUT THAT'S THE WAY THAT THE

15  GOVERNMENT OR THE PROSECUTION IS CHOOSING TO TACKLE THE

16  PROBLEM.

17         BUT THEN ON THE FLIP SIDE, I WILL HAVE TO LOOK AT

18  WHETHER OR NOT THERE IS NOW THIS FELONY PRACTICE AND OTHER

19  THINGS THAT ARE DISRUPTIVE OF A PLAN FOR DEALING WITH

20  INFRACTIONS, WHICH THE GOVERNMENT HAS A RIGHT TO CHARGE BUT NOT

21  ON A DISCRIMINATORY BASIS, OBVIOUSLY.

22         **MS. HAN:**  YOUR HONOR -- AND I APPRECIATE THE COURT'S

23  INQUIRY ON THIS VERY ISSUE, BUT I THINK THIS SORT OF GETS TO

24  THE POINT OF MS. AYALA-BELLO'S CLAIM IS A LITTLE BIT UNCLEAR ON

25  WHAT IS IT THAT THEY CLAIM THAT THIS ADDITIONAL DOCUMENTATION

13

1   SHOWS.

2          FROM THE ADDITIONAL MOTION THAT SHE SUBMITTED, IT WAS

3   A LITTLE BIT UNCLEAR.  YOU KNOW, THESE ARGUMENTS HAVE BEEN SORT

4   OF REFRAMED TODAY, BASED ON THE COURT'S BACK-AND-FORTH WITH

5   DEFENSE COUNSEL.  AND SO I THINK THAT IF, IN FACT, THIS

6   MOTION -- THEY WANT TO PURSUE THIS MOTION, THEY NEED TO FILE

7   SOMETHING THAT ACTUALLY EXPLAINS WHAT EXACTLY HER CLAIM IS,

8   BECAUSE IT WAS A LITTLE BIT UNCLEAR, ESPECIALLY FROM THIS BACK

9   AND FORTH THAT YOU HAVE HAD WITH COUNSEL.

10         **MS. HARTZLER:**  YOUR HONOR, I WOULD JUST RESPOND.  I

11  THINK THAT WE DID DO THAT.  I THINK WE DID THAT ON THE 26TH.

12  WE FILED THIS SPECIFICALLY SO THAT WE COULD CLARIFY EXACTLY THE

13  ARGUMENTS THAT WE'RE MAKING.  AND I UNDERSTAND THAT THE

14  GOVERNMENT BELIEVES THAT WE HAVEN'T CHANGED THEM.  WE BELIEVE

15  THAT WE HAVE, OR AT LEAST WE'VE CLARIFIED THEM.

16         I WANT TO JUST POINT THE COURT VERY SPECIFICALLY.  IF

17  THE COURT IS LOOKING TO THIS WHOLE ISSUE OF FELONIES AND IF CVB

18  COURT IS BEING USED TO PROSECUTE FELONIES, THERE ARE TWO THINGS

19  I WOULD POINT THE COURT TO LOOK AT.  IN OUR ORIGINAL MOTION IN

20  APRIL, WE FILED A VERY LARGE CHART.  AND AT THE VERY TOP OF

21  THAT CHART, WE HAD A WHOLE BUNCH OF CASES THAT WERE LABELED

22  FELONIES.  AND WE HAD THE CASE NUMBER IN CVB.  AND THE COURT

23  CAN LOOK AT THAT AND SEE THIS CASE OR THIS STATUTE THAT IS ONLY

24  A FELONY STATUTE WAS PROSECUTED THROUGH CVB COURT.

25         AND WE HAD THE SAME THING IN A CVB CHART THAT I

SEPTEMBER 16, 2019

26

14

1    SUBMITTED -- OR THAT MS. FISH SUBMITTED -- AS PART OF OUR MOST

2    RECENT MOTION.  SO IF THE COURT IS LOOKING FOR EXAMPLES, I

3    THINK THAT IS THE BEST PLACE IT CAN LOOK TO.

4            **THE COURT:**  YES.  I WILL GO BACK AND CONSIDER THAT.

5    I MEAN, MS. AYALA-BELLO AND MR. VELEZ, THEIR CLAIM IS THEY

6    SHOULD HAVE BEEN GIVEN A CITATION, AND THEY WOULD HAVE

7    DEFINITELY COME BACK AND ADDRESSED THIS IN CVB COURT SOME

8    MONTHS LATER.

9            THE LUDICROUSNESS OF THE PREMISE IS A PROBLEM, IN MY

10   MIND, BUT I UNDERSTAND THE ARGUMENT.  FOLKS WITHOUT STATUS AND

11   NO PLACE TO GO BUT BACK HOME ARE GOING TO DO JUST THAT.  AND

12   THE LAW DOES NOT ENTERTAIN IDLE ACTS, AND THAT IS WHAT COUNSEL

13   ARE SUGGESTING, IS THAT IN THESE IMMIGRATION-RELATED OFFENSES

14   THEY ARE SOMEHOW ENTITLED TO SOME SORT OF SPECIAL HANDLING.

15   AND I THINK THAT THAT IS THE REVERSE DISCRIMINATION THAT WOULD

16   BE AS UNTENABLE AS IF I ACCEPTED THE BASIC PREMISE.

17           **MS. HAN:**  I THINK, YOUR HONOR, I WOULD ONLY ADD TO

18   THAT THAT IN THE PARTICULAR CITING OF STATISTICS ABOUT FAILURES

19   TO APPEAR IN CVB VERSUS -- IN CVB, GENERALLY SPEAKING, IN THIS

20   CASE ALONE THERE HAS BEEN A DEFENDANT WHO FAILED TO APPEAR.

21   AND I THINK IT'S A LITTLE BIT SORT OF APPLES AND ORANGES, AND

22   INAPPROPRIATE AS AN ARGUMENT IN THIS CASE.

23           **THE COURT:**  THE WHOLE 25 PERCENT OF THE NO-SHOWS ON

24   THE 1325s THAT MR. BOURASSA FROM YOUR OFFICE WAS ARGUING FOR

25   A DIFFERENT PURPOSE EARLIER, PROVES THE POINT.

SEPTEMBER 16, 2019

27

15

1          **MS. HARTZLER:**  BUT, YOUR HONOR, I THINK I WOULD COME

2     BACK AND SAY 35 PERCENT OF PEOPLE DON'T SHOW UP IN CVB COURT.

3     SO HOW IS THAT FAILURE TO APPEAR RATE ANY LESS CONCERNING THAN

4     A 25 PERCENT RATE IN 1325 COURT?

5          **THE COURT:**  BECAUSE THEY ALL HAVE DRIVER'S LICENSES

6     AND REGISTRATIONS ON FILE, WHICH ALLOWS THEM TO BE TRACED, AND

7     WHERE THERE ARE MOVING VIOLATIONS, FINES AND FORFEITURES LEVIED

8     ON THEIR REGISTRATIONS AND THEIR DRIVER'S LICENSES.  THERE IS

9     RECOURSE THERE THAT DOESN'T APPEAR IN THE SCENARIO THAT WE ARE

10    TALKING ABOUT, BUT I WILL LOOK AT IT.  AND I WANT TO CHECK MY

11    MEMORY.

12         IT MAY BE YOU CAN CHARGE THE FELONY IF THERE IS AN

13    AGREEMENT FOR NO JAIL TIME.  THE MORE I THINK ABOUT IT, IT'S

14    BEEN A WHILE SINCE I LOOKED AT THE REGULATIONS.

15         ALL RIGHT.  SO THAT IS THE ESSENCE OF MOTION 77, WAS

16    THE DISPARATE TREATMENT.

17         AND THEN THERE IS A MOTION 75 ON THE NON-DELEGATION

18    DOCTRINE AND THE VAGARIES OF 1325(A)(1).  AND THEN, OF COURSE,

19    THE ELEMENTS INSTRUCTION WHICH, IN ALL LIKELIHOOD, HAS BEEN

20    SOLVED BY THE SUPERSEDING INFORMATION.

21         SO WHAT MORE DO WE WANT TO SAY ON THAT, MS. HARTZLER?

22         **MS. HARTZLER:**  YOUR HONOR, WE'LL SUBMIT ON THE REST

23    OF OUR MOTIONS.  I WOULD LIKE TO GO BACK AND LOOK AT THIS NEW

24    INFORMATION.  I CAN'T SAY FOR SURE WHETHER WE WOULD HAVE

25    OBJECTIONS TO THIS, BUT I WOULD LIKE TO LEAVE THAT UP TO

28

16

1  MS. FISH.  WE'LL SUBMIT ON THE REMAINDER OF THE MOTIONS.

2          **THE COURT:**  ALL RIGHT.  AND ANYTHING YOU WANT TO SAY

3  FURTHER ON THESE?  DID YOU ADDRESS THESE, AS WELL, MS. HAN?

4          **MS. HAN:**  YES, YOUR HONOR.  AS TO THE ARGUMENTS ABOUT

5  NON-DELEGATION AND VAGUENESS, WE RESPONDED IN DOCKET NUMBER 79.

6          **THE COURT:**  OKAY.  HERE IT IS.

7          WELL, THE VAGARIES OF THE ELEMENTS -- WELL, PART C OF

8  THE MOTION I'M GOING TO DENY AS MOOT, BECAUSE WE NOW HAVE A NEW

9  PLEADING WITH REGARD TO THE ELEMENTS OF THE OFFENSE, THAT

10  SPEAKS FOR ITSELF.

11          I DON'T AGREE WITH THE NON-DELEGATION THEORY NOR THE

12  VAGARIES OF 1325(A)(1), SO THOSE ARE BOTH DENIED.  THAT IS

13  MOTION 75 A, B, AND C.

14          I WILL TAKE 77 UNDER SUBMISSION AND WRITE A FURTHER

15  ORDER AFTER RECONSIDERING THE STATISTICS THAT ARE MENTIONED.

16          AND I DON'T REMEMBER THE APRIL PACKET, BUT THAT HAD

17  DEFENDANTS BY NAME, AS WELL AS THE CASE NUMBER?

18          **MS. HARTZLER:**  YES, IT DID.

19          **THE COURT:**  I WILL LOOK AT ALL OF THAT, AND THAT WILL

20  HELP RENDER A DECISION ON THAT.  SO MOTION 77 IS UNDER

21  SUBMISSION.

22          MEANTIME, AS TO THE CASE ITSELF, ARE WE READY TO SET

23  A NEW TRIAL DATE, OR SOMETHING ELSE --

24          **MS. HARTZLER:**  YES, WE ARE.

25          **THE COURT:**  -- ASSUMING I'M NOT CONVINCED AFTER MY

SEPTEMBER 16, 2019

29

17

1  FURTHER REVIEW OF THE MOTION?

2          **MS. HARTZLER:**  YES, YOUR HONOR.  WE ARE READY TO SET

3  A NEW TRIAL.

4          **THE COURT:**  WHEN CAN WE DO THAT?  HOW QUICKLY, SO TO

5  SPEAK?

6          **MS. HARTZLER:**  YOUR HONOR, MS. FISH ACTUALLY SAID

7  THAT SHE HAS A LOT OF TRIALS -- I THINK ABOUT TWO A WEEK --

8  BETWEEN NOW AND THE END OF OCTOBER.  SHE WOULD ASK FOR ANYTHING

9  AFTER MID NOVEMBER, IDEALLY.  IF THE COURT DOES SET IT EARLIER,

10 SHE SAID SHE WILL MAKE IT WORK.

11         **THE COURT:**  OKAY.  MR. RUTMAN, WHAT ABOUT YOUR

12 AVAILABILITY?

13         **MR. RUTMAN:**  I'M AVAILABLE AFTER -- ON OCTOBER 6TH I

14 AM SUPPOSED TO START A CIVIL TRIAL BEFORE JUDGE ANELLO THAT WAS

15 CONTINUED, AND THE WEEK BEFORE IS ROSH HASHANA.  SO ANYTHING

16 AFTER THE 11TH, WHICH IS A FRIDAY.  SO ANYTHING THE FOLLOWING

17 WEEK AND THEREAFTER, I AM PRETTY MUCH CLEAR.

18         **THE COURT:**  OKAY.  AND I AM GONE FOR TWO WEEKS.  SO

19 HOW NOVEMBER 19TH?

20         **MS. HARTZLER:**  THAT'S GREAT, YOUR HONOR.

21         **MR. RUTMAN:**  THAT'S FINE, YOUR HONOR.

22         **THE COURT:**  OH, WAIT A MINUTE.  HOLD ON.

23         **MR. RUTMAN:**  MAYBE NOT.

24         **THE COURT:**  HOW ABOUT NOVEMBER 22ND, JUST TO BE SURE?

25         **MS. HARTZLER:**  THAT WILL BE FINE.

SEPTEMBER 16, 2019

30

18

1    **MR. RUTMAN:**  THAT WILL BE FINE, YOUR HONOR.

2    **THE COURT:**  9:00.  ALL THE OTHER MOTIONS WILL BE PUT

3    OVER TO THAT TIME, UNLESS THERE IS SOMETHING THAT MUST BE

4    ADDRESSED CURRENTLY.  AND THAT WILL GIVE ME TIME TO ISSUE A

5    FURTHER DECISION AFTER REVIEWING ALL THE STATISTICS, AND THE

6    ARGUMENTS.  I THINK THE ISSUES ARE FAIRLY WELL-FRAMED FOR

7    PURPOSES OF RESOLUTION AT THIS POINT.

8        SO ANYTHING ELSE?

9    **MS. HARTZLER:**  NOT FROM MS. AYALA-BELLO, YOUR HONOR.

10   **MR. RUTMAN:**  NO, YOUR HONOR.

11   **MS. HAN:**  NO, YOUR HONOR.

12   **THE COURT:**  SO, MS. AYALA AND MR. VELEZ, YOU ARE

13   ORDERED TO RETURN HERE NOVEMBER 22ND AT 9:00 FOR TRIAL.  SHOULD

14   SOMETHING CHANGE IN THE SCHEME OF THINGS, YOU WILL BE ADVISED

15   THROUGH YOUR COUNSEL.  OKAY.  SO THANKS A LOT.

16   **MS. HARTZLER:**  THANK YOU, YOUR HONOR.

17   **MR. RUTMAN:**  THANK YOU, YOUR HONOR.

18   **DEFENDANT VELEZ:**  THANK YOU.

19

20

21

22

23

24

25   ///

SEPTEMBER 16, 2019

31

19

1        **THE COURT:**  YOU'RE WELCOME.

2   (PROCEEDINGS CONCLUDED AT 3:38 P.M.)

3                       CERTIFICATION

4        I HEREBY CERTIFY THAT I AM A DULY APPOINTED,
    QUALIFIED AND ACTING OFFICIAL COURT REPORTER FOR THE UNITED
5   STATES DISTRICT COURT; THAT THE FOREGOING IS A TRUE AND CORRECT
    TRANSCRIPT OF THE PROCEEDINGS HAD IN THE AFOREMENTIONED CAUSE
6   ON SEPTEMBER 16, 2019, THAT SAID TRANSCRIPT IS A TRUE AND
    CORRECT TRANSCRIPTION OF MY STENOGRAPHIC NOTES; AND THAT THE
7   FORMAT USED HEREIN COMPLIES WITH THE RULES AND REQUIREMENTS OF
    THE UNITED STATES JUDICIAL CONFERENCE.

8

9   DATED:    JANUARY 7, 2020, AT SAN DIEGO, CALIFORNIA.

10           S/N_____
             JEANNETTE N. HILL, OFFICIAL REPORTER, CSR NO. 11148
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SEPTEMBER 16, 2019

32

FILED

SEP 1 6 2019

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>    v.<br><br>EDUVIGES AYALA-BELLO (1),<br>WALTER GERMAN VELEZ-GONZALEZ (2),<br>LILIANA CATALINA FERNANDEZ-<br>                    FERNANDEZ (3),<br><br>        Defendants. | Case No. 19CR0735-AJB<br><br>I N F O R M A T I O N<br>**(Second Superseding)**<br><br>Title 8, U.S.C., Sec. 1325(a)(1) -<br>Improper Entry by an Alien<br>(Misdemeanor) |

The United States Attorney charges:

Count 1

On or about February 9, 2019, within the Southern District of California, defendant EDUVIGES AYALA-BELLO, being an alien, knowingly and intentionally attempted to enter the United States of America with the purpose, i.e., conscious desire, to enter the United States at a time and place other than as designated by immigration officers, and committed an over act, to wit, crossing the border from Mexico into the United States, that was a substantial step towards committing the offense, all in violation of Title 8, United States Code, Section 1325(a)(1), a misdemeanor.

Count 2

On or about February 9, 2019, within the Southern District of California, defendant WALTER GERMAN VELEZ-GONZALEZ, being an alien,

33

1    knowingly and intentionally attempted to enter the United States of
2    America with the purpose, i.e., conscious desire, to enter the United
3    States at a time and place other than as designated by immigration
4    officers, and committed an over act, to wit, crossing the border from
5    Mexico into the United States, that was a substantial step towards
6    committing the offense, all in violation of Title 8, United States Code,
7    Section 1325(a)(1), a misdemeanor.

8                                    Count 3

9        On or about February 9, 2019, within the Southern District of
10   California, defendant LILIANA CATALINA FERNANDEZ-FERNANDEZ, being an
11   alien, knowingly and intentionally attempted to enter the United States
12   of America with the purpose, i.e., conscious desire, to enter the United
13   States at a time and place other than as designated by immigration
14   officers, and committed an over act, to wit, crossing the border from
15   Mexico into the United States, that was a substantial step towards
16   committing the offense, all in violation of Title 8, United States Code,
17   Section 1325(a)(1), a misdemeanor.

18                                        ROBERT S. BREWER, JR.
19                                        United States Attorney

20

21                                        CAROLINE P. HAN
22                                        Assistant U.S. Attorney

23

24

25

26

27

28

34

KEITH H. RUTMAN, CSB #144175
Attorney at Law
501 West Broadway, Ste. 1650
San Diego, California 92101-3541
Telephone: (619) 237-9072
Facsimile: (760) 454-4372
email: krutman@krutmanlaw.com

Attorney for Defendant
WALTER GERMAN VELEZ-GONZALEZ

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA
(Hon. Anthony J. Battaglia)

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 19-CR-735-AJB |
| v. | JOINDER IN CO-DEFENDANT'S PRETRIAL MOTIONS |
| WALTER VELEZ-GONZALEZ, et. al. | |
| Defendants. | DATE: 9/16/19 @ 3:00 pm COURTROOM 4A |

Defendant WALTER GERMAN VELEZ-GONZALEZ, by and through his attorney KEITH H. RUTMAN, hereby joins in the pretrial motions to dismiss filed by his co-defendant EDUVIGES AYALA-BELLO (Doc. Nos. 75, 76 & 77).

Defendant VELEZ-GONZALEZ has standing to join in the motions by virtue of the provisions of the Due Process Clause of the Fifth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and any other applicable law cited in the motions themselves.

Respectfully Submitted,

Dated: August 28, 2019

s/ Keith H. Rutman
KEITH H. RUTMAN
Attorney for Defendant
WALTER GERMAN VELEZ-GONZALEZ
Email: krutman@krutmanlaw.com

35

1  **REBECCA C. FISH**
   California State Bar No. 305183
2  **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5030
   Telephone: (619) 234-8467
4  Facsimile: (619) 687-2666
   Becky_Fish@fd.org
5
   Attorneys for Defendant
6  EDUVIGES AYALA-BELLO

7                    UNITED STATES DISTRICT COURT

8                  SOUTHERN DISTRICT OF CALIFORNIA

9

10

11 | UNITED STATES OF AMERICA, | CASE NO.:   19-cr-0735-AJB |

   Plaintiff,

12                                Hon. Karen S. Crawford
       v.                         Courtroom 4A
13                                Date: September 16, 2019
                                  Time: 3:00 p.m.
14 EDUVIGES AYALA-BELLO,
                                  **Ms. Ayala-Bello's Notice of Motion and**
15                Defendant.      **Motion to Dismiss the Information Due**
                                  **to the Disparate Treatment She Has**
16                                **Received in the "Streamline" System**

17 TO:   ROBERT BREWER, UNITED STATES ATTORNEY, AND
         CAROLYN HAN, ASSISTANT UNITED STATES ATTORNEY:
18

19      PLEASE TAKE NOTICE that on September 16, 2019, at 3:00 p.m., or as

20 soon thereafter as counsel may be heard, Defendant, Eduviges Ayala-Bello, through

21 her attorneys, Rebecca C. Fish and Federal Defenders of San Diego, Inc., will ask

22 this Court to enter an order granting the following motion.

23

24

25

26

27

28

                                        1

19-cr-0735-AJB

**36**

<u>**MOTION**</u>

Defendant, Eduviges Ayala-Bello, through her attorneys, Rebecca C. Fish and Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, moves this Court for an order to dismiss the information due to the disparate treatment she has received in the "streamline" system.

This motion is based upon the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at or before the hearing on these motions.

Respectfully submitted,

Dated: August 22, 2019          *s/ Rebecca C. Fish*
                                Federal Defenders of San Diego, Inc.
                                Attorneys for Defendant
                                EDUVIGES AYALA-BELLO
                                Email: Becky_Fish@fd.org

37

# <u>CERTIFICATE OF SERVICE</u>

Counsel for the Defendant certifies that the foregoing pleading has been electronically served on the following parties by virtue of their registration with the CM/ECF system:

Carolyn Han,
Assistant U.S. Attorney

Respectfully submitted,

Dated:  August 26, 2019          *s/ Rebecca C. Fish*
                                 Federal Defenders of San Diego, Inc.
                                 Attorneys for Defendant
                                 EDUVIGES AYALA-BELLO
                                 Email:  Becky_Fish@fd.org

38

**REBECCA C. FISH**
California State Bar No. 305183
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Becky_Fish@fd.org

Attorneys for Defendant
EDUVIGES AYALA-BELLO

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>     v.<br><br>EDUVIGES AYALA-BELLO,<br><br>              Defendant. | CASE NO.:  19-cr-0735-AJB<br><br>Hon. Karen S. Crawford<br>Courtroom 4A<br>Date: September 16, 2019<br>Time: 3:00 p.m.<br><br>**Memorandum of Points and Authorities in Support of Ms. Ayala-Bello's Motion to Dismiss the Information Due to the Disparate Treatment She Has Received in the "Streamline" System** |

## I.      Statement of Facts

On Saturday February 9, 2019, before 2:00 p.m., a Border Patrol agent arrested Ms. Ayala in the Campo, California area. Border Patrol held Ms. Ayala at the station for the remainder of the weekend. Dkt. Nos. 1, 2, 3. Conditions at Border Patrol stations along the U.S./Mexico border have been described as "inhumane and punitive"—arrestees sleep on a concrete floor in very cold temperatures and receive little food or water. *See* Exs. A, B, and C. One station held 900 people even though its maximum capacity was 125; detainees were frequently forced to wear soiled clothing and stand on toilets in order to have enough air to breathe. *See* Ex. D. In the last year, at least seven children have died after being held in such stations. *See* Ex. E. Ms. Ayala suffered through similar conditions.

39

On the morning of Monday, February 11, 2019, pursuant to the procedures of the Southern District of California's "Streamline Court," Ms. Ayala met with her appointed counsel in a converted garage used for initial attorney-client meetings. During this meeting, Ms. Ayala was shackled.

That afternoon, Ms. Ayala had her initial appearance and arraignment. The Government moved to detain Mr. Sanchez on the basis that her undocumented status meant that she had no ties to the community and was thus a flight risk. *See* Dkt. No. 3. The Magistrate Judge denied this motion and set a bond of $1,000. *See* Dkt. Nos. 3, 7. After a modification of the conditions of that bond, Ms. Ayala was released from custody on bond on February 19, 2019—10 days after her arrest. *See* Dkt. Nos. 11, 12.

Ms. Ayala previously, on March 25, 2019, moved to dismiss the charge against her because the system under which she was prosecuted violated her rights to equal protection and due process. *See* Dkt. No. 34 at 1–8. However, since that time, through continued investigation, defense counsel has been able to uncover additional facts relevant to the motion, including important comparative statistics. *See* Ex. Nos. A–O. As such, Ms. Ayala re-files her motion to dismiss here.

## II.   Argument

### A.   The Court should dismiss the charge because the government's prosecution of Ms. Ayala violates equal protection.

Federal law contains three classes of misdemeanors. A Class A misdemeanor is an offense punishable by "one year or less but more than six months." 18 U.S.C. § 3559(a)(6). A Class B misdemeanor is punishable by "six months or less but more than thirty days." 18 U.S.C. § 3559(a)(7). And a Class C misdemeanor is punishable by "thirty days or less but more than five days." 18 U.S.C. § 3559(a)(8). Federal law categorizes Class B and Class C misdemeanors as "petty offenses." 18 U.S.C. § 19. So illegal entry under § 1325, which is a Class B misdemeanor, is considered a "petty offense."

Every year, the Government prosecutes thousands of petty offenses in the Southern District of California through the Central Violations Bureau ("CVB"). According to its website, offenses prosecuted through CVB include violations of "certain federal laws" as well as violations of certain state laws that occur on federal property under the Assimilative Crimes Act at 18 U.S.C. § 13. *See* Ex. F. Offenses that appear in the Code of Federal Regulations that have a maximum sentence of six months or more are also frequently prosecuted through CVB. *See* Ex. G.

But more serious crimes—including some felonies—are also prosecuted in CVB court. These crimes include unlawful possession of a firearm (18 U.S.C. § 922(g)), assault on a federal officer (18 U.S.C. § 111), identity theft (18 U.S.C. § 1028), interstate domestic violence (18 U.S.C. § 2262), theft of government property (18 U.S.C. § 641), and possession of weapons or firearms in a federal facility (18 U.S.C. § 930). *See* Ex.t H. In fact, between July 2018 and July 2019— during the same time period that Streamline has been in effect—the Government has charged at least 383 defendants in CVB court with Title 18 and Title 21 offenses that are class B misdemeanors or higher. *See* Ex. H.[1]

Even though these 383 defendants prosecuted in CVB court were charged with equally serious (or more serious) crimes than § 1325, none were held in criminal custody. Rather, at the time of apprehension, everyone was released with a citation. *See* Ex. I. Occasionally, a person may be briefly handcuffed or held for questioning by law enforcement officials for several hours. *See* Ex. I at 1-2. But even in these rare cases, the person is released the same day. *See* Ex. I at 2.

---

[1] Hundreds of other defendants were charged with offenses that would be a felony under California law and so are punishable as a felony under the Assimiliative Crimes Act. *See* 18 U.S.C. § 13 (stating that a person who "would be punishable" under state law "shall be guilty of a like offense and subject to a like punishment" under the Assimiliative Crimes Act).

3                                                    19-cr-0 -AJ

Several weeks later, a defendant in CVB court will receive a notice to appear in the mail instructing him or her to appear at one of the upcoming misdemeanor courts. *See* Ex. I at 2. This court proceeding does not take place in a courtroom and is not presided over by a judge. *See* Ex. I at 2. Rather, it is held in one of the jury rooms of the federal courthouse, where the defendants freely come and go throughout the morning. *See* Ex. I at 3. Each defendant will meet with his or her defense attorney, after which the defense attorney will attempt to negotiate a disposition with the prosecutor. *See* Ex. I at 2-3. At a later date, the magistrate judge will then review and approves this disposition. See Ex. I at 3.

Nearly all the offenses in CVB court will eventually be dismissed or resolved through a fine or a deferred prosecution agreement. For instance, of the 383 cases charged under Titles 18 and 21 of the United States Code in CVB court last year, 98.6 percent were dismissed and 1.4 percent were resolved through forfeiture of collateral. *See* Ex. H. Not a single one resulted in a conviction.

But the Government does not place individuals accused of § 1325 in CVB court. They are not released into the community on the day of their arrest. They are not allowed to remain out of custody to await the written notice of their charges. They are always shackled when meeting with their attorneys (and sometimes in court). They are not offered any deferred prosecution options. And while 100% of defendants convicted of § 1325 are punished with at least *some* custodial time, none of these 383 CVB defendants last year received *any* jail time.

These disparities do not exist because of the level of severity of the offense. The 383 Title 18 and 21 crimes the Government charged in CVB court last year carried penalties *as* serious or *more* serious than § 1325. Nor do these disparities exist because § 1325 defendants are less likely to show up for court. In the year since Streamline court began on July 9, 2018, Pretrial Services and various magistrate judges in the Southern District of California have reported that 79 of the 299 § 1325 defendants released on bond into the community have failed to

appear for court—an in absentia rate of 26.4 percent. But of the 383 CVB defendants charged with federal offenses last year, 134 did not show up for court—an in absentia rate of 35 percent. *See* Ex. H. In other words, § 1325 defendants are nearly 8.6 percent *more* likely to show up for court when released on bond than CVB defendants.[2]

In sum, by prosecuting § 1325 defendants in "regular court," the Government does not permit them to take advantage of the substantial benefits of CVB court, even though § 1325 defendants are charged with a similar or less serious offense than defendants charged in CVB court and pose less risk of flight. Accordingly, the Government discriminates against § 1325 defendants as compared to other individuals charged with petty offenses in the Southern District of California.

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. This guarantee of equal protection also extends to the federal government. *See United States v. Windsor*, 570 U.S. 744, 774 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws."). While the government retains broad discretion to classify individuals where it is reasonable to do so, classifications based on alienage, national origin, and race are

---

[2] Nor are Border Patrol officers precluded from issuing CVB citations—for instance, one citation shows that a person in the pedestrian lane at the San Ysidro port of entry was prosecuted for being a possession of firearm by a prohibited possessor under 18 U.S.C. § 922—an offense carrying a potential *life sentence* depending on the accused's priors. *See* Ex. O. Another person prosecuted in CVB court was apprehended at a port of entry while possessing a full syringe of black tar heroin. *See* Ex. O. So Border Patrol officers can and do issue CVB citations for serious offenses at or near the border.

"inherently suspect and subject to close judicial scrutiny." *Graham v. Richardson*, 403 U.S. 365, 371-72 (1971). This is because "[a]liens as a class are a prime example of a discrete and insular minority for whom such heightened judicial solicitude is appropriate." *Id.* at 372 (quotations and citation omitted). To survive strict scrutiny, disparate treatment on the basis of alienage, national origin, or race must be compelling and narrowly tailored to achieve its objective, and there can be no less discriminatory means of achieving the goal. *See, e.g., Grutter v. Bollinger*, 539 U.S. 306, 326 (2003).

Here, that high standard is not met. Defendants in the Southern District of California who are charged with petty offenses *other than* § 1325 are not held in pre-trial custody, are not subject to shackling, are not limited in their ability to consult counsel, are not prevented from seeking alternative dispositions, and are not punished by incarceration. Meanwhile, Mr. Sanchez and other defendants charged with § 1325 are, by definition, set apart on the basis of their alienage,[3] as well as by their national origin and race. In other words, by making § 1325 defendants the only petty offenders subject to pretrial incarceration and shackling, convictions, and jail sentences, the Government is not simply prosecuting illegal entrants for a crime—it is punishing them more severely than similarly-situated defendants on the basis of their alienage, national origin, and race.

Even if § 1325's *facial* elements did not trigger strict scrutiny, the Supreme Court has held that facially-neutral government action motivated by "invidious

---

[3] The Government may argue that its charging practices do not discriminate on the basis of alienage but rather on the basis that § 1325 defendants are undocumented, which is not a protected class and thus not subject to strict scrutiny. *See, e.g.*, But this argument fails because a defendant may be convicted under § 1325 even though he has legal status. *See, e.g., United States v. Sanchez*, 258 F. Supp. 2d 650, 662 (S.D. Tex. 2003) (holding that a lawful permanent resident may be convicted of § 1325); *United States v. Figueroa–Corrales,* 845 F.2d 329 (9th Cir. 1988) (unpublished); *Gunaydin v. United States Immigration and Naturalization Serv.,* 742 F.2d 776 (3d Cir. 1984).

19-cr-0735-AJB

racial discrimination" violates equal protection. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). And within the past year, numerous courts have recognized that comments made by President Trump both before and after he took office create a plausible equal protection violation on the basis of discrimination against Mexicans and Central Americans. For example, courts have relied on the following statements to find animus on the basis of race and national origin:

- In discussing protections for nationals from Latin America (including El Salvador), the president asked, "'Why are we having all these people from shithole countries come here?'" and expressed a preference for immigrants from countries like Norway, which is overwhelmingly white;[4]

- The president "spoke publicly about the need to protect 'the West' and 'civilization' from forces from 'the South or the East'";[5]

- The president has described Mexicans and Central Americans as "gang members, killers, and rapists"; "'criminals' and 'thugs'"; "'bad hombres'"; and "true animals";[6]

- The president stated that Judge Gonzalo Curiel could not be fair in presiding over a lawsuit because he was "'of Mexican heritage,' 'Hispanic,' and a member of a Latino Lawyers' Association";[7]

- Referring to an article about a recent crime wave on Long Island, the president said "'They come from Central America. They're tougher than any people you've ever   met . . . . They're killing and

---

[4] *Ramos v. Nielson*, 321 F. Supp. 3d 1083, 1099-100 (N.D. Cal. 2018); *S.A. v. Trump*, 363 F. Supp. 3d 1048, 1060-61 (N.D. Cal. 2018); *CASA de Maryland, Inc. v. Trump*, 355 F. Supp. 3d 307, 315 (D. Md. 2018).

[5] *CASA de Maryland*, 355 F. Supp. 3d at 315.

[6] *S.A.*, 363 F. Supp. 3d at 1059; *CASA de Maryland*, 355 F. Supp. 3d at 325; *Centro Presente v. United States Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 401 (D. Mass. 2018); *Batalla Vidal v. Nielsen*, 291 F. Supp. 3d 260, 276-77 (E.D.N.Y. 2018).

[7] *CASA de Maryland*, 355 F. Supp. 3d at 315; *S.A.*, 363 F. Supp. 3d at 1059; *Batalla Vidal*, 291 F. Supp. 3d at 276–77.

MEMORANDUM

19-cr-0735-AJB

45

raping everybody out there'";[8]

- Referring to immigrants, the president stated, "'You know they're bad. They're pouring in from El Salvador, Guatemala, Honduras, Mexico, all over. They're just pouring into our country!'";[9]

- In May 2018 (immediately before the zero-tolerance policy began), the president said of people crossing the Mexican border into the United States: 'You wouldn't believe how bad these people are. These aren't people. These are animals.'"[10]

Citing such statements, one court observed: "One could hardly find more direct evidence of discriminatory intent towards Latino immigrants." *CASA de Maryland*, 355 F. Supp. 3d at 325.

Here, the abrupt decision in April 2018 to begin prosecuting § 1325 misdemeanors in the Southern District of California at record levels almost certainly originated from this hostility. *See* Exs. L, M, N. And even though local prosecutors may have had no intent to discriminate on the basis of race or national origin, "their actions may violate the equal protection guarantee if President Trump's alleged animus influenced or manipulated their decisionmaking process." *Ramos*, 321 F. Supp. 3d at 1123. *See also CASA de Maryland*, 355 F. Supp. 3d at 325 (finding that the president's racial animus against El Salvadorans could be imputed to a subordinate because "[a]n action is not cured of discriminatory taint because it is taken by an unprejudiced decision-maker who is manipulated or controlled by another who is motivated by discriminatory intent"); *Centro Presente v. United States Dep't of Homeland Sec.*, 332 F. Supp. 3d 393, 415 (D. Mass. 2018) (ascribing the president's "anti-Latino animus" to those "involved in the decision-making process"). So even assuming that no local prosecutors were

---

[8] *S.A.*, 363 F. Supp. 3d at 1059; *Centro Presente*, 332 F. Supp. 3d at 401.
[9] *S.A.*, 363 F. Supp. 3d at 1060.
[10] *S.A.*, 363 F. Supp. 3d at 1061.

1    motivated by race or national origin, President Trump's demonstrated animus

2    towards people from Mexico and Central America requires strict scrutiny.[11] And

3    because the government cannot show that its decision to prosecute Mr. Sanchez in

4    regular court, rather than CVB court, satisfies strict scrutiny, the Court should

5    dismiss the indictment.

6        **B.    The Court should dismiss the charge because the government's
7            prosecution of Ms. Ayala violated principles of selective
             prosecution and selective enforcement.**
8
         Alternatively, the Court could also adjudicate Ms. Ayala's equal protection
9
    challenge through the legal framework of a selective prosecution or selective
10
    enforcement claim. *See United States v. Armstrong*, 517 U.S. 456, 464–65 (1996)
11
    (grounding selective prosecution claims in "the equal protection component of the
12
    Due Process Clause of the Fifth Amendment"). Although § 1325 defendants and
13
    CVB defendants are both technically being "prosecuted" for a crime, courts may
14
    consider whether the government is relying on impermissible grounds to
15
    prosecute similarly-situated defendants in different systems. *See, e.g.*, *United*
16
    *States v. Sellers*, 906 F.3d 848, 853 (9th Cir. 2018) (stating that "the
17
    demographics of those prosecuted in state and federal courts for the same crime"
18
    may "evince differential treatment of similarly situated individuals") (citing
19
    *Armstrong*, 517 U.S. at 466–67, 470); .
20
         "To establish a claim of selective prosecution, a defendant must show both
21
    discriminatory effect and discriminatory purpose." *Id*. at 852. Courts apply a
22

23

24        _____
         [11] Even if strict scrutiny did not apply, the Ninth Circuit has held that a
25    "dogged animus" against a disfavored group cannot satisfy rational-basis review
      because "such animus cannot constitute a legitimate state interest." *Arizona*
26    *Dream Act Coal.*, 855 F.3d at 970. *See also Romer v. Evans*, 517 U.S. 620, 634
      (1996) (holding that government action cannot survive rational-basis review
27    where there exists "the inevitable inference that the disadvantage imposed is born
      of animosity toward the class of persons affected").
28

47

1  "rigorous standard" to such claims because "[p]rosecutors occupy a special

2  province of the executive branch and have broad discretion to enforce our nation's

3  laws." *Id.* at 853 (quotations omitted). But a prosecutor's discretion is still

4  "subject to constitutional constraints," including equal protection. *United States v.*

5  *Batchelder,* 442 U.S. 114, 125 (1979). So prosecutorial decisions may not be

6  based on "an unjustifiable standard such as race, religion, or other arbitrary

7  classification." *Oyler v. Boles,* 368 U.S. 448, 456 (1962). *See also Freeman v.*

8  *City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995) (adjudicating a selective

9  prosecution claim on the basis of national origin). Thus, a defendant can succeed

10  on a selective prosecution claim by showing that the administration of a criminal

11  law is "directed so exclusively against a particular class of persons ... with a mind

12  so unequal and oppressive" that the system of prosecution amounts to "a practical

13  denial" of equal protection of the law. *Yick Wo v. Hopkins,* 118 U.S. 356, 373

14  (1886).

15       Here, the government's disparate treatment of § 1325 defendants has a

16  "discriminatory effect." As explained above, the U.S. Attorney's office in the

17  Southern District of California prosecutes people who are of a different alienage,

18  national origin, and race in a separate system than "similarly situated individuals"

19  charged with equivalent crimes. Because of its decision to file criminal

20  complaints in some cases and CVB citations in other cases, one set of defendants

21  is not arrested, does not serve jail time, and rarely ends up with a conviction,

22  while the other does. As explained above, this disparate treatment also has a

23  discriminatory purpose, given President Trump's history of disparaging

24  comments about immigrants and people from Mexico and Central America. *See*

25  Ex. L; Section I.A.[12] So the government's policy of prosecuting everyone *except*

26

27       [12] Arguably, Ms. Ayala need not even show a discriminatory purpose
28  because § 1325, on its face, has an element of alienage, which is a protected class
    subject to strict scrutiny. *See Wayte v. United States*, 470 U.S. 598, 610 n.10

48

1   § 1325 defendants in CVB court violates equal protection under the doctrine of

2   selective prosecution.

3         Alternatively, this policy violates equal protection under the doctrine of

4   selective enforcement. To show selective enforcement, a party is generally

5   required to show that law enforcement officers are enforcing an "unconstitutional

6   policy" by "extrapolating from a series of enforcement actions." *Hoye v. City of*

7   *Oakland*, 653 F.3d 835, 855 (9th Cir. 2011). *See also Thomas v. County of Los*

8   *Angeles*, 978 F.2d 504, 509 (9th Cir. 1993) (selective enforcement requires the

9   showing of a "policy, plan, or a pervasive pattern"). But because law enforcement

10  officers do not enjoy the "same presumption of regularity and deference" as

11  prosecutors, a claim of selective enforcement need not satisfy "as rigorous a

12  standard" as a claim of selective prosecution. *Sellers*, 906 F.3d at 853.

13        Here, there is unquestionably a "policy, plan, or a pervasive pattern" of

14  federal law enforcement officers in the Southern District of California treating

15  petty offenders differently based on their alienage, national origin, and race.

16  Individuals who commit § 1325 are arrested, detained in horrific conditions,

17  offered no alternative disposition, and sentenced to jail time. But individuals who

18  commit any federal petty offense *other* than § 1325 are released, sent a citation,

19  told to show up to "traffic court," usually offered a fine or other alternative

20  disposition, and rarely sentenced to jail. For these reasons, Ms. Sanchez's arrest,

21  prosecution, and conviction violated the doctrines of selective enforcement and

22  selective prosecution.

23  **C.    The Court should dismiss the charge because the government's**
24  **prosecution of Ms. Ayala violates procedural and substantive due**
25  **process.**

26  The Due Process Clause of the Fifth Amendment also guarantees that no

27

28  (1985) ("A showing of discriminatory intent is not necessary when the equal
    protection claim is based on an overtly discriminatory classification.").

person shall be "deprived of life, liberty, or property, without due process of law."
U.S. CONST. amend. V. This Clause protects individuals in two ways. Substantive
due process "prevents the government from engaging in conduct that shocks the
conscience" or "interferes with rights implicit in the concept of ordered liberty."
*United States v. Salerno*, 481 U.S. 739, 746 (1987) (quotations and citations
omitted). But when government action survives substantive due process scrutiny,
it must still be implemented in a fair manner under the doctrine of procedural due
process. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). To determine whether
governmental action satisfies procedural due process, courts employ a three-factor
test that weighs (1) the interest at stake for the individual, (2) the risk of erroneous
deprivation of such interest and the probable value of safeguards, and (3) the costs
and administrative burden on the Government. *Id.* at 335.

Streamline court survives neither analysis. First, substantive due process
has been violated because it "shocks the conscience" for the Government to
blatantly deprive § 1325 defendants of the substantial benefits of CVB court while
extending those benefits to defendants charged with similar or *more* serious
crimes who have a similar or *greater* risk of flight.

But even if this deprivation survived substantive due process, it could not
survive procedural due process under the *Mathews v. Eldridge* factors. First, the
interest at stake for the individual is substantial, as defendants charged with
§ 1325 face a significant loss of liberty, the traumatizing experience of being held
in custody in substandard conditions, and an overwhelmingly greater chance of
being convicted of an offense. Second, there is no question that charging § 1325
defendants in CVB court would almost entirely alleviate the risk that they would
be held in custody, subject to horrendous conditions, and convicted of an offense.
Finally, the costs and administrative burden on the Government are minimal, as
nothing suggests that absorbing Streamline defendants into CVB proceedings
would be problematic, or that there would be a greater than average risk of

50

absconding. And if anything, placing § 1325 defendants in CVB court would greatly *lessen* the burden on the Government to provide housing, food, and transportation during the criminal proceedings. Thus, the Government's discriminatory treatment violates both substantive and procedural due process under the *Mathews v. Eldridge* factors.

## III. Conclusion

The Court should dismiss the charge against Ms. Ayala because of the discriminatory manner in which she has been prosecuted. To the extent the Court must resolve further questions of fact, the Court should hold an evidentiary hearing and the responsible government officers should be called to testify.

Respectfully submitted,

Dated:  August 22, 2019          *s/ Rebecca C. Fish*
                                Federal Defenders of San Diego, Inc.
                                Attorneys for Defendant
                                EDUVIGES AYALA-BELLO
                                Email:  Becky_Fish@fd.org

# Index of Exhibits

*19-CR-0735-AJB  United States v. Ayala-Bello*

Page

Ex. A — June 10, 2019, KFI FM Article re: Border Patrol Station Crowding ............. 1

Ex. B — July 11, 2019, Statement of Senator Feinstein re: Inhumane Conditions ...... 5

Ex. C — 2016 American Immigration Council Special Report .................................... 9

Ex. D — May 31, 2019, CNN Report re: Border Facility Conditions ........................ 26

Ex. E — May 29, 2019, NBC News Report re: Children Dying in Custody ............... 31

Ex. F — CVB Website ............................................................................................ 42

Ex. G — October 2018 CVB Calendar ................................................................... 46

Ex. H — 2018–2019 CVB Chart ............................................................................ 63

Ex. I — Declaration of Lauren Cusitello .................................................................. 73

Ex. J — Declarations of Federal Defender Attorneys ............................................... 78

Ex. K — TRAC Appearance Report ....................................................................... 85

Ex. L — April 6, 2018, Attorney General's Zero Tolerance Memorandum ............... 96

Ex. M — June 2018 Migration Policy Institute Report re: Numbers at Border .......... 98

Ex. N — 2016–2018 Southern District of California Case Statistics ....................... 104

Ex. O — September 4, 2018, § 922 Citation ........................................................ 106

52

A



Don't miss out on breaking news. KFI's Stimuletter is here to help. Sign up today!     F

For the best experience on kfiam640.iheart.com, we recommend downloading an alternate browser.   **More info**

LOCAL NEWS

# Border Patrol Stations in Southern California Are Maxed Out

*posted by Steve Gr egory @sevengr egory -  Jun 10, 2019*

  930

Facilities built to hold around 125 for a few hours are being used to house more than 170 migrants for weeks, without showers. A few days ago I was sent pictures from inside a Southern California border station, from the vantage point of surveillance camera monitors. There was an identifying code on the top of the screen that told me which station the pictures were taken. To protect the identity of the source I cropped out the identifying features.

The anonymous source, who identifies as an on-duty border agent, wrote in an email that the pictures show the crowded conditions. You see people wrapped in silver Mylar-type space blankets and are pushed up against one another - about every inch of floor space is taken. Some men are even leaned up against a wall. In one picture you see a man appearing to openly urinate in a toilet.

54



In these exclusive pictures you can see a man with a very long, skinny beard walking from the left. I was told by the source that fights often break out between migrants from Latin America and those from the Middle East, so the men are separated and given their own room because of ethnicity. And, because the numbers of Middle Easterners vary, as few as 4 or 5 men could be put in a large room by themselves to prevent violence.



At least 3 charter flights a week are coming from Texas to San Diego filled with illegal immigrants who are then bussed to border stations all around California for initial processing, then bussed back to a main detention center in San Diego until they are either released or appear in court.

Each charter flight costs approximately $6,000 and the flights will continue until pressure is taken off other

55

patrol stations in the Texas Rio Grande Valley sector. Just last month surveillance video captured around 1,000 illegal immigrants cross illegally into Texas through an opening in a fence. In May alone more than 130,000 illegal immigrants were detained at the Texas border.

You may recall months ago I interviewed 2 other unidentified agents from the San Diego sector who also described the conditions as medically dangerous. There have been cases of scabies, lice, flu and even STD's.



Those unidentified agents told me the average menu for detainees is a bean burrito for breakfast, one for lunch and one for dinner. Sometimes, as a snack they are fed crackers and juice. The agents said there are numerous cases of constipation and dehydration.

Listen to my feature for Wake Up Call:

 930

56

Case: 19-50366   06/08/2020   ID: 11715045   DktEntry: 9   Page 60 of 235

B

57

Feinstein Speaks on Inhumane Conditions at Border Patrol Facilities - Press Releases - United States Senator for California

Case 3:19-cv-00735-AJB  Document 7-2  Filed 08/26/19  PageID.261  Page 7 of 108

## PRESS RELEASES

Home / News Room / Press Releases

# Feinstein Speaks on Inhumane Conditions at Border Patrol Facilities

Jul 11 2019

*Washington*—Senate Judiciary Committee Ranking Member Dianne Feinstein (D-Calif.) today spoke about a recent Department of Homeland Security inspector general (IG) report that highlighted inhumane conditions in several Border Patrol facilities.

**"Last week, we received a report from the Department of Homeland Security IG that validates what we've heard in recent days. The IG found Border Patrol facilities packed beyond capacity. Children have nowhere to sleep, their meals are inadequate and their medical care is insufficient.**

**I know the Republican side of this committee is going tomorrow to the border and I thank you for that. I thank you for the invitation. We're going to try and put something together on our side.**

**My staff recently, though, I'm just going to use this as an example, visited a couple of Border Patrol stations in California. At one, El Centro, 304 people were crammed into space with a maximum [capacity] of 191 and there was only one outdoor shower for everyone and children and adults are packed into unsanitary cells.**

58

Feinstein Speaks on Inhumane Conditions at Border Patrol Facilities - Press Releases - United States Senator for California

Case 3:19-cv-00735-AJB Document 7-2 Filed 08/26/19 PageID.261 Page 8 of 108

Yesterday, I met with the president-elect of the American Academy of Pediatrics, Dr. Sally Goza, who recently visited children in detention at the border in McAllen and Donna, Texas. What she described was horrific: children just packed in cages. It's interesting, she said instead of being loud and unruly, all she heard was silence and the crinkling of Mylar blankets. All she saw were bloodshot eyes and blank stares.

A ten-year old boy separated from his father was inconsolable. His father had given him a note and said, "Whatever you do, don't lose it. Here's a person and here's a number. When you get out you call that person and that number." Guess what? The child lost the note. Ten-years-old.

Dr. Goza gave me photos, which I showed you, that she took of sad drawings made by children. I think most of us have seen them and can figure out the starkness of the story they tell. And the story they tell really of conditions that are inhumane and should spark outrage and everyone one of us in particular. So I think we've got to ask ourselves: how can we take better care of these children?

The proposals being made [by the administration] do not improve the care of children at our border, I'm told. The [administration's] legislative ideas focus on dismantling the few humanitarian protections we have in place while the ultimate goal is to frighten families from fleeing to our country."

### ###

## RELATED LINKS

*Press Releases*

*Commentary*

*Official Photo*

59

Feinstein Speaks on Inhumane Conditions at Border Patrol Facilities - Press Releases - United States Senator for California

Case 3:19-cr-00735-AJB   Document 7-2   Filed 08/26/19   PageID.262   Page 9 of 108

*Video Library*

---

 Select Language | ▼  Home | Privacy Policy | Terms of Use

60

C

61

# DETAINED BEYOND THE LIMIT

## Prolonged Confinement by U.S. Customs and Border Protection along the Southwest Border



By Guillermo Cantor, Ph.D.



American Immigration Council

SPECIAL REPORT | AUGUST 2016

62

## About the Cover

The cover photo is among the video stills submitted as exhibits in litigation filed against Border Patrol by the American Immigration Council, the National Immigration Law Center, the ACLU of Arizona, the Lawyers' Committee for Civil Rights of the San Francisco Bay Area, and Morrison & Foerster LLP. It depicts individuals wrapped in Mylar sheets sleeping on a concrete floor and benches in a cell so crowded there is no room to move around. This is a sample of conditions in Border Patrol's "short-term" detention facilities in the Tucson Sector. This and the other photos were released to the public on August 18, 2016.

## About the Author

Guillermo Cantor, Ph.D., is the Deputy Director of Research at the American Immigration Council, where he leads the Council's research efforts and manages the research team. He has authored numerous publications on immigration policy and immigrant integration and regularly appears in English and Spanish-language media. He also currently teaches sociology of migration at Georgetown University. Cantor holds a Ph.D. in Sociology from the University of Maryland, College Park.

## About the American Immigration Council

The American Immigration Council's policy mission is to shape a rational conversation on immigration and immigrant integration. Through its research and analysis, the American Immigration Council provides policymakers, the media, and the general public with accurate information about the role of immigrants and immigration policy in U.S. society. We are a non-partisan organization that neither supports nor opposes any political party or candidate for office.

Visit our website at _www.AmericanImmigrationCouncil.org_ and our blog at _www. ImmigrationImpact.com_.

63

**CONTENTS**

**1**   Introduction

**3**   Border Patrol and CBP Standards Governing Detention

**4**   Overview of Detention Patterns in All Border Patrol Sectors in the Southwest Border Region

**10**   Conclusion

**11**   Endnotes

64

# INTRODUCTION

For some time now, U.S. Customs and Border Protection (CBP) has been in the spotlight for its questionable practices regarding the treatment of migrants. One such practice concerns the manner in which the Border Patrol—a component of CBP— operates its holding facilities near the U.S.' southern border. Each year, hundreds of thousands of individuals are held in these facilities, which are meant to hold individuals for a short time while they undergo initial processing and until a decision is made about the appropriate next step in their case. The holding cells, which are often referred to as "hieleras" (Spanish for "freezers" or "iceboxes"), are typically small concrete rooms with concrete benches and no beds.  They are not designed for overnight custody, and yet they are routinely used in this way. Government records analyzed in this report, which contain information on length of detention for all Border Patrol sectors along the U.S.' southwest border, reveal that individuals are frequently held for days and sometimes even months in such facilities.

As numerous reports, media accounts, and documented complaints of former detainees have previously shown, these facilities remain wholly inadequate for **any** overnight detention. Moreover, the conditions are reprehensible—as consistently reported by many who were held in them—even with respect to truly short-term detention. In addition to the fact that there are no beds in the holding cells, these facilities are extremely cold, frequently overcrowded, and routinely lack adequate food, water, and medical care.[1]

This report, which is based on never-before-released government data and documents obtained by the American Immigration Council through the Freedom of Information Act (FOIA), examines length of detention in nine Border Patrol sectors: Big Bend, Texas; Del Rio, Texas; El Centro, California; El Paso, Texas; Laredo, Texas; Rio Grande Valley, Texas; San Diego, California; Tucson, Arizona; and Yuma, Arizona. Between September 1, 2014 and August 31, 2015, 326,881[2] individuals were held in CBP facilities across the southwest border. Of the cases analyzed, which include only cases with complete data (326,728), 69,016 (21.1 percent) are women. Mexican nationals represent the largest share (57.1 percent) of those detained in CBP facilities during this period, followed by Guatemalans (16.9 percent), Salvadorans (12.7 percent), and Hondurans (9.8 percent).



Looking at all sectors combined, the data reveals that a shocking 217,485 individuals (or 67 percent of the total number detained during this period) were held in CBP facilities for 24 hours or more; 93,566 (29 percent) for 48 hours or more; and 44,202 (14 percent) for 72 hours or more.[3] The average number of hours that individuals were detained shows some variation, ranging from 65 hours at its lowest point in July 2015 to 104 hours at its peak in October 2014.

Length of detention varies considerably across border sectors. For example, lengthy detention is remarkably frequent in the Laredo, Rio Grande Valley, Tucson, Yuma, and El Centro sectors.  Laredo in particular shows the most disturbing numbers; 54 percent (19,000) of the 35,494 individuals held in detention facilities in Laredo were detained for at least 72 hours.

A recent report by the U.S. Government Accountability Office (GAO) raises questions about the possible existence of irregularities in the way Border Patrol officers capture information on length of detention. Consequently, the data presented here should be interpreted with caution.[4] However, the findings of our analysis are consistent with those reported in previous publications by the American Immigration Council. For example, according to a report released in May 2015, 58,083 individuals—or over 80 percent of people detained by the Border Patrol in its Tucson Sector between January 1, 2013 and June 30, 2013—were held for over 24 hours, and 10.9 percent (7,839 individuals) were held for 72 hours or more.[5] Another report which focused on the Rio Grande Valley Sector showed that during the months of August, September, October, and December of 2013, the share of individuals detained for over 72 hours ranged from 2.3 percent of all detainees at its lowest point to 42.5 percent at its peak.[6]

Lengthy detention is especially problematic given the inhumane conditions that characterize these holding facilities. The findings presented in this report document a troublesome reality: lengthy detention is not just a random occurrence that happens to a few individuals in one or two Border Patrol sectors; it is, instead, a systemic practice that affects, to varying degrees, all the sectors along the southwest border.



# BORDER PATROL AND CBP STANDARDS GOVERNING DETENTION

Individuals are typically taken into CBP "short-term" holding facilities[7] after being either (a) apprehended by the Border Patrol along the border and between ports of entry due to suspected criminal activity, illegal entry into the United States, or presence in the country without immigration status; or (b) interviewed by the Office of Field Operations at a port of entry to determine the individual's admissibility into the United States. After inspecting an individual for admissibility or after making an apprehension, CBP may hold individuals at short-term holding facilities. According to GAO:

> [Department of Homeland Security (DHS)] components may hold aliens at holding facilities in order to complete general processing and determine the appropriate course of action, such as transferring them to or from a court, jail, prison, other agency or other unit of the facility or agency, relocating such aliens into ICE detention facilities, removing them from the country, or releasing them, among other scenarios."[8]

Although there are no statutes or regulations specifically governing CBP short-term detention facilities, CBP and Border Patrol have issued internal guidance regarding facility standards, specifications, and operations. According to CBP guidance, holding cells are generally rectangular, made of concrete, minimally furnished, and are neither designed nor equipped for overnight sleeping.[9] Indeed, CBP policies specify that there are "no beds" in holding cells, as they are "not designed for sleeping."[10] As a Border Patrol spokesperson said, "it is what it is. We're not a long-term hold facility."[11]

Agency guidance also sets limits on the maximum length of time that an individual should be kept in a holding cell. A 2008 Border Patrol memorandum states that "a detainee should not be held for more than 12 hours," and should be moved "promptly."[12] It also recognizes that some individuals will be held for longer periods.[13] This guidance was in effect for the time period of the government data analyzed for this report, and remains in effect at this time.

67



In addition to guidance on the length of detention, the 2008 memorandum proscribes that detainees will be provided snacks and meals,[14] will be given access to potable drinking water,[15] will have access to bathrooms and toilet items,[16] and will be given necessary medical attention.[17]  Further, agents will make reasonable efforts to provide a shower for detainees held for more than 72 hours[18] and detention cells will be regularly cleaned and sanitized.[19]

In October 2015, CBP released the "National Standards on Transport, Escort, Detention, and Search" (TEDS)[20] policy. The new standards define short-term detention as the "temporary detention of a person at a CBP facility for the least amount of time necessary to complete processing, transfer, and/or repatriation." It also establishes that "detainees should generally not be held for longer than 72 hours in CBP hold rooms or holding facilities. Every effort must be made to hold detainees for the least amount of time required for their processing, transfer, release, or repatriation as appropriate and as operationally feasible." The TEDS policy—which applies to all CBP components—does not replace the earlier 2008 memorandum that applies solely to Border Patrol facilities. As discussed below, the data demonstrates that Border Patrol was not previously—nor is it now—in compliance with its own guidance with respect to length of detention, as this detention regularly exceeded its own 12 hour limit as well as the 72 hour limit found in TEDS. This is particularly problematic considering that, as previous reports have shown, the agency is also not in compliance with other aspects of the guidance that relate to detention conditions.[21]

## OVERVIEW OF DETENTION PATTERNS IN ALL BORDER PATROL SECTORS IN THE SOUTHWEST BORDER REGION

The Southwest border region comprises nine Border Patrol sectors (Figure 1). Collectively, these sectors cover more than 2,000 miles of international border with Mexico[22] and now include 74 stations and substations.[23] In Fiscal Year (FY) 2015, the Border Patrol apprehended 331,333 individuals along the U.S.-Mexico border.[24] Of those individuals, 147,257 (44 percent) were apprehended in the Rio Grande Valley sector; 63,397 (19 percent) in the Tucson sector; 35,888 (11 percent) in the Laredo



sector; 26,290 (eight percent) in the San Diego sector; 19,013 (six percent) in the Del Rio sector; 14,495 (four percent) in the El Paso sector; 12,820 (four percent) in the El Centro sector; 7,142 (two percent) in the Yuma sector; and 5,031 (two percent) in the Big Bend sector.

**Figure 1: Map of Border Patrol Sectors Along the Southwest Border**



**Source**: U.S. Government Accountability Office, "*Secure Border Initiative Fence Construction Costs*," GAO-09-244R, January 29, 2009, http://www.gao.gov/new.items/d09244r.pdf.
*****Note:** The Big Bend Sector was formerly known as Marfa Sector.

Between September 1, 2014 and August 31, 2015, 326,728 individuals were held in CBP facilities across the southwest border. Of them, 69,016 (21.1 percent) were women. Mexican nationals represent the largest share (57.1 percent) of those detained in CBP facilities during this period, followed by Guatemalans (16.9 percent), Salvadorans (12.7 percent), and Hondurans (9.8 percent).

A shocking 217,485 individuals (or 67 percent of the total number detained during this period) were held in CBP facilities for 24 hours or longer; 93,566 (29 percent) for 48 hours or more; and 44,202 (14 percent) for 72 hours or more (Figure 2).



**Figure 2: Distribution of Individuals Detained in CBP Facilities by Length of Detention**

Sep. 2014 - Aug. 2015



**Source**: Data generated by the American Immigration Council based on U.S. Border Patrol Southwest Border Apprehensions data obtained through Freedom of Information Act.

During the period analyzed, the average number of hours that individuals were detained showed some variation, ranging from 65 hours at its lowest point in July 2015 to 104 hours at its peak in October 2014 (Figure 3).

**Figure 3: Average Number of Hours in CBP Detention, by Month**



**Source**: Data generated by the American Immigration Council based on U.S. Border Patrol Southwest Border Apprehensions data obtained through Freedom of Information Act.

## Figure 4: Individuals Held in CBP Facilities by Southwest Border Sector and Length of Detention
### Sep. 1, 2014 - Aug. 31, 2015



**Source**: Data generated by the American Immigration Council based on U.S. Border Patrol Southwest Border Apprehensions data obtained through Freedom of Information Act.

Length of detention varies considerably across border sectors (Figure 4).[25] Notably, over 80 percent of the individuals detained between September 1, 2014 and August 31, 2015 in Laredo (29,585) and Rio Grande Valley (117,847), and over half of the individuals held in Yuma (3,664), Tucson (33,776), and El Centro (5,958), respectively, were held for 24 hours or more. Laredo has the largest share of individuals detained for 72 hours or more during this period. Specifically, 54 percent (19,000) of the 35,494 individuals held in detention facilities in Laredo were detained for at least 72 hours (Figure 5).

**7**   *Detained Beyond the Limit: Prolonged Confinement by U.S. Customs and Border Protection along the Southwest Border*

71
19

### Figure 5: Individuals Held in CBP Facilities by Southwest Border Sector and Length of Detention
Sep. 1, 2014 - Aug. 31, 2015

| Sector | Less than 24 hours | At least 24 but less than 48 hours | At least 48 but less than 72 hours | 72 hours or more | Total |
|---|---|---|---|---|---|
| Laredo, Texas | 5,909 (17%) | 4,437 (13%) | 6,148 (17%) | 19,000 (54%) | 35,494 (100%) |
| Rio Grande Valley, Texas | 27,602 (19%) | 71,287 (49%) | 33,098 (23%) | 13,462 (9%) | 145,449 (100%) |
| San Diego, California | 11,592 (44%) | 10,411 (39%) | 2,351 (9%) | 2,057 (8%) | 26,411 (100%) |
| Yuma, Arizona | 2,965 (45%) | 2,132 (32%) | 329 (5%) | 1,203 (18%) | 6,629 (100%) |
| Tucson, Arizona | 29,564 (47%) | 22,290 (35%) | 4,668 (7%) | 6,818 (11%) | 63,340 (100%) |
| El Centro, California | 6,654 (53%) | 4,553 (36%) | 976 (8%) | 429 (3%) | 12,612 (100%) |
| Big Bend, Texas | 2,430 (54%) | 1,346 (30%) | 299 (7%) | 393 (9%) | 4,468 (100%) |
| El Paso, Texas | 9,700 (69%) | 3,030 (22%) | 697 (5%) | 607 (4%) | 14,034 (100%) |
| Del Rio, Texas | 12,827 (70%) | 4,433 (24%) | 798 (4%) | 233 (1%) | 18,291 (100%) |
| Total | 109,243 (33%) | 123,919 (38%) | 49,364 (15%) | 44,202 (14%) | 326,728 (100%) |

**Note**: Percentages may not sum to 100 due to rounding.
**Source**: Data generated by the American Immigration Council based on U.S. Border Patrol Southwest Border Apprehensions data obtained through Freedom of Information Act.

The average amount of time that individuals were detained was over 24 hours across all sectors (Figure 6). The sectors where individuals were detained on average for the longest periods were Laredo, Texas (166.6 hours); Yuma, Arizona (150.4 hours); and Tucson, Arizona (128.4 hours).

**Figure 6: Average Number of Hours Individuals Were Held in Detention, by Sector**



**Source**: Data generated by the American Immigration Council based on U.S. Border Patrol Southwest Border Apprehensions data obtained through Freedom of Information Act.

Because the mean is sensitive to outliers and, as we discuss below, there are extreme values in our dataset (which indicate that individuals were held for months), the median is probably a more accurate measure. Still, in six of the nine sectors analyzed, the median number of hours individuals were detained was higher than 24 (Figure 7). The sector with the greatest median was Laredo, Texas (77 hours), followed by Rio Grande Valley, Texas (39 hours) and Del Rio, Texas (27.4 hours).

**Figure 7: Median Number of Hours Individuals Were Held in Detention, by Sector**



**Source**: Data generated by the American Immigration Council based on U.S. Border Patrol Southwest Border Apprehensions data obtained through Freedom of Information Act.

Alarmingly, the data also indicate that each sector had someone detained in one of its facilities for at least seven months.  It also shows that someone in Laredo was detained for 13 months, 13 days (Figure 8). DHS officials we interviewed for this report also noted that some individuals are referred for prosecution for "illegal entry" or "reentry" under 8 USC §§ 1325 and 1326 and subsequently serve jail time. These individuals may not be "booked out" of CBP custody until they are returned to CBP and repatriated after serving their sentences, making their time in CBP custody appear longer than it actually was.

**Figure 8: Maximum Number of Hours Someone Was Detained in Each Sector**



| | |
|---|---|
| Laredo, Texas | 408 days, 19 hrs. |
| Rio Grande Valley, Texas | 395 days, 21 hrs. |
| El Centro, California | 395 days, 11 hrs. |
| Yuma, Arizona | 372 days, 22 hrs. |
| Tucson, Arizona | 367 days, 21 hrs. |
| Big bend, Texas | 310 days, 18 hrs. |
| El Paso, Texas | 307 days, 11 hrs. |
| Del Rio, Texas | 246 days, 8 hrs. |
| San Diego, California | 214 days, 16 hrs. |

**Source**: Data generated by the American Immigration Council based on U.S. Border Patrol Southwest Border Apprehensions data obtained through Freedom of Information Act.

During the period analyzed, it appears that 6,814 individuals were held in CBP "short-term detention" facilities for at least a month.[26] Of these, the largest share (3,214) was detained in Tucson; 1,577 in Rio Grande Valley; 1,226 in Laredo; 384 in Yuma; and the remaining 366 in the other sectors. In addition, the data suggest that 3,123 individuals were held for at least two months. Of those individuals, Tucson held the largest number (1,314); followed by Rio Grande Valley (876); Laredo (552); Yuma (202); El Paso (80); and El Centro (47).

These numbers are indeed worrisome. Although CBP released the data in response to our FOIA without a caveat, there may be a question as to the accuracy of some of it. A report by GAO found some irregularities with CBP time of custody data, due in part to "delays in agents recording of individuals' book out from holding facilities."[27]

## CONCLUSION

This newly released data shows that CBP—through its component Border Patrol— routinely forces individuals to sleep in cells that lack beds or other reasonable sleeping accommodations, often for multiple nights, in all southwest border sectors. And while lengthy detention is a frequent occurrence in all sectors, the numbers are especially alarming in many sectors—namely Laredo, Rio Grande Valley, Tucson, Yuma, and El Centro. In all of these sectors, more than 50 percent of the detainees were held for 24 hours or more. Laredo, in particular, presents the most alarming outcomes, with 54 percent of individuals held in its detention facilities for at least 72 hours. Such detention is far in excess of the 12-hour limit proscribed by Border Patrol, and is particularly troubling considering the deplorable detention conditions that previously have been reported.

**11**   *Detained Beyond the Limit: Prolonged Confinement by U.S. Customs and Border Protection along the Southwest Border*

**75**
**23**

# ENDNOTES

1. For more information on detention conditions, *see* Guillermo Cantor, "Hieleras (Iceboxes) in the Rio Grande Valley: Lengthy Detention, Deplorable Conditions, and Abuse in CBP Holding Cells," (Washington, DC: American Immigration Council, 2015), https://www.americanimmigrationcouncil.org/research/hieleras-iceboxes-rio-grande-valley-sector; American Immigration Council, "Way Too Long: Prolonged Detention in Border Patrol Holding Cells, Government Records Show," June 10, 2015, https://www.americanimmigrationcouncil.org/research/way-too-long-prolonged-detention-border-patrol-holding-cells-government-records-show; Americans for Immigrant Justice, "The 'Hieleras': A Report on Human and Civil Rights Abuses Committed by Customs and Border Protection Agency," August 7, 2013, http://www.aijustice.org/the-hieleras-a-report-on-human-civil-rights-abuses-committed-by-u-s-customs-border-protection-2/; No More Deaths (NMD), *Culture of Cruelty: Abuse and Impunity In Short-term U.S. Border Patrol Custody*, (Tucson, AZ: No More Deaths, 2011), 21, http://forms.nomoredeaths.org/abuse-documentation/a-culture-of-cruelty/ (noting reports of agents "turning on the air conditioning or placing fans outside the cells after receiving complaints about cold cells"); *Doe v. Johnson*, 4:15-cv-00250-DCB Doc. 1, (D. Ariz. June 8, 2015)(American Immigration Council, available at https://www.americanimmigrationcouncil.org/litigation/challenging-unconstitutional-conditions-cbp-detention-facilities).

2. Although the dataset received contained 326,881 cases, in 89 cases the book out date/time was missing and in 64 cases the book out date provided was earlier than the book in date. Given that the focus of this report is length of detention, those cases were excluded from the analysis. Thus, the total number of cases included in this analysis is 326,728.

3. U.S. Customs and Border Patrol, "USBP Southwest Border Apprehensions: September 1, 2014 through August 31, 2015," obtained by the American Immigration Council via FOIA in 2016, http://www.americanimmigrationcouncil.org/sites/default/files/usbp_southwest_border_apprehensions_090114-083115_redacted.pdf.

4. U.S. Government Accountability Office, *Immigration Detention: Additional Actions Needed to Strengthen DHS Management of Short-Term Holding Facilities*, GAO-16-514, (Washington, DC, 2016), http://www.gao.gov/assets/680/677484.pdf.

5. American Immigration Council, "Way Too Long: Prolonged Detention in Border Patrol Holding Cells, Government Records Show," June 10, 2015, https://www.americanimmigrationcouncil.org/research/way-too-long-prolonged-detention-border-patrol-holding-cells-government-records-show.

6. Guillermo Cantor, "Hieleras (Iceboxes) in the Rio Grande Valley: Lengthy Detention, Deplorable Conditions, and Abuse

in CBP Holding Cells," (Washington, DC: American Immigration Council, 2015), https://www.americanimmigrationcouncil.org/research/hieleras-iceboxes-rio-grande-valley-sector.

7. *See* U.S. Border Patrol Chief David Aguilar, U.S. Border Patrol Policy, "Subject: Detention Standards," (Reference No: 08-11267), January 31, 2008, https://www.documentcloud.org/documents/818095-bp-policy-on-hold-rooms-and-short-term-custody.html; see also *Flores v. Holder*, 2:85-cv-04544-DMG Doc. 121, at *20-22 (C.D. Cal. February 27, 2015) (available at http://www.slideshare.net/amjolaw/opposition-to-enforcement-of-action) ("CBP sets and enforces clear standards for safe and sanitary conditions at the Border Patrol stations through facilities design guides and written policy guidance").

8. U.S. Government Accountability Office, *Immigration Detention: Additional Actions Needed to Strengthen DHS Management of Short-Term Holding Facilities*, GAO-16-514, (Washington, DC, 2016), 2, http://www.gao.gov/assets/680/677484.pdf.

9. *See* U.S. Customs and Border Patrol Office of Internal Affairs Security Management Division, *CBP Security Policy and Procedures Handbook*, HB1400-02B, (Washington, DC, August 13, 2009), 492-95, http://info.publicintelligence.net/CBP-SecurityHandbook.pdf.

10. Ibid., 494 ("No beds; hold rooms are not designed for sleeping.").

11. Amy Bracken, "Immigrants, Legal Groups Allege Harsh Treatment at the Border," *PRI*, August 1, 2013, http://www.pri.org/stories/2013-08-01/immigrants-legal-groups-allege-harsh-treatment-us-border.

12. "Every effort will be made to promptly process, transfer, transport, remove, or release those in custody as appropriate and as operationally feasible." U.S. Border Patrol Chief David Aguilar, U.S. Border Patrol Policy, "Subject: Detention Standards," (Reference No: 08-11267), January 31, 2008, 3 at 6.2.1, https://www.documentcloud.org/documents/818095-bp-policy-on-hold-rooms-and-short-term-custody.html.

13. Ibid., 4 at 6.2.4.1 ("In cases where the [Patrol Agent In Charge] has reason to believe that the [unaccompanied child's] detention will exceed 72 hours or exceeds 72 hours [the agent] will notify a sector staff officer immediately."). *See also* ibid. at 6.2.4.2 ("Under extenuating circumstances, the maximum time allowed for placing [unaccompanied children] in an ORR-approved facility is five days. In cases where [children] are detained longer than five days, sector staff will immediately contact the [Detention and Removal Office] liaison officer [ ].").

14. "Detainees will be provided snacks and juice every four hours. Detainees whether in a hold room or not, will be provided a meal if detained more than 8 hours or if their detention is anticipated to exceed 8 hours. Regardless of the time in custody, juveniles will be provided with meal service, and at least every six hours thereafter; two of the three meals must be hot. Juveniles, small



children, toddlers, babies, and pregnant women will have regular access to snacks, milk, or juice at all times." U.S. Border Patrol Chief David Aguilar, U.S. Border Patrol Policy, "Subject: Detention Standards," (Reference No: 08-11267), January 31, 2008, 8 at 6.8, https://www.documentcloud.org/documents/818095-bp-policy-on-hold-rooms-and-short-term-custody.html.

15. "Potable drinking water will be available to detainees. The supervisor is responsible for ensuring that drinking water is available." Ibid., at 6.9.

16. "Detainees using the restrooms will have access to toilet items, such a soap, toilet paper, and sanitary napkins. Families with small children will also have access to diapers and wipes." Ibid., at 6.10.

17. Ibid., 7 at 6.7.

18. "Agents will make reasonable efforts to provide a shower for any detainee held for more than 72 hours. Detainees that are showering will be provided a clean towel and basic toiletries. Agents will make every reasonable effort to provide unaccompanied [] children who are held more than 48 hours with access to a shower and clean towel, clean clothing, and basic hygiene articles [ ]." Ibid., 9 at 6.14.

19. "Supervisors will ensure that detention cells are regularly cleaned and sanitized." Ibid., at 6.16.

20. U.S. Customs and Border Protection, *National Standards on Transport, Escort, Detention, and Search*, October 2015, https://www.cbp.gov/sites/default/files/documents/cbp-teds-policy-20151005_1.pdf.

21. Guillermo Cantor, "Hieleras (Iceboxes) in the Rio Grande Valley: Lengthy Detention, Deplorable Conditions, and Abuse in CBP Holding Cells," (Washington, DC: American Immigration Council, 2015), https://www.americanimmigrationcouncil.org/research/hieleras-iceboxes-rio-grande-valley-sector; *Doe v. Johnson*, 4:15-cv-00250-DCB Doc. 1, (D. Ariz. June 8, 2015)(American Immigration Council, available at https://www.americanimmigrationcouncil.org/litigation/challenging-unconstitutional-conditions-cbp-detention-facilities).

22. U.S. Customs and Border Protection, "Fact Sheet: Air and Marine Southwest Border Region," September 18, 2013, http://nemo.cbp.gov/air_marine/FS_Southwest_Border_Region.pdf.

23. U.S. Customs and Border Protection, "Border Patrol Sectors," accessed August 17, 2016, https://www.cbp.gov/border-security/along-us-borders/border-patrol-sectors.

24. United States Border Patrol, "U.S. Border Patrol Fiscal Year Southwest Border Sector Apprehensions (FY 1960 - FY 2015)," accessed August 17, 2016, https://www.cbp.gov/sites/default/files/documents/BP%20Southwest%20Border%20Sector%20Apps%20FY1960%20-%20FY2015.pdf.

25. Additionally, this data set contains data from the tail end of the 2014 "surge" of unaccompanied children and families seeking refuge in the United States. According to DHS officials who we talked to for this report, this "surge" led CBP to shift resources from other sectors to the Rio Grande Valley Sector in 2014, which may have impacted resources at other sectors and potentially extended length of detention in those sectors. However, it is worth noting that, on average, length of detention in RGV was still relatively high.

26. For these calculations, we assume that each month has 30 days or 720 hours.

27. U.S. Government Accountability Office, *Immigration Detention: Additional Actions Needed to Strengthen DHS Management of Short-Term Holding Facilities*, GAO-16-514, (Washington, DC, 2016), http://www.gao.gov/assets/680/677484.pdf.

77

Case 19-50366, 06/08/2020, ID: 11715045, DktEntry: 9, Page 81 of 235

D

78

26

**LIVE**

Trump discusses manufacturing and energy before touring a Pittsburgh-area petrochemical plant

• LIVE TV

# Exclusive: Watchdog finds detainees 'standing on toilets' for breathing room at border facility holding 900 people in space meant for 125



By Priscilla Alvarez, CNN

Updated 3:03 PM ET, Fri May 31, 2019



| | | | | |
|---|---|---|---|---|
| 03:57 | 01:43 | 02:16 | 03:12 | 0 |
| Scaramucci says he | Tapper to O'Rourke: Is | Biden says he met with | CNN anchor lists the | Tapp |

By using this site, you agree to our updated Privacy Policy and our Terms of Use.

79

27

**Washington (CNN) —** The Department of Homeland Security's Inspector General has found "dangerous overcrowding" and unsanitary conditions at an El Paso, Texas, Border Patrol processing facility following an unannounced inspection, according to a new report.

The IG found "standing room only conditions" at the El Paso Del Norte Processing Center, which has a maximum capacity of 125 migrants. On May 7 and 8, logs indicated that there were "approximately 750 and 900 detainees, respectively."

"We also observed detainees standing on toilets in the cells to make room and gain breathing space, thus limiting access to the toilets," the report states. The report was first obtained by CNN.

A cell with a maximum capacity of 12 held 76 detainees, another with a maximum capacity of eight held 41, and another with a maximum capacity of 35 held 155, according to the report.

"(Customs and Border Protection) was struggling to maintain hygienic conditions in the holding cells. With limited access to showers and clean clothing, detainees were wearing soiled clothing for days or weeks," the report states.

RELATED: Trump erupts over immigration, threatening Mexico with tariffs

"Corrective action is critical to the immediate health and safety needs of detainees, who cannot continue to be held in standing-room-only conditions for weeks until additional tents are constructed," the report adds.

The report comes as the number of migrants coming across the southern border continues to skyrocket. Roughly 109,000 people crossed in April, according to DHS, a number expected to increase in May.

President Donald Trump threatened on Thursday to impose tariffs against Mexico if it doesn't step up enforcement, but it's not clear such actions would stem the flow of migrants.

The White House has asked Congress for $4.5 billion in emergency funding for the border.

80
28

# Border Patrol agents worried about health, safety

The IG also said Border Patrol managers were concerned about an "immediate risk to the health and safety" of DHS agents and officers, and that employee morale is decreasing. There is a "high incidence of illness" among staff, the report states.

At the El Paso center and others, some employees eligible for retirement have accelerated their retirement dates, and others are looking for work elsewhere.

Five Border Patrol stations and two ports of entry in the El Paso area, including greater El Paso and eastern New Mexico, were part of the unannounced spot inspection visits at CBP holding facilities this month.

DHS and acting Homeland Security Secretary Kevin McAleenan have been flagging the rising number of migrants and crowded condition at border camps.

"The current situation on the border represents an acute and worsening crisis. Our immigration is not equipped to accommodate a migration pattern like the one we are experiencing now," DHS said in a written response to the IG report.

"The speed with which illegal migrants are transiting through Mexico to reach our southern border is frustrating our best efforts to respond quickly," it added.

81

# Recommendations

The IG recommends taking "immediate steps" to remedy the overcrowding at the El Paso Del Norte Processing Center.

DHS said that it "has implemented a multi-layered approach" that includes the construction of additional structures to house migrants, continued coordination with Immigration and Customs Enforcement and providing staff support.

The agency has constructed a soft-sided structure at El Paso Station that can hold 500 and has been operational since May 2, the response reads. The agency also plans to build additional structures, including an "800 holding capacity modular facility" at El Paso Station by July 31 and a permanent centralized processing center for approximately 1,800 people.

The estimated completion date is November 30, 2020.

**PAID CONTENT**



### The Early Signs - Research Congestive Heart Failure…

Sponsored: Yahoo! Search



### [Gallery] Audiences Today Can't Comprehend These Photos

Sponsored: History A2Z

82
30

E

Watch live: Trump delivers remarks on American energy and manufacturing in Pittsburgh



From left, Felipe Gomez Alonzo, Carlos Gregorio Hernandez Vasquez and Jakelin Caal Maquin are three of the children who have died in the custody of U.S. Customs and Border Protection.   Family photos

May 29, 2019, 1:44 PM PDT

84

By Nicole Acevedo

At least seven children are known to have died in immigration custody since last year, after almost a decade in which no child reportedly died while in the custody of U.S. Customs and Border Protection.

The string of cases continue to raise questions around the conditions in which migrant children are being kept at a time when a growing number of migrants, many of them Central American parents with children, are presenting themselves at the border to seek asylum.

Aside from the fact that children may have underlying health conditions, most are reaching the United States after arduous journeys during which they have had little access to clean shelter and proper provisions. Many are leaving impoverished and drought-stricken regions.

But the deaths under President Donald Trump's watch have health professionals and some advocates questioning whether the administration's immigration policies — particularly keeping minors in custody for longer periods — are contributing to more minors getting sick and dying while in custody or shortly after they are released.

"Children are not like adults. They get sick more quickly and each hour of delay can be associated with serious complications, especially in cases of infectious diseases. Delays can lead to death," Dr. Julie Linton, co-chair of the immigrant health special interest group at the American Academy of Pediatrics, told NBC News.

The most recent known case is that of Carlos Gregorio Hernández Vásquez. The teenager died in CBP custody this month after being diagnosed with the flu, an infectious disease.

In December, medical examiners concluded that 7-year-old Jakelin Caal Maquin, who also died in CBP custody, succumbed to "a rapidly progressive infection" that shut down her vital organs. CBP sent Jakelin on a 90-mile bus ride to another location after she was taken into custody, even though her father had told officials she was vomiting and feeling ill before they left.

CBP officials said last year that Jakelin waited an hour and a half to receive emergency medical care after showing symptoms.

Deaths of several other migrant children were reported in just eight months following her death.

"We do not need to be talking about the prolonged detention of children. It is dangerous," Linton said.

Seven months before Jakelin's death, 1-year-old Mariee Juarez died after being released from U.S. Immigration and Customs Enforcement custody.

85

33

——— Yazmin Juarez and her daughter, Mariee, came seeking asylum from Guatemala.   Courtesy Yazmin Juarez

Mariee died from complications of a respiratory illness her mother and lawyers say she allegedly developed while detained.

CBP holding facilities are "basically concrete floors with mats and barbed wire fencing and bright lights 24/7," Linton said. "That can be a very disorienting environment to children."

86

Leah Chavla, an international human rights lawyer and policy adviser at the Women's Refugee Commission, has worked with families who have raised many concerns over CBP facilities being "inadequate."

"Families have come with concerns about lack of hygiene, being crammed into holding cells, being served food that has not fully cooked or nutritionally appropriate for kids ... being woken up throughout the night," Chavla told NBC News.

The CBP holding facilities are often referred to by the people held in them as "hieleras," which translates to icebox or cooler, because of their frigid temperatures. A Human Rights Watch report about these conditions pointed out that children were sleeping under thin Mylar blankets or foil wrappers.

Wilmer Josué Ramírez Vásquez, a 2½-year-old, died this month after being detained by Border Patrol in early April and spending about a month in a hospital, where he was diagnosed with pneumonia.



NEWS

16-year-old migrant boy dies in U.S. custody, 5th child to die since December

Carlos, 16, had been held in such a facility before being diagnosed with influenza A. He died May 20. The teenager had spent one week in CBP custody, even though legally he should have not been there for more than three days.



DONALD TRUMP

Cuccinelli torches famous Statue of Liberty immigrant quote

# 87
35

IMMIGRATION

Acting ICE chief defends Mississippi raids that left children abandoned, blames parents

U.S. laws require CBP to transfer minors into the custody of the Office of Refugee Resettlement (ORR) at the Department of Health and Human Services (HHS) within 72 hours unless there are "exceptional circumstances.

A CBP official told NBC News via email that "the standard is 72 hours or less, but with the on-going crisis that has been difficult to maintain at times."

The official stated that despite the fact that the number of migrant families and unaccompanied minors remain at peak levels, U.S. Border Patrol continues to conduct processing of unaccompanied minors in a little over a day, on average, across the southwest border.

The official added that the high number of children requiring placement with HHS-ORR exceeds their available shelter spaces so the minors spend more time in Border Patrol facilities until then.

Under ORR, children are supposed to have access to a network of state-licensed or government-funded private care providers, as well as education, health care and case management services, Linton explained.

And yet, Carlos was placed back in CBP custody after he was diagnosed with flu-like symptoms, an official from the agency previously told NBC News.

"Kids are not being processed quickly enough under CBP," Chavla said. "Filing complaints to elevate some of these concerns has been one of a couple of mechanisms used to push CBP into following the rules, but there are still some real doubts about how serious they're about this."



New calls to investigate string of migrant child deaths

MAY 23, 2019 / 05:56



Felipe Gómez Alonzo, 8, also was held in CBP custody for nearly one week before he died on Christmas Eve. Medical investigators later determined the boy had been suffering from the flu while he was under the agency's care.

"A child should never be returned to a processing center to recover from an illness," Linton said. "As a pediatrician, I would never suggest for a kid to heal in a stressful environment with concrete floors."

Even though ORR is more equipped than CBP to house minors for a longer period of time, children have also died while in ORR care or shortly after being released from immigration custody.

Darlyn Valle, 10, died in September after entering ORR custody, but her death was revealed to the public nearly eight months after it had happened.

The girl entered ORR custody on March 2018 "as a medically fragile child with a history of congenital heart defects" and remained in its custody until September, the agency told NBC News in a statement. During that time, Darlyn underwent a surgical procedure at a facility in Arizona and complications later left her in a coma.

She was then taken to Nebraska, just three days before her death, in an effort to reunite her with her mother. She died due to fever and respiratory distress, ORR said.

ORR said it provides routine and emergency medical and mental health care to all children in its care



an initial medical exam, follow-up care as appropriate and weekly individual and group counseling sessions with care provider clinicians.

"The government kept a sick child in its custody from March to September. That's 7 months she could've been in the arms of her mother," Al Otro Lado, a nonprofit legal services organization, wrote on Twitter.

Juan de León Gutiérrez, 16, died of health complications under ORR care on April 30 after officials at a detention facility in Texas noticed he was sick.



90
38

—— Juan de Leon Gutierrez in a March 2017 photo. Jimmy Cristian Gutierrez Garcia / via AP

CBP apprehended nearly 99,000 migrants who entered the U.S. without authorization last month.

Nearly 60 percent of them were family units, according to CBP numbers. Both figures have continued to rise each month since January. Although apprehensions are still well under the historic highs of the late 1990s and early 2000s, the majority of migrants then were adult men from Mexico — not asylum-seeking families with children.

The administration has been limiting the number of people walking up to a legal port of entry on the U.S. side of the border and asking for asylum. Advocates say that has led to more people crossing the border illegally, which is contributing to Border Patrol agents ending up with overcrowded processing facilities and holding facilities.

"CBP's priority is law enforcement. They don't necessarily have the conditions to keep children for a long period of time," Linton said.

Congressional calls for oversight and investigations are always welcomed to see what to avoid and what can be done better, Chavla said, especially to look into how CBP is implementing its own guidelines that outline the conditions and resources the agency has to provide to children in their custody.

"Guidelines are not binding, so it's important to have a critical look at what's going on and how the g

can be made binding," Chavla said.

Acting director of the Department of Homeland Security Kevin McAleenan said during a recent budget hearing that more than 100 certified medical practitioners have been deployed to the two busiest sectors. But when asked if every child in CBP custody had access to a pediatrician, McAleenan answered with a confident "no."

"There's a need for urgent and thoughtful engagement of pediatricians in every step where children are involved," Linton said.

Even before the latest deaths, the American Academy of Pediatrics recommended that immigration agencies should better train staff on how to respond to health-related emergencies and prioritize "the thoughtful release of children, more case management efforts and humane safe conditions," Linton said.

And yet, she said, she and other health professionals continue to ask why there seems to be a lack of urgency to improve the conditions in which migrant children are being held.

"We would love to know the answer to that question," she said.

**FOLLOW NBC LATINO ON FACEBOOK, TWITTER AND INSTAGRAM.**

---



Nicole Acevedo

Nicole Acevedo is a staff reporter at NBC News Digital where she reports, writes and produces content for NBC Latino and NBCNews.com.

---

Daniella Silva and Suzanne Gamboa contributed.

---

ABOUT

CONTACT

CAREERS

PRIVACY POLICY

TERMS OF
SERVICE

NBCNEWS.COM
SITE MAP

ADVERTISE

▷ ADCHOICES

© 2019 NBC UNIVERSAL

93
41

Case 19-50266, 06/08/2020, ID-2 11715045, DktEntry: 9, Page 97 of 235

F

94

Central Violations Bureau

Case 19-50366, 06/08/2020, ID=11715045, DktEntry=9, Page 98 of 235
Case 3:19-cr-00735-AJB   Document 77-21   Filed 08/26/19   PageID.297   Page 44 of 108




# FREQUENTLY ASKED QUESTIONS

**What is the Central Violations Bureau?**

The Central Violations Bureau is a national center responsible for processing violation notices (tickets) issued and payments received for petty offenses charged on a federal violation notice. This includes violations that occur on federal property such as federal buildings, national parks, military installations, post offices, Veteran Affairs medical centers, national wildlife refuges, and national forests. The Central Violations Bureau processes violation notices for violations of federal law that occur outside federal property as well. For example, migratory bird offenses that occur on private property.

**How do I know if I received a federal ticket?**

This site is designed to allow on-line payments of **FEDERAL TICKETS ONLY!**   Click here to see an image of a federal ticket.   If the ticket you received does not say "U.S. District Court Violation Notice" across the top, then you did not receive a federal ticket.   Federal tickets are issued by law enforcement personnel from agencies such as the U.S. Park Police, U.S. Fish & Wildlife, Department of Defense Police, U.S. Coast Guard, U.S. Provost Marshal, Airforce, Marines & Navy Security Forces, U.S. Postal Police, U.S. Customs, U.S. Border Police, and V.A. Police.

**How can I pay a ticket?**

You can pay on-line by clicking here.   You may also make a payment by calling the Central Violations Bureau during normal business hours at (800) 827-2982 or mail a check or money order to the following address.   PLEASE DO NOT SEND CASH!

Central Violations Bureau
P.O. Box 780549
San Antonio, TX 78278-0549

Make sure to include the location code and violation number on your payment.

**How can I check the status of a ticket?**

Contact the Central Violations Bureau by calling 800-827-2982.  Use option 4 to hear an automated recording with the status of your ticket.

**I want to contest my ticket in court, but I don't have a court date written on my ticket.**

You will be notified by the Central Violations Bureau of your court date by mail.  You will receive a Notice to Appear usually within 4 to 8 weeks from issuance of the ticket.

**I received a violation notice, it is marked mandatory, do I have to appear in court?**

Yes, appearance is mandatory.

**When is my payment due by?**

All payments must be received on or before the scheduled court date.

**What if I pay my ticket the day of court on-line?**

The court will be notified of your payment. You will not have to appear in court.

**What happens if I don't pay the ticket or appear in court and I have a Virginia Driver License?**

Failure to pay the collateral amount due or to appear in court on the date and time scheduled for you could result in the suspension of your driving privileges and/or vehicle registration. If your driving privileges and/or vehicle registration have been suspended by the Virginia state DMV, you must pay the violation notice in full or appear in court before the suspension will be released. If you pay your violation notice in full through this website, the suspension will be released automatically within 48 business hours. If you are attempting to reinstate your driving privileges sooner, you must contact the CVB. Additional fees will apply for expediting the release. Please note: if your driving privilege is suspended, a reinstatement fee will also be assessed by the Virginia Department of Motor Vehicles.

NOTICE: If you received a similar copy of this suspension letter from the Virginia Department of Motor Vehicles, you must pay the total amount due on the violation notice to have your drivers license reinstated. Once the balance due is received in full at the CVB, notification will be electronically transmitted to the Virginia Department of Motor Vehicles automatically. You will be required to pay a reinstatement fee to the Virginia Department of Motor Vehicles to obtain a release. The reinstatement fee is in addition to the amount owed for the ticket and should be paid directly to the state.

**What happens if I don't pay the ticket or appear in court?**

If you fail to pay the amount due or to appear in court on the date and time scheduled, the United States District Court may issue a summons ordering you to appear or issue a warrant for your arrest. If you are charged with a motor-vehicle violation, the court may also report your failure to pay or appear to your state's motor-vehicle or driver-licensing agency, which may affect your driving privileges, or your vehicle registration, or both.

**95**

43

**I received a notice to appear, but I mailed my payment three weeks ago, did you receive my payment?**

Contact the Central Violations Bureau by calling 800-827-2982.  Use option 4 to hear an automated recording with the status of your ticket.

**I received a ticket, but I have moved.  How can I change my address?**

Address change requests must be submitted in writing to the Central Violations Bureau.  You may send a fax to 210-301-6401, email to info@cvb.uscourts.gov or mail to:

Central Violations Bureau
P.O. Box 780549
San Antonio, TX 78278-0549

Please include your name, location code, violation number and current contact information (phone and email) in your request.  Simply filing a change of address with the U.S. Postal Service is not sufficient.

**Can I take drivers course/traffic school/defensive driving?**

Please appear on your scheduled court date for any special requests.

**What if I can't afford to pay the Total Collateral Due amount on my ticket prior to court?**

Please appear on your scheduled court date for any special requests.

**Can I request community service, probation, or deferred prosecution?**

Please appear on your scheduled court date for any special requests.

**Where can I find directions to the court?**

Use the Court Links on this website for all court information.

**If I submit correspondence regarding my violation, do I still have to appear in court?**

Yes, unless you receive guidance from the court instructing you otherwise.

**I received a moving violation (i.e. a speeding ticket.) How many points will be assessed against my drivers license?**

You will have to contact your state's Department of Motor Vehicles or Licensing to determine the point value of the offense. The Central Violations Bureau does not maintain this information.

**Where does the money go when I pay a ticket?**

Funds collected from the payment of petty offense cases are deposited into the Crime Victims Fund.  The Crime Victims Fund was established by the Victims of Crime Act of 1984 and is a major funding source for victim services throughout the country.  For more information about the Crime Victims Fund and how the fines are disbursed, visit the Office for Victims of Crime website at http://www.ojp.usdoj.gov/ovc/.  The $30 processing fee is used to offset court costs.

**Will I be charged a fee if my check or electronic payment is returned from my bank for lack of funds?**

Yes, there is a $53 fee for payments returned to the court for non-payment.   See the District Court Fee Schedule for a detailed list of fees. Additional bank fees may apply depending on your financial institution.

**How do I obtain a release for my driver license or vehicle's registration?**

All releases are processed automatically once a fine is paid in full or the case is dismissed. They are processed in accordance with the policies of the Department of Motor Vehicles of your state and may require several weeks to become effective . There is no additional fee assessed by the Central Violations Bureau to issue a release.

**How may I obtain a copy of the complete statement of the charge(s) against me?**

You may obtain a copy of the statement by calling 800-827-2982 or submitting a written request to the Central Violations Bureau through email, fax or mail. The request must contain the CVB Location Code, Violation Number, defendant name and contact phone number. Any information missing will delay the request. Please allow 30 days from the date of issuance for the CVB to receive a copy of the ticket from the law enforcement agency.

| | |
|---|---|
| The email address is: | info@cvb.uscourts.gov |
| The fax number is: | (210) 301-6401 |
| | Central Violations Bureau |
| The mailing address is: | P.O. Box 780549 |
| | San Antonio, TX 78278-0549 |

**How do I get a refund for an over payment?**

Defendants must submit a letter of request along with a Refund Form to receive a refund for payments made to the Central Violations Bureau.   The request can not be processed without both a letter of request and form.   Click here for a copy of the Refund Form.   For information regarding the purpose of the refund form please see the United States Treasury website.   Please allow 4-6 weeks for payment processing. In most cases refunds will be issued via electronic funds transfer.   The refund will appear as a credit to your checking or savings account.

**NOTE:** The document listed above is in Adobe's Portable Document Format (pdf). In order to view pdf documents, you must have Adobe's Acrobat Reader. This reader is available free at the Adobe web site.

This site is maintained by the Administrative Office of the U.S. Courts on behalf of the Federal Judiciary.
The purpose of this site is to provide information about the U.S. District Court Violation Notice process.

97

45

G

98

Case 3:18-mj-20098-KSC-AJB   Document 26   Filed 10/10/18   PageID.732   Page 5 of 20

Case 3:19-cv-00733-AJB   Document 7-2   Filed 08/26/19   PageID.801   Page 48 of 108
Case 4:19-50366-06/08/2020   ID: 11715045-DktEntry: 9   Page: 102 of 235

**U.S. District Court**
**Southern District of California**
**Petty Offense Docket Sheet and Judgment Order**
**For 10/10/2018 08:30 AM Hearing Site: crtrm1F**
**Magistrate Judge: Bernard G. Skomal**

Date Oct 04, 2018

| Defendant Information | Citation | Hrg Type | Offense Information | Disposition | Proc. Fee | Special Assess. | Fine | Total Due |
|---|---|---|---|---|---|---|---|---|
| 3:17-po-02936-BGS USA vs Alejandromeza Uriel Alejandromeza | CVC 16028(a) | statcnf | CVC 16028(a) Fail to display evidence of financial responsibility when requested by peace off Violation Number 6939429 Violation Location CS81 | | 0.0 | 0.0 | 180.0 | 180.0 |
| 3:17-po-02936-BGS USA vs Alejandromeza Uriel Alejandromeza | CVC 12500(a) | statcnf | CVC 12500(a) Unlawful to drive unless licensed Violation Number 6939428 Violation Location CS81 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:17-po-02936-BGS USA vs Alejandromeza Uriel Alejandromeza | CVC 4000(a) | statcnf | CVC 4000(a) Registration required. Violation Number 6939426 Violation Location CS81 | | 0.0 | 0.0 | 180.0 | 180.0 |
| 3:17-po-02936-BGS USA vs Alejandromeza Uriel Alejandromeza | CVC 4462.5 | statcnf | CVC 4462.5 Unlawful display of evidence of registration Violation Number 6939430 Violation Location CS81 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01713-BGS USA vs Bors Timmothy S Bors | 36 CFR 2.31 | zzia | 36 CFR 2.31 Trespassing, Tampering and Vandalism Violation Number 7520675 Violation Location CS60 | Class B | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01326-BGS USA vs Bouton Brianna L Bouton | 21 USC 844 | statcnf | 21 USC 844 Possession of Controlled Substance / Marijuana (CVB Citation) Violation Number F5205168 Violation Location CS31 | Class A | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01642-BGS USA vs Brooks Jesse J Brooks | CVC 23152(a) | statcnf | CVC 23152(a) Driving under the influence of alcohol and/or drugs Violation Number 7777937 Violation Location CS2 | Class B | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:17-po-03022-BGS USA v. Cammarata Samantha M Cammarata | PC 459.5 | statcnf | PC 459.5 Shoplifting Violation Number 6816071 Violation Location CS2 | Class A | 0.0 | 0.0 | 0.0 | 0.0 |

47

EXHIBIT B

99



Case 3:18-mj-20098-KSC-AJB Document 26 Filed 10/10/18 PageID.733 Page 6 of 20
Magistrate Judge: Bernard G. Skomal

| Case | Code | Type | Description | Date | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-01715-BGS<br>USA vs Cardenas<br>Mark A Cardenas | 36 CFR 1.5 | ia | 36 CFR 1.5<br>Closure of Public Use Limits<br>Violation Number 7520652<br>Violation Location CS60 | Class B | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01715-BGS<br>USA vs Cardenas<br>Mark A Cardenas | 36 CFR 2.14 | ia | 36 CFR 2.14<br>Sanitation and Refuse<br>Violation Number 7520656<br>Violation Location CS60 | Class B | 0.0 | 0.0 | 230.0 | 230.0 |
| 3:18-po-01521-BGS<br>USA vs Cheatham<br>Joshua Cheatham | CVC 12500(a) | statcnf | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6398767<br>Violation Location CS2 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01555-BGS<br>USA vs Chen<br>Zhao Chen | 36 CFR 1.5 | statcnf | 36 CFR 1.5<br>Closure of Public Use Limits<br>Violation Number 6516198<br>Violation Location CS60 | Class B | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01826-BGS<br>USA vs Chen<br>Qingfa Chen | 36 CFR 2.2 | ia | 36 CFR 2.2<br>Wildlife Protection<br>Violation Number 6516230<br>Violation Location CS60 | Class B | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-00347-BGS<br>USA v. Farias<br>Ramiro Farias | CVC 14601.2(a) | statcnf | CVC 14601.2(a)<br>Driving while drivers license suspended or revoked for driving under influence<br>Violation Number 6938091<br>Violation Location CS81 | Class B | 25.0 | 0.0 | 0.0 | 25.0 |
| 3:18-po-00347-BGS<br>USA v. Farias<br>Ramiro Farias | CVC 16028(a) | statcnf | CVC 16028(a)<br>Fail to display evidence of financial responsibility when requested by peace off<br>Violation Number 6938093<br>Violation Location CS81 | NM<br>2018-03-08 | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-00347-BGS<br>USA v. Farias<br>Ramiro Farias | CVC 4000(a) | statcnf | CVC 4000(a)<br>Registration required.<br>Violation Number 6938092<br>Violation Location CS81 | NM<br>2018-03-08 | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-02031-BGS<br>USA vs Garcia<br>Emanuel Garcia | CVC 12500(b), (d) | statcnf | CVC 12500(b), (d)<br>Drivers license - out of classification<br>Violation Number 7472379<br>Violation Location CS81 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:17-po-02750-BGS<br>USA v. Garduno<br>Jasmine Garduno | CVC 4000(a) | statcnf | CVC 4000(a)<br>Registration required.<br>Violation Number 6937577<br>Violation Location CS81 | NM<br>2017-10-31 | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:17-po-02750-BGS<br>USA v. Garduno<br>Jasmine Garduno | CVC 12500(a) | statcnf | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6937576<br>Violation Location CS81 | | 0.0 | 0.0 | 0.0 | 0.0 |

EXHIBIT B

100

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-01524-BGS<br>USA vs Gaytan<br>Michelle R Gaytan | CVC 12500(a) | statcnf | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7079729<br>Violation Location CS2 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01730-BGS<br>USA vs Granillo<br>Karina I Granillo | 50 CFR 27.84 | statcnf | 50 CFR 27.84<br>Disturbing, molesting, or interfering with person<br>engaged in official business<br>Violation Number 6372186<br>Violation Location CS51    **Class B** | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:17-po-02068-BGS<br>USA v. Gutierrezzuniga<br>Beatriz Gutierrezzuniga | CVC 12500(a) | zzia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6937267<br>Violation Location CS81 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:17-po-02068-BGS<br>USA v. Gutierrezzuniga<br>Beatriz Gutierrezzuniga | CVC 4000(a) | zzia | CVC 4000(a)<br>Registration required.<br>Violation Number 6937268<br>Violation Location CS81 | FC<br>2017-08-26 | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:17-po-02068-BGS<br>USA v. Gutierrezzuniga<br>Beatriz Gutierrezzuniga | CVC 12500(a) | zzia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6937267<br>Violation Location CS81 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:17-po-02068-BGS<br>USA v. Gutierrezzuniga<br>Beatriz Gutierrezzuniga | CVC 4000(a) | zzia | CVC 4000(a)<br>Registration required.<br>Violation Number 6937268<br>Violation Location CS81 | FC<br>2017-08-26 | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02002-BGS<br>USA vs Herbert<br>Yahmyra M Herbert | 18 USC 113 | statcnf | 18 USC 113<br>Assault (CVB Citation)<br>Violation Number 7080378<br>Violation Location CS2    **Class B** | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01744-BGS<br>USA vs Lee<br>Benjamin Y Lee | 36 CFR 4.12 | ia | 36 CFR 4.12<br>Traffic Control Devices<br>Violation Number 6516050<br>Violation Location CS60    **Class B** | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01609-BGS<br>USA vs Lux<br>David W Lux | 36 CFR 261.5 | statcnf | 36 CFR 261.5<br>Fire<br>Violation Number FBGF000R<br>Violation Location CS31    **Class B** | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01945-BGS<br>USA vs Lwung<br>Erik C Lwung | CVC 23152(b) | ia | CVC 23152(b)<br>Driving with blood alcohol level of .08 or higher<br>Violation Number 6842202<br>Violation Location CS1    **Class B** | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01945-BGS<br>USA vs Lwung<br>Erik C Lwung | CVC 23222(b) | ia | CVC 23222(b)<br>Possession of marijuana by driver<br>Violation Number 6842204<br>Violation Location CS1 | | 0.0 | 0.0 | 0.0 | 0.0 |

EXHIBIT B

101

Page 4 of 6

Case 3:18-mj-20098-KSC-AJB Document 20 Filed 10/10/18 PageID.735 Page 8 of 20
Filed 10/10/2018 08:30 AM Hearing Site: CVB-SE
Magistrate Judge: Bernard G. Skomal

Date Oct 04, 2018

| Case / Name | Code | Type | Description | Date | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-01751-BGS<br>USA vs Morales<br>Jessica Morales | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or revoked for offenses<br>Violation Number 7471674<br>Violation Location CS81 | *Class B* | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:16-po-01964-BGS<br>USA v. Murray<br>Abel J Murray | 21 USC 841 | statcnf | 21 USC 841<br>Possession of Controlled Substance / Spice (CVB Citation)<br>Violation Number F4857401<br>Violation Location CS31 | *Class A* | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-02056-BGS<br>USA vs Nunez<br>Gabriel A Nunez | HSC 11350 | zzia | HSC 11350<br>Possession of a Controlled Substance<br>Violation Number 6371965<br>Violation Location CS51 | *Class A* | | 0.0 | 0.0 | 280.0 | 280.0 |
| 3:18-po-01531-BGS<br>USA vs Pangborn<br>Christopher A Pangborn | CVC 14601.2(a) | statcnf | CVC 14601.2(a)<br>Driving while drivers license suspended or revoked for driving under influence<br>Violation Number 6399385<br>Violation Location CS2 | *Class B* | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01532-BGS<br>USA vs Perez<br>Roemi L Perez | CVC 22350 | statcnf | CVC 22350<br>Violation of basic speed law<br>Violation Number 7079528<br>Violation Location CS2 | FC<br>2018-07-09 | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-01828-BGS<br>USA vs Prishker<br>Gisela J Prishker | 36 CFR 2.15 | ia | 36 CFR 2.15<br>Pets<br>Violation Number 7520634<br>Violation Location CS60 | *Class B* | | | | | |
| 3:18-po-01314-BGS<br>USA vs Ramos Jr<br>Roberto R Ramos Jr | CVC 12500(a) | statcnf | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7079563<br>Violation Location CS2 | | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-00312-BGS<br>USA vs Rivers<br>Gregory H Rivers | CVC 14601.1(a) | statcnf | CVC 14601.1(a)<br>Driving while drivers license suspended or revoked for offenses<br>Violation Number 7077626<br>Violation Location CS2 | *Class B* | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-02073-BGS<br>USA vs Sanchez<br>Ivana A Sanchez | 50 CFR 25.21 | statcnf | 50 CFR 25.21<br>Violation of refuge closure order<br>Violation Number 6372225<br>Violation Location CS51 | *Class B* | | 0.0 | 0.0 | 130.0 | 130.0 |
| 3:18-po-01380-BGS<br>USA vs Shumate<br>David S Shumate | 21 USC 844 | statcnf | 21 USC 844<br>Possession of Controlled Substance / Marijuana (CVB Citation)<br>Violation Number F5205167<br>Violation Location CS31 | *Class A* | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-02080-BGS<br>USA vs Torres<br>Carmen Torres | CVC 12951(a) | ia | CVC 12951(a)<br>Drivers License, to be in possession<br>Violation Number 7471354<br>Violation Location CS81 | | | 0.0 | 0.0 | 130.0 | 130.0 |

EXHIBIT B

102

Case 3:19-cv-01569-GPC-RBB Document 17-21 Filed 05/07/21 PageID.2351 of 108

Magistrate Judge: Bernard G. Skomal

| Case/Defendant | Statute | Type | Description | FC | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-01144-BGS<br>USA vs Valenzuela Jr<br>Carlos Valenzuela Jr | CVC 4464 | statcnf | CVC 4464<br>Displaying altered license plates<br>Violation Number 6939155<br>Violation Location CS81 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01144-BGS<br>USA vs Valenzuela Jr<br>Carlos Valenzuela Jr | CVC 12500(a) | statcnf | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6939154<br>Violation Location CS81 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01144-BGS<br>USA vs Valenzuela Jr<br>Carlos Valenzuela Jr | CVC 4462(a) | statcnf | CVC 4462(a)<br>Showing of registration upon demand<br>Violation Number 6939156<br>Violation Location CS81 | FC<br>2018-05-01 | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-01984-BGS<br>USA vs Varney<br>Christina T Varney | 21 USC 863 | statcnf | 21 USC 863<br>Drug Paraphernalia (CVB Citation)<br>Violation Number 7164422<br>Violation Location CS5 | Felony | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01984-BGS<br>USA vs Varney<br>Christina T Varney | 21 USC 844 | statcnf | 21 USC 844<br>Controlled Substance/Marijuana/Narcotics -<br>Possession (CVB Citation)<br>Violation Number 7164421<br>Violation Location CS5 | Class A | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01984-BGS<br>USA vs Varney<br>Christina T Varney | CVC 23152(e) | statcnf | CVC 23152(e)<br>Driving Under the Influence of Drugs<br>Violation Number 7164420<br>Violation Location CS5 | Class B | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01984-BGS<br>USA vs Varney<br>Christina T Varney | CVC 12500(a) | statcnf | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7164419<br>Violation Location CS5 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01399-BGS<br>USA vs Vazquez<br>Concepcion Vazquez | CVC 22500.1 | statcnf | CVC 22500.1<br>Stopping in designated fire lane<br>Violation Number 7471449<br>Violation Location CS81 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01702-BGS<br>USA vs Velasquez<br>Paul R Velasquez | CVC 24252(a)-<br>(c) | statcnf | CVC 24252(a)- (c)<br>Maintenance of lamps and devices required<br>Violation Number 6816363<br>Violation Location CS2 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01702-BGS<br>USA vs Velasquez<br>Paul R Velasquez | CVC 23152(a) | statcnf | CVC 23152(a)<br>Driving under the influence of alcohol and/or<br>drugs<br>Violation Number 6816362<br>Violation Location CS2 | Class B | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01702-BGS<br>USA vs Velasquez<br>Paul R Velasquez | CVC 23612 | statcnf | CVC 23612<br>Implied Consent to Chemical Testing<br>Violation Number 6816361<br>Violation Location CS2 | | 0.0 | 0.0 | 0.0 | 0.0 |

EXHIBIT B

**103**

51

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-01708-BGS<br>USA vs Works<br>Benjamin M Works | CVC 23612 | statcnf | CVC 23612<br>Implied Consent to Chemical Testing<br>Violation Number 7080210<br>Violation Location CS2 | | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01708-BGS<br>USA vs Works<br>Benjamin M Works | CVC 23152(a) | statcnf | CVC 23152(a)<br>Driving under the influence of alcohol and/or drugs<br>Violation Number 7080209<br>Violation Location CS2 | Class B | 0.0 | 0.0 | 0.0 | 0.0 |
| 3:18-po-01708-BGS<br>USA vs Works<br>Benjamin M Works | CVC 20002(a) | statcnf | CVC 20002(a)<br>Hit and run, property damage including vehicles<br>Violation Number 7080211<br>Violation Location CS2 | Class B | 0.0 | 0.0 | 0.0 | 0.0 |

EXHIBIT B

**U.S. District Court**
**Southern District of California**
**Petty Offense Docket Sheet and Judgment Order**
**For 10/10/2018 08:30 AM Hearing Site: SD00**
**Magistrate Judge: Bernard G. Skomal**

| Defendant Information | Citation | Hrg Type | Offense Information | Disposition | Proc. Fee | Special Assess. | Fine | Total Due |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02267-BGS<br>USA vs Andrade<br>Dustin K Andrade | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 6397605<br>Violation Location CS2 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02268-BGS<br>USA vs Biddles<br>Malcolm E Biddles | CVC 14601.2(a) | ia | CVC 14601.2(a)<br>Driving while drivers license suspended or<br>revoked for driving under influence<br>Violation Number 7080071<br>Violation Location CS2 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02269-BGS<br>USA vs Brown<br>Carl L Brown | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7080426<br>Violation Location CS2 | | 30.0 | 0.0 | 80.0 | 110.0 |
| 3:18-po-02270-BGS<br>USA vs Burton<br>Elijah A Burton | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 6816035<br>Violation Location CS2 | | 30.0 | 0.0 | 200.0 | 230.0 |
| 3:18-po-02270-BGS<br>USA vs Burton<br>Elijah A Burton | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6816037<br>Violation Location CS2 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02270-BGS<br>USA vs Burton<br>Elijah A Burton | CVC 16020(a) | ia | CVC 16020(a)<br>Maintain financial responsibility and carry<br>evidence in vehicle<br>Violation Number 6816036<br>Violation Location CS2 | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02271-BGS<br>USA vs Caraballopietri<br>Omar A Caraballopietri | CVC 22350 | ia | CVC 22350<br>Violation of basic speed law<br>Violation Number 7780644<br>Violation Location CS2 | | 30.0 | 0.0 | 270.0 | 300.0 |
| 3:18-po-02273-BGS<br>USA vs Huckleberry Ii<br>Walter C Huckleberry Ii | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7077465<br>Violation Location CS2 | | 30.0 | 0.0 | 0.0 | 30.0 |

EXHIBIT B

53



105

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02274-BGS<br>USA vs Keisker<br>Noelle F Keisker | 21 USC 844 | ia | 21 USC 844<br>Controlled Substance/Marijuana/Narcotics -<br>Possession (CVB Citation)<br>Violation Number 7778953<br>Violation Location CS2 | Class A | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02275-BGS<br>USA vs Quintin<br>Vanesa Quintin | 21 USC 844 | ia | 21 USC 844<br>Controlled Substance/Marijuana/Narcotics -<br>Possession (CVB Citation)<br>Violation Number 7778954<br>Violation Location CS2 | Class A | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02276-BGS<br>USA vs Sanchez<br>Jasmine Sanchez | PC 270 | ia | PC 270<br>Failure to provide for a minor child<br>Violation Number 7078806<br>Violation Location CS2 | Class A | 30.0 | 0.0 | 0.0 | 30.0 |

EXHIBIT B

**U.S. District Court**
**Southern District of California**
**Petty Offense Docket Sheet and Judgment Order**
**For 10/10/2018 08:30 AM Hearing Site: SD02**
**Magistrate Judge: Bernard G. Skomal**

| Defendant Information | Citation | Hrg Type | Offense Information | Disposition | Proc. Fee | Special Assess. | Fine | Total Due |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02277-BGS<br>USA vs Alcantara<br>Raul Alcantara | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471265<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02348-BGS<br>USA vs Arechiga<br>Jacqueline P Arechiga | 36 CFR 4.22 | ia | 36 CFR 4.22<br>Unsafe Operation<br>Violation Number 6516236<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 400.0 | 430.0 |
| 3:18-po-02278-BGS<br>USA vs Armenta<br>Benjamin A Armenta | CVC 16028(a) | ia | CVC 16028(a)<br>Fail to display evidence of financial<br>responsibility when requested by peace off<br>Violation Number 7471915<br>Violation Location CS81 | | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02278-BGS<br>USA vs Armenta<br>Benjamin A Armenta | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required,<br>Violation Number 7471914<br>Violation Location CS81 | | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02279-BGS<br>USA vs Avendano<br>Daniel Avendano | CVC 27360(a),<br>(b) | ia | CVC 27360(a), (b)<br>Mandatory use of child passenger restraints<br>Violation Number 7471268<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 300.0 | 330.0 |
| 3:18-po-02280-BGS<br>USA vs Bajko<br>Michael J Bajko | 43 CFR 8365.1-<br>4(a) | ia | 43 CFR 8365.1-4(a)<br>Failure to comply with officer, creating a<br>hazard, or nuisance<br>Violation Number 6497581<br>Violation Location CS41 | Class A | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02281-BGS<br>USA vs Ball<br>Brueanne C Ball | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 7471520<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02282-BGS<br>USA vs Barraza<br>Patrica Barraza | 36 CFR 261.53 | ia | 36 CFR 261.53<br>Special Closures<br>Violation Number F4857184<br>Violation Location CS31 | Class B | 30.0 | 0.0 | 50.0 | 80.0 |

55

EXHIBIT B



107

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02283-BGS<br>USA vs Beeckman<br>Christopher A Beeckman | 36 CFR 261.5 | ia | 36 CFR 261.5<br>Fire<br>Violation Number F4857892<br>Violation Location CS31 | Class B | | 30.0 | 0.0 | 350.0 | 380.0 |
| 3:18-po-02284-BGS<br>USA vs Beltrannoriega<br>Gerardo Beltrannoriega | CVC 16028(a) | ia | CVC 16028(a)<br>Fail to display evidence of financial<br>responsibility when requested by peace off<br>Violation Number 7471907<br>Violation Location CS81 | | | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02285-BGS<br>USA vs Camachogudino<br>Christian U Camachogudino | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7471921<br>Violation Location CS81 | | | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02286-BGS<br>USA vs Camachogudino<br>Christian U Camachogudino | CVC 16028(a) | ia | CVC 16028(a)<br>Fail to display evidence of financial<br>responsibility when requested by peace off<br>Violation Number 7471922<br>Violation Location CS81 | | | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02287-BGS<br>USA vs Camberos<br>Kevin J Camberos | 36 CFR 1.5 | ia | 36 CFR 1.5<br>Closure of Public Use Limits<br>Violation Number 7520653<br>Violation Location CS60 | Class B | | 30.0 | 0.0 | 75.0 | 105.0 |
| 3:18-po-02288-BGS<br>USA vs Canora<br>Susan J Canora | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7471923<br>Violation Location CS81 | | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02289-BGS<br>USA vs Chavezruiz<br>Jesus Chavezruiz | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 6939328<br>Violation Location CS81 | | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02289-BGS<br>USA vs Chavezruiz<br>Jesus Chavezruiz | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6939327<br>Violation Location CS81 | | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02290-BGS<br>USA vs Clark<br>Artesha Q Clark | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 7471899<br>Violation Location CS81 | Class B | | 30.0 | 0.0 | 500.0 | 530.0 |
| 3:18-po-02291-BGS<br>USA vs Cordovaquezada<br>Jose L Cordovaquezada | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7471271<br>Violation Location CS81 | | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02291-BGS<br>USA vs Cordovaquezada<br>Jose L Cordovaquezada | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471270<br>Violation Location CS81 | | | 30.0 | 0.0 | 0.0 | 30.0 |

EXHIBIT B

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02292-BGS<br>USA vs Cortez<br>Richard Cortez | 36 CFR 2.31 | ia | 36 CFR 2.31<br>Trespassing, Tampering and Vandalism<br>Violation Number 7520739<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02293-BGS<br>USA vs Diaz<br>Edwardo Diaz | 21 USC 844 | ia | 21 USC 844<br>Controlled Substance/Marijuana/Narcotics -<br>Possession (CVB Citation)<br>Violation Number F5463708<br>Violation Location CS31 | Class A | 30.0 | 0.0 | 220.0 | 250.0 |
| 3:18-po-02294-BGS<br>USA vs Diazbarraza<br>Axel A Diazbarraza | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471917<br>Violation Location CS81 | | 30.0 | 0.0 | 250.0 | 280.0 |
| 3:18-po-02295-BGS<br>USA vs Dreyer<br>Harry R Dreyer | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471260<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02296-BGS<br>USA vs Duarte Jr<br>Cesar Duarte Jr | 21 USC 844 | ia | 21 USC 844<br>Controlled Substance/Marijuana/Narcotics -<br>Possession (CVB Citation)<br>Violation Number F5463705<br>Violation Location CS31 | Class A | 30.0 | 0.0 | 220.0 | 250.0 |
| 3:18-po-02297-BGS<br>USA vs Ferreira<br>Jose C Ferreira | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 7471269<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02299-BGS<br>USA vs Floresrobles<br>Jose A Floresrobles | CVC 38020 | ia | CVC 38020<br>Off-highway vehicles identification required<br>Violation Number FBDK00ET<br>Violation Location CS31 | | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02300-BGS<br>USA vs Games<br>Sergio G Games | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 6939498<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02301-BGS<br>USA vs Gamez<br>Edgar J Gamez | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 7471522<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02302-BGS<br>USA vs Garcia<br>Juan L Garcia | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 6939330<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02303-BGS<br>USA vs Gomez<br>Issac Gomez | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471275<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |

EXHIBIT B

**109**

Case 3:18-mj-20098-KSC-AJB Document 26 Filed 10/10/18 PageID.743 Page 16 of 20

Magistrate Judge: Bernard G. Skomal

Date Oct 04, 2018

| Case / Defendant | Statute | | Description | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02304-BGS<br>USA vs Gonzalez<br>Justin P Gonzalez | 36 CFR 2.31 | ia | 36 CFR 2.31<br>Trespassing, Tampering and Vandalism<br>Violation Number 6516128<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02305-BGS<br>USA vs Gonzalez<br>Linda E Gonzalez | CVC 16028(a) | ia | CVC 16028(a)<br>Fail to display evidence of financial responsibility when requested by peace off<br>Violation Number 6939500<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02305-BGS<br>USA vs Gonzalez<br>Linda E Gonzalez | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6939499<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02306-BGS<br>USA vs Gonzalez<br>Sergio D Gonzalez | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471521<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02307-BGS<br>USA vs Guttmann<br>Jared L Guttmann | 36 CFR 261.17 | ia | 36 CFR 261.17<br>Recreation Fees<br>Violation Number F4856654<br>Violation Location CS31 | | 30.0 | 0.0 | 30.0 | 60.0 |
| 3:18-po-02308-BGS<br>USA vs Hernandez<br>Sarah Hernandez | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7471274<br>Violation Location CS81 | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02308-BGS<br>USA vs Hernandez<br>Sarah Hernandez | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471273<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02309-BGS<br>USA vs Lai<br>Maggie Lai | 36 CFR 2.31 | ia | 36 CFR 2.31<br>Trespassing, Tampering and Vandalism<br>Violation Number 7520741<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02310-BGS<br>USA vs Lopez<br>Jovanni Lopez | CVC 26302(a)-(d) | ia | CVC 26302(a)- (d)<br>Brakes- trailer requirements specified<br>Violation Number 6497590<br>Violation Location CS41 | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02311-BGS<br>USA vs Macias<br>Samuel R Macias | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7471491<br>Violation Location CS81 | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02312-BGS<br>USA vs Martinezvazquez<br>Juan A Martinezvazquez | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 6939494<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02313-BGS<br>USA vs Mccoy Ii<br>Kenneth R Mccoy Ii | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 6939333<br>Violation Location CS81 | | 30.0 | 0.0 | 100.0 | 130.0 |

EXHIBIT B

110

Case 3:19-cr-03759-GPC Document 17-2 Filed 06/08/21 PageID.835 of 108

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02313-BGS<br>USA vs Mccoy Ii<br>Kenneth R Mccoy Ii | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6939332<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02315-BGS<br>USA vs Meza<br>Jair Meza | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7471908<br>Violation Location CS81 | | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02328-BGS *SEALED*<br>USA vs Minor Child<br>Minor Child | 36 CFR 261.53 | ia | 36 CFR 261.53<br>Special Closures<br>Violation Number F5205300<br>Violation Location CS31 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02316-BGS<br>USA vs Mirandaduarte<br>Oskarcesar Mirandaduarte | CVC 12500(b), (d) | ia | CVC 12500(b), (d)<br>Drivers license - out of classification<br>Violation Number 7472492<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02317-BGS<br>USA vs Morris<br>Nathaniel I Morris | 36 CFR 2.31 | ia | 36 CFR 2.31<br>Trespassing, Tampering and Vandalism<br>Violation Number 6516243<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02318-BGS<br>USA vs Munozmoreno<br>Joel Munozmoreno | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7471924<br>Violation Location CS81 | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02320-BGS<br>USA vs Murillo<br>Jorge A Murillo | CVC 16028(a) | ia | CVC 16028(a)<br>Fail to display evidence of financial<br>responsibility when requested by peace off<br>Violation Number 6939495<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02321-BGS<br>USA vs Nunez<br>Esteban Nunez | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471523<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02319-BGS<br>USA vs Ortiz<br>Ranulfo C Ortiz | 41 CFR 102-74.430 | ia | 41 CFR 102-74.430<br>Conduct on Federal Property - Vehicular and<br>Pedestrian Traffic<br>Violation Number 6938201<br>Violation Location CS81 | | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02322-BGS<br>USA vs Padillapuerto<br>Estefania Padillapuerto | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471264<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02323-BGS<br>USA vs Peinado<br>Esequiel Peinado | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 7471896<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 500.0 | 530.0 |

EXHIBIT B

111

For 10/10/2018 08:30 AM Hearing Site: S003
Magistrate Judge: Bernard G. Skomal

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02324-BGS<br>USA vs Perez<br>Gustavo A Perez | CVC 26302(a)-<br>(d) | ia | CVC 26302(a)- (d)<br>Brakes- trailer requirements specified<br>Violation Number 6497591<br>Violation Location CS41 | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02325-BGS<br>USA vs Perez<br>Jaime E Perez | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 6938300<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02326-BGS<br>USA vs Pinnick<br>Samantha A Pinnick | CVC 16028(a) | ia | CVC 16028(a)<br>Fail to display evidence of financial<br>responsibility when requested by peace off<br>Violation Number 7471898<br>Violation Location CS81 | | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02327-BGS<br>USA vs Ponce Jr<br>Sergio Ponce Jr | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471272<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02329-BGS<br>USA vs Ramirezflores<br>Jorge Ramirezflores | CVC 12500(b),<br>(d) | ia | CVC 12500(b), (d)<br>Drivers license - out of classification<br>Violation Number 6939336<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02330-BGS<br>USA vs Rangeljimenez<br>Karina Rangeljimenez | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 6939497<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02330-BGS<br>USA vs Rangeljimenez<br>Karina Rangeljimenez | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 6939496<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02331-BGS<br>USA vs Rios<br>Oscar J Rios | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 7471916<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 200.0 | 230.0 |
| 3:18-po-02332-BGS<br>USA vs Rodriguez<br>Anthony Rodriguez | 36 CFR 261.53 | ia | 36 CFR 261.53<br>Special Closures<br>Violation Number F4857185<br>Violation Location CS31 | Class B | 30.0 | 0.0 | 50.0 | 80.0 |
| 3:18-po-02333-BGS<br>USA vs Rodriguez<br>Manuel Rodriguez | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or<br>revoked for offenses<br>Violation Number 7471259<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02334-BGS<br>USA vs Rodriguez<br>Yvette Rodriguez | 36 CFR 2.31 | ia | 36 CFR 2.31<br>Trespassing, Tampering and Vandalism<br>Violation Number 6516099<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 150.0 | 180.0 |

EXHIBIT B

112

Case 3:19-cr-04573-GPC Document 1-21 Filed 08/08/2018 PageID.50 Page 235 of 108

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02335-BGS<br>USA vs Romero<br>Alejandra Y Romero | 21 USC 844 | ia | 21 USC 844<br>Controlled Substance/Marijuana/Narcotics - Possession (CVB Citation)<br>Violation Number F5463707<br>Violation Location CS31 | Class A | 30.0 | 0.0 | 220.0 | 250.0 |
| 3:18-po-02336-BGS<br>USA vs Rosas<br>Lauro J Rosas | CVC 14601.2(a) | ia | CVC 14601.2(a)<br>Driving while drivers license suspended or revoked for driving under influence<br>Violation Number 7471266<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02336-BGS<br>USA vs Rosas<br>Lauro J Rosas | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7471267<br>Violation Location CS81 | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02337-BGS<br>USA vs Sauceda<br>Leslie Sauceda | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or revoked for offenses<br>Violation Number 6939326<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02338-BGS<br>USA vs Seggal<br>Ryan M Seggal | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or revoked for offenses<br>Violation Number F4857554<br>Violation Location CS31 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02339-BGS<br>USA vs Serrano<br>Angelina Serrano | CVC 12500(a) | ia | CVC 12500(a)<br>Unlawful to drive unless licensed<br>Violation Number 7471262<br>Violation Location CS81 | | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02340-BGS<br>USA vs Soto<br>Ruben Soto | 36 CFR 2.31 | ia | 36 CFR 2.31<br>Trespassing, Tampering and Vandalism<br>Violation Number 6516240<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02341-BGS<br>USA vs Tabali<br>Brian L Tabali | CVC 14601.1(a) | ia | CVC 14601.1(a)<br>Driving while drivers license suspended or revoked for offenses<br>Violation Number 6939331<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |
| 3:18-po-02342-BGS<br>USA vs Valerio<br>Amy Valerio | CVC 27360(a), (b) | ia | CVC 27360(a), (b)<br>Mandatory use of child passenger restraints<br>Violation Number 6939256<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02342-BGS<br>USA vs Valerio<br>Amy Valerio | CVC 14601(a) | ia | CVC 14601(a)<br>Driving while drivers license suspended or revoked for reckless or negligent<br>Violation Number 6939255<br>Violation Location CS81 | Class B | 30.0 | 0.0 | 0.0 | 30.0 |

EXHIBIT B

113

Case 3:18-mj-20098-KSC-AJB Document 17-2 Filed 06/04/2019 PageID.2562 of 108

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3:18-po-02343-BGS<br>USA vs Varela<br>Analia U Varela | CVC 38505 | ia | CVC 38505<br>Operation of all-terrain vehicle without safety helmet prohibited<br>Violation Number F5458343<br>Violation Location CS31 | | 30.0 | 0.0 | 25.0 | 55.0 |
| 3:18-po-02344-BGS<br>USA vs Vargas<br>Manuel Vargas | 36 CFR 2.31 | ia | 36 CFR 2.31<br>Trespassing, Tampering and Vandalism<br>Violation Number 6516098<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02345-BGS<br>USA vs Vega<br>Anthony Vega | 36 CFR 2.31 | ia | 36 CFR 2.31<br>Trespassing, Tampering and Vandalism<br>Violation Number 6516242<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 150.0 | 180.0 |
| 3:18-po-02346-BGS<br>USA vs Villafana Jr<br>Felipe Villafana Jr | CVC 4000(a) | ia | CVC 4000(a)<br>Registration required.<br>Violation Number 7471910<br>Violation Location CS81 | | 30.0 | 0.0 | 100.0 | 130.0 |
| 3:18-po-02347-BGS<br>USA vs Zehner<br>Audrey Zehner | 36 CFR 4.12 | ia | 36 CFR 4.12<br>Traffic Control Devices<br>Violation Number 6516176<br>Violation Location CS60 | Class B | 30.0 | 0.0 | 100.0 | 130.0 |

EXHIBIT B

114

H

# CVB offenses under Title 18
## July 9, 2018-July 9, 2019

| Disposition | Number | Percentage of Total |
|---|---|---|
| Dismissed | 152 | 39.7% |
| FTA (Failure to Appear) | 88 | 23% |
| FTA* (Failure to Appear but case dismissed anyway) | 46 | 12% |
| Forfeiture of collateral | 5 | 1.3% |
| Pending | 92 | 24% |
| **Total** | **383** | **100%** |

## **CVB failure to appear rate: 35%**

| CASE NAME | CASE NO. | STATUTE | OFFENSE | Class | DISPO |
|---|---|---|---|---|---|
| U.S. v. Newberry | 19-po-1032 | 18 USC 73 | Obstruction of justice | A | Pending |
| U.S. v. Burton | 18-po-1644 | 18 USC 111 | Assault on an officer | A | FTA |
| U.S. v. Burton | 18-po-1644 | 18 USC 111 | Assault on an officer | A | FTA |
| U.S. v. Crawford | 18-po-1793 | 18 USC 111 | Assault on an officer | A | FTA |
| U.S. v. Fant | 18-po-1799 | 18 USC 111 | Assault on an officer | A | Dismissed |
| U.S. v. McKinney | 18-po-1807 | 18 USC 111 | Assault on an officer | A | Dismissed |
| U.S. v. Williams | 18-po-1989 | 18 USC 111 | Assault on an officer | A | Dismissed |
| U.S. v. Reed | 18-po-2155 | 18 USC 111 | Assault on an officer | A | FTA |
| U.S. v. Sherman | 19-po-6 | 18 USC 111 | Assault on an officer | A | FTA |
| U.S. v. Oakes | 19-po-68 | 18 USC 111 | Assault on an officer | A | Pending |
| U.S. v. Leichtfuss | 19-po-280 | 18 USC 111 | Assault on an officer | A | Pending |
| U.S. v. Smith | 19-po-1143 | 18 USC 111 | Assault on an officer | A | FTA* |
| U.S. v. Foster | 19-po-1463 | 18 USC 111 | Assault on an officer | A | Pending |
| U.S. v. Adonivahu | 19-po-111 | 18 USC 111 | Assault on an officer | A | FTA |
| U.S. v. Arevalo | 18-po-1639 | 18 USC 113 | Assault in maritime juris. | B | FTA* |
| U.S. v. Coleman | 18-po-1648 | 18 USC 113 | Assault in maritime juris. | B | Dismissed |
| U.S. v. Kline | 18-po-1844 | 18 USC 113 | Assault in maritime juris. | B | FTA |
| U.S. v. Milano | 18-po-1870 | 18 USC 113 | Assault in maritime juris. | B | Dismissed |
| U.S. v. Lopez | 18-po-1903 | 18 USC 113 | Assault in maritime juris. | B | Dismissed |
| U.S. v. Drinan | 18-po-2147 | 18 USC 113 | Assault in maritime juris. | B | Dismissed |
| U.S. v. Herbert | 18-po-2002 | 18 USC 113 | Assault in maritime juris. | B | FTA* |
| U.S. v. Smith-Jarvis | 18-po-2006 | 18 USC 113 | Assault in maritime juris. | B | FTA |
| U.S. v. Bell | 18-po-2107 | 18 USC 113 | Assault in maritime juris. | B | Dismissed |
| U.S. v. Mullins | 18-po-2168 | 18 USC 113 | Assault in maritime juris. | B | Dismissed |
| U.S. v. Schilling | 18-po-2169 | 18 USC 113 | Assault in maritime juris. | B | Dismissed |
| U.S. v. Garza | 18-po-2349 | 18 USC 113 | Assault in maritime juris. | B | Dismissed |
| U.S. v. Watts | 18-po-2373 | 18 USC 113 | Assault in maritime juris. | B | Dismissed |

116

| U.S. v. Almeida | 18-po-2378 | 18 USC 113 | Assault in maritime juris. | B | FTA |
|---|---|---|---|---|---|
| U.S. v. Echevarria | 18-po-2388 | 18 USC 113 | Assault in maritime juris. | B | FTA |
| U.S. v. Leveille | 18-po-2462 | 18 USC 113 | Assault in maritime juris. | B | FTA |
| U.S. v. Noe | 19-po-848 | 18 USC 113 | Assault in maritime juris. | B | FTA |
| U.S. v. Johnson | 19-po-1335 | 18 USC 113 | Assault in maritime juris. | B | Pending |
| U.S. v. Klassen | 19-po-1530 | 18 USC 113 | Assault in maritime juris. | B | Pending |
| U.S. v. Beller | 18-po-1835 | 18 USC 113 | Assault in maritime juris. | B | Pending |
| U.S. v. Barquin | 18-po-1789 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Berry | 18-po-1790 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Chambers | 18-po-1792 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Del Valle | 18-po-1795 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Gillian | 18-po-1801 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Liu | 18-po-1805 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Mika | 18-po-1809 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Reyno | 18-po-1812 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Ruffier | 18-po-1814 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Valentine | 18-po-1817 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Plewa | 18-po-1877 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Thomas | 18-po-1885 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Zamora | 18-po-1892 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Edano | 18-po-2113 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Everett | 18-po-2114 | 18 USC 651 | Theft of govt property | A | FTA |
| U.S. v. Gutierrez | 18-po-2119 | 18 USC 641 | Conspiracy to commit theft of govt property | A | Dismissed |
| U.S. v. Hopper | 18-po-2122 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Odinga | 18-po-2129 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Pierson | 18-po-2132 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Plasencia | 18-po-2133 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Romero | 18-po-2135 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Secasiu | 18-po-2136 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Tolentino | 18-po-2139 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Adejado | 18-po-2350 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Byrd | 18-po-2354 | 18 USC 641 | Theft of govt property | A | FTA* |
| U.S. v. Cordening | 18-po-2356 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Macpherson | 18-po-2362 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Nisperos | 18-po-2366 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Zielinski | 18-po-2374 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Burba | 18-po-2630 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Mulligan | 18-po-2636 | 18 USC 641 | Theft of govt property | A | FTA* |
| U.S. v. Belais | 18-po-2858 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Baysa | 18-po-2859 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Billen | 18-po-2862 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Gamban | 18-po-2869 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Gilland | 18-po-2871 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Gray | 18-po-2874 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Hunter | 18-po-2877 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Lopez | 18-po-2884 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Mathena | 18-po-2891 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Ray | 18-po-2901 | 18 USC 641 | Theft of govt property | A | Dismissed |

| U.S. v. Tran | 18-po-2916 | 18 USC 641 | Theft of govt property | A | Dismissed |
|---|---|---|---|---|---|
| U.S. v. Williams | 18-po-2919 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Stogsdill | 18-po-3098 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Lopez | 18-po-3096 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Layne | 19-po-232 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Berger | 19-po-250 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Enciso | 19-po-255 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Taylor | 19-po-267 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Giron | 19-po-287 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Rothhardt | 19-po-381 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Balagtas | 19-po-665 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. De Jesus | 19-po-674 | 18 USC 641 | Theft of govt property | A | FTA* |
| U.S. v. Delgadillo | 19-po-675 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Goodman | 19-po-678 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Medine | 19-po-687 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Ortiz | 19-po-693 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Rosenberg | 19-po-700 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Villalva | 19-po-712 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Garcia | 19-po-720 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Casteneda | 19-po-738 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Maloney | 19-po-1026 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Spinoza | 19-po-1030 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Reyna | 19-po-1258 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Belgrove | 19-po-1344 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Cayabyab | 19-po-1348 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Cervantes | 19-po-1349 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Coleman | 19-po-1350 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Coerces | 19-po-1352 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Gutierrez | 19-po-1359 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Meneses | 19-po-1383 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Rivera | 19-po-1392 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Rodriguez | 19-po-1393 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Smith | 19-po-1397 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Trevizo | 19-po-1399 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Uribe | 19-po-1401 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Brown | 19-po-1411 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Sandoval | 19-po-1417 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Garcia | 19-po-1629 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Huang | 19-po-1635 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Llorico | 19-po-1641 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Martinez | 19-po-1644 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Norsworthy | 19-po-1651 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Roberts | 19-po-1659 | 18 USC 641 | Theft of govt property | A | Dismissed |
| U.S. v. Schweitzer | 19-po-1663 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Shaw | 19-po-1664 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Bultman | 19-po-1702 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Burns | 19-po-1703 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Linder | 19-po-1706 | 18 USC 641 | Theft of govt property | A | FTA |
| U.S. v. Todd | 19-po-1732 | 18 USC 641 | Theft of govt property | A | FTA |

| U.S. v. Cavazos | 19-po-1838 | 18 USC 641 | Theft of govt property | A | Pending |
|---|---|---|---|---|---|
| U.S. v. Dang | 19-po-1839 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Lang | 19-po-1849 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Manzano | 19-po-1851 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Paris | 19-po-1857 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Ramos | 19-po-1858 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Reese | 19-po-1860 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Robinson | 19-po-1861 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Sanchez | 19-po-1862 | 18 USC 641 | Theft of govt property | A | Pending |
| U.S. v. Contreras | 18-po-1837 | 18 USC 661 | Theft in maritime juris. | A | Dismissed |
| U.S. v. Dyer | 18-po-1838 | 18 USC 661 | Theft in maritime juris. | A | Dismissed |
| U.S. v. Silva | 18-po-2252 | 18 USC 661 | Theft in maritime juris. | A | Dismissed |
| U.S. v. Remsnyder | 18-po-2625 | 18 USC 661 | Theft in maritime juris. | A | FTA |
| U.S. v. Cibelli | 18-po-2641 | 18 USC 661 | Theft in maritime juris. | A | FTA |
| U.S. v. Clark | 18-po-1919 | 18 USC 701 | Unlawful use of govt ID | B | Dismissed |
| U.S. v. Reed | 18-po-2155 | 18 USC 752 | Escape | A | FTA |
| U.S. v. Williams | 18-po-2521 | 18 USC 873 | Blackmail | A | Dismissed |
| U.S. v. De la Rosa | 18-po-2948 | 18 USC 922 | Prohibited poss.-firearm | Felony | Dismissed |
| U.S. v. Neal | 18-po-1872 | 18 USC 930 | Poss. weapon fed. facility | A | Dismissed |
| U.S. v. Smith | 18-po-2920 | 18 USC 930 | Poss. weapon fed. facility | A | Pending |
| U.S. v. Lawton | 19-po-2 | 18 USC 930 | Poss. weapon fed. facility | A | Dismissed |
| U.S. v. Cabanilla | 18-po-1835 | 18 USC 1028 | Identity theft | Felony | Dismissed |
| U.S. v. Contreras | 18-po-1837 | 18 USC 1028 | Identity theft | Felony | Dismissed |
| U.S. v. Echavarria | 18-po-1929 | 18 USC 1028 | Identity theft | Felony | Dismissed |
| U.S. v. Lopez | 18-po-3096 | 18 USC 1028 | Identity theft | Felony | Dismissed |
| U.S. v. Contreras | 18-po-1837 | 18 USC 1029 | ID Fraud | Felony | Dismissed |
| U.S. v. Gillian | 18-po-1801 | 18 USC 1114 | Protection of officers | Felony | Dismissed |
| U.S. v. Obeso | 18-po-2525 | 18 USC 1361 | Damage to govt property | A | Dismissed |
| U.S. v. Ramos | 19-po-369 | 18 USC 1361 | Damage to govt property | A | Dismissed |
| U.S. v. Lindsey | 18-po-1669 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Mckinley | 18-po-1673 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Banuelos | 18-po-1831 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Cabanilla | 18-po-1835 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v Carney | 18-po-1836 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Bickel | 18-po-1855 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Escalera | 18-po-1858 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Guevara | 18-po-1863 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Santos | 18-po-1881 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Taylor | 18-po-1884 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Woodcock | 18-po-1891 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Eichelberger | 18-po-1930 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Gerber | 18-po-1934 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Larose | 18-po-1943 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Cibelli | 18-po-2000 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Bartlett | 18-po-2106 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Cedillo | 18-po-2109 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Burqueno | 18-po-2352 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v Perez | 18-po-2369 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Rau | 18-po-2375 | 18 USC 1382 | Entering federal property | B | FTA* |

| U.S. v. Burhani | 18-po-2383 | 18 USC 1382 | Entering federal property | B | FTA |
|---|---|---|---|---|---|
| U.S. v. Zahr | 18-po-2415 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Anderson | 18-po-2522 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Couvillon | 18-po-2524 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Gomez | 18-po-2615 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Remsnyder | 18-po-2625 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Bernoski | 18-po-2628 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Cibelli | 18-po-2641 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Ruiz | 18-po-2664 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Sandoval | 18-po-2665 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Mada | 18-po-2886 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Markovich | 18-po-2890 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Lockery | 18-po-3041 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Chandler | 18-po-3060 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Hernandez | 18-po-3069 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Linares | 18-po-3076 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Luburic | 18-po-3077 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Wiedle | 18-po-3092 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Reid | 19-po-5 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Baucer | 19-po-135 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Mehrvar | 19-po-234 | 18 USC 1382 | Entering federal property | B | Pending |
| U.S. v. Renteria | 19-po-238 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Lozano | 19-po-259 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Robinson | 19-po-264 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Amirhossgin | 19-po-273 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Shivers | 19-po-284 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Spinoza | 19-po-291 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Maombi | 19-po-344 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Blomker | 19-po-630 | 18 USC 1382 | Entering federal property | B | Pending |
| U.S. v. Iii | 19-po-649 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Treadwell | 19-po-657 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Howard | 19-po-679 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Moss | 19-po-690 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Salyer | 19-po-703 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Zhang | 19-po-716 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Gonzalez | 19-po-726 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Amanpoor | 19-po-736 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Colgin | 19-po-739 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Edwards | 19-po-740 | 18 USC 1382 | Entering federal property | B | Pending |
| U.S. v. Parker | 19-po-749 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Pinkston | 19-po-750 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Varner | 19-po-755 | 18 USC 1382 | Entering federal property | B | Pending |
| U.S. v. Martin | 19-po-773 | 18 USC 1382 | Entering federal property | B | Pending |
| U.S. v. Reyla | 19-po-779 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Sullins | 19-po-868 | 18 USC 1382 | Entering federal property | B | Pending |
| U.S. v. Rivera | 19-po-1012 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Renfroe | 19-po-1029 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Apoadi | 19-po-1036 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Lazarof | 19-po-1161 | 18 USC 1382 | Entering federal property | B | Pending |

| U.S. v. Pacheco | 19-po-1387 | 18 USC 1382 | Entering federal property | B | FTA |
|---|---|---|---|---|---|
| U.S. v. Alper | 19-po-1410 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Nolan | 19-po-1414 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Penaloza | 19-po-1415 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Huddleston | 19-po-1429 | 18 USC 1382 | Entering federal property | B | Pending |
| U.S. v. Roberts | 19-po-1435 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Castro-bran | 19-po-1450 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Doty | 19-po-1459 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Alale | 19-po-1617 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Prince | 19-po-1655 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Castro-bran | 19-po-1674 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Mohareb | 19-po-1678 | 18 USC 1382 | Entering federal property | B | Pending |
| U.S. v. Dent | 19-po-1684 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Haney | 19-po-1685 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Merriwether | 19-po-1692 | 18 USC 1382 | Entering federal property | B | FTA* |
| U.S. v. Tew | 19-po-1701 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Garcia | 19-po-1704 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Valasek | 19-po-1709 | 18 USC 1382 | Entering federal property | B | Pending |
| U.S. v. Trussell | 19-po-1815 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Davis | 19-po-1840 | 18 USC 1382 | Entering federal property | B | Dismissed |
| U.S. v. Glaser | 19-po-1843 | 18 USC 1382 | Entering federal property | B | FTA |
| U.S. v. Lindsey | 18-po-1669 | 18 USC 2112 | Robbery of U.S. property | Felony | FTA |
| U.S. v. Reed | 18-po-1850 | 18 USC 2261 | Interstate domestic | Felony | FTA |
| U.S. v. Jones | 18-po-2093 | 18 USC 2261 | Interstate domestic violence | Felony | Dismissed |
| U.S. v. Posey | 18-po-2154 | 18 USC 2261 | Interstate domestic | Felony | Dismissed |
| U.S. v. Leslie | 18-po-2396 | 18 USC 2261 | Interstate domestic | Felony | Dismissed |
| U.S. v. Linzy | 18-po-2398 | 18 USC 2261 | Interstate domestic | Felony | Dismissed |
| U.S. v. Failma | 18-po-2646 | 18 USC 2261 | Interstate domestic | Felony | Dismissed |
| U.S. v. Santos | 18-po-2666 | 18 USC 2261 | Interstate domestic | Felony | Pending |
| U.S. v. German | 18-po-3066 | 18 USC 2261 | Interstate domestic | Felony | FTA* |
| U.S. v. Jimenez | 19-po-1825 | 18 USC 2261 | Interstate domestic | Felony | Pending |
| U.S. v. Parsons | 18-po-2148 | 18 USC 2262 | Viol. of protection order | Felony | FTA |
| U.S. v. Croton | 18-po-1992 | 21 USC 841 | Poss. of narcotics-distrib. | Felony | Dismissed |
| U.S. v. Lozano | 19-po-259 | 21 USC 841 | Possession of cont. sub. | Felony | FTA* |
| U.S. v. Williams | 18-po-2260 | 21 USC 842 | Possession of marijuana | A | FTA* |
| U.S. v. Coleman | 18-po-1648 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Guzman | 18-po-1735 | 21 USC 844 | Possession of cont. sub. | A | FTA |
| U.S. v. Fayemiwo | 18-po-1800 | 21 USC 844 | Possession of marijuana | A | Forfeiture |
| U.S. v. Miller | 18-po-1810 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Carroll | 18-po-1856 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Figueroa | 18-po-1860 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Nguyen | 18-po-1874 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Perez | 18-po-1876 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Taylor | 18-po-1884 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Waller | 18-po-1887 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Wilson | 18-po-1890 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Alamad | 18-po-1904 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Coffey | 18-po-1920 | 21 USC 844 | Possession of marijuana | A | Dismissed |

| U.S. v. Dipietro | 18-po-1926 | 21 USC 844 | Possession of marijuana | A | Dismissed |
|---|---|---|---|---|---|
| U.S. v. Echavarria | 18-po-1929 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Morgan | 18-po-1956 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Reynoso | 18-po-1966 | 21 USC 844 | Possession of cont. sub. | A | FTA |
| U.S. v. Varney | 18-po-1984 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Glasberg | 18-po-2036 | 21 USC 844 | Possession of marijuana | A | Forfeiture |
| U.S. v. Goebel | 18-po-2090 | 21 USC 844 | Possession of heroin | A | Dismissed |
| U.S. v. Hunter | 18-po-2092 | 21 USC 844 | Possession of cont. sub. | A | FTA |
| U.S. v. Spencer | 18-po-2101 | 21 USC 844 | Possession of narcotics | A | Dismissed |
| U.S. v. Heredia | 18-po-2120 | 21 USC 844 | Possession of narcotics | A | FTA |
| U.S. v. Sedano | 18-po-2137 | 21 USC 844 | Possession of cont.. sub. | A | FTA |
| U.S. v. Villasenor | 18-po-2143 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Reed | 18-po-2155 | 21 USC 844 | Possession of cocaine | A | FTA |
| U.S. v. Vicks | 18-po-2157 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Barnette | 18-po-2159 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Masip | 18-po-2224 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Pena | 18-po-2233 | 21 USC 844 | Possession of cont. sub. | A | FTA |
| U.S. v. Reinsch | 18-po-2240 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Vandersluis | 18-po-2255 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Keisker | 18-po-2274 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Quintin | 18-po-2275 | 21 USC 844 | Possession of cocaine | A | FTA |
| U.S. v. Diaz | 18-po-2293 | 21 USC 844 | Possession of control sub. | A | FTA |
| U.S. v. Duarte | 18-po-2296 | 21 USC 844 | Possession of marijuana | A | Forfeiture |
| U.S. v. Romero | 18-po-2335 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Allen | 18-po-2351 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Juarez | 18-po-2361 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Clark | 18-po-2386 | 21 USC 844 | Possession of cont. sub. | A | FTA |
| U.S. v. Salinas | 18-po-2410 | 21 USC 844 | Possession of cont. sub. | A | FTA |
| U.S. v. Lynn | 18-po-2465 | 21 USC 844 | Possession of narcotics | A | Dismissed |
| U.S. v. Montanez | 18-po-2470 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Osawa | 18-po-2478 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Ruiz | 18-po-2490 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Russell | 18-po-2491 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Suazo | 18-po-2500 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Torres | 18-po-2504 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Toure | 18-po-2505 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Dutton | 18-po-2551 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Flores | 18-po-2611 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Guzman | 18-po-2616 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Chapman | 18-po-2631 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Judge | 18-po-2655 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Krause | 18-po-2712 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Nguyen | 18-po-2728 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Roybal | 18-po-2745 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Low | 18-po-2885 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Coe | 18-po-2939 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Ajamu | 18-po-3033 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. McMahan | 18-po-3045 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Reynoso | 18-po-3049 | 21 USC 844 | Possession of marijuana | A | FTA* |

**122**

| U.S. v. St. Gelais | 18-po-3087 | 21 USC 844 | Possession of cont. sub. | A | Dismissed |
|---|---|---|---|---|---|
| U.S. v. Reid | 19-po-4 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Breidinger | 19-po-10 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Dinh | 19-po-32 | 21 USC 844 | Possession of cont. sub. | A | FTA |
| U.S. v. Villegas | 19-po-102 | 21 USC 844 | Possession of cont. sub. | A | Dismissed |
| U.S. v. Amedee | 18-po-223 | 21 USC 844 | Possession of cont. sub. | A | Pending |
| U.S. v. Layne | 19-po-232 | 21 USC 844 | Possession of cont. sub. | A | Dismissed |
| U.S. v. Dominguez | 19-po-254 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Green | 19-po-325 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Larda | 19-po-337 | 21 USC 844 | Possession of cont. sub. | A | Dismissed |
| U.S. v. Damato | 19-po-636 | 21 USC 844 | Possession of cont. sub. | A | Pending |
| U.S. v. Newberry | 19-po-648 | 21 USC 844 | Possession of cont. sub. | A | Dismissed |
| U.S. v. Sanchez | 19-po-656 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Marinelli | 19-po-683 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Mejia | 19-po-688 | 21 USC 844 | Possession of marijuana | A | FTA |
| U.S. v. Mouton | 19-po-691 | 21 USC 844 | Possession of cont. sub. | A | Pending |
| U.S. v. Ruiz | 19-po-701 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Watkins | 19-po-734 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Hodge | 19-po-744 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Strickland | 19-po-754 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Estrada | 19-po-811 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Weaver | 19-po-879 | 21 USC 844 | Poss. of amphetamine | A | Pending |
| U.S. v. Dooley | 19-po-937 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Niupulusu | 19-po-1009 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Passman | 19-po-1010 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Underwood | 19-po-1016 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Bynum | 19-po-1023 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Dooley | 19-po-1034 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Benevides | 19-po-1059 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Navarro | 19-po-1123 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Potter | 19-po-1131 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Da Silva | 19-po-1354 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Hodges | 19-po-1365 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Trevizo | 19-po-1399 | 21 USC 844 | Possession of cont. sub. | A | FTA |
| U.S. v. Anglovich | 19-po-1441 | 21 USC 844 | Possession of marijuana | A | Forfeiture |
| U.S. v. Herring | 19-po-1469 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Holm | 19-po-1470 | 21 USC 844 | Poss. of hydrocodone | A | Pending |
| U.S. v. Holm | 19-po-1470 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Romaniuk | 19-po-1503 | 21 USC 844 | Possession of marijuana | A | FTA* |
| U.S. v. Mainroy | 19-po-1643 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Norsworthy | 19-po-1651 | 21 USC 844 | Possession of cont. sub. | A | FTA |
| U.S. v. Bacchas | 19-po-1717 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Fults | 19-po-1720 | 21 USC 844 | Possession of marijuana | A | Pending |
| U.S. v. Carter | 19-po-1837 | 21 USC 844 | Possession of cont. sub. | A | FTA* |
| U.S. v. Jackson | 19-po-1846 | 21 USC 844 | Possession of cont. sub. | A | Pending |
| U.S. v. Malveaux | 19-po-1850 | 21 USC 844 | Possession of marijuana | A | Dismissed |
| U.S. v. Ransom | 19-po-1859 | 21 USC 844 | Possession of cont. sub. | A | Pending |
| U.S. v. Fayemiwo | 18-po-1800 | 21 USC 863 | Poss. of paraphernalia | Felony | Forfeiture |
| U.S. v. Varney | 18-po-1984 | 21 USC 863 | Poss. of paraphernalia | Felony | Pending |

123

| U.S. v. Sedano | 18-po-2137 | 21 USC 863 | Poss. of paraphernalia | Felony | FTA |
|---|---|---|---|---|---|
| U.S. v. Reyes | 18-po-2626 | 21 USC 863 | Poss. of paraphernalia | Felony | FTA |
| U.S. v. Cibelli | 18-po-2641 | 21 USC 863 | Poss. of paraphernalia | Felony | FTA* |
| U.S. v. McMahan | 18-po-3045 | 21 USC 863 | Poss. of paraphernalia | Felony | Dismissed |
| U.S. v. Amedee | 19-po-223 | 21 USC 863 | Poss. of paraphernalia | Felony | Pending |
| U.S. v. Nickerson | 19-po-356 | 21 USC 863 | Poss. of paraphernalia | Felony | Dismissed |
| U.S. v. Niupulusu | 19-po-1009 | 21 USC 863 | Poss. of paraphernalia | Felony | FTA* |
| U.S. v. Mosquetti | 19-po-1119 | 21 USC 863 | Poss. of paraphernalia | Felony | FTA* |
| U.S. v. Potter | 19-po-1131 | 21 USC 863 | Poss. of paraphernalia | Felony | Pending |
| U.S. v. Da Silva | 18-po-1354 | 21 USC 863 | Poss. of paraphernalia | Felony | Pending |
| U.S. v. Hodges | 19-po-1365 | 21 USC 863 | Poss. of paraphernalia | Felony | Pending |
| U.S. v. Martinez | 19-po-1378 | 21 USC 863 | Poss. of paraphernalia | Felony | Dismissed |
| U.S. v. Naisher | 19-po-1615 | 21 USC 863 | Poss. of paraphernalia | Felony | Pending |
| U.S. v. Abualshayeb | 19-po-1820 | 21 USC 863 | Poss. of paraphernalia | Felony | Pending |
| U.S. v. Malveaux | 19-po-1850 | 21 USC 863 | Poss. of paraphernalia | Felony | Dismissed |

124

I

125

73

I, Lauren Cusitello, hereby state under penalty of perjury that the following facts are true and correct to the best of my knowledge:

1. I am a licensed attorney and a member of the State Bar of California since 2008. Over the last ten years, I have practiced primarily in the fields of criminal defense and immigration law in San Diego, California.

2. In May 2016, I was selected to serve on a panel of defense attorneys that provides representation to defendants charged with federal misdemeanors in the Southern District of California—the Central Violations Bureau (CVB) Panel. As part of this panel, I attend court once a week on Wednesday mornings at the federal courthouse in San Diego.

3. At this court, I represent defendants who have been charged with Class A, B, and C federal misdemeanors, as defined by 18 U.S.C. § 3559(a). These crimes have a potential term of imprisonment of one year or less and include such offenses as DUI, unlawful possession of a weapon, domestic assault, hit and run, marijuana possession, obstruction, and theft of government property. Some of these individuals have criminal histories, including significant criminal histories.

4. In my experience, when a person is apprehended in the Southern District of California for a federal misdemeanor (other than illegal entry under 8 U.S.C. § 1325), the defendant is almost never held in criminal custody. Generally, the individual is released with a ticket. In the rare case, the individual may be

126
74

temporarily handcuffed or held by law enforcement for several hours for questioning. In these rare cases, the individual is still generally released the same day.

5.      Approximately six to eight weeks after the offense, a person charged with a federal misdemeanor will receive a notice to appear at court on a future Wednesday morning in the mail. This is true regardless of the charged offense. This federal misdemeanor court is not held in an actual courtroom. Rather, it is held in one of the jury rooms on the first floor of the James M. Carter and Judith N. Keep United States Courthouse.

6.      At the federal misdemeanor court, there is no judge and no formal proceedings. Instead, each defense attorney meets with their client briefly and then attempts to resolve the case with the prosecuting attorney.

7.      During this Wednesday morning court, the court makes a Spanish interpreter available for attorneys who do not speak Spanish to allow them to communicate with their clients. I have also seen the court provide interpreters for other defendants who do not speak English or Spanish.

8.      There are generally five ways that a misdemeanor case may resolve. The most common way is for a defendant to enter into a deferred prosecution agreement in which the case will be dismissed in exchange for the defendant's compliance with certain conditions. Many cases are also dismissed outright. A

127

defendant also may agree to resolve the case by forfeiting collateral (in effect, a fine), which may not count as a "conviction." A defendant may plead guilty, although this disposition would usually only be required in DUI cases.  And finally, a person may proceed to trial.

9.      If the defense attorney and the prosecutor work out a resolution, this agreement is memorialized on a form. When the resolution involves a guilty plea, there is an additional form, which states that no jail time will be imposed for the offense. The form or forms are then left with the clerks at the misdemeanor court, after which a magistrate judge reviews any plea agreements and the cases resolve pursuant to the parties' agreements.

10.     After the offense, defendants in the federal misdemeanor court system are not held in custody prior to their first court proceeding. Every defendant who is appearing for the first time will walk in and out of Wednesday morning court with no restrictions on their liberty.

11.     A first-time illegal entry under 8 U.S.C. § 1325 is a Class B misdemeanor, punishable by no more than six months in jail. But even though § 1325 is a federal misdemeanor, I have never seen a § 1325 case adjudicated in the federal misdemeanor court on Wednesday morning.

128

I hereby state that these facts are true and correct to the best of my

knowledge.

_7/19/2018_
Date

Lauren Cusitello
California Bar #257570
Executive Director
Crossroads Justice Center of
San Diego
1102 Cesar E. Chavez Pkwy.
San Diego, CA 92113

129

J

130
78

1                       **DECLARATION OF DAVID MENNINGER**

2     I, David Menninger, declare as follows:

3     1.     I am an attorney with the Office of the Federal Public Defender for the

4 Central District of California. I am over the age of 18 and have personal knowledge of

5 the following facts.

6     2.     To the best of my knowledge, in the following recent cases in the Central

7 District of California defendants charged with immigration-related offenses were

8 released on bond, remained released throughout the pendency of the criminal

9 proceeding, and appeared for sentencing:

10           a.    *United States v. Olga Cervantes*, CR 09-469-DSF,CR 16-469-DSF

11           b.    *United States v. Jose Rodriguez-Bolanos*, CR 17-298-PA

12           c.    *United States v. Juan Carlos Valadez-Munoz*, CR 17-702-RGK

13           d.    *United States v. Raul Rodriguez-Vera*, CR 15-555-FMO

14           e.    *United States v. Jorge Maya-Flores*, CR 16-187-ODW

15           f.    *United States v. Eduardo Hernandez*, CR 15-26-JGB

16           g.    *United States v. Juan Manuel Martinez-Gonzalez*, CR 14-739-RGK

17           h.    *United States v. Karina Sevilla*, CR 14-72-PA

18           i.    *United States v. Julian Martinez-Ibarra*, CR 17-93-JFW

19           j.    *United States v. Juan Manuel Escobar*, CR 15-300-RGK

20     I declare under penalty of perjury under the laws of the United States of America

21 that the foregoing is true and correct.

22     Executed on September 20, 2018, at Los Angeles, California.

23

24

25                     DAVID MENNINGER

26

27

28

# DECLARATION OF MILES POPE

I, Miles Pope, hereby state under penalty of perjury that the following facts
are true and correct to the best of my knowledge:

1.      I am a licensed attorney and an active member of the State Bar of
Alaska. I currently work as an assistant federal defender in Spokane, Washington.

2.      In my work as an assistant federal defender, I have represented many
noncitizens charged with illegal reentry under 8 U.S.C. § 1326.

3.      In the Eastern District of Washington, where I currently practice, it is
my experience that noncitizens charged with immigration-related crimes are
generally released from criminal custody while their case is pending. When this
occurs, Immigration and Customs Enforcement ("ICE") does not immediately take
them into custody and deport them. Rather, the noncitizen is permitted to remain at
large in the community, without an ankle monitor or any other form of electronic
monitoring, until the criminal case is completed. Once the criminal case is
completed, ICE will then take the noncitizen into custody and initiate removal
proceedings.

4.      In my experience practicing in the Eastern District of Washington,
noncitizens charged with immigration-related crimes are treated exactly like
anybody else charged with a federal crime. If the court concludes that they are

1

entitled to pretrial release under the Bail Reform Act, then they are released and permitted to remain in the community on conditions.

5.    I am only aware of one case where ICE immediately deported a noncitizen who had been released pending his prosecution for an immigration-related crime.

6.    By contrast, I am aware of at least 7 defendants represented by my office who were released into the community without any form of ankle or electronic monitoring, and who all either fully complied—or are currently in compliance—with their conditions of release.

7.    I personally represent three of these noncitizens during their criminal proceedings. These three were released on their own recognizance without posting a cash or property bond. They are still living in the community, attending their court proceedings, and are in regular touch with me.

I hereby state that these facts are true and correct to the best of my knowledge.

9-26-18
Date

Miles Pope
Alaska Bar #1508066
Federal Public Defender
Eastern District of Washington
10 North Post Street
Suite 700
Spokane, WA 99201

133
81

## DECLARATION OF SARA BRIN

I, Sara Brin, hereby state under penalty of perjury that the following facts are true and correct to the best of my knowledge:

1. I am a licensed attorney and an active member of the State Bar of Washington. I previously worked as an assistant federal defender in San Diego, California, and currently work as an assistant federal defender in Seattle, Washington.

2. In my work as an assistant federal defender, I have represented many noncitizens charged with illegal entry under 8 U.S.C. § 1325 and illegal reentry under 8 U.S.C. § 1326.

3. In the Western District of Washington where I currently practice, it is my experience that defendants with ICE detainers can be released from criminal custody while their case is pending. When this occurs, Immigration and Customs Enforcement ("ICE") does not immediately take them into custody and deport them. Rather, the defendant is permitted to remain at large in the community on an ankle monitor until the criminal case is completed. In my experience, once the criminal case is completed, ICE will then take the defendant into custody and initiate removal proceedings.

4. I am aware of at least six defendants represented by my office in which this occurred. All six were released into the community on ankle monitors.

1

To the best of my knowledge, all six fully complied with or remain in compliance with their conditions of release as of the date this declaration was signed.

5.     I personally represented or represent four of these defendants during their criminal proceedings. All four were released on their own recognizance without posting a cash or property bond. Three of these individuals are still living in the community and are being supervised by Pre-Trial Services. The fourth individual had his case dismissed, and ICE took him into administrative custody the following day.

I hereby state that these facts are true and correct to the best of my knowledge.

9|19|2018
Date

Sara Brin
Washington Bar # 52476
Assistant Federal Public Defender
Western District of Washington
1601 Fifth Ave., Suite 700
Seattle, WA 98101

## DECLARATION OF RACHEL NATHANSON

I, Rachel Nathanson, hereby state under penalty of perjury that the following facts are true and correct to the best of my knowledge:

1.    I am a licensed attorney and an active member of the State Bar of New Mexico. I currently work as an Assistant Federal Public Defender in Las Cruces, New Mexico.

2.    In my work as an Assistant Federal Public Defender, I have represented many noncitizens charged with illegal entry under 8 U.S.C. § 1325 and illegal reentry under 8 U.S.C. § 1326.

3.    In the District of New Mexico, where I currently practice, I recently represented a noncitizen charged with an immigration-related offense. Although he was released on a criminal bond, Immigration and Customs Enforcement ("ICE") did not take him into custody and deport him. Rather, he lived with his family during the pendency of his criminal case and eventually pleaded guilty to a lesser offense. During this client's criminal proceedings, he attended all court hearings and fully complied with the conditions of his release.

I hereby state that these facts are true and correct.

_9/19/2018_
Date

Rachel Nathanson
New Mexico Bar #145713
Federal Public Defender
506 S. Main
Suite 400
Las Cruces, NM 88001

K

137
85

What Happens When Individuals Are Released On Bond in Immigration Court Proceedin... Page 1 of 10
Case 3:19-cv-00735-AJB Document #7-2 Filed 08/26/19 PageID.940 Page 87 of 108
Case 4:19-50366 06/08/2020 ID: 11715045 DktEntry: 9 Page 141 of 235

**TRAC**Immigration

# What Happens When Individuals Are Released On Bond in Immigration Court Proceedings?

Court records show that at least half - and in some years upwards of two-thirds - of individuals are held in ICE custody at the time the Department of Homeland Security (DHS) starts Immigration Court proceedings seeking to deport them. As the backlog in the Immigration Court continues to grow and wait times increase,[1] the issue of whether individuals should remain locked up while their Immigration Court case is pending has garnered increased attention.

Even though detained individuals receive priority in scheduling court hearings, some individuals remain locked up for many months and even years before their cases are finally concluded.[2] A growing number of lawsuits in federal courts are challenging the constitutionality of locking up individuals during this period when their detention is "prolonged."[3]

The government argues that continued detention is needed to ensure that these individuals will not abscond and will show up for their hearing. For a smaller subset, there also may be public safety concerns. However, detention imposes real costs. There are to begin with the costs to taxpayers who foot the substantial bill to keep individuals locked up even though there has been no finding that the individual is actually deportable. But there are also real and significant costs to the individuals who are being detained, and frequently also to their family members.

It is unquestioned that the loss of freedom and all that this implies often imposes substantial hardships. Further, it is widely acknowledged that it is more difficult to carry out activities necessary to mount a successful defense in the deportation proceeding itself when individuals remain locked up.

Some individuals, but historically only a minority, have been able to challenge the necessity of their continued detention in a hearing before an immigration judge. However, due in part to court rulings, the right to a hearing before an immigration judge to challenge ICE's decision to keep individuals detained has been extended to a wider group of individuals. Unfortunately, very little information has been published by the Immigration Court on these custody hearings, leaving many questions unanswered. These questions include:

- What proportion of detained individuals in Immigration Court hearings actually receive a custody hearing before a judge?

- Once they receive a hearing, how often do immigration judges grant bond or release persons on personal recognizance?

- Do individuals who are released as a result of these decisions then abscond or do they show up for their subsequent court hearings?

- And finally what ultimately happens in their removal cases, does the court find they are actually deportable?

This report for the first time seeks to address these fundamental questions. It uses the court's own case-by-case records on each custody hearing, matched with parallel case-by-case records on what ultimately happens in their subsequent removal proceeding. The underlying court records were obtained by the Transactional Records Access Clearinghouse (TRAC) at Syracuse University from the Executive Office for Immigration Review (EOIR) under the Freedom of Information Act (FOIA).

Results presented are based upon a detailed analysis of these records by TRAC. The analysis spanned the last twenty years. In brief, TRAC's findings are as follows:

- First, the proportion of detained individuals in Immigration Court proceedings receiving custody hearings before an immigration judge has risen from one in five, to about half over the last twenty years.

- Second, the bond request was frequently turned down -- sometimes more, and sometimes a bit less than half the time. For those granted bond, about one in five remained detained until the end of their case, presumably because they were unable to post the bond amount set.

**138**

◰ Third, for those who posted bond and were then released, relatively few individuals currently abscond. During FY 2015, for example, only 14 percent failed to turn up at their subsequent court hearing.

◰ Fourth most individuals who were released prevailed in their court proceedings. Last year fully two out of every three (68%) won their case and were found not to be deportable.

Details on these findings are presented below. This report expands the topics covered in TRAC's extensive publication series on Immigration Court matters, and was made possible through the support of Syracuse University and a recent grant from the Carnegie Corporation of New York.

**How Many Individuals Receive Immigration Court Custody Hearings?**

During FY 2015, immigration court records show that a total of 50,654 individuals received custody hearings before a judge, up from 14,169 twenty years earlier. Much of this increase reflects the growing number of detained individuals in Immigration Court. As shown in Figure 1 and Appendix Table 1, individuals detained at the start of their immigration proceedings generally grew from 66,000 in FY 1995 to nearly 164,000 in FY 2011, and then declined back to roughly 98,000 last year as overall court filings declined.[4]



**Figure 1. Immigration Court Filings by Detention Status, FY 1995 - FY 2015**

For many years about one in four initially detained individuals received custody hearings before an immigration judge. Although this percentage has varied a bit from year to year, during the fifteen-year period between FY 1995 and FY 2010 it rarely was as low as 20 percent, or higher than 30 percent.

As shown in Figure 2, since FY 2010 the picture has changed. There are a growing proportion of detainees receiving bond hearings. During FY 2015 custody hearings were held for half of those detained. While hearing numbers jumped to over 66,000 in FY 2011 and FY 2012, since then the number of individuals with custody hearings has been falling. What has happened is that the number of individuals in detained proceedings has fallen faster, so that the proportion with custody hearings still increased. See Figure 2 and Appendix Table 1.



* *first 10 months*

**Figure 2. Percent of Initially Detained Individuals Afforded Custody Hearing**

**How Often Do Immigration Judges Grant Bond or Release on Personal Recognizance?**

On average over this twenty-year period, slightly more than half (54%) of bond hearings resulted in the immigration judge denying the bond motion. In the remaining 46 percent, the bond motion was granted.[5] There has been considerable year-to-year variation in these rates. In general, judges are no more likely to grant bond today than they were twenty years ago.

Figure 3 displays this release rate from a slightly different angle - those released as compared with the total number of individuals in detained immigration proceedings. Historically, only one in ten detained individuals had a favorable judge ruling at a bond hearing. Last year three out of every ten detained individuals had a bond motion granted by an immigration judge. This increase reflects the growing proportion of detained individuals who had hearings. See Figure 3 and Appendix Table 1.



* first 10 months

**Figure 3. Percent of Detained with Custody Hearings and Granted Bond**

The character of bond hearings has also changed over the past two decades. Twenty years ago court records indicate in three out four cases an initial bond had been set by the immigration enforcement officials and the hearing was over whether the bond amount should be reduced -- not whether the individual should be released at all. However, the number of these cases has steadily dwindled. By FY 2015, in 94 percent of the cases ICE was apparently insisting that the individual must be kept locked up since court records indicated enforcement officials had not set any bond amount. Accordingly, the judge was being asked to set a bond to allow the individual to be released.

When the bond motion was granted, bond amounts naturally varied. A few were granted release on personal recognizance, or the bond amount was simply set at $0. At the other extreme, occasionally bond amounts of a million dollars or more were set by the judge. The median bond amount set twenty years ago was $3,000. By FY 2002 it rose to $5,000 where it remained until FY 2014 when it increased to $6,000. In FY 2015 the median bond amount was $6,500. See Appendix Table 2.

Figure 4 shows, where bond was granted, the distribution of the amount of bond set by the judge in each of the past five years. In FY 2015 fully half of all bonds set were between $4,000 and $10,000. A total of four percent did not have to post any bond, while according to court records, seven individuals had bonds set of over a million dollars.



**Figure 4. Bond Amounts Set by Immigration Judge**

For those granted bond, having a bond set still was not synonymous with being released. While figures varied from year to year, according to court records about one in five remained detained at the conclusion of their case, presumably because they were unable to post that bond amount. For cases concluded during FY 2015, 13 percent remained detained even after the judge granted bond, down from 28 percent who had still been detained at the conclusion of their case in FY 2011 after bond was granted. See Appendix Table 3.

The remaining sections of this report focus on those individuals who secured their release from detention. That is, they had a bond hearing before a judge, were then successful in having their motion granted, and finally were as a result released from ICE custody.

**Did Released Individuals Turn Up at Their Subsequent Court Hearings?**

The vast majority of individuals who in recent years were released on bond as a result of their custody hearing before an immigration judge turned up for their court case. During FY 2015, for example, court records indicate that 86 percent of individuals that were released from detention turned up for their court hearing when it was finally held. The remaining 14 percent were recorded "*in absentia*." That is, they failed to appear and the immigration judge - in their absence -- granted the government's request for a removal order to deport them.[6]

The appearance rate of those released as a result of a custody hearing before an immigration judge is generally better - that is, higher -- than for individuals that immigration enforcement officials have themselves released from custody. The "*in absentia*" rate overall for released individuals during FY 2015, for example, was 23.4 percent[7], as compared to only 14.0 percent for the subset of those released after an immigration judge had set bond. This is noteworthy since the cases immigration judges were reviewing were almost always those where the government had refused to release the individual. Such cases, if the system operated logically, would be thought to present a higher, not lower, flight risk.

In general, *in absentia* rates for individuals released as a result of bond decisions made by immigration judges also were down from levels of ten or more years ago. *In absentia* rates for individuals released after their custody hearings peaked at 47 percent during FY 2002 and have generally fallen since then despite the increasing percentage of detained individuals being released on bond by judges[8]. See Figure 5 and Appendix Table 3.



Figure 5. Whether Individuals Released from Detention After Bond Granted by Immigration Judge Abscond

**Immigration Judge Decisions on Deportation and Removal Proceedings**

Individuals who gain their release in a bond hearing also have a very high success rate in establishing that they should not be deported in the first place, and can therefore remain in the U.S. During FY 2015, for example, two out of every three individuals (68%) released after the judge granted bond ultimately prevailed in their Immigration Court proceeding.

The remaining proportion ordered deported - that is, one out of three - was significantly lower than those ordered deported overall in Immigration Court proceeding completed last year. As TRAC has previously reported, in FY 2015 the overall proportion of individuals ordered deported in Immigration Court proceedings was just under half, or 46 percent.

Outcomes in deportation and removal proceedings over the past two decades for individuals released after a judge granted bond in their custody hearing are shown in Figure 6 and Appendix Table 4. As can be seen, these individuals who have been released from detention have over time increasingly prevailed in their Immigration Court cases.



Figure 6. Outcome in Immigration Deportation Proceedings Where Individual Released After Judge Granted Bond

## Conclusion

Court records so far demonstrate that the practical result of the release of increasing numbers of individuals on bond has not resulted in any significant increase in those who abscond and fail to show up for their immigration hearings. Trends, if anything, show declines. At the same time, it has allowed thousands of individuals who ultimately were found not to be deportable to avoid being held during their lengthy court proceedings. The number of those judged not deportable who escaped unnecessary detention grew over the last decade from 1,697 individuals in FY 1995 to 9,158 individuals in FY 2015.

---

## Footnotes

[1] See, for example, July 2016 TRAC report on increasing backlogs, and September 2015 report on ballooning wait times.

[2] See, for example, recent EOIR statistics. Also see TRAC report that found legal noncitizens had received the longest ICE detention times simply because of the lengthy procedures required to prove they had the legal right to remain in the U.S.

[3] The U.S. Supreme Court, for example, recently granted certiorari to review the Ninth Circuit's Rodriguez opinion in a class action involving prolonged detention in Immigration Court proceedings holding that those individuals had a right to a bond hearing before an Immigration judge. See also, Denmore v. Kim, 538 U.S. 510 (2003).

[4] These recent declines reflect the decrease in the overall number of court filings after FY 2011 in large part because of DHS's increasing reliance on administrative deportation procedures that bypass the Immigration Court. The larger number in FY 2014 reflects cases from the surge of unaccompanied children and women with children that arrived that year seeking refuge in this country

[5] For individuals who had multiple bond hearings, figures are based upon the outcome of the last hearing. Grant rates are lower if counts include all hearings since unsuccessful candidates account for most requests for repeat hearings.

[6] Given the Court's backlog, there was typically a long delay between the date of their bond hearing and the hearing that concluded removal proceedings. For example, the median bond hearing date for FY 2015 dispositions was back in April 2012.

[7] This rate, using the same methodology, compares the total number of in absentia decisions in cases in which the individuals had been released from custody to the total cases involving released individuals concluded that year. These results are also shown in Appendix Table 3. Where there have been multiple proceedings for the same individual, the outcome for the last - that is, final -- proceeding is used. TRAC's result differs from what EOIR publishes as its "in absentia" rate for the following two reasons. First, EOIR's rate is based upon the initial, rather than the last proceeding. If this rate is being used as an indicator of individuals absconding, rather than simply failing to

appear, then using the first proceeding and ignoring subsequent ones is quite inappropriate. Where, for example, the individual never received notice of the hearing, the case may be reopened and a later hearing take place. Use of the last proceeding, rather than the first, is thus a more accurate measure in this context. In fact, using the last proceeding instead of the first significantly impacts and reduces the calculated rates. Second, EOIR unlike TRAC does not include all individuals with hearings that conclude their case, choosing to exclude some because of the particular type of decision the court ultimately made. While anyone who absconded would not be qualified to receive the type of decision that EOIR labels as "other completions", the agency excludes these from its total case completion count when computing in absentia rates. Although formerly insignificant in number, these "other completions" have grown in recent years. They have the same practical effect of closing the case and allowing the individual to remain in the U.S. In FY 2015, these "other completions" made up around a quarter of the cases the court decided. EOIR appears to continue to exclude them for what appears to be largely historical reasons when its case counting methodology was quite different. No rationale now for their current exclusion remains. Indeed, continuing to exclude them results in publishing misleading and greatly inflated in absentia rates.

[8] Supplemental Note (October 6, 2016). TRAC just completed a supplemental analysis of the subset of cases that EOIR recently began identifying as "individuals released from custody as a result of a bond hearing conducted pursuant to the decision in Rodriguez v. Robbins, 804 F.3rd 1060 (9th Cir. 2015)." TRAC found there are a relatively small number that EOIR has identified thus far as applicable Rodriguez cases. In addition, only a very few of these Rodriguez cases have reached a conclusion on their merits. As a result it is much too early to even attempt to determine what proportion ultimately will be decided "in absentia." To place these very preliminary numbers into context, TRAC reported in Appendix Table 3 that during the first 10 months of FY 2016 there were 12,022 cases of all types that had been concluded in which the individual earlier had been released from custody as a result of immigration judges granting them bond. TRAC found only two out of the 12,022 were identified as Rodriguez cases and, according to Immigration Court records, both of these released individuals showed up for their immigration hearings.

## Appendix

### Appendix Table 1. Immigration Court Detained Cases with Custody Hearings

| Fiscal Year | New Court Filings | | Custody Hearings* | | Percentage of Detained | |
|---|---|---|---|---|---|---|
| | Total | Individual Detained | All | Bond Granted** | With Custody Hearings | With Bond Granted |
| 1995 | 159,135 | 66,017 | 14,169 | 9,056 | 21.46% | 13.7% |
| 1996 | 190,170 | 80,423 | 15,595 | 9,005 | 19.4% | 11.2% |
| 1997 | 200,316 | 98,094 | 19,637 | 11,462 | 20.0% | 11.7% |
| 1998 | 189,070 | 98,160 | 27,636 | 15,559 | 28.2% | 15.9% |
| 1999 | 164,186 | 80,129 | 21,515 | 8,499 | 26.9% | 10.6% |
| 2000 | 160,852 | 89,875 | 23,116 | 10,328 | 25.7% | 11.5% |
| 2001 | 176,230 | 100,980 | 27,451 | 13,540 | 27.2% | 13.4% |
| 2002 | 180,249 | 98,475 | 29,955 | 14,469 | 30.4% | 14.7% |
| 2003 | 196,905 | 104,467 | 30,040 | 12,415 | 28.8% | 11.9% |
| 2004 | 205,818 | 98,907 | 26,685 | 9,614 | 27.0% | 9.7% |
| 2005 | 287,240 | 105,838 | 23,408 | 8,164 | 22.1% | 7.7% |
| 2006 | 233,269 | 114,113 | 27,117 | 10,658 | 23.8% | 9.3% |
| 2007 | 217,088 | 136,200 | 38,793 | 15,870 | 28.5% | 11.7% |
| 2008 | 231,504 | 153,531 | 42,232 | 16,089 | 27.5% | 10.5% |
| 2009 | 258,036 | 165,500 | 46,707 | 18,563 | 28.2% | 11.2% |
| 2010 | 249,452 | 156,999 | 46,819 | 18,549 | 29.8% | 11.8% |
| 2011 | 242,932 | 163,716 | 66,913 | 30,398 | 40.9% | 18.6% |
| 2012 | 218,483 | 145,785 | 68,014 | 31,688 | 46.7% | 21.7% |
| 2013 | 205,142 | 127,573 | 48,722 | 20,587 | 38.2% | 16.1% |
| 2014 | 268,095 | 135,434 | 52,138 | 25,644 | 38.5% | 18.9% |
| 2015 | 194,798 | 97,927 | 50,654 | 28,637 | 51.7% | 29.2% |
| 2016*** | 157,664 | 80,482 | 43,317 | 23,996 | 53.8% | 29.8% |

* The number of individuals with custody hearings.
** Where an individual had their custody reviewed more than once, the outcome at the last custody hearing is used.
***Covers the first 10 months of FY 2016 (through the end of July).

### Appendix Table 2. Bond Decisions* to Grant Bond or Release on Personal Recognizance

| Fiscal Year | Number | Median Amount | Percentage by Bond Amount | | | | | | | | | |
| | | | $0 | $1-$2,500 | $2,500<$5,000 | $5,000<$7,500 | $7,500<$10,000 | $10,000<$12,500 | $12,500<$17,500 | $17,500<$25,000 | $25,000+ | Total |
| 1995 | 9,056 | $3,000 | 7.1% | 32.6% | 19.2% | 16.2% | 7.5% | 8.2% | 3.4% | 3.1% | 2.6% | 100.0% |
| 1996 | 9,005 | $2,500 | 5.9% | 40.7% | 23.3% | 13.3% | 5.2% | 5.7% | 2.5% | 1.9% | 1.6% | 100.0% |
| 1997 | 11,462 | $3,000 | 5.9% | 29.9% | 26.9% | 15.7% | 4.3% | 8.1% | 3.6% | 2.8% | 2.8% | 100.0% |
| 1998 | 15,559 | $3,500 | 5.0% | 19.6% | 37.7% | 17.6% | 5.1% | 7.3% | 2.8% | 2.6% | 2.2% | 100.0% |
| 1999 | 8,499 | $3,000 | 8.1% | 28.3% | 39.5% | 13.9% | 3.3% | 3.6% | 1.4% | 0.9% | 0.9% | 100.0% |
| 2000 | 10,328 | $3,000 | 5.7% | 25.7% | 35.4% | 20.1% | 3.3% | 4.1% | 2.5% | 0.9% | 2.3% | 100.0% |
| 2001 | 13,540 | $3,500 | 7.9% | 17.6% | 37.7% | 23.1% | 4.2% | 4.2% | 2.8% | 0.6% | 1.9% | 100.0% |
| 2002 | 14,469 | $5,000 | 5.7% | 14.1% | 28.0% | 23.5% | 7.1% | 8.6% | 4.9% | 2.5% | 5.5% | 100.0% |
| 2003 | 12,415 | $5,000 | 5.5% | 15.2% | 24.2% | 24.6% | 7.9% | 8.8% | 4.9% | 2.9% | 6.0% | 100.0% |
| 2004 | 9,614 | $5,000 | 4.6% | 13.0% | 21.0% | 29.3% | 10.4% | 9.5% | 3.9% | 3.4% | 4.9% | 100.0% |
| 2005 | 8,164 | $5,000 | 4.6% | 12.8% | 18.8% | 31.2% | 9.2% | 10.7% | 4.3% | 2.6% | 5.9% | 100.0% |
| 2006 | 10,658 | $5,000 | 3.4% | 14.5% | 22.3% | 27.4% | 10.1% | 10.2% | 4.7% | 2.8% | 4.6% | 100.0% |
| 2007 | 15,870 | $5,000 | 3.2% | 12.6% | 22.5% | 26.1% | 11.3% | 11.9% | 5.4% | 3.3% | 3.7% | 100.0% |
| 2008 | 16,089 | $5,000 | 1.8% | 10.4% | 26.2% | 28.0% | 11.0% | 11.9% | 4.9% | 2.7% | 3.2% | 100.0% |
| 2009 | 18,563 | $5,000 | 1.4% | 10.3% | 25.4% | 27.7% | 12.3% | 11.6% | 5.3% | 2.7% | 3.4% | 100.0% |
| 2010 | 18,549 | $5,000 | 1.1% | 12.5% | 30.6% | 27.6% | 12.2% | 8.7% | 4.0% | 1.8% | 1.6% | 100.0% |
| 2011 | 30,398 | $5,000 | 0.5% | 10.9% | 28.8% | 27.6% | 12.7% | 9.7% | 4.3% | 2.5% | 3.0% | 100.0% |
| 2012 | 31,688 | $5,000 | 0.5% | 10.0% | 30.2% | 29.9% | 14.5% | 8.6% | 3.7% | 1.3% | 1.4% | 100.0% |
| 2013 | 20,587 | $5,000 | 0.8% | 7.4% | 25.2% | 31.4% | 16.8% | 10.1% | 5.0% | 1.6% | 1.8% | 100.0% |
| 2014 | 25,644 | $6,000 | 0.8% | 7.1% | 24.4% | 28.2% | 16.4% | 13.0% | 5.9% | 1.9% | 2.2% | 100.0% |
| 2015 | 28,637 | $6,500 | 4.4% | 6.3% | 19.6% | 23.7% | 19.1% | 13.1% | 7.3% | 3.7% | 2.7% | 100.0% |
| 2016** | 23,996 | $8,000 | 0.7% | 4.1% | 12.5% | 19.9% | 22.6% | 18.0% | 9.2% | 6.5% | 6.5% | 100.0% |

*Where an individual had their custody reviewed more than once, the outcome at the last custody hearing is used.*
** Covers the first 10 months of FY 2016 (through the end of July).

Appendix Table 3. Completed Immigration Court Cases Where Initially Detained Individual Had Been Released

| Fiscal Year Case Completed | Immigration Judge Granted Bond* | | | | | | All Completions Where Released | | |
| | Total | Remained Detained | Gained Release | Attended Court Hearing | Did Not Attend** | Percent "In Absentia" | Total Released | Did Not Attend** | Percent "In Absentia" |
| 1995 | 6,820 | 2,381 | 4,439 | 3,038 | 1,401 | 31.6% | 11,898 | 4,249 | 35.7% |
| 1996 | 8,227 | 2,546 | 5,681 | 4,001 | 1,680 | 29.6% | 12,484 | 4,328 | 34.7% |
| 1997 | 9,228 | 2,977 | 6,251 | 4,455 | 1,796 | 28.7% | 12,767 | 4,145 | 32.5% |
| 1998 | 12,297 | 3,841 | 8,456 | 5,731 | 2,725 | 32.2% | 16,308 | 5,775 | 35.4% |
| 1999 | 10,214 | 2,146 | 8,068 | 5,260 | 2,808 | 34.8% | 16,226 | 6,050 | 37.3% |
| 2000 | 8,967 | 2,006 | 6,961 | 4,101 | 2,860 | 41.1% | 17,251 | 7,641 | 44.3% |
| 2001 | 9,781 | 2,302 | 7,479 | 4,082 | 3,397 | 45.4% | 22,986 | 11,098 | 48.3% |
| 2002 | 12,574 | 2,855 | 9,719 | 5,187 | 4,532 | 46.6% | 27,646 | 13,058 | 47.2% |
| 2003 | 13,310 | 3,153 | 10,157 | 6,303 | 3,854 | 37.9% | 27,258 | 11,008 | 40.4% |
| 2004 | 9,818 | 2,509 | 7,309 | 4,648 | 2,661 | 36.4% | 20,074 | 7,362 | 36.7% |
| 2005 | 7,765 | 1,969 | 5,796 | 4,142 | 1,654 | 28.5% | 17,287 | 5,951 | 34.4% |
| 2006 | 7,783 | 2,113 | 5,670 | 4,235 | 1,435 | 25.3% | 18,387 | 5,899 | 32.1% |
| 2007 | 9,858 | 2,697 | 7,161 | 5,368 | 1,793 | 25.0% | 19,082 | 5,243 | 27.5% |
| 2008 | 10,656 | 2,635 | 8,021 | 6,671 | 1,350 | 16.8% | 19,111 | 4,137 | 21.6% |
| 2009 | 11,353 | 3,000 | 8,353 | 7,140 | 1,213 | 14.5% | 18,336 | 3,764 | 20.5% |
| 2010 | 12,184 | 2,735 | 9,449 | 8,322 | 1,127 | 11.9% | 20,583 | 3,845 | 18.7% |
| 2011 | 14,211 | 3,985 | 10,226 | 8,537 | 1,689 | 16.5% | 24,587 | 5,778 | 23.5% |
| 2012 | 17,023 | 4,109 | 12,914 | 10,480 | 2,434 | 18.8% | 29,573 | 6,821 | 23.1% |
| 2013 | 18,504 | 2,876 | 15,628 | 13,370 | 2,258 | 14.4% | 36,307 | 8,260 | 22.8% |
| 2014 | 17,221 | 2,951 | 14,270 | 12,448 | 1,822 | 12.8% | 38,685 | 9,547 | 24.7% |

**146**

| Fiscal Year Case Completed | Immigration Judge Granted Bond* | | | | | | All Completions Where Released | | |
|---|---|---|---|---|---|---|---|---|---|
| | Total | Remained Detained | Gained Release | Attended Court Hearing | Did Not Attend** | Percent "In Absentia" | Total Released | Did Not Attend** | Percent "In Absentia" |
| 2015 | 15,269 | 2,028 | 13,241 | 11,391 | 1,850 | 14.0% | 44,280 | 10,379 | 23.4% |
| 2016*** | 13,485 | 1,463 | 12,022 | 10,009 | 2,010 | 16.7% | 38,770 | 7,912 | 20.4% |

\* This table covers only those cases where Immigration Court proceedings were completed. Thus, the outcome is known and whether the decision was made "in absentia" can be determined. Individuals granted bond by Immigration Judge where cases are still pending are not included.

\*\* Based on court records that decision was made "in absentia" when individual failed to appear for their court hearing.

\*\*\* Covers the first 10 months of FY 2016 (through the end of July).

### Appendix Table 4. Outcome in Immigration Deportation Proceedings Where Individual Released After Judge Granted Bond

| Fiscal Year Case Completed | Total* | Stay in U.S. | Ordered Deported | Percent Stay in U.S. |
|---|---|---|---|---|
| 1995 | 4,439 | 1,272 | 3,167 | 28.7% |
| 1996 | 5,680 | 1,457 | 4,223 | 25.7% |
| 1997 | 6,249 | 1,142 | 5,107 | 18.3% |
| 1998 | 8,456 | 1,734 | 6,722 | 20.5% |
| 1999 | 8,068 | 1,862 | 6,206 | 23.1% |
| 2000 | 6,961 | 1,528 | 5,433 | 22.0% |
| 2001 | 7,479 | 1,959 | 5,520 | 26.2% |
| 2002 | 9,719 | 1,965 | 7,754 | 20.2% |
| 2003 | 10,156 | 2,355 | 7,801 | 23.2% |
| 2004 | 7,308 | 1,848 | 5,460 | 25.3% |
| 2005 | 5,796 | 1,697 | 4,099 | 29.3% |
| 2006 | 5,670 | 2,106 | 3,564 | 37.1% |
| 2007 | 7,160 | 2,363 | 4,797 | 33.0% |
| 2008 | 8,021 | 2,703 | 5,318 | 33.7% |
| 2009 | 8,351 | 3,156 | 5,195 | 37.8% |
| 2010 | 9,449 | 4,415 | 5,034 | 46.7% |
| 2011 | 10,226 | 4,437 | 5,789 | 43.4% |
| 2012 | 12,914 | 6,135 | 6,779 | 47.5% |
| 2013 | 15,627 | 8,814 | 6,813 | 56.4% |
| 2014 | 14,268 | 9,158 | 5,110 | 64.2% |
| 2015 | 13,225 | 9,031 | 4,194 | 68.3% |
| 2016** | 12,012 | 8,040 | 3,972 | 66.9% |

\* Covers deportation and removal proceedings. Slight difference between the totals in Appendix Tables 3 and 4 are because a small number of non-deportation/removal case types handled by the Immigration Court are not included in this table.

\*\* Covers the first 10 months of FY 2016 (through the end of July).

*Report date: September 14, 2016*



Copyright 2016, TRAC Reports, Inc.

L



# Office of the Attorney General
## Washington, D. C. 20530

APRIL 6, 2018

MEMORANDUM FOR FEDERAL PROSECUTORS ALONG THE SOUTHWEST BORDER

FROM:            THE ATTORNEY GENERAL   4/6/18

SUBJECT:         Zero-Tolerance for Offenses Under 8 U.S.C. § 1325(a)

On April 11, 2017, I issued a memorandum to all federal prosecutors entitled "Renewed Commitment to Criminal Immigration Enforcement," in which I directed the prioritization of the prosecution of certain criminal immigration offenses. I further directed each United States Attorney's Office along the Southwest Border to work with the Department of Homeland Security to develop guidelines for prosecuting offenses under 8 U.S.C. § 1325(a).

Those seeking to further an illegal goal constantly alter their tactics to take advantage of weak points. That means we must effectively respond with smart changes also. The recent increase in aliens illegally crossing our Southwest Border requires an updated approach. Past prosecution initiatives in certain districts—such as Operation Streamline—led to a decrease in illegal activities in those districts. We must continue to execute effective policies to meet new challenges.

Accordingly, I direct each United States Attorney's Office along the Southwest Border— to the extent practicable, and in consultation with DHS— to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under section 1325(a). This zero-tolerance policy shall supersede any existing policies. If adopting such a policy requires additional resources, each office shall identify and request such additional resources.

You are on the front lines of this battle. I respect you and your team. Your dedication and insight into border reality is invaluable. Keep us informed, and don't hesitate to give us suggestions for improvement. Remember, our goal is not simply more cases. It is to end the illegality in our immigration system.

This guidance is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

149

M

150

98



Home » Newsroom

COMMENTARIES | JUNE 2018

# Crisis at the Border? Not by the Numbers

By Jessica Bolter and Doris Meissner

Border Security | Border Enforcement | Technology & Infrastructure | Illegal Immigration & Interior Enforcement



Monthly numbers of migrant apprehensions at the U.S.-Mexico border have become a major preoccupation of the Trump administration. The President reportedly treats the numbers as a gauge of his administration's effectiveness at securing the border. Any rise in the numbers undercuts for him a central promise of his presidency.

U.S. Customs and Border Protection (CBP) data issued June 6 show that for the third straight month, apprehensions in May—that is, the

We use cookies to broadly understand traffic to this website. Continue browsing if this is acceptable. Learn more

**I understand**

contend that these increases represent a crisis at the border that demands toughened border policies and major additional resource infusions, especially construction of a border wall.

What has been lost in the discussion is that the 2017 apprehensions are the outliers, and so measuring current activity at the border against that atypically low period ignores the fact that the current apprehensions picture largely mirrors earlier years.

What made 2017 unusual? There were significant reductions in attempted illegal entries after the November 2016 general election and in the early months of the new administration as would-be migrants seemingly held back in wait-and-see mode, given the

Aa Adjust Font
🖶 Print
🔊 RSS
☐ Copyright & Reuse

SUBSCRIBE FOR UPDATES ›

## Authors

Jessica Bolter is an Associate Policy Analyst at MPI, where she researches migration patterns at the U.S.-Mexico border, U.S. immigration enforcement, and asylum and refugee

Naturalization Service, directs MPI's U.S. immigration policy work. Full Bio ›

## Related Research

• Advances in U.S.-Mexico Border

Trump campaign's muscular focus on immigration enforcement. What became dubbed the "Trump effect" has predictably waned, however, given the deeper push-pull forces that propel illegal migration.

As a result, this year's apprehension numbers for March, April, and May are largely comparable to the same months in 2013, 2014, and 2016. (In 2015, apprehensions dropped, partly due to stepped-up enforcement against Central American migrants by Mexican authorities.) The 40,344 apprehensions recorded in May 2018 are continuing the downward trend that has emerged over the past 18 years. And that monthly total is more than 100,000 apprehensions less than the level recorded in May 2000—the peak year of apprehensions, at more than 1.6 million. (See Figure 1.)



**Figure 1. Border Patrol Southwest Border Apprehensions, FY 2000-18**

*Note*: 2018 Year to Date includes apprehensions for the first eight months of FY 2018 (October 2017 to May 2018).

*Sources*: U.S. Border Patrol, "U.S. Border Patrol Monthly Apprehensions (FY 2000 - FY 2017)," accessed June 4, 2018, www.cbp.gov/sites/default/files/assets/documents/2017-Dec/BP%20Total%20Monthly%20Apps%20by%20Sector%20and%20Area%2C%20FY2000-FY2017.pdf; U.S. Customs and Border Protection (CBP), "Southwest Border Migration FY2018," updated June 6, 2018, https://www.cbp.gov/newsroom/stats/sw-border-migration.

What is different about apprehensions in recent years, but particularly in 2017 and 2018, is the proportion of migrants that are

- Trump's First Year on Immigration Policy: Rhetoric vs. Reality
- A Revolving Door No More? A Statistical Profile of Mexican Adults Repatriated from the United States
- Border Metrics: How to Effectively Measure Border Security and Immigration Control

**MULTIMEDIA**



Recognizing Changing Enforcement and Crossing Trends at the U.S.-Mexico Border

MAY 4, 2017 | Migration Policy Institute

## U.S. Immigration Policy Program

MPI's U.S. Immigration Policy Program analyzes U.S. policies and their impacts, as well as the complex demographic, economic, political, foreign policy, and other forces that shape immigration to the country.

More Info >

## Contact Us

202-266-1940

info@migrationpolicy.org

either traveling as unaccompanied children or as families consisting of both adults and children. In fiscal year (FY) 2017, 25 percent of migrants apprehended were individuals traveling as families, compared to 3 percent in FY 2012. Overall, 39 percent of those apprehended in FY 2017 and 36 percent of those apprehended thus far in FY 2018 have been either families or unaccompanied children, compared to 10 percent in FY 2012 (See Figure 2).

**Figure 2. Family and Unaccompanied Minor Apprehensions as Share of Total Apprehensions, FY 2012-18**



*Note*: 2018 Year to Date includes apprehensions for the first eight months of FY 2018 (October 2017 to May 2018).

*Sources*: CBP, "United States Border Patrol Southwest Family Unit Subject and Unaccompanied Alien Children Apprehensions Fiscal Year 2016," updated October 18, 2016, www.cbp.gov/newsroom/stats/southwest-border-unaccompanied-children/fy-2016; CBP, "Southwest Border Migration FY2017;" CBP, "Southwest Border Migration FY2018."

It is particularly notable that overall migration flows remain at such lows now, while the U.S. economy is strong. The unemployment rate has fallen to 3.8 percent, the lowest since 2000, while jobs have been continually added to the economy for a record 92 months. Yet border apprehension numbers remain low, indicating that illegal immigration, in particular from Mexico which has historically been largely driven by demand from U.S. employers, has lessened. Instead, the flows we are seeing are dominated by those seeking humanitarian protection.

In addition to migrants apprehended seeking to cross illegally between ports of entry, many of those traveling to the U.S. border—especially families—are turning themselves in at designated ports of entry (POEs) and often asking for asylum. These numbers

153

are separate from apprehension numbers but have in recent years become another important indicator of changing flows at the border. In FY 2017, 28 percent of all families attempting to enter the United States did so by presenting themselves at POEs. In the first eight months of FY 2018, that share has risen to 37 percent. In comparison, 29 percent of adult individual migrants presented at POEs in FY 2017, and 23 percent have done so thus far in FY 2018.

Meanwhile, the number of Border Patrol agents at the Southwest border is almost double the number in 2000, and the Trump administration continues to press for the hiring of 5,000 additional agents, even as total apprehensions in recent years have been at lows comparable to those of the mid-1970s, when there were about 1,400 agents at the Southwest border (see Figure 3).



**Figure 3. Southwest Border Apprehension and Border Patrol Staffing Levels, FY 1975-2017**

*Sources*: Transactional Records Access Clearinghouse, "Border Patrol Expands But Growth Rate After 9/11 Much Less Than Before, Division Between North/South Border Little Changed," updated April 4, 2006, http://trac.syr.edu/immigration/reports/143/; U.S. Border Patrol, "Border Patrol Agent Nationwide Staffing by Fiscal Year," accessed June 4, 2018, www.cbp.gov/sites/default/files/assets/documents/2017-Dec/BP%20Staffing%20FY1992-FY2017.pdf.

In recent months, amid the Trump administration's relentless narrative of a border in crisis, the National Guard has been deployed to the border and Interior Secretary Ryan Zinke dispatched a contingent of National Park Service and U.S. Park Police officers to assist enforcement efforts. The President continues to demand a border wall and additional Border Patrol agents. And Attorney General Jeff Sessions has announced a zero-tolerance policy mandating federal prosecution of all first-time crossers, which has

had the result of forcing family separation, as children cannot be held in criminal incarceration.

This willful misreading of the trends at the border is belied by the most recent apprehension statistics, which call into question whether an expenditure of billions of dollars on barriers and more enforcement personnel would be an effective use of taxpayer resources. The statistics provide the latest evidence of near-historic lows in illegal border crossings and a change in the flows that call for deciding asylum cases in a timely, fair fashion, not policies such as the family separation ones that have sparked outrage and concern.

## Links

MPI's U.S. immigration policy research



MIGRATION POLICY INSTITUTE






RESEARCH & INITIATIVES | PUBLICATIONS | EVENTS | NEWS | ABOUT

CONTACT US | SITE MAP | PRIVACY POLICY | EXPERTS | EMAIL SIGN

1400 16th St NW, Suite 300, Washington, DC 20036 | ph. 202-266-1940 | fax. 202-266-1900

Copyright © 2001-2019 Migration Policy Institute. All rights reserved.

N

156

104

# CRIMINAL AND CIVIL CASES FILED
## CALENDAR YEAR 2016 THROUGH 2018

**CRIMINAL (CASES)**     **MAGISTRATE (CASES)**

| MONTH | 2016 TOTAL | 2017 TOTAL | 2018 TOTAL | % CHANGE 2017-2018 | (+/-) TOTAL | 2018 TOTAL COMPLAINTS | 1325 |
|---|---|---|---|---|---|---|---|
| JAN | 159 | 221 | 499 | 126% | 278 | 584 | 1 |
| FEB | 216 | 266 | 530 | 99% | 264 | 583 | 3 |
| MAR | 207 | 299 | 613 | 105% | 314 | 575 | 4 |
| APR | 250 | 270 | 491 | 82% | 221 | 566 | 4 |
| MAY | 305 | 298 | 550 | 85% | 252 | 898 | 475 |
| JUN | 264 | 389 | 322 | -17% | -67 | 1030 | 918 |
| JULY | 189 | 296 | 301 | 2% | 5 | 1231 | 345 |
| AUG | 219 | 491 | 451 | -8% | -40 | 1635 | 1152 |
| SEP | 271 | 451 | | | | | |
| OCT | 260 | 494 | | | | | |
| NOV | 257 | 428 | | | | | |
| DEC | 252 | 474 | | | | | |
| TOTAL | 2896 | 4407 | 3757 | | 1227 | 7102 | 2397 |

**CRIMINAL (DFTS)**

| MONTH | 2016 TOTAL | 2017 TOTAL | 2018 TOTAL | % CHANGE 2017-2018 | (+/-) TOTAL | Note |
|---|---|---|---|---|---|---|
| JAN | 201 | 269 | 555 | 106% | 286 | |
| FEB | 226 | 370 | 596 | 61% | 226 | |
| MAR | 341 | 340 | 710 | 109% | 370 | |
| APR | 302 | 357 | 514 | 44% | 157 | |
| MAY | 349 | 354 | 592 | 67% | 238 | |
| JUN | 333 | 461 | 373 | -19% | -88 | |
| JULY | 214 | 330 | 332 | 1% | 2 | |
| AUG | 252 | 581 | 479 | -18% | -102 | |
| SEP | 297 | 552 | | | | |
| OCT | 285 | 541 | | | | |
| NOV | 284 | 454 | | | | |
| DEC | 316 | 504 | | | | |
| TOTAL | 3415 | 5113 | 4151 | | 1885 | |

**CIVIL**

| MONTH | 2016 TOTAL | 2017 TOTAL | 2018 TOTAL | % CHANGE 2017-2018 | (+/-) TOTAL | Note |
|---|---|---|---|---|---|---|
| JAN | 251 | 193 | 234 | 21% | 41 | |
| FEB | 273 | 229 | 214 | -7% | -15 | |
| MAR | 246 | 242 | 206 | -15% | -36 | |
| APR | 202 | 206 | 175 | -15% | -31 | |
| MAY | 253 | 241 | 277 | 15% | 36 | |
| JUN | 399 | 229 | 386 | 69% | 157 | |
| JULY | 216 | 202 | 266 | 32% | 64 | |
| AUG | 291 | 218 | 276 | 27% | 58 | |
| SEP | 254 | 249 | | | | |
| OCT | 235 | 233 | | | | |
| NOV | 211 | 189 | | | | |
| DEC | 216 | 183 | | | | |
| TOTAL | 3127 | 2614 | 2634 | | 274 | |

**Distribution:**

| | |
|---|---|
| Chief Judge Beukema | John Morrill |
| Mag Judge Adler | Ted Lewis |
| Dave Satterberg | Jamie Pascoe |
| Lori Garofalo | Jocelynn Jensen |

* The projections for both Criminal and Civil are based on the trend over the previous 24 months. Does not include reopened cases.

EXHIBIT A

157

18mj20098 AJB

O

158
106

107

**United States District Court**
**Violation Notice**

| Violation Number | Officer Name (Print) | Officer No. |
|---|---|---|
| 7472655 | Nane K | 903 |

CS51

YOU ARE CHARGED WITH THE FOLLOWING VIOLATION

Date and Time of Offense (mm/dd/yyyy): 04/04/2018  19:02

Place of Offense: San Ysidro Vehicle Secondary
(West pedestrian entry)

Offense Description: possession of a firearm by a prohibited person "dishonorably discharged" veteran

**DEFENDANT INFORMATION**

Last Name: Dela Rosa Gonzalez   First Name: Antonio

Tag No: DNJ667   State: OK   Year: 16   Make/Model: Hyundai/Rich   Color: white

A ☐ IF BOX A IS CHECKED, YOU MUST APPEAR IN COURT.
B ☐ IF BOX B IS CHECKED, YOU MUST PAY AMOUNT INDICATED BELOW OR APPEAR IN COURT.

Forfeiture Amount
+ $30 Processing Fee

PAY THIS AMOUNT → $   Total Collateral Due

YOUR COURT DATE

831 West Broadway   Date (mm/dd/yyyy): TBD   Time (hh:mm): TBD
0.190, CA, 9210

X Released to sign

159

CVB SCAN 09/26/2018 13:26

---

I state that on Sept 4, 20 18 while exercising my duties as a law enforcement officer in the Southern District of California

See attached statement

The foregoing statement is based upon:
☐ my personal observation   ☐ my personal investigation
☐ information supplied to me from my fellow officer's observation
☐ other (explain above)

I declare under penalty of perjury that the information which I have set forth above and on the face of this violation notice is true and correct to the best of my knowledge.

Executed on: 09/04/2018   _____
Date (mm/dd/yyyy)   Officer's Signature

Probable cause has been stated for the issuance of a warrant.

Executed on: _____   _____
Date (mm/dd/yyyy)   U.S. Magistrate Judge

HAZMAT = Hazardous material involved in incident; PASS = 9 or more passenger vehicle; CDL = Commercial drivers license; CMV = Commercial vehicle involved in incident

CVB SCAN 09/26/2018 13:26

1

1         UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF CALIFORNIA
2

3    UNITED STATES OF AMERICA,        )
                                      ) CASE NO. 19CR0735-AJB
4              PLAINTIFF,             )
                                      )
5         -V-                         ) AUGUST 12, 2019
                                      ) 3:10 P.M.
6    EDUVIGES AYALA-BELLO,            )
     WALTER GERMAN VELEZ-GONZALEZ,    )
7                                     )
               DEFENDANTS.            ) SAN DIEGO, CALIFORNIA
8    _____)

9

10             TRANSCRIPT OF STATUS HEARING

11        BEFORE THE HONORABLE ANTHONY J. BATTAGLIA
               UNITED STATES DISTRICT JUDGE
12

13   APPEARANCES:
     FOR THE GOVERNMENT:  ROBERT S. BREWER, JR., U.S ATTORNEY
14                        BY:  CAROLINE PINEDA HAN
                          ASSISTANT U.S. ATTORNEY
15                        880 FRONT STREET
                          SAN DIEGO, CALIFORNIA 92101
16
     FOR DEFENDANT AYALA:  FEDERAL DEFENDERS OF SAN DIEGO, INC.
17                         BY:  REBECCA FISH, ESQ.
                           225 BROADWAY, STE. 900
18                         SAN DIEGO, CALIFORNIA 92101

19   FOR DEFENDANT VELEZ:  KEITH H. RUTMAN ATTORNEY AT LAW
                           BY:  KEITH H. RUTMAN, ESQ.
20                         501 WEST BROADWAY, SUITE 1650
                           SAN DIEGO, CALIFORNIA 92101
21
     COURT INTERPRETER:    MATIAS PIZARRO
22
     OFFICIAL REPORTER:    JEANNETTE N. HILL, CSR
23                         U.S. COURTHOUSE
                           333 WEST BROADWAY, RM 420
24                         SAN DIEGO, CALIFORNIA 92101
                           (619) 702-3905
25
     REPORTED BY STENOTYPE, TRANSCRIPT PRODUCED BY COMPUTER

2

1       **SAN DIEGO, CALIFORNIA; MONDAY, AUGUST 12, 2019; 3:10 P.M.**

2    (EDUVIGES AYALA-BELLO AND WALTER GERMAN VELEZ-GONZALEZ

3    APPEARING TELEPHONICALLY)

4            **DEPUTY CLERK:**  CALLING MATTER 26 ON CALENDAR, CASE

5    NUMBER 19CR0735, U.S.A. VERSUS EDUVIGES AYALA-BELLO, AND NUMBER

6    TWO, WALTER GERMAN VELEZ-GONZALEZ, SET FOR STATUS HEARING.

7            **MS. FISH:**  GOOD AFTERNOON, YOUR HONOR.  REBECCA FISH

8    ON BEHALF OF MS. AYALA-BELLO, WHO IS PRESENT TELEPHONICALLY.

9            **THE COURT:**  OKAY.

10           **MR. RUTMAN:**  GOOD AFTERNOON, YOUR HONOR.  KEITH

11   RUTMAN FOR WALTER GERMAN VELEZ-GONZALEZ, WHO IS ALSO PRESENT

12   TELEPHONICALLY.

13           AND DID THE COURT SEE THAT I FILED HIS WRITTEN WAIVER

14   OVER THE WEEKEND?

15           **THE COURT:**  I DID.

16           **MR. RUTMAN:**  THANK YOU.

17           **MS. HAN:**  AND GOOD AFTERNOON, YOUR HONOR.  CAROLINE

18   HAN ON BEHALF OF THE UNITED STATES.

19           **THE COURT:**  GOOD AFTERNOON.

20           SO MY UNDERSTANDING IS THAT THE CHARGES ARE GOING TO

21   BE AMENDED OR CHANGED BY INFORMATION.  AND I'M LOOKING AT, I

22   THINK, THE INFORMATION ABOUT TO BE FILED.

23           SO WE ARE CHANGING FROM ELUDING TO ATTEMPTED ENTRY AT

24   A TIME AND PLACE OTHER THAN, ETC.?

25           **MS. HAN:**  YES, YOUR HONOR.  IN LIGHT OF LITIGATION

161

1

1          UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF CALIFORNIA
2

3   UNITED STATES OF AMERICA,          )
                                       )  CASE NO. 19CR0735-AJB
4              PLAINTIFF,              )
                                       )
5          -V-                         )  JUNE 25, 2019
                                       )  9:17 A.M.
6   EDUVIGES AYALA-BELLO,              )
    WALTER GERMAN VELEZ-GONZALEZ,      )
7   LILANA CATALINA FERNANDEZ-         )
    FERNANDEZ,                         )
8                                      )
               DEFENDANTS.             )  SAN DIEGO, CALIFORNIA
9   _____)

10

11

12              TRANSCRIPT OF STATUS HEARING

13        BEFORE THE HONORABLE ANTHONY J. BATTAGLIA
                UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23   OFFICIAL REPORTER:    JEANNETTE N. HILL, CSR
                           U.S. COURTHOUSE
24                         333 WEST BROADWAY, RM 420
                           SAN DIEGO, CALIFORNIA 92101
25                         (619) 702-3905

    REPORTED BY STENOTYPE, TRANSCRIPT PRODUCED BY COMPUTER

162

2

1  APPEARANCES:

2  FOR THE GOVERNMENT:    ROBERT S. BREWER, JR., U.S ATTORNEY
                          BY:  CAROLINE PINEDA HAN
3                         ASSISTANT U.S. ATTORNEY
                          880 FRONT STREET
4                         SAN DIEGO, CALIFORNIA 92101

5  FOR DEFENDANT AYALA:   FEDERAL DEFENDERS OF SAN DIEGO, INC.
                          BY:  BRIDGET KENNEDY, ESQ.
6                         225 BROADWAY, STE. 900
                          SAN DIEGO, CALIFORNIA 92101
7
   FOR DEFENDANT VELEZ:   KEITH H. RUTMAN ATTORNEY AT LAW
8                         BY:  KEITH H. RUTMAN, ESQ.
                          501 WEST BROADWAY, SUITE 1650
9                         SAN DIEGO, CALIFORNIA 92101

10 FOR DEFENDANT          FEDERAL DEFENDERS OF SAN DIEGO, INC.
   FERNANDEZ:             BY:  LAUREN WILLIAMS, ESQ.
11                        225 BROADWAY, STE. 900
                          SAN DIEGO, CALIFORNIA 92101
12
   COURT INTERPRETER:     MATIAS PIZARRO
13

14

15

16

17

18

19

20

21

22

23

24

25

JUNE 25, 2019

163

3

1        **SAN DIEGO, CALIFORNIA; TUESDAY, JUNE 25, 2019; 9:17 A.M.**

2    (EDUVIGES AYALA-BELLO AND WALTER GERMAN VELEZ-GONZALEZ

3    APPEARING TELEPHONICALLY)

4            **DEPUTY CLERK:**  CALLING NUMBER ONE ON CALENDAR, CASE

5    NUMBER 19CR0735, UNITED STATES OF AMERICA VERSUS EDUVIGES

6    AYALA-BELLO, WALTER GERMAN VELEZ-GONZALEZ, LILANA CATALINA

7    FERNANDEZ-FERNANDEZ, ON FOR STATUS HEARING.

8            **MR. CHAVEZ:**  GOOD MORNING, YOUR HONOR.  JAMES CHAVEZ,

9    FEDERAL DEFENDERS, ON BEHALF OF THE FEDERAL DEFENDER CLIENTS.

10           **THE COURT:**  WHICH ONE?  YOU HAVE TWO.

11           **MR. CHAVEZ:**  I WILL APPEAR FOR BOTH OF THEM, IF THE

12   COURT WOULD LIKE.

13           **THE COURT:**  OKAY.  WELL, THERE IS EDUVIGES

14   AYALA-BELLO AND LILANA CATALINA FERNANDEZ-FERNANDEZ.

15           **MR. CHAVEZ:**  YES, YOUR HONOR.

16           **THE COURT:**  YOU HAVE THEM BOTH.  OKAY.

17           **MR. RUTMAN:**  GOOD MORNING, YOUR HONOR.  KEITH RUTMAN

18   FOR WALTER GERMAN VELEZ-GONZALEZ.

19           **MS. HAN:**  AND GOOD MORNING, YOUR HONOR.  CAROLINE HAN

20   ON BEHALF OF THE UNITED STATES.

21           **THE COURT:**  VERY GOOD.  AND I UNDERSTAND WE HAVE

22   AYALA AND VELEZ ON THE PHONE.

23           **MR. RUTMAN:**  YES, YOUR HONOR.

24           **THE COURT:**  AND MS. FERNANDEZ IS YET TO APPEAR AGAIN?

25           **MR. RUTMAN:**  YES.

164

4

1    **THE COURT:**  OKAY.  WITH THE NOTICE AND
2 ACKNOWLEDGMENTS FILED BY AYALA AND VELEZ, AND THEIR APPEARANCE
3 ON THE PHONE, I WILL RECALL THE WARRANTS ISSUED ON THEM FOR THE
4 NONAPPEARANCE LAST WEEK.
5    MS. FERNANDEZ' WARRANT WILL STAY OUT AND ACTIVE.
6    AND IN TERMS OF STATUS OF THE INJURIES FROM THE
7 ACCIDENT LAST WEEK, MR. RUTMAN, FOR MR. VELEZ, WHAT IS HIS
8 STATUS FOR TRIAL NEXT WEEK?
9    **MR. RUTMAN:**  HE IS AVAILABLE FOR TRIAL NEXT WEEK.  I
10 SPOKE TO HIS WIFE.  SHE IS OUT OF THE HOSPITAL AND HAS BEEN
11 REFERRED TO A CHIROPRACTOR FOR WHAT I BELIEVE IS A
12 WHIPLASH-TYPE INJURY TO HER NECK.  SHE INFORMED ME THAT SHE
13 WOULD BE ABLE TO DRIVE FROM PLACERVILLE, BUT IT WOULD BE
14 EXTREMELY UNCOMFORTABLE FOR HER TO SIT IN A CAR FOR THAT LONG,
15 AND ASKED IF WE COULD POSTPONE THIS FOR PERHAPS A MONTH, AND
16 THEN SHE COULD GET HER CHIROPRACTOR TREATMENT COMPLETED AND GET
17 IN BETTER SHAPE.
18    I HAVE SPOKEN TO MS. HAN, AND IT'S REALLY UP TO THE
19 COURT.
20    **THE COURT:**  AND, MR. CHAVEZ, AS TO MS. FERNANDEZ, IS
21 HER STATUS UNKNOWN OR WHAT DO WE KNOW?
22    **MR. CHAVEZ:**  YOUR HONOR, I HAVE NO INFORMATION TO
23 PROVIDE TO THE COURT ABOUT THAT.
24    **THE COURT:**  OKAY.  AND THEN, MS. HAN, IT'S
25 REPRESENTED THAT WE NEED TO PUT IT OFF FOR MS. AYALA'S HEALTH

JUNE 25, 2019

1

1          UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF CALIFORNIA
2

3  UNITED STATES OF AMERICA,        )
                                    )  CASE NO. 19CR0735-AJB
4              PLAINTIFF,           )
                                    )
5           -V-                     )  JUNE 18, 2019
                                    )  9:06 A.M.
6  EDUVIGES AYALA-BELLO,            )
   WALTER GERMAN VELEZ-GONZALEZ,    )
7  LILANA CATALINA FERNANDEZ-       )
   FERNANDEZ,                       )
8                                   )
               DEFENDANTS.          )  SAN DIEGO, CALIFORNIA
9  _____)

10

11

12              TRANSCRIPT OF STATUS HEARING

13       BEFORE THE HONORABLE ANTHONY J. BATTAGLIA
               UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22
   OFFICIAL REPORTER:    JEANNETTE N. HILL, CSR
23                       U.S. COURTHOUSE
                         333 WEST BROADWAY, RM 420
24                       SAN DIEGO, CALIFORNIA 92101
                         (619) 702-3905
25
   REPORTED BY STENOTYPE, TRANSCRIPT PRODUCED BY COMPUTER

               JUNE 18, 2019

2

```
 1   APPEARANCES:

 2   FOR THE GOVERNMENT:    ROBERT S. BREWER, JR., U.S ATTORNEY
                            BY:   CAROLINE PINEDA HAN
 3                          ASSISTANT U.S. ATTORNEY
                            880 FRONT STREET
 4                          SAN DIEGO, CALIFORNIA 92101

 5   FOR DEFENDANT AYALA:   FEDERAL DEFENDERS OF SAN DIEGO, INC.
                            BY:   BRIDGET KENNEDY, ESQ.
 6                          225 BROADWAY, STE. 900
                            SAN DIEGO, CALIFORNIA 92101
 7
     FOR DEFENDANT VELEZ:   KEITH H. RUTMAN ATTORNEY AT LAW
 8                          BY:   KEITH H. RUTMAN, ESQ.
                            501 WEST BROADWAY, SUITE 1650
 9                          SAN DIEGO, CALIFORNIA 92101

10   FOR DEFENDANT          FEDERAL DEFENDERS OF SAN DIEGO, INC.
     FERNANDEZ:             BY:   LAUREN WILLIAMS, ESQ.
11                          225 BROADWAY, STE. 900
                            SAN DIEGO, CALIFORNIA 92101
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

JUNE 18, 2019

167

3

1     **SAN DIEGO, CALIFORNIA; TUESDAY, JUNE 18, 2019; 9:06 A.M.**

2         **DEPUTY CLERK:** MATTER NUMBER ONE ON CALENDAR, CASE

3 NUMBER 19CR0735, UNITED STATES OF AMERICA VERSUS EDUVIGES

4 AYALA-BELLO, WALTER GERMAN VELEZ-GONZALEZ, AND LILIANA CATALINA

5 FERNANDEZ-FERNANDEZ, ALL ON FOR BENCH TRIAL.

6         **MS. WILLIAMS:** GOOD MORNING, YOUR HONOR. LAUREN

7 WILLIAMS, FEDERAL DEFENDERS, ON BEHALF OF

8 MS. FERNANDEZ-FERNANDEZ, WHO IS NOT PRESENT.

9         **MR. RUTMAN:** GOOD MORNING, YOUR HONOR. KEITH RUTMAN

10 FOR WALTER VELEZ. HE IS NOT PRESENT, EITHER.

11         **MS. KENNEDY:** GOOD MORNING, YOUR HONOR. BRIDGET

12 KENNEDY, FEDERAL DEFENDERS. I AM APPEARING FOR JOSE MOSQUEDA

13 OF MY OFFICE FOR MS. AYALA, WHO IS NOT PRESENT. SHE WAS IN A

14 CAR ACCIDENT YESTERDAY, AND WE DO HAVE SOME DOCUMENTS

15 PERTAINING TO THAT THAT WE WOULD LIKE TO PRESENT TO THE COURT.

16         **THE COURT:** I'M SORRY. WHO IS IN THE HOSPITAL?

17         **MS. KENNEDY:** MS. AYALA, DEFENDANT 1A. EDUVIGES. I

18 AM PROBABLY NOT PRONOUNCING HER NAME CORRECTLY.

19         **MR. RUTMAN:** MR. VELEZ IS HER HUSBAND.

20         **THE COURT:** AND WHERE IS MS. FERNANDEZ?

21         **MS. WILLIAMS:** YOUR HONOR, SHE IS NOT PRESENT.

22         **THE COURT:** WE DON'T KNOW?

23         **MS. WILLIAMS:** I DON'T KNOW, YOUR HONOR.

24         **THE COURT:** SO MS. AYALA-BELLO WAS IN AN ACCIDENT

25 WITH HER HUSBAND. SHE IS IN IMPERIAL COUNTY HOSPITAL OR

4

1  SOMEPLACE DOWN THERE?

2          **MS. KENNEDY:**  SHE IS IN MARSHAL -- OR SHE WAS, AS OF

3  LAST NIGHT, AT MARSHAL MEDICAL CENTER, WHICH I BELIEVE IS

4  ACTUALLY IN --

5          **MR. RUTMAN:**  PLACERVILLE, YOUR HONOR.  BY SACRAMENTO,

6  WHERE THEY RESIDE.

7          **MS. KENNEDY:**  I DO HAVE DOCUMENTS AND PHOTOGRAPHS

8  THAT HER HUSBAND SENT, AND I CAN PRESENT TO THE COURT.  THEY

9  ARE IN SPANISH.  I THINK THEY WERE DOCUMENTS THAT THEY GAVE

10  HER, SINCE SHE IS A SPANISH-SPEAKER.  BUT UNDERNEATH THE

11  DIAGNOSTICS IT IS WRITTEN IN ENGLISH.

12          **THE COURT:**  YOU CAN TELL ME.  I TAKE YOUR WORD FOR

13  IT.  WHAT DO THEY SAY HER INJURIES ARE, OR DIAGNOSIS IS?

14          **MS. KENNEDY:**  SHE WAS IN A MOTOR VEHICLE ACCIDENT.

15  SHE HAS MULTIPLE CONTUSIONS.  INJURY OF HEAD, INITIAL

16  ENCOUNTER.  ACUTE CERVICAL MYO-FACIAL STRAIN, INITIAL

17  ENCOUNTER.  CONTUSION OF LEFT CHEST WALL, INITIAL ENCOUNTER.

18  AND HYPERKALEMIA.

19          I AM NOT REALLY SURE WHAT ANY OF THAT MEANS.  WE GOT

20  THESE THIS MORNING.

21          **THE COURT:**  I COULD FOLLOW ALL OF IT UP TO THE LAST

22  THING.  SHE HAS WHIPLASH AND SOME BUMPS AND BRUISES.

23          **MR. RUTMAN:**  I THINK IT'S FLUID AND KIND OF LIKE

24  PNEUMONIA, WHERE THERE IS SOME TYPE OF FLUID, BASED UPON THE

25  CONTUSION THAT SHE SUFFERED TO HER CHEST.  THAT IS THE LIKELY

JUNE 18, 2019

5

1 CAUSE.

2         **THE COURT:** AND DO WE KNOW WHAT HER COURSE OF CARE OR

3 STATUS IS GOING TO BE FOR PURPOSES OF TRIAL?

4         **MS. KENNEDY:** NOT YET. I THINK WE ARE SORT OF

5 GUESSING THAT SHE DOESN'T HAVE BROKEN BONES OR ANYTHING OF THAT

6 SORT THAT IS GOING TO TAKE A LONG TIME TO RECOVER. BUT THE

7 LAST INFORMATION THAT MY OFFICE GOT WERE THESE DOCUMENTS, YOUR

8 HONOR.

9         **THE COURT:** OKAY. AND THEN MR. VELEZ, HE IS UP

10 THERE?

11         **MR. RUTMAN:** HE IS AT HER BEDSIDE, YOUR HONOR.

12         **THE COURT:** OKAY. AND IT'S NOT FATAL, THOUGH. HE

13 WAS TOLD TO BE HERE, AND HE IS NOT HERE.

14         **MR. RUTMAN:** RIGHT. HE WAS ON HIS WAY YESTERDAY WHEN

15 THEY HAD THE CAR ACCIDENT.

16         **THE COURT:** YOU SAY THEY ARE RESIDING IN SACRAMENTO?

17         **MR. RUTMAN:** YES, SIR.

18         **THE COURT:** OKAY. ALL RIGHT. AND THEN

19 MS. FERNANDEZ, WE JUST DON'T KNOW?

20         **MS. WILLIAMS:** YOUR HONOR, I DO NOT KNOW. I ASK IF

21 THE COURT IS INCLINED TO ISSUE A BENCH WARRANT, THAT IT BE

22 STAYED FOR A COUPLE OF DAYS, JUST IN CASE THERE WAS SOME SORT

23 OF ISSUE WITH HER FLIGHT BECAUSE SHE IS LIVING IN FLORIDA --

24 WAS LIVING IN FLORIDA, AT LEAST, THE LAST TIME I SPOKE WITH HER

25 WITH HER SURETY.

JUNE 18, 2019

6

1          **THE COURT:**  OKAY.  WELL, WHAT DO WE DO ABOUT THIS

2     MORNING AND TRIAL?  I WAS GOING TO PUT IT OVER BECAUSE

3     MR. MOSQUEDA WAS SICK AND I THOUGHT, OBVIOUSLY, WE CAN'T GO

4     FORWARD.

5          WE HAVE GOT, NOW, MS. AYALA UNDER THE WEATHER, WE'LL

6     CALL IT.  I AM RUNNING OUT OF TIME IN SHORT ORDER TO GET THE

7     TRIAL ON.  IF WE PUT THIS OUT A WEEK TO THE DAY, IS THAT GOING

8     TO HELP US IN TERMS OF MR. MOSQUEDA BEING WELL?

9          WE CAN HAVE AN INTERIM STATUS ON MS. AYALA.  AND IT

10    SOUNDS LIKE MR. VELEZ WILL BE HERE IF HIS WIFE WILL BE HERE.

11    AND WE CAN WAIT TO FIND OUT ABOUT MS. FERNANDEZ.

12          WHAT DO YOU THINK?

13          **MR. RUTMAN:**  YOUR HONOR, WITHOUT KNOWING MORE FROM

14    THE DOCTOR AS TO WHEN SHE IS GOING TO BE DISCHARGED, PERHAPS

15    THE BEST COURSE OF ACTION IS TO SET A STATUS CONFERENCE FOR

16    SOME TIME NEXT WEEK.  WE WERE DISCUSSING MAYBE CONTINUING IT

17    ABOUT A MONTH, BEFORE THE COURT TOOK THE BENCH, WITHOUT KNOWING

18    EXACTLY WHAT HER PROGNOSIS IS, OR WHEN SHE IS GOING TO BE

19    DISCHARGED.

20          IT DOESN'T SOUND LIKE SHE HAS ANY BROKEN BONES, BUT

21    THEY DID DO A CT SCAN OF HER SPINE, BASICALLY HER HEAD.  SO SHE

22    MAY BE UNDER CONCUSSION PROTOCOLS.  I DON'T EXACTLY KNOW, BUT I

23    WILL ENDEAVOR TO FIND OUT.

24          **THE COURT:**  OR IT COULD JUST BE A WHIPLASH, WHICH

25    WILL TAKE A COUPLE WEEKS TO CLEAR.  WE DON'T KNOW.

JUNE 18, 2019

1

```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF CALIFORNIA
 2

 3   UNITED STATES OF AMERICA,        )
                                      )  CASE NO. 19CR0735-AJB
 4                   PLAINTIFF,       )
                                      )
 5             -V-                    )  APRIL 8, 2019
                                      )  3:30 P.M.
 6   EDUVIGES AYALA-BELLO,            )
     WALTER GERMAN VELEZ-GONZALEZ,    )
 7   LILANA CATALINA FERNANDEZ-       )
     FERNANDEZ,                       )
 8                                    )
                     DEFENDANTS.      )  SAN DIEGO, CALIFORNIA
 9   _____)

10

11

12                   TRANSCRIPT OF MOTION HEARING

13           BEFORE THE HONORABLE ANTHONY J. BATTAGLIA
                     UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22
     OFFICIAL REPORTER:    JEANNETTE N. HILL, CSR
23                         U.S. COURTHOUSE
                           333 WEST BROADWAY, RM 420
24                         SAN DIEGO, CALIFORNIA 92101
                           (619) 702-3905
25
     REPORTED BY STENOTYPE, TRANSCRIPT PRODUCED BY COMPUTER
```

APRIL 8, 2019

172

2

1   APPEARANCES:

2   FOR THE GOVERNMENT:  ROBERT S. BREWER, JR., U.S ATTORNEY
                        BY:  CAROLINE PINEDA HAN
3                       ASSISTANT U.S. ATTORNEY
                        880 FRONT STREET
4                       SAN DIEGO, CALIFORNIA 92101

5   FOR DEFENDANT AYALA: FEDERAL DEFENDERS OF SAN DIEGO, INC.
                        BY:  JESUS MOSQUEDA, ESQ.
6                       225 BROADWAY, STE. 900
                        SAN DIEGO, CALIFORNIA 92101
7
    FOR DEFENDANT VELEZ: FEDERAL DEFENDERS OF SAN DIEGO, INC.
8                       BY:  NORMA AGUILAR, ESQ.
                        225 BROADWAY, STE. 900
9                       SAN DIEGO, CALIFORNIA 92101

10  FOR DEFENDANT        FEDERAL DEFENDERS OF SAN DIEGO, INC.
    FERNANDEZ:          BY:  LAUREN WILLIAMS, ESQ.
11                      225 BROADWAY, STE. 900
                        SAN DIEGO, CALIFORNIA 92101
12
    COURT INTERPRETER:  DEBORAH BERRY
13

14

15

16

17

18

19

20

21

22

23

24

25

                        APRIL 8, 2019

173

3

1    __SAN DIEGO, CALIFORNIA; MONDAY, APRIL 8, 2019; 3:30 P.M.__

2         **DEPUTY CLERK:**  MATTER 18 ON CALENDAR, CASE NUMBER

3    19CR0735, UNITED STATES OF AMERICA VERSUS EDUVIGES AYALA-BELLO,

4    WALTER GERMAN VELEZ-GONZALEZ, AND LILIANA CATALINA

5    FERNANDEZ-FERNANDEZ, ALL ON FOR MOTION HEARING AND TRIAL

6    SETTING.

7         **MR. MOSQUEDA:**  GOOD AFTERNOON, YOUR HONOR.  JESUS

8    MOSQUEDA, FEDERAL DEFENDERS, ON BEHALF OF MS. AYALA-BELLO, WHO

9    IS PRESENT ON BOND HERE.

10        **THE COURT:**  HELLO.

11        **MS. WILLIAMS:**  GOOD AFTERNOON, YOUR HONOR.  LAUREN

12   WILLIAMS, FEDERAL DEFENDERS, ON BEHALF OF

13   MS. FERNANDEZ-FERNANDEZ, WHO IS PRESENT ON BOND HERE, AS WELL.

14        **MS. AGUILAR:**  AND GOOD AFTERNOON, YOUR HONOR.  NORMA

15   AGUILAR, FEDERAL DEFENDERS, ON BEHALF OF MR. GONZALEZ, WHO IS

16   ALSO PRESENT.  I'M APPEARING FOR ROXANNE SANDOVAL OF MY OFFICE.

17        **MS. HAN:**  AND GOOD AFTERNOON, YOUR HONOR.  CAROLYN

18   HAN ON BEHALF OF THE UNITED STATES.

19        **THE COURT:**  THANKS, MS. HAN.

20        SO LET'S GET THE INTERPRETER COMFORTABLE.  YOU GOT

21   EVERYBODY SET?

22        **THE INTERPRETER:**  GOOD AFTERNOON, YOUR HONOR.

23   DEBORAH BERRY.

24        **THE COURT:**  THANKS, MS. BERRY.

25        ALL RIGHT.  WHERE SHALL WE START OR WHAT DO WE NEED

174

10

1    OPERATION STREAMLINE, OR IN THE 1325 COURT, THIS COURT DOESN'T

2    HAVE -- THE PROCESS FOR APPOINTMENT OF COUNSEL IS DIFFERENT.

3    SO APPOINTMENT OF COUNSEL DOESN'T HAPPEN IN COURT.  IN COURT,

4    IT'S CONFIRMED.  COUNSEL IS ALREADY ASSIGNED DOWN IN THE TANK.

5    SO IT'S A DIFFERENT PROCESS FOR 1325 COURT.

6          **MR. MOSQUEDA:**  AND ONE LAST THING IN TERMS OF WHY WE

7    STILL BELIEVE IT'S IMPROPERLY JOINED, YOUR HONOR.  WE HAVE

8    THREE SEPARATE INDIVIDUALS WITH THREE SEPARATE TRACKS OF WHAT

9    HE OR SHE MAY OR NOT TRY TO DO.

10          I BELIEVE MS. WILLIAM'S CLIENT LIVES IN FLORIDA.  MY

11   CLIENT LIVES IN NORTHERN CALIFORNIA.  THEY ARE IN A DIFFERENT

12   TIME FRAME.

13          MY CLIENT IS ALSO SEEKING ASYLUM.  SHE ALREADY HAS AN

14   IMMIGRATION ATTORNEY.  SO WHATEVER TIME SHE HAS, SHE NEEDS TO

15   FILE THOSE IMMIGRATION DOCUMENTS.  THAT IS SOMETHING DIFFERENT.

16   WE DON'T KNOW WHAT MS. WILLIAM'S CLIENT IS DOING.  SO THAT

17   WOULD UNDULY BURDEN MY CLIENT OR HER CLIENT, IF THEIR CLIENT

18   HAS SET IT FOR TRIAL AT A PARTICULAR DAY, THAT MIGHT BE

19   INCONVENIENT FOR FURTHER SEPARATE CLAIMS, YOUR HONOR.

20          **THE COURT:**  THAT IS NO DIFFERENT THAN ANY OTHER

21   MULTI-DEFENDANT CASE.  SO I'M GOING TO DENY THE SEVERANCE

22   MOTION, WHICH I THINK IS 34-2, 36-3, AND 37-2.

23          THE MOTION TO DISMISS ON THE GROUNDS THEY SHOULD HAVE

24   GONE THROUGH CVB AND ALL OF THAT, I'M GOING TO DENY, CITING

25   *U.S. V. OSCAR CHAVEZ-DIAZ,* DISTRICT COURT 18MJ20098.

APRIL 8, 2019

175

1  ROBERT S. BREWER, JR.
   United States Attorney
2  CAROLINE P. HAN
   Assistant U.S. Attorney
3  California Bar No. 250301
   Office of the U.S. Attorney
4  880 Front Street, Room 6293
   San Diego, CA 92101
5  Tel: (619) 546-6968
   Fax: (619) 546-0681
6  Email: caroline.han@usdoj.gov

7  Attorneys for the United States

8              **UNITED STATES DISTRICT COURT**

9           **SOUTHERN DISTRICT OF CALIFORNIA**

10 | UNITED STATES OF AMERICA,    | Case No. 19CR0736-AJB
11 |              Plaintiff,       | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO:**
12 |         v.                    |
13 | EDUVIGES AYALA-BELLO et al.,  | **(1) Dismiss based on a violation of due process and the equal protection clause;**
14 |              Defendant.       | **(2) Dismiss because 8 U.S.C. § 1325 is unconstitutional;**

(1) Dismiss based on a violation of due process and the equal protection clause;
(2) Dismiss because 8 U.S.C. § 1325 is unconstitutional;
(3) Sever defendants;
(4) Suppress evidence;
(5) Grant discovery;
(6) Preclude 404(b) evidence;
(7) For a jury trial;
(8) Modify the elements of § 1325; and
(9) Leave to file further motions

Date: April 8, 2019
Time: 2:00pm

      The UNITED STATES OF AMERICA, by and through its counsel Robert S. Brewer, Jr., United States Attorney, and Caroline Han, Assistant U.S. Attorney, files this Response in Opposition to Defendants' Motions[1].

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

_____

[1]    Although defendants filed separate motions, many of the motions and arguments are duplicative of one another. The United States thus files this joint response to their motions.

On February 9, 2019, Border Patrol Agent Jorge Franco began following foot signs after learning that a seismic intrusion device had been activated in an area that is south of Hwy 94 and east of Tierra Del Sol Road. Border Patrol Agent Rafael Fregoso soon responded to assist Agent Franco. Agent Franco continued following foot signs until he encountered eight people sitting under a tree. As Agent Fregoso approached the location, the group ran away from Agent Fregoso as he was identifying himself as Border Patrol agent. Agent Fregoso encountered Miguel Molina-Garcia, and later encountered three more people, including defendants Eduviges Ayala-Belo, Liliana Fernandez-Fernandez, and Walter Velez-Gonzalez (collectively "defendants"). Agent Fregoso walked the defendants to Agent Bolland in an area that was located approximately 19 miles east of the Tecate Port of Entry and 4 miles north of the U.S.-Mexico border. Agent Fregoso continued to search for other people. After a short while, the six people who were apprehended were placed into vehicles. Agent Fregoso then asked each of them their citizenship and if they had any documents to allow them to enter or remain in the United States. The defendants and other three individuals all stated that they were citizens of Mexico, did not have any immigration documents that would allow them to remain in the United States legally.

After being taken into custody, all three defendants were advised of their <u>Miranda</u> rights and agreed to waive their rights in Spanish. Based on their post-arrest statements, the defendants crossed into the United States in the same group. All three defendants stated that they entered the United States earlier in the afternoon. They stated that they were Mexican citizens with no legal right to enter or remain in the United States. They also all stated that they were coming to the United States to work and were going to a location in California. Defendant Ayala-Bello also stated that she and her boyfriend, Velez-Gonzalez, were going to meet up with her uncle who had helped them make arrangements to come into the United States.

Response in Opposition to Defendant's
Motions to Dismiss et al.

2

*United States v. Ayala-Bello, et. al*
19CR0735-AJB

177

1     On February 28, 2019, the defendants were indicted in a three-count indictment

2 charging each of them with one count of unlawful entry by an alien, in violation of 8 U.S.C.

3 § 1325.

4     On March 7, 2019, the defendants were arraigned on the indictment.

5 **II.    MOTIONS TO DISMISS SHOULD BE DENIED**

6     In their briefs, Defendants argue two theories for dismissal of the case, claiming:  (1)

7 that Defendant has suffered "disparate treatment," violating equal protection and due

8 process; and (2) that 8 U.S.C. § 1325 is unconstitutional.  These claims have been raised

9 in multiple cases, including before the Court, and have failed.  For the reasons set forth

10 below, the claims should fail.

11     **A.    Defendant did not suffer unconstitutional "disparate treatment"**

12     Defendants first contend that they and other defendants charged under 8 U.S.C. §

13 1325 are being treated more harshly than defendants who are prosecuted through the

14 Central Violations Bureau (CVB); that they are receiving "disparate treatment" that

15 violates equal protection and due process; and that their criminal cases should therefore be

16 dismissed.  In doing so, they offer a range of arguments that have been rejected by the

17 Court in United States v. Chavez-Diaz, 18-mj-20098-KSC-AJB; as well as another court

18 in this district in United States v. Mazariegos-Ramirez, 18mj-22276-WQH.

19     **1.    Equal protection**

20     For purposes of equal protection analysis, "'a classification neither involving

21 fundamental rights nor proceeding along suspect lines is accorded a strong presumption of

22 validity' and must be upheld 'if there is a rational relationship between the disparity of

23 treatment and some legitimate governmental purpose.'"  United States v. Aleman, 217 F.3d

24 1191, 1200 (9th Cir. 2000) (quoting Heller v. Doe, 509 U.S. 312, 319-20 (1993)).  Indeed,

25 "'a statutory classification . . . must be upheld against equal protection challenge if there is

26 any reasonably conceivable state of facts that could provide a rational basis for the

27 classification.'"  Id. at 1200-01 (quoting FCC v. Beach Communications, Inc., 508 U.S.

28 307, 313 (1993)).  "The government 'has no obligation to produce evidence to sustain the

Response in Opposition to Defendant's
Motions to Dismiss et al.

3

*United States v. Ayala-Beltran, et al*
*19CR0735-AJB*

178

1   rationality of a statutory classification'; '[t]he burden is on the one attacking the legislative

2   arrangement to negative every conceivable basis which might support it.'"  Id. at 1201

3   (quoting Heller, 509 U.S. at 320).

4   Defendants contend that the classification at issue is the difference between

5   defendants charged with § 1325 on one hand, and persons prosecuted through the Central

6   Violations Bureau (CVB) on the other.[2]  They assert that this classification results in

7   additional punishment for the first of these two groups "on the basis of their alienage,

8   national origin, and race."  This is false.

9   This Court's General Orders relating to the CVB do not distinguish on the basis of

10  alienage, national origin, or race.  Likewise, 8 U.S.C. § 1325 does not distinguish based on

11  national origin or race; and it provides criminal penalties only for aliens who undertake

12  _____

13  [2]     As an initial matter, "[t]o state an equal protection claim of any stripe, whatever the
    level of scrutiny it invites, a plaintiff must show that the defendant treated the plaintiff
14  differently from similarly situated individuals."  Pimentel v. Dreyfus, 670 F.3d 1096, 1106
    (9th Cir. 2012); see also Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439
15  (1985) (explaining that the guarantee of equal protection directs that "all persons similarly
16  situated be treated alike").

17  Defendants have failed to meet the burden of showing that the two groups they are
    comparing are similarly situated.  Cf. Thornton v. City of St. Helens 425 F.3d 1158, 1167
18  (9th Cir. 2005) ("An equal protection claim will not lie by 'conflating all persons not
19  injured into a preferred class receiving better treatment' than the plaintiff.'") (quoting Joyce
    v. Mavromatis, 783 F.2d 56, 57 (6th Cir.1986)).  Aliens who elude examination and
20  inspection by immigration officers, and who are consequently charged under 8 U.S.C. §
21  1325, are differently situated from the class of persons – U.S. citizens and aliens alike –
    who commit misdemeanors on federal land that are prosecuted through violation notices.
22  See Chan v. Reno 113 F3d. 1068, 1073 (9th Cir. 1997) ("'Under the CSPA, certain Chinese
23  nationals were deemed to have visas available. However, CSPA applies only to Chinese
    nationals who were 'inspected and admitted or paroled' upon entry into the United States.
24  Because these plaintiffs admit that they were not inspected, they do not have visas available
25  under the CSPA. Because they do not have visas available, they are not similarly situated
    to aliens who do have visas available and their equal protection claim fails.'") (citation
26  omitted); Santos v. United States, 940 F. Supp. 2d 275, 281 (D. Hawai'i 1996) ("However,
27  Petitioner fails to state an Equal Protection claim because deportable aliens are not
28  'similarly situated' to United States citizens.").

179

1  specified unlawful actions, for example, "elud[ing] examination or inspection by
2  immigration officers." 8 U.S.C. § 1325(a)(2). That is, the statute distinguishes between
3  aliens who enter the United States lawfully and those who do not. This is not an alienage-
4  based distinction.

5      Even if 8 U.S.C. § 1325 were treated as making an alienage-based distinction,
6  because it relates to the admission of non-citizens "rational basis" review would
7  nonetheless apply. See Dent v. Sessions, 900 F.3d 1075, 1081 (2018) ("Because issues
8  related to admission of non-citizens 'have been recognized as matters solely for the
9  responsibility of the Congress and wholly outside the power of [the] Court to control,' the
10 Supreme Court applied a standard of review similar to rational basis review.") (quoting
11 Fiallo v. Bell, 430 U.S. 797, 794-96 (1977)). Furthermore, where a classification is made
12 based on the *undocumented* status of aliens – a classification distinct from that of alienage
13 – the Supreme Court has held that "[u]ndocumented aliens cannot be treated as a suspect
14 class because their presence in this country in violation of federal law is not a
15 'constitutional irrelevancy.' . . . [I]t is 'a routine and normally legitimate part' of the
16 business of the Federal Government to classify on the basis of alien status . . . and to 'take
17 into account the character of the relationship between the alien and this country.'" Plyler
18 v. Doe, 457 U.S. 202, 223-225 (1981).

19     Even a brief explanation of the CVB docket readily demonstrates why that docket
20 passes "rational basis" review. The CVB is "a national center charged with processing
21 violation notices (tickets) issued and payments received for petty offenses committed on
22 federal property." Central Violations Bureau, www.cvb.uscourts.gov (last visited Nov. 14,
23 2018). A petty offense is a Class B misdemeanor, Class C misdemeanor, or an infraction.
24 18 U.S.C. § 19. This Court's General Order 203-L and subsequent petty-offense orders
25 identify a series of petty offenses that would be handled on the CVB calendar; the General
26 Orders list offenses such as traffic violations on federal property (i.e., in national parks),
27 fish-and-game offenses (i.e., hunting out of season), boating offenses, camping offenses,
28 and the like. See, e.g., S.D. Cal. General Order 203-L (2002).

Response in Opposition to Defendant's
Motions to Dismiss et al.

5

*United States v. Ayala Cruz, et. al*
19CR0735-AJB

180

As explained on the District Court's website, a CVB proceeding is initiated when a violator receives a "violation notice" (i.e., a ticket) from a federal law enforcement officer. Central Violations Bureau, www2.casd.uscourts.gov/cvb/ (last visited Nov. 14, 2018). Violation notices are then mailed by law enforcement to the CVB for processing. Id. Approximately four weeks later, CVB mails violators a notice to appear in court. Id. In short, CVB matters differ from other types of criminal cases in this district (including 8 U.S.C. § 1325 cases) based on a combination of the nature of the offense and the manner in which proceedings are initiated, processed, and pursued.

Defendants' cases are not suitable for disposition through the CVB. For one, the charge in Defendants' case – a criminal violation under Title 8 of the United States Code – is not the type of offense for which, under the General Orders of this Court, the CVB calendar was designed. Indeed, the charge here involves no nexus to a petty offense committed on federal property. Furthermore, the procedures applicable in Defendant's case are incompatible with the CVB calendar. Defendants were arrested – consistent with the responsibilities of Border Patrol – instead of being given a "violation notice." Under Rule 5 of the Federal Rules of Criminal Procedure, Defendant was entitled to be taken "without unnecessary delay" before a magistrate judge; and he was. In light of his arrest, his case could not have been routed to the CVB for processing, and could not have been set on the Court's CVB calendar.

In Chavez-Diaz, the Court rejected an argument similar to Defendants' arguments. The Court explained that the relevant classification in procedures is not based on alienage, but instead is based on the type of offense at issue; and concluded that the "rational basis test" should be applied. See Order dated Oct. 30, 2018, Dkt. No. 29, at 6-7. Reviewing the CVB program, the Court determined that "[i]t is both rational and a matter of common sense for a court to separately calendar matters that fall into groups by charge and type of proceedings." Id. at 7. The Court explained:

> In the end, defendant's charges could not be handled on the CVB calendar. The predicate of a violation of law on federal property is nonexistent. The

Response in Opposition to Defendant's
Motions to Dismiss et al.

6

United States v. Aydo Bello, et. al
19CR0735-AJB

181

argument that misdemeanors are misdemeanors is not the point. The jurisdictional underpinnings of the basis for the charges, the manner of "arrest" and prosecutorial discretion are all factors. In no way does alienage play a part from the Court's perspective of scheduling the various matters brought by the Government.

To reiterate, the calendaring of Defendant's case with others similarly charged was based on the charges and not alienage. Assessing the Court's needs to administer its business with available resources, it is both rational and prudent to handle matters efficiently by the type of matter. The "processing" of defendant's case by charge is not discriminatory, and defendant has not proven otherwise.

Id. at 9. The same conclusion is warranted here.

### 2.   Due process

Defendants' related due process claim also fails. As to substantive due process, the "threshold question is whether the [government action] is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Cty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998). Substantive due process targets governmental conduct that violates the "decencies of civilized conduct[,]" Rochin v. California, 342 U.S. 165, 173 (1952), interferes with rights "'implicit in the concept of ordered liberty[,]'" id. at 169 (quoting Palko v. State of Conn., 302 U.S. 319, 325 (1937)), and is so "'brutal' and 'offensive' that it [does] not comport with traditional ideas of fair play and decency[.]" Breithaupt v. Abram, 352 U.S. 432, 435 (1957). As is apparent, "the 'shock the conscience' standard erects a high hurdle for would-be claimants." Aguilar v. U.S. Immigration & Customs Enf't Div. of Dep't of Homeland Sec., 510 F.3d 1, 21 (1st Cir. 2007).

Defendants' motions fail to clear this high hurdle. By appearing in non-CVB court, Defendants have received the full panoply of rights afforded criminal defendants under the U.S. Constitution and the Federal Rules of Criminal Procedure. After arrest, they appeared within hours before a U.S. Magistrate Judge, who appointed counsel and set bond. Defendants thereafter satisfied the conditions of bond and were released. They are represented by counsel and are exercising his right to proceed to trial. Nothing about this situation shocks the conscience.

Response in Opposition to Defendant's
Motions to Dismiss et al.

United States v. Ayala-Ochoa, et. al
19CR0735-AJB

182

For the same reason, their claims based on procedural due process fail.  They have not even attempted to identify what process they are entitled to under the Federal Rules that they have not already received, other than to argue that they should be in CVB.  This Court should resist Defendant's invitation to treat the procedures of this Court's CVB calendar as something the U.S. Constitution mandates in all misdemeanor prosecutions.

**B.      8 U.S.C. § 1325 is constitutional**

Defendants claim that 8 U.S.C. § 1325 is unconstitutional.  The argument seems to be that because the Supreme Court found unconstitutional certain statutory sections relating to the way citizenship is transmitted to children born abroad, then *any* criminal prosecution under a statute that requires proof of alienage is likewise unconstitutional.

Defendants' argument is based on the Supreme Court's decision in Sessions v. Morales-Santana, 137 S. Ct. 1678 (2017), which addressed citizenship provisions of the Immigration and Nationality Act, (INA) 8 U.S.C. §§ 1401 and 1409, that apply "when one parent is a U.S. citizen and the other a citizen of another nation."  137 S. Ct. at 1682.  As the Supreme Court explained, "[a]pplicable to married couples, the main rule in effect at the time . . . required the U.S.-citizen parent to have ten years' physical presence in the United States prior to the child's birth."  Id.  That rule applied to unwed U.S.-citizen fathers through 8 U.S.C. § 1409(a); but a different rule applied to unwed U.S.-citizen mothers, which required only a one-year physical presence requirement.  8 U.S.C. § 1409(c).  The petitioner in Morales-Santana attacked §§ 1409(a) and (c) under the equal protection clause, contending that the statute unfairly treated unwed fathers compared to unwed mothers, and therefore their offspring in claiming citizenship.  The Supreme Court agreed, holding that the "equal protection infirmity in retaining a longer physical-presence requirement for unwed fathers than for unwed mothers is clear[.]"  Morales-Santana, 137 S. Ct. at 1698.  It then determined that the appropriate remedy was to excise the provision of the INA that offered unwed mothers favorable treatment.  Id. at 1700.

In addressing 8 U.S.C. § 1409(a) and (c), the Supreme Court did not purport to address other provisions of the INA, such as 8 U.S.C. § 1325.  Nor did its holding purport

Response in Opposition to Defendant's
Motions to Dismiss et al.

*United States v. Ayala-Leon, et. al*
19CR0735-AJB

183

**ROXANA SANDOVAL**
California State Bar No. 292327
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Roxana_Sandoval@fd.org

Attorneys for Mr. Velez-Gonzalez

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>   v.<br><br><br>Walter German Velez-Gonzalez,<br><br>          Defendant. | Case No.:  19-CR-0735-AJB<br><br>Hon. Anthony J. Battaglia<br>Date: April 8, 2019<br>Time: 2:00 p.m.<br><br>NOTICE OF MOTIONS AND MOTION TO:<br><br>1) DISMISS THE INDICTMENT BECAUSE PROSECUTION VIOLATES EQUAL PROTECTION AND DUE PROCESS;<br>2) DISMISS THE INDICTMENT BECAUSE 8 U.S.C. § 1325 IS UNCONSTITUTIONAL;<br>3) SEVER DEFENDANTS;<br>4) COMPEL DISCOVERY;<br>5) SUPPRESS EVIDENCE;<br>6) APPLY APPROPRIATE ELEMENTS;<br>7) PRECLUDE UNNOTICED PRIOR ACTS; AND<br>8) GRANT LEAVE TO FILE FURTHER MOTIONS. |

TO:  ROBERT S. BREWER, JR., UNITED STATES ATTORNEY, AND CAROLINE P. HAN, ASSISTANT UNITED STATES ATTORNEY:

PLEASE TAKE NOTICE that on April 8, 2019, at 2:00 p.m., or as soon thereafter as counsel may be heard, Defendant, Walter German Velez-Gonzalez,

184

through his attorneys, Roxana Sandoval and Federal Defenders of San Diego, Inc., will ask this Court to enter an order granting the following motions.

## MOTIONS

Defendant, Walter German Velez-Gonzalez, through his attorneys, Roxana Sandoval and Federal Defenders of San Diego, Inc., pursuant to the United States Constitution, the Federal Rules of Criminal Procedure, and all other applicable statutes, case law and local rules, moves this Court for an order to:

1) Dismiss the indictment because prosecution violates equal protection and due process;

2) Dismiss the indictment because 8 U.S.C. § 1325 is unconstitutional;

3) Sever;

4) Compel discovery;

5) Suppress evidence;

6) Apply appropriate elements;

7) Preclude unnoticed prior acts; and

8) Grant leave to file further motions.

These motions are based upon the attached statement of facts and memorandum of points and authorities, and any and all other materials that may come to this Court's attention at or before the hearing on these motions.

Respectfully submitted,

Dated: March 26, 2019      *s/ Roxana Sandoval*
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Velez-Gonzalez
Email: Roxana_Sandoval@fd.org

185

ROXANA SANDOVAL
California State Bar No. 292327
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Facsimile: (619) 687-2666
Roxana_Sandoval@fd.org

Attorneys for Mr. Velez-Gonzalez

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          v.<br><br>Walter German Velez-Gonzalez,<br><br>                    Defendant. | Case No.:   19-CR-0735-AJB<br><br>Hon. Anthony J. Battaglia<br>Date: April 8, 2019<br>Time: 2:00 p.m.<br><br>**Memorandum and Points of Authorities in Support of Mr. Velez-Gonzalez's Motions** |

## I.    Introduction

The Court should dismiss the indictment charging Mr. Velez-Gonzalez with illegal entry under 8 U.S.C. § 1325 for multiple reasons. First, Mr. Velez-Gonzalez's prosecution violates equal protection and due process on the basis of disparate treatment with other defendants charged with similar petty offenses in the Southern District of California. Second, this Court should dismiss the indictment because § 1325 is unconstitutional.

If this Court denies Mr. Velez-Gonzalez's motions to dismiss, it should grant Mr. Velez-Gonzalez's motion to sever Mr. Velez-Gonzalez's trial from the other named co-defendants. The court should also suppress Mr. Velez-Gonzalez's statements because they were taken in violation of *Miranda* and the Sixth

186

Amendment and were involuntary. Mr. Velez-Gonzalez also requests that this Court use the elements outlined by Mr. Velez-Gonzalez below. Finally, this Court should grant leave to file further motions.

## II. Statement of Facts & Procedural History

### A. Arrest and criminal charge

The government arrested Mr. Velez-Gonzalez and five others at approximately 1:45 p.m. on February 9, 2019. The government claims that a Border Patrol Agent encountered Mr. Velez-Gonzalez and five others approximately 19 miles east of the Tecate, California, Port of Entry and four miles north of the United States/Mexico international boundary. The government alleges that Mr. Velez-Gonzalez is a citizen of Mexico without permission to be in the United States.

After being arrested, Mr. Velez-Gonzalez was taken to a Border Patrol station and questioned. A criminal complaint was submitted to a United States magistrate judge on February 10, 2019. *See* ECF No. 1. It charged Mr. Velez-Gonzalez with eluding examination and inspection by Immigration Officers in violation of 8 U.S.C. § 1325(a)(2), a petty offense. *Id.*

### B. Initial appearance and indictment

Pursuant to the procedures of the "1325 Streamline Court" established in the Southern District of California, on the morning of February 11, 2018, Mr. Velez-Gonzalez met with undersigned counsel in a garage that has been converted into a U.S. Marshal cellblock and is used for initial attorney-client meetings. Mr. Velez-Gonzalez made an initial appearance that afternoon, during which Mr. Velez-Gonzalez was aided by a Spanish interpreter. The magistrate judge set a $1,000 personal appearance bond, which was posted, and Mr. Velez-Gonzalez was released from U.S. Marshal custody on February 19, 2019. *See* Abstract of Order, ECF No. 6.

/ / /

/ / /

187

On February 28, 2019, the government indicted Mr. Gonzalez-Velez, Eduviges Ayala-Bello, and Liliana Catalina Fernandez-Fernandez of misdemeanor 8 U.S.C. § 1325(a)(2). ECF No. 17.

These motions follow.

## III.   Motions to Dismiss

Because Mr. Velez-Gonzalez's prosecution violates equal protection and due process, Mr. Velez-Gonzalez requests that the Court dismiss the indictment in these proceedings.

### A.   The Court should dismiss Mr. Velez-Gonzalez's indictment because the prosecution violates equal protection and due process.

The Government's disparate treatment of defendants charged with § 1325 violates equal protection and due process.

#### 1.   Defendants charged with § 1325 in the Southern District of California are treated more harshly than defendants charged with equivalent (or more serious) offenses.

Federal law contains three classes of misdemeanors. A Class A misdemeanor is an offense punishable by "one year or less but more than six months." 18 U.S.C. § 3559(a)(6). A Class B misdemeanor is punishable by "six months or less but more than thirty days." 18 U.S.C. § 3559(a)(7). And a Class C misdemeanor is punishable by "thirty days or less but more than five days." 18 U.S.C. § 3559(a)(8). Federal law categorizes Class B and Class C misdemeanors as "petty offenses." 18 U.S.C. § 19. So illegal entry under § 1325, which is a Class B misdemeanor, is considered a "petty offense."

The Government prosecutes many misdemeanors in the Southern District of California through the Central Violations Bureau ("CVB"). According to its website, offenses prosecuted through CVB include violations of "certain federal laws" as well as violations of certain state laws that occur on federal property under the Assimilative Crimes Act at 18 U.S.C. § 13. Offenses that appear in the Code of

188

Federal Regulations are also frequently prosecuted through CVB.

But more serious crimes—including some felonies—are also prosecuted in CVB court. These crimes include abusive sexual contact (18 U.S.C. § 2244), assault on a federal officer (18 U.S.C. § 111), false impersonation of a government employee (18 U.S.C. § 912), conspiracy to defraud the United States (18 U.S.C. § 371), theft of government property (18 U.S.C. § 641), photographing a defense installation (18 U.S.C. § 795), and possession of weapons or firearms in a federal facility (18 U.S.C. § 930). *See, e.g., United States v. Navarra*, 17-po-1423; *United States v. Brow*, 14-po-17; *United States v. Erwin*, 15-po-471; *United States v. Shuff*, 15-po-1363; *United States v. Broadnax*, 17-po-2151; *United States v. Galvan*, 15-po-1540; *United States v. Savas*, 15-po-490. In fact, in the last ten years, the Government has charged at least 626 defendants in CVB court with Title 18 offenses that are class B misdemeanors or higher.

Even though defendants prosecuted in CVB court are often charged with serious crimes, they are almost never held in criminal custody. Rather, at the time the person is apprehended, they are released with a citation. Occasionally, a person may be briefly handcuffed or held for questioning by law enforcement officials for several hours. But even in these rare cases, the person will be released the same day.

Several weeks later, a defendant in CVB court will receive a notice to appear in the mail instructing him or her to appear at one of the upcoming misdemeanor courts. This court proceeding does not take place in a courtroom and is not presided over by a judge. Rather, it is held in one of the jury rooms of the federal courthouse, where the defendants freely come and go throughout the morning. Each defendant will meet with his or her defense attorney, after which the defense attorney will attempt to negotiate a disposition with the prosecutor. The magistrate judge then reviews and approves this disposition.

Nearly all the offenses in CVB court will be dismissed outright or resolved

189

through a fine or a deferred prosecution agreement. For instance, of 626 cases charged, 82.1% were dismissed, 16.7% were resolved through forfeiture of collateral or some type of payment, and four were given probation or a transfer. Of these 626 cases, only two were sentenced to jail time, and in one of these cases, the jail time was suspended.

But the Government does not place individuals accused of § 1325 in CVB court. They are not released into the community on the day of their arrest. They are not allowed to remain out of custody to await the written notice of their charges. They are always shackled when meeting with their attorneys (and sometimes in court). They are not offered any deferred prosecution options. And while 100% of defendants convicted of § 1325 are punished with at least *some* custodial time, less than 1% of CVB defendants receive jail time.

These disparities do not exist because of the level of severity of the offense. In the last ten years, the Government charged over one hundred Title 18 felonies and Class A misdemeanors in CVB court and over five hundred Class B misdemeanors in the Southern District of California. In other words, the Government has charged over six hundred offenses in CVB court that have been designated by Congress to be as serious or more serious than § 1325. And nearly 80% percent of these offenses are federal trespassing crimes such entering military property under 18 U.S.C. § 1382 and thus bear a striking similarity to illegal entry— a trespass into the United States.

In sum, the Government does not permit § 1325 defendants to take advantage of the substantial benefits of CVB court, even though § 1325 defendants are charged with a similar or less serious offense than defendants charged in CVB court and pose no greater risk of flight. Accordingly, the Government discriminates against § 1325 defendants as compared to other individuals charged with petty offenses in the Southern District of California.

190

2. This disparate treatment violates due process and equal protection.

The Fourteenth Amendment provides that states shall not "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. This guarantee of equal protection also extends to the federal government. *See United States v. Windsor*, 570 U.S. 744, 774 (2013) ("The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws."). While the government retains broad discretion to classify individuals where it is reasonable to do so, classifications based on alienage, national origin, and race are "inherently suspect and subject to close judicial scrutiny." *Graham v. Richardson*, 403 U.S. 365, 371-72 (1971). This is because "[a]liens as a class are a prime example of a discrete and insular minority for whom such heightened judicial solicitude is appropriate." *Id.* at 372 (quotations and citation omitted). To survive strict scrutiny, disparate treatment on the basis of alienage, national origin, or race must be compelling and narrowly tailored to achieve its objective, and there can be no less discriminatory means of achieving the goal. *See, e.g., Grutter v. Bollinger*, 539 U.S. 306, 326 (2003).

Here, that high standard is not met. Defendants in the Southern District of California who are charged with petty offenses *other than* § 1325 are not held in pre-trial custody, are not subject to shackling, are not limited in their ability to consult counsel, are not prevented from seeking alternative dispositions, and are not punished by incarceration. Meanwhile, Mr. Velez-Gonzalez and other defendants charged with § 1325 are, by definition, set apart on the basis of their alienage[1] and

---

[1] The Government may argue that its charging practices do not discriminate on the basis of alienage but rather on the basis that § 1325 defendants are undocumented, which is not a protected class and thus not subject to strict scrutiny. *See, e.g.*, But this argument fails because a defendant may be convicted under § 1325 even

national origin, and most if not all, Streamline defendants to date have been people of color. In other words, by making § 1325 defendants the only persons charged with a petty offense who are subject to the onerous conditions of pre-court confinement and in-court shackling, the Government is not simply prosecuting illegal entrants for a crime—it is punishing them above and beyond the penalties that Congress imposed for a Class B misdemeanor on the basis of their alienage, national origin, and race.

The Due Process Clause of the Fifth Amendment also guarantees that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. This Clause protects individuals in two ways. Substantive due process "prevents the government from engaging in conduct that shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty." *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quotations and citations omitted). But when government action survives substantive due process scrutiny, it must still be implemented in a fair manner under the doctrine of procedural due process. *See Mathews v. Eldridge*, 424 U.S. 319 (1976). To determine whether governmental action satisfies procedural due process, courts employ a three-factor test that weighs (1) the interest at stake for the individual, (2) the risk of erroneous deprivation of such interest and the probable value of safeguards, and (3) the costs and administrative burden on the Government. *Id.* at 335.

Streamline court survives neither analysis. First, substantive due process has been violated because it "shocks the conscience" for the Government to blatantly deprive § 1325 defendants of the substantial benefits of CVB court while extending

---

though she has legal status. *See, e.g.*, *United States v. Sanchez*, 258 F. Supp. 2d 650, 662 (S.D. Tex. 2003) (holding that a lawful permanent resident may be convicted of § 1325); *United States v. Figueroa–Corrales,* 845 F.2d 329 (9th Cir. 1988) (unpublished); *Gunaydin v. United States Immigration and Naturalization Serv.,* 742 F.2d 776 (3d Cir. 1984).

192

those benefits to defendants charged with similar or *more* serious crimes who have a similar or *greater* risk of flight.

But even if this deprivation survived substantive due process, it could not survive procedural due process under the *Mathews v. Eldridge* factors. First, the interest at stake for the individual is substantial, as defendants charged with § 1325 face a significant loss of liberty, the traumatizing experience of being held in custody in substandard conditions, and an overwhelmingly greater chance of being convicted of an offense. Second, there is no question that charging § 1325 defendants in CVB court would almost entirely alleviate the risk that they would be held in custody, subject to horrendous conditions, and convicted of an offense. Finally, the costs and administrative burden on the Government are minimal, as nothing suggests that absorbing Streamline defendants into CVB proceedings would be problematic, or that there would be a greater than average risk of absconding. And if anything, placing § 1325 defendants in CVB court would greatly *lessen* the burden on the Government to provide housing, food, and transportation during the criminal proceedings. Thus, the Government's discriminatory treatment violates both substantive and procedural due process under the *Mathews v. Eldridge* factors.

### B. This Court should dismiss the indictment because 8 U.S.C. § 1325 is unconstitutional.

The offense of 8 U.S.C. § 1325 proscribes "any alien" from returning to the United States after removal. The term "alien" is defined as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). In *Morales-Santana*, the Supreme Court held that the statutes transmitting citizenship to children born abroad violate equal protection under the Fifth Amendment's Due Process Clause—they treat children of unwed mothers and unwed fathers differently. 137 S. Ct. at 1686, 1700-01. Because the citizenship laws create an unconstitutional exception that favors unwed mothers over unwed fathers, and the offense charged

193

1  **Jesus Mosqueda**
   California Bar No. 302985
2  **Federal Defenders of San Diego, Inc.**
   225 Broadway, Suite 900
3  San Diego, California 92101-5030
   Telephone: (619) 234-8467
4  Facsimile: (619) 687-2666
   Jesus_Mosqueda@fd.org
5

6  **Attorneys for Ms. Ayala-Bello**

7

8                  **United States District Court**

9                  **Southern District of California**

10

11 | United States of America,          | Case no.: **19-CR-735-AJB**
12 |                      Plaintiff,     | Hon. Anthony J. Battaglia
                                          Date: April 8, 2019
13 |             v.                      | Time: 2:00 PM
14 |                                     | **Notice of motions and motions to:**
15 | **Eduviges Ayala-Bello**            |
16 |                      Defendant.     | 1) **Dismiss the complaint;**
                                          2) **Sever defendants;**
17                                         3) **Suppress evidence;**
                                          4) **Set a jury trial;**
18                                         5) **Properly instruct the factfinder as
                                              to the elements of 8 U.S.C. §
                                              1325(a)(2); and**
19                                         6) **Grant leave to file further motions**

20

21 **TO:   Robert S. Brewer, United States Attorney, and Caroline P. Han;
         Assistant United States Attorney**:
22

23      **PLEASE TAKE NOTICE** that on April 8, 2019, at 2:00 p.m., or as soon

24 thereafter as counsel may be heard, defendant, Eduviges Ayala-Bello, by and through

25 her attorneys, Jesus Mosqueda and Federal Defenders of San Diego, Inc., will ask

26 this Court to enter an order granting the following motions.

27

28

**194**

1
2
## Motions

3      Defendant, Eduviges Ayala-Bello, by and through her attorneys, Jesus

4   Mosqueda and Federal Defenders of San Diego, Inc., asks this Court pursuant to the

5   United States Constitution, the Federal Rules of Criminal Procedure, and all other

6   applicable statutes, case law, and local rules for and order to:

7      (1)   Dismiss Complaint;

8      (2)   Sever Defendants;

9      (3)   Suppress Evidence;

10      (4)   Set a Jury Trial;

11      (5)   Instruct the factfinder as to the elements of 8 U.S.C. § 1325(a)(2); and

12      (6)   Grant leave to file further motions.

13      These motions are based upon the instant motions and notice of motions, the

14   attached statement of facts and memorandum of points and authorities, and any and

15   all other materials that may come to this Court's attention prior to or during the

16   hearing of these motions.

17
18                    Respectfully submitted,

19
20    Dated:  March 25, 2019          _s/  Jesus Mosqueda_
21                                    Federal Defenders of San Diego, Inc.
                                      Attorneys for Defendant
22                                    Email:  Jesus_Mosqueda@fd.org

23
24
25
26
27
28

**195**

1    **Jesus Mosqueda**
     California State Bar No. 302985
2    **FEDERAL DEFENDERS OF SAN DIEGO, INC.**
     225 Broadway, Suite 900
3    San Diego, California 92101-5030
     Telephone: (619) 234-8467
4    Facsimile: (619) 687-2666
     Jesus_Mosqueda@fd.org
5
6    Attorneys for Ms. Ayala-Bello

7                    **United States District Court**

8                    **Southern District of California**

9

10
     United States of America,              Case No.:   19-CR-735-AJB-1
11
                          Plaintiff,        Hon. Anthony J. Battaglia
12                                          Date: April 8, 2019
            v.                              Time: 9:30 a.m.
13
     Eduviges Ayala-Bello,                  **Memorandum and Points of**
14                                          **Authorities in Support of Ms. Ayala-**
                          Defendant.        **Bello's Motions**
15

16

17                      **I.    Introduction**

18          The Court should dismiss the complaint charging Ms. Ayala-Bello with illegal

19   entry under 8 U.S.C. § 1325 for multiple reasons. First, Ms. Ayala-Bello's prosecution

20   violates equal protection and due process on the basis of disparate treatment with

21   other defendants charged with similar petty offenses in the Southern District of

22   California. In addition, this Court should dismiss the complaint because § 1325 is

23   unconstitutional.

24          If this Court denies Ms. Ayala-Bello's motions to dismiss, it should

25   nevertheless sever Ms. Ayala-Bello's case from that of her co-defendants. This Court

26   should also grant the motion for a jury trial and should use the jury instructions as

27   the elements outlined by Ms. Ayala-Bello below.

28
                                             1                          19-CR-735-AJB

196

1    Finally, this Court should grant the motion to leave to file further motions.

2    ## II.    Statement of Facts & Procedural History

3    ### A.    Arrest and criminal charge.

4    According to government-produced discovery, Ms. Ayala-Bello was arrested at

5    approximately 1:45 p.m. on February 9, 2019. The government claims that a Border

6    Patrol Agent encountered Ms. Ayala-Bello, and five other individuals, approximately

7    nineteen miles east of the Tecate, California, Port of Entry and four miles north of

8    the United States/Mexico international boundary. The government alleges that

9    Ms. Ayala-Bello is a citizen of Mexico without permission to be in the United States.

10    After being arrested, Ms. Ayala-Bello was taken to a Border Patrol station and

11    questioned. A criminal complaint was submitted to a United States magistrate judge

12    on February 10, 2019. *See* ECF No. 1. It charged Ms. Ayala-Bello with eluding

13    examination and inspection by Immigration Officers in violation of 8 U.S.C.

14    § 1325(a)(2), a petty offense.

15    ### B.    Initial appearance.

16    On February 11, 2019, pursuant to the procedures of the "1325 Streamline

17    Court" recently established in the Southern District of California, Ms. Ayala-Bello

18    met with an attorney from the Federal Defenders of San Diego, Inc. in a garage that

19    has been converted into a U.S. Marshal cellblock and is used for initial attorney-client

20    meetings. Ms. Ayala-Bello made an initial appearance that afternoon, in the same

21    clothes she was arrested in and without having the opportunity to shower. The

22    magistrate judge set a $1,000 personal appearance bond secured with a 100 percent

23    cash deposit, which was posted, and Ms. Ayala-Bello was released from U.S. Marshal

24    custody on February 19, 2019. *See* Abstract of Order, ECF No. 12.

25    On February 28, 2019, the government filed an indictment charging

26    Ms. Ayala-Bello, along with Mr. Walter German Velez-Gonzalez, and Ms. Liliana

27    Catalina Fernandez-Fernandez ("hereinafter referred to as 'co-defendants'") with

28

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MS. AYALA-BELLO'S MOTIONS

**197**

1  three counts of misdemeanor unlawful entry by an alien in violation of 8 U.S.C.

2  § 1325(a)(2). On March 7, 2019, Ms. Ayala-Bello, along with her co-defendants, were

3  arraigned on the indictment and pleaded not guilty.

4  These motions follow.

5  ### III.  Motions to Dismiss

6  **A.  The Court should dismiss Ms. Ayala-Bello's complaint because
   the prosecution violates equal protection and due process.**

7

8  The Government's disparate treatment of defendants charged with § 1325

9  violates equal protection and due process.

10  1.  Defendants charged with § 1325 in the Southern District of
    California are treated more harshly than defendants charged with
11  equivalent (or more serious) offenses.

12

13  Federal law contains three classes of misdemeanors. A Class A misdemeanor is

14  an offense punishable by "one year or less but more than six months." 18 U.S.C.

15  § 3559(a)(6). A Class B misdemeanor is punishable by "six months or less but more

16  than thirty days." 18 U.S.C. § 3559(a)(7). And a Class C misdemeanor is punishable

17  by "thirty days or less but more than five days." 18 U.S.C. § 3559(a)(8). Federal law

18  categorizes Class B and Class C misdemeanors as "petty offenses." 18 U.S.C. § 19. So

19  illegal entry under § 1325, which is a Class B misdemeanor, is considered a "petty

20  offense."

21  The Government prosecutes many misdemeanors in the Southern District of

22  California through the Central Violations Bureau ("CVB"). According to its website,

23  offenses prosecuted through CVB include violations of "certain federal laws" as well

24  as violations of certain state laws that occur on federal property under the

25  Assimilative Crimes Act at 18 U.S.C. § 13. Offenses that appear in the Code of

26  Federal Regulations are also frequently prosecuted through CVB.

27  But more serious crimes—including some felonies—are also prosecuted in

28  CVB court. These crimes include abusive sexual contact (18 U.S.C. § 2244), assault

on a federal officer (18 U.S.C. § 111), false impersonation of a government employee
(18 U.S.C. § 912), conspiracy to defraud the United States (18 U.S.C. § 371), theft of
government property (18 U.S.C. § 641), photographing a defense installation (18
U.S.C. § 795), and possession of weapons or firearms in a federal facility (18 U.S.C.
§ 930). *See, e.g.*, *U.S. v. Navarra*, 17-po-1423; *U.S. v. Brow*, 14-po-17; *U.S. v. Erwin*, 15-
po-471; *U.S. v. Shuff*, 15-po-1363; *U.S. v. Broadnax*, 17-po-2151; *U.S. v. Galvan*, 15-po-
1540; *U.S. v. Savas*, 15-po-490. In fact, in the last ten years, the Government has
charged at least 626 defendants in CVB court with Title 18 offenses that are class B
misdemeanors or higher.

Even though defendants prosecuted in CVB court are often charged with
serious crimes, they are almost never held in criminal custody. Rather, at the time the
person is apprehended, they are released with a citation. Occasionally, a person may
be briefly handcuffed or held for questioning by law enforcement officials for several
hours. But even in these rare cases, the person will be released the same day.

Several weeks later, a defendant in CVB court will receive a notice to appear in
the mail instructing him or her to appear at one of the upcoming misdemeanor
courts. This court proceeding does not take place in a courtroom and is not presided
over by a judge. Rather, it is held in one of the jury rooms of the federal courthouse,
where the defendants freely come and go throughout the morning. Each defendant
will meet with his or her defense attorney, after which the defense attorney will
attempt to negotiate a disposition with the prosecutor. The magistrate judge then
reviews and approves this disposition.

Nearly all the offenses in CVB court will be dismissed outright or resolved
through a fine or a deferred prosecution agreement. For instance, of the 626 cases
charged under 18 U.S.C. and prosecuted in CVB court in the last decade, 82.1% were
dismissed, 16.7% were resolved through forfeiture of collateral or some type of

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MS. AYALA-BELLO'S MOTION

**199**

1   payment, and four were given probation or a transfer. Of these 626 cases, only two

2   were sentenced to jail time, and in one of these cases, the jail time was suspended.

3   　　　　But the Government does not place individuals accused of § 1325 in CVB

4   court. They are not released into the community on the day of their arrest. They are

5   not allowed to remain out of custody to await the written notice of their charges.

6   They are always shackled when meeting with their attorneys (and sometimes in

7   court). They are not offered any deferred prosecution options. And while 100% of

8   defendants convicted of § 1325 are punished with at least *some* custodial time, less

9   than 1% of CVB defendants receive jail time.

10   　　　　These disparities do not exist because of the level of severity of the offense. In

11   the last ten years, the Government charged over one hundred Title 18 felonies and

12   Class A misdemeanors in CVB court and over five hundred Class B misdemeanors

13   in the Southern District of California. In other words, the Government has charged

14   over six hundred offenses in CVB court that have been designated by Congress to be

15   as serious or more serious than § 1325. And nearly 80% percent of these offenses are

16   federal trespassing crimes such entering military property under 18 U.S.C. § 1382 and

17   thus bear a striking similarity to illegal entry—a trespass into the United States.

18   　　　　In sum, the Government does not permit § 1325 defendants to take advantage

19   of the substantial benefits of CVB court, even though § 1325 defendants are charged

20   with a similar or less serious offense than defendants charged in CVB court and pose

21   no greater risk of flight. Accordingly, the Government discriminates against § 1325

22   defendants as compared to other individuals charged with petty offenses in the

23   Southern District of California.

24   　　　　　　　2.　　This disparate treatment violates due process and equal
25   　　　　　　　　　　protection.

26   　　　　The Fourteenth Amendment provides that states shall not "deprive any

27   person of life, liberty, or property, without due process of law; nor deny to any

28

person within its jurisdiction the equal protection of the laws." U.S. CONST. amend.
XIV. This guarantee of equal protection also extends to the federal government. *See
United States v. Windsor*, 570 U.S. 744, 774 (2013) ("The liberty protected by the Fifth
Amendment's Due Process Clause contains within it the prohibition against denying
to any person the equal protection of the laws."). While the government retains
broad discretion to classify individuals where it is reasonable to do so, classifications
based on alienage, national origin, and race are "inherently suspect and subject to
close judicial scrutiny." *Graham v. Richardson*, 403 U.S. 365, 371-72 (1971). This is
because "[a]liens as a class are a prime example of a discrete and insular minority for
whom such heightened judicial solicitude is appropriate." *Id.* at 372 (quotations and
citation omitted). To survive strict scrutiny, disparate treatment on the basis of
alienage, national origin, or race must be compelling and narrowly tailored to achieve
its objective, and there can be no less discriminatory means of achieving the goal. *See,
e.g., Grutter v. Bollinger*, 539 U.S. 306, 326 (2003).

Here, that high standard is not met. Defendants in the Southern District of
California who are charged with petty offenses *other than* § 1325 are not held in pre-
trial custody, are not subject to shackling, are not limited in their ability to consult
counsel, are not prevented from seeking alternative dispositions, and are not
punished by incarceration. Meanwhile, Ms. Ayala-Bello and other defendants charged
with § 1325 are, by definition, set apart on the basis of their alienage[1] and national
origin, and most if not all, Streamline defendants to date have been people of color.

---

[1] The Government may argue that its charging practices do not discriminate on the
basis of alienage but rather on the basis that § 1325 defendants are undocumented,
which is not a protected class and thus not subject to strict scrutiny. *See, e.g.*, But this
argument fails because a defendant may be convicted under § 1325 even though she
has legal status. *See, e.g., United States v. Sanchez*, 258 F. Supp. 2d 650, 662 (S.D. Tex.
2003) (holding that a lawful permanent resident may be convicted of § 1325); *United
States v. Figueroa–Corrales,* 845 F.2d 329 (9th Cir. 1988) (unpublished); *Gunaydin v.
United States Immigration and Naturalization Serv.,* 742 F.2d 776 (3d Cir. 1984).

1  In other words, by making § 1325 defendants the only persons charged with a petty

2  offense who are subject to the onerous conditions of pre-court confinement and in-

3  court shackling, the Government is not simply prosecuting illegal entrants for a

4  crime—it is punishing them more severely than similarly-situated defendants on the

5  basis of their alienage, national origin, and race.

6      The Due Process Clause of the Fifth Amendment also guarantees that no

7  person shall be "deprived of life, liberty, or property, without due process of law."

8  U.S. CONST. amend. V. This Clause protects individuals in two ways. Substantive due

9  process "prevents the government from engaging in conduct that shocks the

10  conscience" or "interferes with rights implicit in the concept of ordered liberty."

11  *United States v. Salerno*, 481 U.S. 739, 746 (1987) (quotations and citations omitted).

12  But when government action survives substantive due process scrutiny, it must still

13  be implemented in a fair manner under the doctrine of procedural due process. *See*

14  *Mathews v. Eldridge*, 424 U.S. 319 (1976). To determine whether governmental action

15  satisfies procedural due process, courts employ a three-factor test that weighs (1) the

16  interest at stake for the individual, (2) the risk of erroneous deprivation of such

17  interest and the probable value of safeguards, and (3) the costs and administrative

18  burden on the Government. *Id.* at 335.

19      Streamline court survives neither analysis. First, substantive due process has

20  been violated because it "shocks the conscience" for the Government to blatantly

21  deprive § 1325 defendants of the substantial benefits of CVB court while extending

22  those benefits to defendants charged with similar or *more* serious crimes who have a

23  similar or *greater* risk of flight.

24      But even if this deprivation survived substantive due process, it could not

25  survive procedural due process under the *Mathews v. Eldridge* factors. First, the interest

26  at stake for the individual is substantial, as defendants charged with § 1325 face a

27  significant loss of liberty, the traumatizing experience of being held in custody in

28

MEMORANDUM AND POINTS OF AUTHORITIES IN SUPPORT OF MS. AYALA-BELLO'S MOTIONS

202

1    substandard conditions, and an overwhelmingly greater chance of being convicted of

2    an offense. Second, there is no question that charging § 1325 defendants in CVB

3    court would almost entirely alleviate the risk that they would be held in custody,

4    subject to horrendous conditions, and convicted of an offense. Finally, the costs and

5    administrative burden on the Government are minimal, as nothing suggests that

6    absorbing Streamline defendants into CVB proceedings would be problematic, or

7    that there would be a greater than average risk of absconding. And if anything,

8    placing § 1325 defendants in CVB court would greatly *lessen* the burden on the

9    Government to provide housing, food, and transportation during the criminal

10   proceedings. Thus, the Government's discriminatory treatment violates both

11   substantive and procedural due process under the *Mathews v. Eldridge* factors.

12       **B.    This Court should dismiss the complaint because 8 U.S.C. § 1325**
13            **is unconstitutional.**

14       The offense of 8 U.S.C. § 1325 proscribes "any alien" from returning to the

15   United States after removal. The term "alien" is defined as "any person not a citizen

16   or national of the United States." 8 U.S.C. § 1101(a)(3). In *Morales-Santana*, the

17   Supreme Court held that the statutes transmitting citizenship to children born abroad

18   violate equal protection under the Fifth Amendment's Due Process Clause—they

19   treat children of unwed mothers and unwed fathers differently. 137 S. Ct. at 1686,

20   1700-01. Because the citizenship laws create an unconstitutional exception that

21   favors unwed mothers over unwed fathers, and the offense charged rests on these

22   invalid statutes, the complaint against Ms. Ayala-Bello must be dismissed.

23       **IV.    Motion to Sever Defendants**

24       This Court has authority to sever Ms. Ayala-Bello's case from that of her co-

25   defendants under either Rule 8(b) or Rule 14 of the Federal Rules of Criminal

26   Procedure.

27       Rule 8(b) provides that joinder of defendants may be proper:

28

1    UNITED STATES DISTRICT COURT

2    SOUTHERN DISTRICT OF CALIFORNIA

3  Before The Honorable LINDA LOPEZ, Magistrate Judge

4

5  UNITED STATES OF AMERICA,        )
                                    )
6            Plaintiff,             )   CASE NO.
                                    ) 3:19-cr-735
7    VS.                            ) 3:19-mj-20858
                                    )
8  EDUGIVES AYALA-BELLO,            )
                                    )
9            Defendant.             )
   _____)
10                                     San Diego, California
                                       Thursday, March 7, 2019
11

12      TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
                      OF PROCEEDINGS

13

14      Liberty Court Player 1:58-2:02 and 2:10-2:21 p.m.

15  APPEARANCES:

16  For Plaintiff:    UNITED STATES ATTORNEY'S OFFICE
                      880 Front Street
17                    San Diego, California 92101
                      BY: MICHAEL KAPLAN
18                        ASSISTANT UNITED STATES ATTORNEY

19

20  For Defendant:    FEDERAL DEFENDERS OF SAN DIEGO, INC.
                      225 Broadway, Suite 900
21                    San Diego, California 92101
                      BY: JESUS MOSQUEDA
22                        ATTORNEY AT LAW

23

24

25  Transcribed By:  Ellen L. Simone

204

1          (Proceedings begin at 1:58 p.m.)

2          THE CLERK:  Number 4.  19-cr-735.  United States of

3    America v. Defendant 1, Edugives Ayala-Bello.

4          (Matters not related to the present matter were

5    discussed.)

6          MR. MOSQUEDA:  Good afternoon, Your Honor.  Jesus

7    Mosqueda, Federal Defenders, on behalf of Ms. Edugives, who is

8    here present on bond for number 4.

9          (Matters not related to the present matter were

10   discussed.)

11         MR. KAPLAN:  Michael Kaplan for the United States.

12   I'll be here for most of the calendar matters this afternoon,

13   unless otherwise noted.

14         THE COURT:  Thank you.

15         Good afternoon, everyone.  Happy to see all of you

16   here.

17         Edugives Ayala-Bello, is that your true name?

18         THE DEFENDANT:  Yes.

19         THE COURT:  I'm sorry I mispronounced that.

20         (Matters not related to the present matter were

21   discussed.)

22         THE CLERK:  Each of you are hereby informed that an

23   indictment has been filed charging you with:

24         Ms. Ayala-Bello and Mr. XXX, you've been charged with

25   unlawful entry by an alien, a misdemeanor.

1      UNITED STATES DISTRICT COURT

2      SOUTHERN DISTRICT OF CALIFORNIA

3   Before The Honorable ROBERT N. BLOCK, Magistrate Judge

4

5   UNITED STATES OF AMERICA,          )
                                       )
6                     Plaintiff,       )    CASE NO.
                                       )  3:19-cr-735
7     VS.                              )  3:19-mj-20858
                                       )
8   EDUGIVES AYALA-BELLO,              )
                                       )
9                     Defendant.       )
    _____)
10                                      San Diego, California
                                        Wednesday, February 20, 2019
11

12          TRANSCRIPT OF OFFICIAL ELECTRONIC SOUND RECORDING
                           OF PROCEEDINGS
13

14             Liberty Court Player 10:05-10:18 a.m.

15  APPEARANCES:

16  For Plaintiff:    UNITED STATES ATTORNEY'S OFFICE
                      880 Front Street
17                    San Diego, California 92101
                      BY: ERIK GANTZEL
18                        ASSISTANT UNITED STATES ATTORNEY

19

20  For Defendant:    FEDERAL DEFENDERS OF SAN DIEGO, INC.
                      225 Broadway, Suite 900
21                    San Diego, California 92101
                      BY: LEILA MORGAN
22                        ATTORNEY AT LAW

23

24

25  Transcribed By:  Ellen L. Simone

206

1        (Proceedings begin at 10:05 a.m.)

2        THE CLERK:  Add-on matter number 16.

3        (Matters not related to the present matter were

4  discussed.)

5        THE CLERK:  Matter 16.  19-mj-20858.  U.S.A. v.

6  Edugives Ayala-Bello.

7        MS. MORGAN:  Yes, Your Honor.  Leila Morgan, Federal

8  Defenders, on behalf of Jesus Mosqueda of my office for

9  Ms. Ayala-Bello.

10       (Matters not related to the present matter were

11  discussed.)

12       MS. MORGAN:  Number 4 and number 16 are husband and

13  wife.  The surety is the brother-in-law of number 16,

14  Ms. Ayala.

15       THE COURT:  What I don't understand is how these

16  defendants got released to a surety outside the district, or

17  based on the posting of -- because under -- I think I set these

18  conditions.  I required the bond to be posted by the surety,

19  and then -- and if the surety was from outside the district,

20  they shouldn't have been released until the bond was modified.

21  How did that happen?

22       MS. MORGAN:  Well, some judge signed off on the bond

23  packet, Your Honor.  And I don't know whether -- I mean, the --

24  pragmatically speaking, the way this works is no one is

25  released from custody until a judge signs off on a completed

207

1  bond packet.

2         THE COURT:  Do you know the answer to that,

3  Mr. Gantzel?

4         MR. GANTZEL:  I do not.  I haven't got one package.  I

5  do know that it was approved by my supervisor, Mike Lasater,

6  but I don't know anything beyond that.

7         MS. MORGAN:  And --

8         THE COURT:  I see it must have been posted yesterday.

9         MS. MORGAN:  It was posted on Friday, Your Honor.

10        THE COURT:  But let's see.  The 19th is the day it hit

11 the docket.

12        MS. MORGAN:  Right.  But it -- we believed -- the bond

13 was posted on Friday believing that --

14        THE COURT:  It was signed by Judge Dembin.

15        MS. MORGAN:  We believe that the individuals would

16 have actually been released yesterday morning, and they didn't

17 get released until this morning.  I know the surety is waiting

18 at the office and has agreed to provide transportation and

19 housing to these individuals to Sacramento.  He came down

20 yesterday, was intending to pick them up, and then came down

21 this morning, and he's waiting for me to deliver them at the

22 office to take them back to Sacramento.

23        That's actually why I asked that Ms. Ayala's case be

24 placed on calendar this morning instead of tomorrow.  For

25 whatever reason, one of these is set for status today and one

208

DE MEB
2/11/19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

**UNITED STATES OF AMERICA,**

         Plaintiff,

         v.

Eduviges AYALA-Bello,

         Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Magistrate Docket No. 19mJ 20950

## COMPLAINT FOR VIOLATION OF:

Title 8, USC 1325 Illegal Entry
(misdemeanor)

**FILED**

FEB 11 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          DEPUTY

The undersigned complainant being, duly sworn, states:

That on or about February 9, 2019, within the Southern District of California, defendant, Eduviges AYALA-Bello, an alien, did knowingly elude examination and inspection by Immigration Officers, a misdemeanor; in violation of Title 8, United States Code, Section 1325 (a)(2).

And the complainant further states that this complaint is based on the attached probable cause statement, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
Jose L. Castillo
Border Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE,
THIS 11th DAY OF February, 2019.

ROBERT N. BLOCK
United States Magistrate Judge

**209**

**CONTINUATION OF COMPLAINT:**

**Eduviges AYALA-Bello**

### PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

On February 9, 2019, Border Patrol Agent R. Fregoso and his canine partner were performing assigned duties in the Campo Border Patrol Station's area of responsibility. At approximately 11:30 AM, Agent Fregoso responded to assist Border Patrol Agent J. Franco who had been following shoeprints from individuals whom activated a seismic intrusion device in an area known to Border Patrol agents as the "Hagen's Property." Agent Fregoso deployed his canine partner who alerted and led him to a group of eight individuals sitting under an oak tree. As Agent Fregoso approached the individuals, they all stood up and ran away from him. After a brief chase, Agent Fregoso detained six of the eight individuals who were attempting to conceal themselves under a bush. This area is located approximately 19 miles east of the Tecate, California, Port of Entry, and four miles north of the United States/Mexico International Boundary. Agent Fregoso identified himself as a Border Patrol agent and conducted an immigration inspection. All six individuals, including one later identified as the defendant Eduviges AYALA-Bello, stated that they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. At approximately 1:45 PM, Agent Fregoso placed all six individuals, including AYALA, under arrest.

The defendant was advised of her Miranda rights. The defendant stated that she understood her rights and was willing to answer questions without an attorney present. The defendant stated that she is a citizen of Mexico illegally present in the United States. The defendant stated that she illegally entered the United States on February 9, 2019.

**Executed on February 10, 2019 at 11:00 AM.**

Giancarlo Lugo
Border Patrol Agent

On the basis of the facts presented in the probable cause statement consisting of one page, I find probable cause to believe that the defendant named in this probable cause statement committed the offense on February 9, 2019, in violation of 8 USC 1325.

**2:32 PM, Feb 10, 2019**
Date/Time

WILLIAM V. GALLO
United States Magistrate Judge

**210**

# USAO INTAKE INFORMATION RAP SHEET

First: Eduviges     Mid. _____     Last: AYALA     Bello _____

Case No. _____

### RAP SHEET SUMMARY CHART

| Conviction Date | Conviction Court | Charge | Prison Term | Points |
|---|---|---|---|---|
| | | | | |
| | | ON PAROLE/PROBATION | | |
| | | TOTAL POINTS | | |
| | | CRIMINAL HISTORY CATEGORY | | |
| | | | | |
| | | DEPORTATIONS | | 0 |
| | | DATE OF MOST RECENT DEPORTATION | | |
| | | DATE OF FIRST DEPORTATION | | |

211

# DEFENDANT LOCATOR FORM

Name of Defendant: _____ AYALA-Bello, Eduviges _____ DOB: _____, ____.

Date of Arrest: _____ 02/09/2019 _____ Time of Arrest: ___ 1:45pm ___

Arresting Agent/Agency: _____ USBP - San Diego _____

Country of Citizenship: _____ Mexico _____ (If "Other", enter citizenship)

Immigration Status: _____ Illegal _____ (If "Other", enter status)

## MCC Information

Reservation no.: _____ or Window Time: _____

Date of Booking: _____ Booking Number: _____

## Other Booking Facility Information
### (GEO, CCA, Juvenile Hall, State or County facility)

Facility: _____ Arrival Date: _____ Temporary Stay: **Yes** or **No**

## Hospitalized Defendant Information

Name of Medical Center: _____

Date of Hospital Admittance: _____ Time: _____

Reason for Hospitalization: _____

_____

Expected Date of Discharge (Approx. if known) _____

212

OK MER
2/4/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | Magistrate Docket No. 19mj20859 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | COMPLAINT FOR VIOLATION OF: |
| | ) | Title 8, USC 1325 Illegal Entry |
| | ) | (misdemeanor) |
| | ) | |
| | ) | |
| Walter German VELEZ-Gonzalez, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

FILED

FEB 11 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

The undersigned complainant being, duly sworn, states:

That on or about February 9, 2019, within the Southern District of California, defendant, Walter German VELEZ-Gonzalez, an alien, did knowingly elude examination and inspection by Immigration Officers, a misdemeanor; in violation of Title 8, United States Code, Section 1325 (a)(2).

And the complainant further states that this complaint is based on the attached probable cause statement, which is incorporated herein by reference.

_____
SIGNATURE OF COMPLAINANT
Jose L. Castillo
Border Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE,
THIS 11th DAY OF February, 2019.

_____
ROBERT N. BLOCK
United States Magistrate Judge

213

**CONTINUATION OF COMPLAINT:**

**Walter German VELEZ-Gonzalez**

### PROBABLE CAUSE STATEMENT

I declare under the penalty of perjury that the following statement is true and correct:

On February 9, 2019, Border Patrol Agent R. Fregoso and his canine partner were performing assigned duties in the Campo Border Patrol Station's area of responsibility. At approximately 11:30 AM, Agent Fregoso responded to assist Border Patrol Agent J. Franco who had been following shoeprints from individuals whom activated a seismic intrusion device in an area known to Border Patrol agents as the "Hagen's Property." Agent Fregoso deployed his canine partner who alerted and led him to a group of eight individuals sitting under an oak tree. As Agent Fregoso approached the individuals, they all stood up and ran away from him. After a brief chase, Agent Fregoso detained six of the eight individuals who were attempting to conceal themselves under a bush. This area is located approximately 19 miles east of the Tecate, California, Port of Entry, and four miles north of the United States/Mexico International Boundary. Agent Fregoso identified himself as a Border Patrol agent and conducted an immigration inspection. All six individuals, including one later identified as the defendant Walter German VELEZ-Gonzalez, stated that they are citizens of Mexico without immigration documents allowing them to enter or remain in the United States legally. At approximately 1:45 PM, Agent Fregoso placed all six individuals, including VELEZ, under arrest.

The defendant was advised of his Miranda rights. The defendant stated that he understood his rights and was willing to answer questions without an attorney present. The defendant stated that he is a citizen of Mexico illegally present in the United States. The defendant stated that he illegally entered the United States on February 9, 2019.

**Executed on February 10, 2019 at 11:00 AM.**

Giancarlo Lugo
Border Patrol Agent

On the basis of the facts presented in the probable cause statement consisting of one page, I find probable cause to believe that the defendant named in this probable cause statement committed the offense on February 9, 2019, in violation of 8 USC 1325.

**2:45 PM, Feb 10, 2019**

WILLIAM V. GALLO
United States Magistrate Judge

Date/Time

214

Query    Reports    Utilities    Help    Log Out

APPEAL,TRIAL,WARRANT

# U.S. District Court
## Southern District of California (San Diego)
## CRIMINAL DOCKET FOR CASE #: 3:19-cr-00735-AJB All Defendants

Case title: USA v. Ayala-Bello et al                    Date Filed: 02/28/2019
Magistrate judge case numbers: 3:19-mj-20858-AJB
                                3:19-mj-20859-WQH
                                3:19-mj-20860-KSC

Assigned to: Judge Anthony J. Battaglia

Appeals court case number: 19-50366
USCA

**Defendant (1)**

**Eduviges Ayala-Bello**                    represented by    **Federal Defenders**
*TERMINATED: 11/27/2019*                                       Federal Defenders of San Diego
                                                              225 Broadway
                                                              Suite 900
                                                              San Diego, CA 92101-5008
                                                              (619)234-8467
                                                              Fax: (619)687-2666
                                                              Email: cassd_ecf@fd.org
                                                              *TERMINATED: 02/11/2019*
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Designation: Public Defender or*
                                                              *Community Defender Appointment*

                                                              **Jesus Mosqueda**
                                                              Federal Defenders
                                                              225 Broadway, Suite 900
                                                              San Diego, CA 92101
                                                              619-234-8501
                                                              Email: jesus_mosqueda@fd.org
                                                              *TERMINATED: 07/02/2019*
                                                              *LEAD ATTORNEY*
                                                              *ATTORNEY TO BE NOTICED*
                                                              *Designation: Public Defender or*
                                                              *Community Defender Appointment*

                                                              **Kara Lee Hartzler**
                                                              Federal Defenders of San Diego Inc
                                                              225 Broadway
                                                              Suite 900
                                                              San Diego, CA 92101-5030

215

619-234-8467
Email: kara_hartzler@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Rebecca C Fish**
Federal Defenders of San Diego, Inc
225 Broadway
Suite 900
San Diego, CA 92101
619-234-8467
Fax: 619-687-2666
Email: Becky_Fish@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 8:1325(a)(1) - Improper Entry by an Alien (Misdemeanor) (1ss) | Bureau of Prisons for a period of TIME SERVED, Penalty Assessment $10.00 - Remitted, Fine waived. |

**Highest Offense Level (Opening)**

Petty Offense

| **Terminated Counts** | **Disposition** |
| --- | --- |
| 8:1325 - Unlawful Entry by an Alien (Misdemeanor) (1) | Dismissed by the Government. |
| 8:1325(a)(1) - Improper Entry by an Alien (Misdemeanor) (1s) | Dismissed by the Government. |

**Highest Offense Level (Terminated)**

Petty Offense

| **Complaints** | **Disposition** |
| --- | --- |
| 8:1325 - Illegal Entry (misdemeanor) | |

---

Assigned to: Judge Anthony J. Battaglia

Appeals court case number: 19-50368
USCA

**Defendant (2)**

**Walter German Velez-Gonzalez**　　　represented by **Federal Defenders**

# 216

*TERMINATED: 11/27/2019*

(See above for address)
*TERMINATED: 02/11/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Keith Rutman**
501 West Broadway
Suite 1650
San Diego, CA 92101-3541
619-237-9072
Fax: 760-454-4372
Email: krutman@krutmanlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Roxana Sandoval**
Federal Defenders of San Diego
225 Broadway
Suite 900
San Diego, CA 92101
(619)234-8467
Fax: (619)687-2666
Email: Roxana_Sandoval@fd.org
*TERMINATED: 04/08/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Pending Counts**

8:1325(a)(1) - Improper Entry by an Alien
(Misdemeanor)
(2s)

**Highest Offense Level (Opening)**

Petty Offense

**Terminated Counts**

8:1325 - Unlawful Entry by an Alien
(Misdemeanor)
(2)

**Highest Offense Level (Terminated)**

Petty Offense

**Complaints**

8:1325 - Illegal Entry (misdemeanor)

**Disposition**

Bureau of Prisons for a period of TIME
SERVED, Penalty Assessment $10.00 -
Remitted, Fine waived.

**Disposition**

Dismissed by the Government.

**Disposition**

# 217

Assigned to: Judge Anthony J. Battaglia

**Defendant (3)**

| | | |
|---|---|---|
| **Liliana Catalina Fernandez-Fernandez** | represented by | **Federal Defenders** |

(See above for address)
*TERMINATED: 02/11/2019*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

**Lauren Williams**
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
619-234-8467
Email: Lauren_Williams@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or*
*Community Defender Appointment*

| **Pending Counts** | **Disposition** |
|---|---|
| 8:1325 - Unlawful Entry by an Alien (Misdemeanor) (3) | |
| 8:1325(a)(1) - Improper Entry by an Alien (Misdemeanor) (3s) | |

**Highest Offense Level (Opening)**

Petty Offense

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| 8:1325 - Illegal Entry (misdemeanor) | |

**Plaintiff**

| | | |
|---|---|---|
| **USA** | represented by | **Caroline Pineda Han** |

U S Attorneys Office
880 Front Street

**218**

Room 6293
San Diego, CA 92101
(619)546-6968
Fax: (619)546-0831
Email: Caroline.Han@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Assistant United States*
*Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/09/2019 | | Arrest of Liliana Catalina Fernandez-Fernandez (no document attached) (jjg) [3:19-mj-20860-KSC] (Entered: 02/11/2019) |
| 02/09/2019 | | Arrest of Walter German Velez-Gonzalez (no document attached) (jjg) [3:19-mj-20859-WQH] (Entered: 02/11/2019) |
| 02/09/2019 | | Arrest of Eduviges Ayala-Bello (no document attached) (jjg) [3:19-mj-20858-AJB] (Entered: 02/11/2019) |
| 02/11/2019 | 1 | COMPLAINT as to Liliana Catalina Fernandez-Fernandez. (Attachments: # 1 Info Sheet) (jjg) [3:19-mj-20860-KSC] (Entered: 02/11/2019) |
| 02/11/2019 | 2 | Set/Reset Duty Hearings as to Liliana Catalina Fernandez-Fernandez: Initial Appearance set for 2/11/2019 before Magistrate Judge Robert N. Block. (no document attached) (jjg) [3:19-mj-20860-KSC] (Entered: 02/11/2019) |
| 02/11/2019 | 3 | Minute Entry for proceedings held before Magistrate Judge Robert N. Block: Initial Appearance and Arraignment on Complaint as to Liliana Catalina Fernandez-Fernandez held on 2/11/2019. Appointed Attorney Lauren Williams-FD(n/a) for Liliana Catalina Fernandez-Fernandez. Objection noted. Government oral motion to detain (Flight) - denied. Bond set as to Liliana Catalina Fernandez-Fernandez (1) $1000 PS secured by 1 FRRA and $1000 cash deposit. ( Status Hearing set for 2/14/2019 09:00 AM before Magistrate Judge Karen S. Crawford.) (Interpreter Gabriela Sosa). (CD# 2/11/2019 RNB 19-1:2:22-2:45). (Plaintiff Attorney Nelson Wong AUSA). (Defendant Attorney Bridget Kennedy FD-S/A). (aje) [3:19-mj-20860-KSC] (Entered: 02/12/2019) |
| 02/11/2019 | 4 | ***Spanish Interpreter needed as to Liliana Catalina Fernandez-Fernandez (no document attached) (aje) [3:19-mj-20860-KSC] (Entered: 02/12/2019) |
| 02/11/2019 | 5 | ORDER Setting Conditions of Release. Bond set for Liliana Catalina Fernandez-Fernandez (1) $1000 P/S.. Signed by Magistrate Judge Robert N. Block on 2/11/2019. (ADI, cdw) [3:19-mj-20860-KSC] (Entered: 02/13/2019) |
| 02/11/2019 | 1 | COMPLAINT as to Walter German Velez-Gonzalez. (Attachments: # 1 Info Sheet)(jjg) [3:19-mj-20859-WQH] (Entered: 02/11/2019) |
| 02/11/2019 | 2 | Set/Reset Duty Hearings as to Walter German Velez-Gonzalez: Initial Appearance set for 2/11/2019 before Magistrate Judge Robert N. Block. (no document attached) (lao) [3:19-mj-20859-WQH] (Entered: 02/11/2019) |
| 02/11/2019 | 3 | Minute Entry for proceedings held before Magistrate Judge Robert N. Block: Initial Appearance and Arraignment on Complaint as to Walter German Velez-Gonzalez held on 2/11/2019. Appointed Attorney Roxana Sandoval-FD(n/a) for Walter German Velez-Gonzalez. Objection noted. Government oral motion to detain (Flight) - denied. Bond set as to Walter German Velez-Gonzalez (1) $1000 PS secured by 1 FRRA and $1000 cash deposit. ( Status Hearing set for 2/14/2019 09:00 AM before Magistrate Judge Karen |

**219**

| | | |
|---|---|---|
| | | Crawford.) (Interpreter Gabriela Sosa). (CD# 2/11/2019 RNB 19-1:2:45-3:08). (Plaintiff Attorney Nelson Wong AUSA). (Defendant Attorney Bridget Kennedy FD-S/A). (aje) [3:19-mj-20859-WQH] (Entered: 02/12/2019) |
| 02/11/2019 | 4 | ***Spanish Interpreter needed as to Walter German Velez-Gonzalez (no document attached) (aje) [3:19-mj-20859-WQH] (Entered: 02/12/2019) |
| 02/11/2019 | 6 | ORDER Setting Conditions of Release. Bond set for Walter German Velez-Gonzalez (1) $1000 P/S.. Signed by Magistrate Judge Robert N. Block on 2/11/2019. (ADI, cdw) [3:19-mj-20859-WQH] (Entered: 02/13/2019) |
| 02/11/2019 | 1 | COMPLAINT as to Eduviges Ayala-Bello. (Attachments: # 1 Info Sheet)(jjg) [3:19-mj-20858-AJB] (Entered: 02/11/2019) |
| 02/11/2019 | 2 | Set/Reset Duty Hearings as to Eduviges Ayala-Bello: Initial Appearance set for 2/11/2019 before Magistrate Judge Robert N. Block. (no document attached) (lao) [3:19-mj-20858-AJB] (Entered: 02/11/2019) |
| 02/11/2019 | 3 | Minute Entry for proceedings held before Magistrate Judge Robert N. Block: Initial Appearance and Arraignment on Complaint as to Eduviges Ayala-Bello held on 2/11/2019. Appointed Attorney Jesus Mosqueda-FD(n/a) for Eduviges Ayala-Bello. Objection noted. Government oral motion to detain (Flight) - denied. Bond set as to Eduviges Ayala-Bello (1) $1000 PS secured by 1 FRRA and $1000 cash deposit. ( Status Hearing set for 2/14/2019 09:00 AM before Magistrate Judge Karen S. Crawford.) (Interpreter Gabriela Sosa). (CD# 2/11/2019 RNB 19-1:2:45-3:08). (Plaintiff Attorney Nelson Wong AUSA). (Defendant Attorney Bridget Kennedy FD-S/A). (aje) [3:19-mj-20858-AJB] (Entered: 02/12/2019) |
| 02/11/2019 | 4 | ***Spanish Interpreter needed as to Eduviges Ayala-Bello (no document attached) (aje) [3:19-mj-20858-AJB] (Entered: 02/12/2019) |
| 02/11/2019 | 7 | ORDER Setting Conditions of Release. Bond set for Eduviges Ayala-Bello (1) $1000 P/S.. Signed by Magistrate Judge Robert N. Block on 2/11/2019. (ADI, cdw) [3:19-mj-20858-AJB] (Entered: 02/13/2019) |
| 02/12/2019 | 5 | NOTICE OF ATTORNEY APPEARANCE: Jesus Mosqueda appearing for Eduviges Ayala-Bello (Mosqueda, Jesus) (lrc). [3:19-mj-20858-AJB] (Entered: 02/12/2019) |
| 02/13/2019 | 5 | NOTICE OF CHANGE OF HEARING as to Defendant Walter German Velez-Gonzalez. At the request of defense counsel, Status Hearing reset for 2/20/2019 09:00 AM before Magistrate Judge Robert N. Block. (ecs) [3:19-mj-20859-WQH] (Entered: 02/13/2019) |
| 02/13/2019 | 6 | NOTICE OF CHANGE OF HEARING as to Defendant Eduviges Ayala-Bello. At the request of defense counsel, Status Hearing set for 2/21/2019 09:30 AM before Magistrate Judge Michael S. Berg. (ecs) [3:19-mj-20858-AJB] (Entered: 02/13/2019) |
| 02/14/2019 | 6 | Minute Entry for proceedings held before Magistrate Judge Karen S. Crawford: Status Hearing as to Liliana Catalina Fernandez-Fernandez held on 2/14/2019. Defense request to continue. Status Hearing set for 3/7/2019 09:00 AM before Magistrate Judge Mitchell D. Dembin. Bond modified to include travel to the State of Florida and surety to be non-related friend. (Interpreter Daniel Novoa). (CD# 2/14/2019 KSC 914-921). (Plaintiff Attorney Julianne Kelly-Horner AUSA). (Defendant Attorney Lauren Williams FD). (no document attached) (ecs) [3:19-mj-20860-KSC] (Entered: 02/14/2019) |
| 02/15/2019 | 7 | MOTION to Modify Conditions of Release *(Unopposed)* by Walter German Velez-Gonzalez. (Sandoval, Roxana) (lrc). [3:19-mj-20859-WQH] (Entered: 02/15/2019) |
| 02/15/2019 | 8 | MOTION to Modify Conditions of Release *(Unopposed)* by Eduviges Ayala-Bello (Mosqueda, Jesus) (lrc). [3:19-mj-20858-AJB] (Entered: 02/15/2019) |

**220**

5/29/2020

| 02/15/2019 | 9 | NOTICE OF CHANGE OF HEARING as to Defendant Eduviges Ayala-Bello. On court's own motion, Status Hearing reset for 2/21/2019 09:00 AM before Magistrate Judge Robert N. Block. (no document attached) (lao) [3:19-mj-20858-AJB] (Entered: 02/15/2019) |
|---|---|---|
| 02/19/2019 | 8 | ORDER granting 7 Motion to Modify Conditions of Release as to Walter German Velez-Gonzalez (1). Signed by Magistrate Judge Karen S. Crawford on 2/19/19.(ecs) [3:19-mj-20859-WQH] (Entered: 02/19/2019) |
| 02/19/2019 | 9 | Appearance Bond Filed as to Walter German Velez-Gonzalez in amount of $ $1000 PS, Receipt # CAS109214. Signed by Magistrate Judge Mitchell D. Dembin. (Document applicable to USA, Walter German Velez-Gonzalez.) (jrm) [3:19-mj-20859-WQH] (Entered: 02/20/2019) |
| 02/19/2019 | 10 | ABSTRACT OF ORDER Releasing Walter German Velez-Gonzalez re 9 Bond. (jrm) [3:19-mj-20859-WQH] (Entered: 02/20/2019) |
| 02/19/2019 | 10 | ORDER granting 8 Motion to Modify Conditions of Release as to Eduviges Ayala-Bello (1). Signed by Magistrate Judge Karen S. Crawford on 2/19/19.(ecs) [3:19-mj-20858-AJB] (Entered: 02/19/2019) |
| 02/19/2019 | 11 | Appearance Bond Filed as to Eduviges Ayala-Bello in amount of $1000 PS, Receipt # CAS109213. Signed by Magistrate Judge Mitchell D. Dembin. (Document applicable to USA, Eduviges Ayala-Bello.) (jrm) [3:19-mj-20858-AJB] (Entered: 02/20/2019) |
| 02/19/2019 | 12 | ABSTRACT OF ORDER Releasing Eduviges Ayala-Bello re 11 Bond. (jrm) [3:19-mj-20858-AJB] (Entered: 02/20/2019) |
| 02/20/2019 | 11 | Minute Entry for proceedings held before Magistrate Judge Robert N. Block: Status Hearing as to Walter German Velez-Gonzalez (present) held on 2/20/2019. Defendant requests a Trial. Case reassigned to Judge William Q. Hayes. Status Hearing set for 2/25/2019 02:00 PM before Judge William Q. Hayes. (Interpreter Daniel Novoa). (CD# 2/20/2019 RNB 19:10:05-10:18). (Plaintiff Attorney Erik Gantzel, AUSA). (Defendant Attorney Leila Morgan, FD-S/A, Roxana Sandoval (FD)(N/A)). (no document attached) (lao) [3:19-mj-20859-WQH] (Entered: 02/20/2019) |
| 02/20/2019 | 12 | MINUTE ORDER OF JUDGE TRANSFER in case as to Walter German Velez-Gonzalez. Magistrate Judge Karen S. Crawford is no longer assigned. Case reassigned to Judge William Q. Hayes for all further proceedings. The new case number is 19MJ20859-WQH. (no document attached) (lao) [3:19-mj-20859-WQH] (Entered: 02/20/2019) |
| 02/20/2019 | 13 | Minute Entry for proceedings held before Magistrate Judge Robert N. Block: Status Hearing as to Eduviges Ayala-Bello (present) held on 2/20/2019. Defendant requests a Trial. Case reassigned to Judge Anthony J. Battaglia. Status Hearing set for 3/1/2019 02:00 PM before Judge Anthony J. Battaglia. (Interpreter Daniel Novoa). (CD# 2/20/2019 RNB 19:10:05-10:18). (Plaintiff Attorney Erik Gantzel, AUSA). (Defendant Attorney Leila Morgan, FD-S/A, Attorney Jesus Mosqueda, FD (N/A)). (no document attached) (lao) [3:19-mj-20858-AJB] (Entered: 02/20/2019) |
| 02/20/2019 | 14 | MINUTE ORDER OF JUDGE TRANSFER in case as to Eduviges Ayala-Bello. Magistrate Judge Karen S. Crawford is no longer assigned. Case reassigned to Judge Anthony J. Battaglia for all further proceedings. The new case number is 19MJ20858-AJB. (no document attached) (lao) [3:19-mj-20858-AJB] (Entered: 02/20/2019) |
| 02/21/2019 | 13 | NOTICE OF ATTORNEY APPEARANCE Caroline Pineda Han appearing for USA. (Han, Caroline)Attorney Caroline Pineda Han added to party USA(pty:pla) (Han, Caroline) [3:19-mj-20859-WQH] (Entered: 02/21/2019) |

**221**

| 02/21/2019 | 15 | NOTICE OF ATTORNEY APPEARANCE Caroline Pineda Han appearing for USA. (Han, Caroline)Attorney Caroline Pineda Han added to party USA(pty:pla) (lrc). [3:19-mj-20858-AJB] (Entered: 02/21/2019) |
| 02/25/2019 | 14 | NOTICE *of Waiver of Presence at Hearing* by Walter German Velez-Gonzalez (Sandoval, Roxana) (als). [3:19-mj-20859-WQH] (Entered: 02/25/2019) |
| 02/25/2019 | 15 | Minute Entry for proceedings held before Judge William Q. Hayes: Status Hearing as to Walter German Velez-Gonzalez held on 2/25/2019. Defendant's appearance waived. Status Hearing set on joint oral request for 3/4/2019 02:00 PM in Courtroom 14B before Judge William Q. Hayes. (Interpreter Dan DeCoursey). (Court Reporter/ECR Melinda Setterman). (Plaintiff Attorney Valerie Chu). (Defendant Attorney Roxana Sandoval). (no document attached) (ajs) [3:19-mj-20859-WQH] (Entered: 02/25/2019) |
| 02/27/2019 | 7 | NOTICE OF CHANGE OF HEARING (JUDGE ONLY) as to Defendant Liliana Catalina Fernandez-Fernandez. On the Court's own motion, Status Hearing reset for 3/7/2019 09:00 AM before Magistrate Judge Stanley A. Boone. (dls) [3:19-mj-20860-KSC] (Entered: 02/27/2019) |
| 02/27/2019 | 8 | NOTICE OF ATTORNEY APPEARANCE Caroline Pineda Han appearing for USA. (Han, Caroline)Attorney Caroline Pineda Han added to party USA(pty:pla) (tcf). [3:19-mj-20860-KSC] (Entered: 02/27/2019) |
| 02/27/2019 | 16 | NOTICE OF HEARING as to Defendant Eduviges Ayala-Bello. At the request of defense counsel and no objection by the Government, the Status Hearing re trial currently set for 3/1/19 is continued to 4/8/2019 02:00 PM in Courtroom 4A before Judge Anthony J. Battaglia. Defendant is to submit an Acknowledgment of the next court date within (1) week.(no document attached) (ymm) [3:19-mj-20858-AJB] (Entered: 02/27/2019) |
| 02/28/2019 | 17 | INDICTMENT as to Eduviges Ayala-Bello (1) count(s) 1, Walter German Velez-Gonzalez (2) count(s) 2, Liliana Catalina Fernandez-Fernandez (3) count(s) 3. (cdw)(jrd) (Entered: 02/28/2019) |
| 02/28/2019 | 18 | Summons Issued in case as to Eduviges Ayala-Bello. (cdw) (Entered: 02/28/2019) |
| 02/28/2019 | 19 | Summons Issued in case as to Walter German Velez-Gonzalez. (cdw) (Entered: 02/28/2019) |
| 02/28/2019 | 20 | Acknowledgment of next court date by defendant Eduviges Ayala-Bello to appear on April 8, 2019. (Mosqueda, Jesus) (acc). (Entered: 02/28/2019) |
| 03/01/2019 | 21 | NOTICE of Vacated Hearing(s) : 03/04/2019 at 2:00 p.m. Status Hearing before Judge William Q. Hayes is taken off calendar. The Magistrate case number 19-mj-20859-WQH has been merged into 19-cr-0735-AJB. (no document attached) (ajs) (Entered: 03/01/2019) |
| 03/01/2019 | 22 | Set/Reset Duty Hearings as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez: Arraignment on Indictment set for 3/7/2019 before Magistrate Judge Linda Lopez. (no document attached) (jjg) (Entered: 03/01/2019) |
| 03/01/2019 | 23 | NOTICE OF HEARING as to Defendants Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez. Arraignment on Indictment set for 3/7/2019 at 10:30 am before Magistrate Judge Linda Lopez. (no document attached) (jjg) (Entered: 03/01/2019) |
| 03/01/2019 | 24 | MOTION to Modify Conditions of Release *to order release on the next business day after bond is posted* by Liliana Catalina Fernandez-Fernandez. (Williams, Lauren) (acc). (Entered: 03/01/2019) |

**222**

| 03/04/2019 | 25 | DOCUMENT STRICKEN per entry 27 - MINUTE ORDER before Magistrate Judge Robert N. Block.The Court grants in part and Modifies Conditions of Release re 24 Motion as to Liliana Catalina Fernandez-Fernandez (3). Bond Modified as to Liliana Catalina Fernandez-Fernandez (3) $2,000 P/S secured by co-signature of 1 financially responsible related adult and $2,000 cash deposit. Defendant may travel to and from Florida to reside with Surety there. In Order to facilitate travel to Florida, Defendant to be released the business day following the posting of the bond at 7:30 AM to a representative of the Federal Defenders.(no document attached) (lao) Modified text on 3/5/2019 to reflect docket entry stricken (lao). (Entered: 03/04/2019) |
| 03/04/2019 | 26 | DOCUMENT STRICKEN per entry 27 - MODIFIED ORDER Setting Conditions of Release. Bond set for Liliana Catalina Fernandez-Fernandez (3) $2,000 P/S secured by co-signature of 1 financially responsible related adult and $2,000 cash deposit. Defendant may travel to and from Florida to reside with Surety there. In Order to facilitate travel to Florida, Defendant to be released the business day following the posting of the bond at 7:30 AM to a representative of the Federal Defenders. Signed by Magistrate Judge Robert N. Block on 3/4/19. (lao) Modified text on 3/5/2019 to reflect docket entry stricken (lao). (Entered: 03/04/2019) |
| 03/05/2019 | 27 | MINUTE ORDER before Magistrate Judge Robert N. Block striking Docket entries 25 Minute Order and 26 Modified Order Setting Conditions of Release as to Liliana Catalina Fernandez-Fernandez. Docket entries were submitted in error. (no document attached) (lao) (Entered: 03/05/2019) |
| 03/06/2019 | 28 | ORDER granting 24 Motion to Modify Conditions of Release as to Liliana Catalina Fernandez-Fernandez (3). Signed by Magistrate Judge Karen S. Crawford on 3/6/19.(ecs) (Entered: 03/06/2019) |
| 03/06/2019 | 29 | Set/Reset Duty Hearings as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez: Arraignment on Indictment set for 3/7/2019 before Magistrate Judge Linda Lopez. (no document attached) (jjg) (Entered: 03/06/2019) |
| 03/06/2019 | 30 | NOTICE OF HEARING as to Defendants Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez. Arraignment on Indictment set for 3/7/2019 at 2:00 pm before Magistrate Judge Linda Lopez. (no document attached) (jjg) (Entered: 03/06/2019) |
| 03/07/2019 | 31 | PS Bond Filed as to Liliana Catalina Fernandez-Fernandez in amount of $ 1,000, Receipt # CAS109704. (Document applicable to USA, Liliana Catalina Fernandez-Fernandez.) (Attachments: # 1 Receipt)(acc) (Entered: 03/07/2019) |
| 03/07/2019 | 32 | ABSTRACT OF ORDER Releasing Liliana Catalina Fernandez-Fernandez re 31 Bond. (acc) (Entered: 03/07/2019) |
| 03/07/2019 | 33 | Minute Entry for proceedings held before Magistrate Judge Linda Lopez: Arraignment on Indictment as to Eduviges Ayala-Bello (1) Count 1 and Walter German Velez-Gonzalez (2) Count 2 and Liliana Catalina Fernandez-Fernandez (3) Count 3 held on 3/7/2019. Not Guilty plea entered. ( Motion Hearing/Trial Setting set for 4/8/2019 02:00 PM before Judge Anthony J. Battaglia.) (Interpreter Gabriela Sosa). (CD# 3/7/2019 LL 19-1:1:58-2:02;2:10-2:21). (Plaintiff Attorney Michael Kaplan AUSA). (Defendant Attorney Jesus Mosqueda FD; Roxana Sandoval FD; Lauren Williams FD). (aje) (Entered: 03/08/2019) |
| 03/25/2019 | 34 | MOTION to Dismiss *Complaint*, MOTION to Sever Defendants , MOTION to Suppress Evidence , MOTION for Order *to set a jury trial*, MOTION to Instruct the factfinder as to the elements of 8 U.S.C. § 1325(a)(2) , MOTION for Leave to File Further Motions by |

**223**

| | | Eduviges Ayala-Bello. (Attachments: # 1 Memo of Points and Authorities)(Mosqueda, Jesus) (acc). (Entered: 03/25/2019) |
|---|---|---|
| 03/25/2019 | 35 | MOTION to Disqualify Counsel by USA as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez. (Han, Caroline) (acc). (Entered: 03/25/2019) |
| 03/26/2019 | 36 | MOTION to Dismiss Indictment *because Prosecution Violates Equal Protection and Due Process*, MOTION to Dismiss *Indictment because 8 U.S.C. § 1325 Is Unconstitutional*, MOTION to Sever Defendants , MOTION to Compel Discovery , MOTION to Suppress Evidence , MOTION for Order *to Apply Appropriate Elements*, MOTION to Preclude *Unnoticed Prior Acts*, MOTION for Leave to File Further Motions by Walter German Velez-Gonzalez. (Attachments: # 1 Memo of Points and Authorities)(Sandoval, Roxana) (acc). (Entered: 03/26/2019) |
| 03/27/2019 | 37 | MOTION to Dismiss Indictment , MOTION to Sever Defendants , MOTION to Suppress Statements , MOTION to Compel Discovery by Liliana Catalina Fernandez-Fernandez. (Attachments: # 1 Memo of Points and Authorities)(Williams, Lauren)(acc). (Entered: 03/27/2019) |
| 04/01/2019 | 38 | RESPONSE in Opposition by USA as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez re 37 MOTION to Dismiss Indictment MOTION to Sever Defendants MOTION to Suppress Statements MOTION to Compel Discovery , 36 MOTION to Dismiss Indictment *because Prosecution Violates Equal Protection and Due Process* MOTION to Dismiss *Indictment because 8 U.S.C. § 1325 Is Unconstitutional* MOTION to Sever Defendants MOTION to Compel Discovery MOTION to Suppress Evidence MOTION for Order *to Apply Appropriate Elements* MOTION to Preclude *Unnoticed Prior Acts* MOTION for Leave to File Further Motions , 34 MOTION to Dismiss *Complaint* MOTION to Sever Defendants MOTION to Suppress Evidence MOTION for Order *to set a jury trial* MOTION to Instruct the factfinder as to the elements of 8 U.S.C. § 1325(a)(2) MOTION for Leave to File Further Motions (Han, Caroline) (acc). (Entered: 04/01/2019) |
| 04/04/2019 | 39 | NOTICE OF HEARING as to Defendant Eduviges Ayala-Bello. At the request of defense counsel and no objections by the Government, the Motion Hearing/Trial Setting currently set for 4/8/19 is continued to 4/15/2019 02:00 PM in Courtroom 4A before Judge Anthony J. Battaglia. Defendant is to submit an Acknowledgment of the next court date within (1) week.(no document attached) (ymm) (Entered: 04/04/2019) |
| 04/04/2019 | 40 | NOTICE OF HEARING as to Defendant Eduviges Ayala-Bello. Motion Hearing/Trial Setting currently set for 4/15/19 is reset back to 4/8/2019 02:00 PM in Courtroom 4A before Judge Anthony J. Battaglia. (no document attached) (ymm) (Entered: 04/04/2019) |
| 04/08/2019 | 42 | Minute Entry for proceedings held before Judge Anthony J. Battaglia: Motion Hearing/Trial Setting as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez held on 4/8/2019. Attorney Keith Howard Rutman appointed for Walter German Velez-Gonzalez. Federal Defender Roxana Sandoval relieved. Denying [34-1] Motion to Dismiss Complaint, Denying [34-2] Motion to Sever Defendants as to Eduviges Ayala-Bello (1); Denying [34-4] Motion for Order to set a jury trial, Denying [34-5] Motion to Instruct the factfinder as to the elements of 8 U.S.C. 167; 1325(a)(2) as to Eduviges Ayala-Bello (1); Granting in Part and Denying in Part [35-1 ] Motion to Disqualify Counsel. as to Walter German Velez-Gonzalez (2), Liliana Catalina Fernandez-Fernandez (3); Denying [36-1] Motion to Dismiss Indictment because Prosecution violates equal protection and due process as to Walter German Velez-Gonzalez (2); Denying [36-2] Motion to Dismiss Indictment because 8 U.S.C. Sec 1325 is Unconstitutional, Denying [36-3] Motion to Sever Defendants as to Walter German Velez-Gonzalez (2); Denying [36-6] Motion for Order to apply appropriate elements as to |

**224**

| | | |
|---|---|---|
| | | Walter German Velez-Gonzalez (2); Denying [37-1] Motion to Dismiss Indictment, Denying [37-2] Motion to Sever Defendants as to Liliana Catalina Fernandez-Fernandez (3).( Status Hearing/Motion Hearing continued to 4/22/2019 04:00 PM in Courtroom 4A before Judge Anthony J. Battaglia) (Interpreter Deborah Berry). (Court Reporter/ECR Jeannette Hill). (Plaintiff Attorney Caroline Pineda Han AUSA). (Defendant Attorney Jesus Mosqueda FD, Norma Aguilar FD s/a for FD Roxana Sandoval, Lauren Williams FD). (no document attached) (ymm) Modified on 4/23/2019 to include complete ruling on motions. (ymm). (Entered: 04/11/2019) |
| 04/11/2019 | 41 | NOTICE of Waiver of Potential Conflict of Interest by Liliana Catalina Fernandez-Fernandez (Williams, Lauren) (acc). (Entered: 04/11/2019) |
| 04/15/2019 | 43 | ACKNOWLEDGMENT OF SURETIES by Eduviges Ayala-Bello (Mosqueda, Jesus) (acc). (Entered: 04/15/2019) |
| 04/15/2019 | 44 | ACKNOWLEDGMENT OF SURETIES Consent of Sureties by Liliana Catalina Fernandez-Fernandez re 42 Order on Motion for Miscellaneous Relief, Order on Motion to Sever Defendants, Order on Motion to Dismiss Indictment, Order on Motion for Order, Order on Motion to Disqualify Counsel, Motion Hearing/Trial Setting, Add and Terminate Attorneys, (Williams, Lauren) (acc). (Entered: 04/15/2019) |
| 04/15/2019 | 45 | NOTICE of Waiver of Potential Conflict of Interest by Eduviges Ayala-Bello (Mosqueda, Jesus)(acc). (Entered: 04/15/2019) |
| 04/22/2019 | 46 | Minute Entry for proceedings held before Judge Anthony J. Battaglia: Motion Hearing as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez held on 4/22/2019. All defendants appeared telephonically. All defendant's oral request to Telephonically appear for next Motion hearing/Motion In Limine Hearing date of 6/3/19 - Granted. Counsel as to all defendants are to efile Waiver and Acknowledgments by defendants and sureties. Court sets trial schedule and will issue scheduling order. ( Motion Hearing/Motion In Limine Hearing set for 6/3/2019 03:00 PM in Courtroom 4A before Judge Anthony J. Battaglia. )( Bench Trial set for 6/18/2019 09:00 AM in Courtroom 4A before Judge Anthony J. Battaglia. )(Interpreter Paula Navarro-Gomez, Matias Pizarro). (Court Reporter/ECR Jeannette Hill). (Plaintiff Attorney Caroline Pineda Han AUSA). (Defendant Attorney Jesus Mosqueda FD, Keith Howard Rutman CJA, Lauren Williams FD). (no document attached) (ymm) Modified on 4/25/2019 to indicate Bench Trial.(ymm). (Entered: 04/23/2019) |
| 04/24/2019 | 47 | Bench Trial Preparation and Scheduling Order as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez. Trial will be heard before Judge Battaglia, without a jury, in Courtroom 4A on 6/18/2019 at 9:00 a.m. Motions in Limine will be heard on 6/3/2019 at 3:00 p.m. Signed by Judge Anthony J. Battaglia on 4/24/2019. (acc) (Entered: 04/24/2019) |
| 04/26/2019 | 48 | Acknowledgment of next court date by defendant Walter German Velez-Gonzalez to appear on 6/18/19 @ 9 am. (Rutman, Keith). (tcf). (Entered: 04/26/2019) |
| 05/01/2019 | 49 | Acknowledgment of next court date by defendant Eduviges Ayala-Bello to appear on June 3, 2019. (Mosqueda, Jesus) (acc). (Entered: 05/01/2019) |
| 05/01/2019 | 50 | Acknowledgment of next court date by defendant Eduviges Ayala-Bello to appear on June 18, 2019. (Mosqueda, Jesus) (acc). (Entered: 05/01/2019) |
| 05/08/2019 | 51 | MOTION to Excuse Appearance of In Limine Hearing, Notice to Waive Presence at June 3, 2019, by Liliana Catalina Fernandez-Fernandez. (Williams, Lauren) (acc). (Entered: 05/08/2019) |
| 05/09/2019 | 52 | MOTION to Excuse Appearance of June 3, 2019 at Motion Hearing/Motion In Limine |

**225**

| | | |
|---|---|---|
| | | Hearing, *Request to Waive Presence* by Eduviges Ayala-Bello. (Mosqueda, Jesus) (acc). (Entered: 05/09/2019) |
| 05/29/2019 | 53 | ORDER by Judge Anthony J. Battaglia as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez:At the Joint request of counsel the Motions In Limine Hearing scheduled for 6/3/19 @ 3pm before Judge Anthony J. Battaglia is hereby vacated. Jury Trial date of 6/18/19 @ 8:30 a.m. is confirmed. (no document attached) (ymm) (Entered: 05/29/2019) |
| 06/18/2019 | 54 | Minute Entry for proceedings held before Judge Anthony J. Battaglia: Status Hearing re Bench Trial as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez held on 6/18/2019. Defendants were not present in Court. Counsel for defendants Ayala-Bello & Velez-Gonzalez inform the Court that they were not present due to a car accident. Defendant Ayala-Bello currently in hospital. Court orders No Bail Bench Warrants be issued as each defendant, with Stays until 6/25/19 as to defendant Eduviges Ayala-Bello and Walter German Velez-Gonzalez only. Defendants Eduviges Ayala-Bello and Walter German Velez-Gonzalez may appear telephonically on 6/25/19 hearing date. (Status hearing continued to 6/25/19 @ 9am in courtroom 4A before Judge Anthony J. Battaglia )(Tentative Bench Trial set for 7/3/19 @ 9am in courtroom 4A before Judge Anthony J. Battaglia. ) (Court Reporter/ECR Jeannette Hill). (Plaintiff Attorney Caroline Pineda Han AUSA). (Defendant Attorney Bridget Kennedy FD, Keith Howard Rutman CJA, Lauren Williams FD)(PTSO Jose Ortiz). (no document attached) (ymm) (Entered: 06/18/2019) |
| 06/18/2019 | 55 | ARREST WARRANT ISSUED WITH STAY UNTIL 6/25/19 @ 9AM by Judge Anthony J. Battaglia in case as to Eduviges Ayala-Bello. (ymm) (Entered: 06/18/2019) |
| 06/18/2019 | 56 | Acknowledgment of next court date by defendant Walter German Velez-Gonzalez to appear on 6/25/19 & 7/3/19 each @ 9 am. (Rutman, Keith). (acc). (Entered: 06/18/2019) |
| 06/18/2019 | 57 | ARREST WARRANT ISSUED WITH STAY UNTIL 6/25/19 @ 9AM by Judge Anthony J. Battaglia in case as to Walter German Velez-Gonzalez. (ymm) (Entered: 06/18/2019) |
| 06/18/2019 | 58 | ARREST WARRANT ISSUED by Judge Anthony J. Battaglia in case as to Liliana Catalina Fernandez-Fernandez. (ymm) (Entered: 06/18/2019) |
| 06/19/2019 | 59 | Acknowledgment of next court date by defendant Eduviges Ayala-Bello to appear on June 25, 2019. (Mosqueda, Jesus) (acc). (Entered: 06/19/2019) |
| 06/25/2019 | 60 | Minute Entry for proceedings held before Judge Anthony J. Battaglia: Status Hearing as to Eduviges Ayala-Bello (telephonic - bench warrant recalled)), Walter German Velez-Gonzalez (telephonic - bench warrant recalled), Liliana Catalina Fernandez-Fernandez (not present bench warrant previously issued) Bond revoked held on 6/25/2019. Defendant's request for continuance - Granted. Bench Trial set for 7/3/2019 is vacated and reset to 8/15/2019 09:00 AM in Courtroom 4A before Judge Anthony J. Battaglia. (Interpreter Matias Pizarro). (Court Reporter/ECR Jeannette Hill). (Plaintiff Attorney Caroline Han, AUSA). (Defendant Attorney 1 and 3) S/A James Chvez, FD and 2) Keith Rutman, CJA). (no document attached) (smr) (Entered: 06/25/2019) |
| 06/25/2019 | 61 | ABSTRACT OF ORDER Recalling Warrant as to defendant Eduviges Ayala-Bello. (ymm) (Entered: 06/28/2019) |
| 06/25/2019 | 62 | ABSTRACT OF ORDER Recalling Warrant as to defendant Walter German Velez-Gonzalez. (ymm) (Entered: 06/28/2019) |
| 07/02/2019 | 63 | NOTICE OF ATTORNEY APPEARANCE: Rebecca C Fish appearing for Eduviges Ayala-Bello *Replacing Attorney Jesus Mosqueda* (Fish, Rebecca)Attorney Rebecca C Fish added to party Eduviges Ayala-Bello(pty:dft) (acc). (Entered: 07/02/2019) |

226

| 07/08/2019 | 64 | Warrant Returned Unexecuted, in case as to Eduviges Ayala-Bello. Warrant recalled per 61 Abstract of Order. (acc) (Entered: 07/08/2019) |
|---|---|---|
| 07/08/2019 | 65 | Warrant Returned Unexecuted, in case as to Walter German Velez-Gonzalez. Warrant recalled per 62 Abstract of Order. (acc) (Entered: 07/08/2019) |
| 08/07/2019 | 66 | (CORRECTED) NOTICE OF HEARING as to Defendants Eduviges Ayala-Bello, Walter German Velez-Gonzalez, ( Status Hearing set for 8/12/2019 03:00 PM in Courtroom 4A before Judge Anthony J. Battaglia. (no document attached) (ymm) Modified on 8/9/2019 to remove defendant Liliana Catalina Fernandez-Fernandez who remains a fugitive. (ymm). (Entered: 08/07/2019) |
| 08/08/2019 | 67 | MOTION Waive Personal Presence at August 12, 2019, Arraignment and Status Hearing re 66 Notice of Hearing by Eduviges Ayala-Bello. (Fish, Rebecca) (jrm). (Entered: 08/08/2019) |
| 08/09/2019 | 68 | ORDER granting 67 Motion to Waive Personal Presence and Allow Telephonic Appearance as to Eduviges Ayala-Bello (1). Signed by Judge Anthony J. Battaglia on 8/9/2019.(jrm) (jao). (Entered: 08/09/2019) |
| 08/10/2019 | 69 | Ex Parte MOTION Waive Personal Presence and Allow Telephonic Appearance re 66 Notice of Hearing, by Walter German Velez-Gonzalez. (Rutman, Keith) (jrm). (Entered: 08/10/2019) |
| 08/12/2019 | 70 | SUPERSEDING MISDEMEANOR INFORMATION as to Eduviges Ayala-Bello (1) Count 1s, Walter German Velez-Gonzalez (2) Count 2s, Liliana Catalina Fernandez-Fernandez (3) Count 3s. (gac) Modified on 8/13/2019 edit date filed (gac). (Entered: 08/13/2019) |
| 08/12/2019 | 71 | Minute Entry for proceedings held before Judge Anthony J. Battaglia: Status Hearing as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez held on 8/12/2019. MOTION Waive Personal Presence and Allow Telephonic Appearance - granted. Defendants 1,2 appearing telephonically. Arraignment on Superseding Information held as to Eduviges Ayala-Bello (1) Count 1s, Not Guilty plea entered. Walter German Velez-Gonzalez (2) Count 2s, Not Guilty plea entered. Request to continued bench trial - granted. Motion Hearing set for 9/16/2019 03:00 PM before Judge Anthony J. Battaglia. Motions to be filed by 8/26/2019. Oppositions to be filed by 9/9/2019. Pending motions continued to 9/16/2019. Time between 8/12/2019-9/16/2019 is excluded under the speedy trial act. (Interpreter Matias Pizarro). (Court Reporter/ECR Jeannette Hill). (Plaintiff Attorney Caroline Han, AUSA). (Defendant Attorney (1) Rebecca Fish, FD; (2) Keith Rutman, CJA). (no document attached) (gac) Modified on 8/13/2019 add telephonic info(gac). (Entered: 08/13/2019) |
| 08/20/2019 | 72 | MOTION for Judgment on Default by USA as to Liliana Catalina Fernandez-Fernandez. (Attachments: # 1 Proof of Service)(Han, Caroline) (rmc). (Entered: 08/20/2019) |
| 08/21/2019 | 73 | NOTICE TO SURETIES BY CLERK OF COURT re 72 MOTION for Judgment on Default , as to Defendant Liliana Catalina Fernandez-Fernandez (All non-registered users served via U.S. Mail Service)(mwb) (Entered: 08/21/2019) |
| 08/23/2019 | 74 | NOTICE OF HEARING ON MOTION in case as to Defendant Liliana Catalina Fernandez-Fernandez 72 MOTION for Judgment on Default : Motion Hearing set for 9/30/2019 03:00 PM in Courtroom 4A before Judge Anthony J. Battaglia. (no document attached) (ymm) (Entered: 08/23/2019) |
| 08/26/2019 | 75 | MOTION to Dismiss *the information because Congress violated the non-delegation doctrine when it enacted 8 U.S.C. § 1325(a)(1)*, MOTION to Dismiss *the information because Congress violated the Due Process Clauses prohibition on vague laws when it* |

**227**

| | | |
|---|---|---|
| | | enacted 8 U.S.C. § 1325(a)(1), MOTION to Dismiss Information *because it fails to allege all the elements of the charged offense* by Eduviges Ayala-Bello. (Attachments: # 1 Memo of Points and Authorities)(Fish, Rebecca) (jrm). (Entered: 08/26/2019) |
| 08/26/2019 | 76 | MOTION for Leave to File Further Motions *--Re-File Motion to Dismiss the Information Due to the Disparate Treatment Ms. Ayala Has Received in the "Streamline" System* by Eduviges Ayala-Bello. (Fish, Rebecca) (jrm). (Entered: 08/26/2019) |
| 08/26/2019 | 77 | MOTION to Dismiss Information *Due to the Disparate Treatment She Has Received in the Streamline System* by Eduviges Ayala-Bello. (Attachments: # 1 Memo of Points and Authorities, # 2 Exhibit A-O)(Fish, Rebecca) (jrm). (Entered: 08/26/2019) |
| 08/28/2019 | 78 | NOTICE *of Joinder in Co-Defendant's Pretrial Motions (Docs 75, 76 & 77)* by Walter German Velez-Gonzalez (Rutman, Keith) (jrm). (Entered: 08/28/2019) |
| 09/09/2019 | 79 | RESPONSE in Opposition by USA as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez re 75 MOTION to Dismiss *the information because Congress violated the non-delegation doctrine when it enacted 8 U.S.C. § 1325(a)(1)* MOTION to Dismiss *the information because Congress violated the Due Process Clauses prohibition on vague laws when it enacted 8 U.S.C. § 1325(a)(1)* MOTION to Dismiss Information *because it fails to allege all the elements of the charged offense*, 76 MOTION for Leave to File Further Motions *--Re-File Motion to Dismiss the Information Due to the Disparate Treatment Ms. Ayala Has Received in the "Streamline" System*, 77 MOTION to Dismiss Information *Due to the Disparate Treatment She Has Received in the Streamline System* (Han, Caroline) (jrm). (Entered: 09/09/2019) |
| 09/16/2019 | 80 | SECOND SUPERSEDING INFORMATION as to Eduviges Ayala-Bello (1) count(s) 1ss. (ymm) (Entered: 09/18/2019) |
| 09/16/2019 | 81 | Minute Entry for proceedings held before Judge Anthony J. Battaglia:Arraignment on Superseding Information as to Eduviges Ayala-Bello (1) Count 1ss and Walter German Velez-Gonzalez (2) Count 2s held on 9/16/2019. Not Guilty plea entered. Motion hearing held, Denying [75-3] Motion to Dismiss Information as to Eduviges Ayala-Bello (1); Submitting [77-1] Motion to Dismiss Information as to Eduviges Ayala-Bello (1). Court to issue order. Defendants ordered to return on 11/22/19. ( Bench Trial set for 11/22/2019 09:00 AM in Courtroom 4A before Judge Anthony J. Battaglia.). (Interpreter Indra Zuno). (Court Reporter/ECR Jeannette Hill). (Plaintiff Attorney Caroline P. Han AUSA). (Defendant Attorney Kerry Hartzler FD). (no document attached) (ymm) (Entered: 09/18/2019) |
| 09/25/2019 | 82 | ORDER Denying Motion to Dismiss. Signed by Judge Anthony J. Battaglia on 9/25/2019.(jrm) (Entered: 09/25/2019) |
| 09/30/2019 | 83 | Minute Entry for proceedings held before Judge Anthony J. Battaglia: Motion Hearing as to Liliana Catalina Fernandez-Fernandez held on 9/30/2019.Defendant not present in Court. Granting [72-1] Motion for Judgment on Default as to Liliana Catalina Fernandez-Fernandez (3). Judgment on Default filed in Court.(Court Reporter/ECR Jeannette Hill). (Plaintiff Attorney Caroline Pineda Han AUSA). (Defendant Attorney Lauren Williams FD). (no document attached) (ymm) (Entered: 10/01/2019) |
| 10/01/2019 | 84 | JUDGMENT ON DEFAULT entered against Liliana Catalina Fernandez-Fernandez. Signed by Judge Anthony J. Battaglia on 9/30/2019. (jrm) (jao). (Entered: 10/01/2019) |
| 11/19/2019 | 85 | TRIAL BRIEF by USA as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez (Han, Caroline) (jrm). (Entered: 11/19/2019) |
| 11/22/2019 | 86 | Minute Entry for proceedings held before Judge Anthony J. Battaglia:Bench Trial begin |

**228**

on 11/22/2019 as to Eduviges Ayala-Bello (1) Count 1ss and Walter German Velez-Gonzalez (2) Count 2s. Day of Trial Day One. Swore witnesses. Exhibits marked/received. Defense counsel oral motion for acquittal as to Eduviges Ayala-Bello - Denied. Defense counsel oral motion for acquittal as to Walter German Velez-Gonzalez - Denied. Sentence Without PSR Hearing held on 11/22/2019 for Eduviges Ayala-Bello (1), Count(s) 1, 1s, Dismissed by the Government; Count(s) 1ss: Bureau of Prisons for a period of TIME SERVED, Penalty Assessment $10.00 - Remitted, Fine waived. Sentence Without PSR Hearing held on 11/22/2019 for Walter German Velez-Gonzalez (2), Count(s) 2, Dismissed by the Government; Count(s) 2s: Bureau of Prisons for a period of TIME SERVED, Penalty Assessment $10.00 - Remitted, Fine waived.Denying [34-3] Motion to Suppress Evidence as to Eduviges Ayala-Bello (1); Denying as moot [34-6] Motion for Leave to File Further Motions as to Eduviges Ayala-Bello (1); Denying as moot [52-1] Motion to Excuse Appearance as to Eduviges Ayala-Bello (1); Denied previously 8/16/19 [75-1] Motion to Dismiss as to Eduviges Ayala-Bello (1); Denied previously 8/16/19 [75-2] Motion to Dismiss as to Eduviges Ayala-Bello (1); Denying as moot [76-1] Motion for Leave to File Further Motions as to Eduviges Ayala-Bello (1); Denying as moot [36-4] Motion to Compel Discovery as to Walter German Velez-Gonzalez (2); Denying [36-5] Motion to Suppress Evidence as to Walter German Velez-Gonzalez (2); Denying as moot [36-7] Motion to Preclude as to Walter German Velez-Gonzalez (2); Denying as moot [36-8] Motion for Leave to File Further Motions as to Walter German Velez-Gonzalez (2). Bond exonerated as to each defendant Eduviges Ayala-Bello (1) and Walter German Velez-Gonzalez (2), (Counsel must prepare an order to disburse funds or release collateral). Defendants Eduviges Ayala-Bello (1) and Walter German Velez-Gonzalez (2) taken into Immigration custody by Immigration Officers in Courtroom. (Interpreter Daniel Novoa). (Court Reporter/ECR Jeannette Hill). (Plaintiff Attorney Caroline Pineda Han AUSA). (Defendant Attorney Rebecca C. Fish FD, Keith Howard Rutman CJA). (no document attached) (ymm) (Entered: 11/26/2019)

| | | |
|---|---|---|
| 11/22/2019 | 87 | WITNESS LIST by USA as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez. (ymm) (Entered: 11/26/2019) |
| 11/22/2019 | 88 | Plaintiff EXHIBIT LIST by USA as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez (ymm) (Entered: 11/26/2019) |
| 11/22/2019 | 89 | Defendant EXHIBIT LIST by Eduviges Ayala-Bello, Walter German Velez-Gonzalez (ymm) (Entered: 11/26/2019) |
| 11/27/2019 | 90 | JUDGMENT as to Eduviges Ayala-Bello (1). Count 1, 1s: Dismissed by the Government; Count 1ss: Bureau of Prisons for a period of TIME SERVED, Penalty Assessment $10.00 - Remitted, Fine waived. Signed by Judge Anthony J. Battaglia (lrf) (Entered: 11/27/2019) |
| 11/27/2019 | 91 | JUDGMENT as to Walter German Velez-Gonzalez (2). Count 2: Dismissed by the Government; Count 2s: Bureau of Prisons for a period of TIME SERVED, Penalty Assessment $10.00 - Remitted, Fine waived. Signed by Judge Anthony J. Battaglia (lrf) (Entered: 11/27/2019) |
| 12/02/2019 | 92 | NOTICE OF APPEAL by Eduviges Ayala-Bello re 90 Judgment. Fee Waived. (Notice of Appeal electronically transmitted to the US Court of Appeals.) (Hartzler, Kara). (akr). (Entered: 12/02/2019) |
| 12/02/2019 | 93 | USCA Case Number 19-50366 for 92 Notice of Appeal filed by Eduviges Ayala-Bello. (akr) (Entered: 12/03/2019) |
| 12/02/2019 | 94 | USCA Time Schedule Order for 92 Notice of Appeal filed by Eduviges Ayala-Bello. (NOTICE TO PARTIES of deadlines regarding appellate transcripts: Appellant shall ile transcript designation and ordering form with the US District Court (see attached |

229

| | | |
|---|---|---|
| | | provide a copy of the form to the court reporter, and make payment arrangements with the court reporter on or by 12/23/2019 (see Ninth Circuit Rule 10-3.2); Due date for filing of transcripts in US District Court is 1/22/2020.) (cc: Court Reporter). (Attachments: # 1 Transcript Designation and Ordering Form). (akr) (Entered: 12/03/2019) |
| 12/03/2019 | 95 | NOTICE OF APPEAL by Walter German Velez-Gonzalez re 91 Judgment. Fee Waived. (Notice of Appeal electronically transmitted to US Court of Appeals.) (Rutman, Keith). (akr) (Entered: 12/03/2019) |
| 12/04/2019 | 96 | USCA Case Number 19-50368 for 95 Notice of Appeal filed by Walter German Velez-Gonzalez. (akr) (Entered: 12/04/2019) |
| 12/04/2019 | 97 | USCA Time Schedule Order for 95 Notice of Appeal filed by Walter German Velez-Gonzalez. (NOTICE TO PARTIES of deadlines regarding appellate transcripts: Appellant shall file transcript designation and ordering form with the US District Court (see attached), provide a copy of the form to the court reporter, and make payment arrangements with the court reporter on or by 12/24/2019 (see Ninth Circuit Rule 10-3.2); Due date for filing of transcripts in US District Court is 1/23/2020.) (cc: Court Reporters). (Attachments: # 1 Transcript Designation and Ordering Form). (akr) (Entered: 12/04/2019) |
| 12/04/2019 | 99 | Judgment Returned Executed as to Eduviges Ayala-Bello on 12/3/2019. (jrm) (Entered: 12/06/2019) |
| 12/04/2019 | 100 | Judgment Returned Executed as to Walter German Velez-Gonzalez on 12/3/2019. (jrm) (Entered: 12/06/2019) |
| 12/05/2019 | 98 | Order to Close Interest Bearing Account and Disburse Funds as to Eduviges Ayala-Bello. Signed by Judge Anthony J. Battaglia on 12/5/2019. (jrm) (Entered: 12/05/2019) |
| 12/06/2019 | 101 | TRANSCRIPT DESIGNATION AND ORDERING FORM by Walter German Velez-Gonzalez for proceedings held on 9/16/19 & 11/27/19 re 95 Notice of Appeal. (Rutman, Keith). (akr). (Entered: 12/06/2019) |
| 12/10/2019 | 102 | Order to Close Interest Bearing Account and Disburse Funds as to Walter German Velez-Gonzalez. Signed by Judge Anthony J. Battaglia on 12/10/2019. (jrm) (Entered: 12/10/2019) |
| 01/07/2020 | 103 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Eduviges Ayala-Bello held on 2/11/2019 before Magistrate Judge Robert N. Block. Court Reporter/Transcriber: Ellen L. Simone. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/28/2020. Redacted Transcript Deadline set for 2/7/2020. Release of Transcript Restriction set for 4/6/2020. (akr) (Entered: 01/07/2020) |
| 01/07/2020 | 104 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Eduviges Ayala-Bello held on 2/20/2019 before Magistrate Judge Robert N. Block. Court Reporter/Transcriber: Ellen L. Simone. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request |

**230**

| | | Statement due to Court Reporter/Transcriber 1/28/2020. Redacted Transcript Deadline set for 2/7/2020. Release of Transcript Restriction set for 4/6/2020. (akr) (Entered: 01/07/2020) |
|---|---|---|
| 01/07/2020 | 105 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT of Proceedings as to Eduviges Ayala-Bello held on 3/7/2019 before Magistrate Judge Linda Lopez. Court Reporter/Transcriber: Ellen L. Simone. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/28/2020. Redacted Transcript Deadline set for 2/7/2020. Release of Transcript Restriction set for 4/6/2020. (akr) (Entered: 01/07/2020) |
| 01/07/2020 | 106 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Motion Hearing) as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez held on 4/8/2019 before Judge Anthony J. Battaglia. Court Reporter/Transcriber: Jeannette N. Hill. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/28/2020. Redacted Transcript Deadline set for 2/7/2020. Release of Transcript Restriction set for 4/6/2020. (akr) (Entered: 01/07/2020) |
| 01/07/2020 | 107 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Status Hearing) as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez held on 6/18/2019 before Judge Anthony J. Battaglia. Court Reporter/Transcriber: Jeannette N. Hill. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/28/2020. Redacted Transcript Deadline set for 2/7/2020. Release of Transcript Restriction set for 4/6/2020. (akr) (Entered: 01/07/2020) |
| 01/07/2020 | 108 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Status Hearing) as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez, Liliana Catalina Fernandez-Fernandez held on 6/25/2019 before Judge Anthony J. Battaglia. Court Reporter/Transcriber: Jeannette N. Hill. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/28/2020. Redacted Transcript Deadline set for 2/7/2020. Release of Transcript Restriction set for 4/6/2020. (akr) (Entered: 01/07/2020) |
| 01/07/2020 | 109 | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Status Hearing) as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez held on 8/12/2019 before Judge Anthony J. Battaglia. Court Reporter/Transcriber: Jeannette N. Hill. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the |

**231**

| | | |
|---|---|---|
| | | deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/28/2020. Redacted Transcript Deadline set for 2/7/2020. Release of Transcript Restriction set for 4/6/2020. (akr) (Entered: 01/07/2020) |
| 01/07/2020 | [110](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Motion Hearing) as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez held on 9/16/2019 before Judge Anthony J. Battaglia. Court Reporter/Transcriber: Jeannette N. Hill. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/28/2020. Redacted Transcript Deadline set for 2/7/2020. Release of Transcript Restriction set for 4/6/2020. (akr) (Entered: 01/07/2020) |
| 01/07/2020 | [111](#) | NOTICE OF FILING OF OFFICIAL TRANSCRIPT (Bench Trial) as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez held on 11/22/2019 before Judge Anthony J. Battaglia. Court Reporter/Transcriber: Jeannette N. Hill. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER or the Court Reporter/Transcriber. If redaction is necessary, parties have seven calendar days from the file date of the Transcript to E-File the Notice of Intent to Request Redaction. The following deadlines would also apply if requesting redaction: Redaction Request Statement due to Court Reporter/Transcriber 1/28/2020. Redacted Transcript Deadline set for 2/7/2020. Release of Transcript Restriction set for 4/6/2020. (akr) (Entered: 01/07/2020) |
| 01/23/2020 | [112](#) | TRANSCRIPT DESIGNATION AND ORDERING FORM by Eduviges Ayala-Bello for proceedings held on 2/11/19, 2/20/19, 3/7/19, 4/8/19, 6/18/19, 6/25/19, 8/12/19, 9/6/19, 11/22/19 re [92](#) Notice of Appeal. (Hartzler, Kara). (akr). (Entered: 01/23/2020) |
| 03/12/2020 | [113](#) | ORDER of USCA as to Eduviges Ayala-Bello, Walter German Velez-Gonzalez re [92](#) Notice of Appeal, 95 Notice of Appeal. Appellants' motions to file a joint opening brief in Nos. 19-50366 and 19-50368 is construed as a motion to consolidate. So construed, the motions are granted. Nos. 19-50366 and 19-50368 are consolidated. Briefing schedule issued. (akr) (Entered: 03/12/2020) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/29/2020 12:40:31 | | |
| **PACER Login:** | defender9 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 3:19-cr-00735-AJB |
| **Billable Pages:** | 16 | **Cost:** | 1.60 |
| **Exempt flag:** | Exempt | **Exempt reason:** | Always |

**232**